**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (*Joint Administration Pending*) |

**DECLARATION OF TADD CRANE IN SUPPORT OF DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Tadd Crane, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

1. I am a Partner of Paladin Management Group, LLC ("**Paladin**"), which has its principal office at 633 West 5th Street, 26th Floor, Los Angeles, California 90071. I am authorized to make this declaration on behalf of Paladin in support of the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Lenders; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "**DIP Motion**"[2]).

2. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein or provide this declaration based upon information provided to me by other Paladin professionals.

3. I am authorized to submit this Declaration on behalf of Optio Rx, LLC ("**Optio Rx**" and together with certain of its affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**," or the "**Company**") and am over the age of 18. If I were called upon to testify, I could and would testify to each of the facts set forth below.

A. **Paladin and its Engagement by the Debtors**

4. Paladin is a middle-market advisory firm that specializes in corporate restructuring, transaction advisory, operations performance improvement, strategic communications and strategic advisory services both in-and-out of court proceedings. Paladin has a wealth of experience in providing chief restructuring and financial advisory services and enjoys an excellent reputation for services it has rendered in complex chapter 11 cases on behalf of debtors and creditors.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the DIP Motion, as applicable.

5. Paladin's restructuring professionals have been actively involved in large chapter 11 cases, including, among others: *In re Lear Capital, Inc.*, Case No. 22-10165 (Bankr. D. Del.); *In re CalPlant I Holdco*, Case No. 21-11302 (Bankr. D. Del.); *In re Easterday Ranches, Inc.*, Case No. 21-00141 (Bankr. E.D. Wash.); *In re MD America Holdings, Inc.*, Case No. 20-34966 (Bankr. S.D. Tex.); In re TZEW Holdco LLC, Case No. 20-10910 (Bankr. D. Del.); *In re Chesapeake Energy Corp.*, Case No. 20-33233 (Bankr. S.D. Tex.); *In re Sugarfina, Inc.*, Case No. 19-11973 (Bankr. D. Del.); *In re Miami Metals I, Inc.*, Case No. 18-13359 (Bankr. S.D.N.Y.); and *In re SS Body Armor I, Inc.*, Case No. 10-11255 (Bankr. D. Del.).

6. The Debtors selected Paladin because Paladin's professionals have considerable expertise and experience in providing financial advisory services to financially distressed companies and to creditors, purchasers, bondholders, and other constituencies in chapter 11 as well as in out-of-court proceedings.

7. I have more than 25 years of experience in financial restructuring. I have advised more than 30 companies, private equity sponsors, hedge funds, purchasers of distressed assets and businesses, key secured and unsecured creditors, DIP lenders, and creditors' committees. Before joining Paladin, I was a principle at Tadd Crane Consulting LLC for 10 years and before that was a Senior Director at Zolfo Cooper.

**B.  Prepetition Recapitalization and Refinancing Efforts**

8. The facts and circumstances leading to the commencement of these Chapter 11 Cases are set forth at length in the *Declaration of Leo LaFranco in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**").

9. Paladin was engaged prior to the Petition Date to provide financial advisory services to the Debtors. Since its engagement, Paladin has worked closely with the Debtors' board

of directors, management team and other professional advisors to assist the Debtors in preparing for these chapter 11 cases (the **"Chapter 11 Cases"**).

10. Specifically, Paladin has assisted the Debtors in analyzing their liquidity and cash flows, preparing for the Chapter 11 Cases, and seeking to secure postpetition financing on the most competitive terms and conditions available to the Debtors. As a result of Paladin's work to date, Paladin has become well-acquainted with the Debtors' business operations and financial affairs, including the Debtors' current liquidity situation and financing requirements.

11. When Paladin began to work for the Debtors, the Debtors were already in default of their Prepetition Credit Agreement. As of the Petition Date, the Company has only approximately $1.8 million in cash on hand and no remaining availability on its Revolving Loans. Given the Company's current cash position, the Company does not have the ability to pay its upcoming interest payments due to Prepetition Secured Lenders and risks failing to pay operating costs in the ordinary course of business. The inability to pay interest on the Prepetition Secured Obligations, coupled with the impending maturity on June 28, 2024, has created the need for the Company to restructure all its obligations through the RSA and Plan.

12. The Plan and the transactions contemplated thereby preserve the Debtors' operations and ability to continue to provide uninterrupted services to their customers. The Plan provides the most efficient and cost-effective path forward for the Debtors, will maximize recovery for all parties in interest, and will preserve jobs for the Debtors' employees.

C.  **The Proposed DIP Financing**

13. The Debtors anticipated the need for post-petition financing. In late April, as part of the RSA process, the First Out Holders and the Last Out Holder under the Prepetition Credit Agreement (or its or their affiliates or related funds), provided the Debtors with a proposed term

sheet for debtor-in-possession financing to fund the costs of these Chapter 11 Cases. The proposal is reflected in the DIP Credit Agreement.

14. Under my direction, Paladin conducted a market check by seeking competing DIP financing offers from three (3) other prospective lenders. No other proposals were received. The primary reasons for the lack of competing proposals are because (i) the Prepetition Secured Lenders are unwilling to permit a priming lien in favor of a third party, and (ii) the other potential lenders are unwilling to provide a DIP facility junior to the Prepetition Secured Lenders. Based upon Paladin' efforts to arrange refinancing with prospective lenders, the Debtors and their advisors believe that no other, better options for DIP financing are available to them other than the proposed DIP Facility.

15. On or around April 23, 2024, the Debtors and the Prepetition Secured Lenders began materially advancing negotiations regarding the terms of the Prepetition Secured Lenders' DIP financing proposal. When concluded, the Debtors determined, in their business judgment, that there was no proposal for debtor in possession financing available to the Debtors on terms better than those provided by the Prepetition Secured Lenders. In particular, no party was willing to extend debtor in possession financing to the Debtors on an unsecured or junior basis.

16. The Debtors do not have the ability to borrow under their existing Prepetition Credit Agreement but require funds to sustain their operations and pay for the costs of these Chapter 11 Cases. In light of the proposed Plan, the timeline for the Debtors' stay in Chapter 11 will be materially shortened, but the Debtors nonetheless require the funds to be provided under the DIP Facility to support their operations and the costs of the Chapter 11 Cases, and to achieve Plan confirmation and consummation. The DIP Facility is the best and only path forward to ensure that

4856-5718-0870, v. 3

the Debtors can continue operating their businesses while providing sufficient liquidity to administer these Chapter 11 Cases and facilitate the restructuring process.

17. The Debtors will use the proceeds of the DIP Facility to, among other things, (a) pay the fees, costs, and expenses incurred in connection with these Chapter 11 Cases, (b) fund any obligations benefitting from the Carve-Out, (c) permit the orderly continuation of the operation of their businesses, (d) maintain business relationships with customers, vendors, and suppliers, (e) make payroll and provide benefits to employees, and (f) satisfy other working capital and operational needs. Obtaining an immediate injection of cash is critical. The incurrence of new debt under the DIP Credit Agreement and use of Cash Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtors. Immediate and irreparable harm will be caused to the Debtors and their estates if immediate financing is not obtained and permission to use Cash Collateral is not granted.

18. The Debtors believe the DIP Lenders agreed to provide the DIP Loans with the specific intent to both fully fund the Debtors' reorganization while simultaneously keeping the postpetition financing narrowly tailored to meet the Debtors' restructuring needs. The DIP Lenders and the Debtors, along with their advisors, extensively negotiated the terms of the proposed DIP Facility. Such negotiations included drafts of key documents, including the proposed Interim Order and the DIP Credit Agreement, and various discussions both amongst the Debtors, the DIP Lenders, and their respective advisors. The Debtors believe that the terms of the proposed DIP Facility, including the fees and conditions contained therein, represent the best available terms for the Debtors.

19. Ultimately, the Debtors, in conjunction with their advisors, determined that the terms and conditions of the proposed DIP Facility were and remain the best and only available

under the circumstances and adequately addresses the Debtors' financing needs during these Chapter 11 Cases.  Importantly, the DIP Facility was negotiated at arms' length among the proposed DIP Lenders and the Debtors' counsel and advisors.  Accordingly, the Debtors and the DIP Lenders intend to enter into DIP Credit Agreement, which is attached to the Interim Order as Exhibit 1.

**WHEREFORE**, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  June 9, 2024

/s/ Tadd Crane
TADD CRANE
Paladin Management Group, LLC

*Financial Advisor to the
Debtors and Debtors in Possession*
