## EXHIBIT B

**Redline Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Related Docket No. 17** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "DIP Motion")[2] of Optio Rx, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), seeking entry of an interim order (this "Interim Order") and a final order, under sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 2002-1, 4001-2, and 9013-1; the Court having considered the DIP Motion, that certain Credit Agreement, dated as of June [●], 2024 (the "DIP Credit Agreement"), by and among the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216).  The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60061.

[2] Capitalized terms used but not otherwise defined in this Interim Order have the meanings given to such terms in the DIP Motion.

Debtors, the lenders thereunder (the "DIP Lenders"), and administrative agent thereunder (the "DIP Agent"), a copy of the DIP Credit Agreement is attached to this Interim Order as **Exhibit 1**, and the agreements, instruments, certificates, and other documents executed in connection therewith (the "DIP Loan Documents"), the Restructuring Support Agreement and the exhibits thereto, the *Declaration of Leo LaFranco in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 3] (the "First Day Declaration"), and the *Declaration of Tadd Crane in Support of the Debtors' DIP Financing Motion* (the "DIP Declaration"), the evidence submitted and arguments proffered or adduced at a hearing held before the Court; and upon the record of these Chapter 11 Cases; and adequate notice of the hearing on the DIP Motion having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014 and the applicable Local Rules; and it appearing that no other or further notice need be provided; and all objections, responses, and reservations of rights with respect to the relief requested in the DIP Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES THAT**:[3]

A.    **Petition Date**.  On June 9, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") thereby commencing these Chapter 11 Cases.  On or about the date hereof, the Court entered an order providing for the joint administration for administrative purposes only of the Debtors' Chapter 11 Cases.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      **Debtors-in-Possession**.  The Debtors continue in possession of and to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of these Chapter 11 Cases.

C.      **Jurisdiction and Venue**.  This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      **Committee**.  As of the date hereof, the Office of the United States Trustee for Region 3 (the "U.S. Trustee") has not appointed an official committee of unsecured creditors or any other committee (any such committee, the "Committee") under section 1102(a) of the Bankruptcy Code.

E.      **Notice**.  Notice of the DIP Motion and this Interim Order has been sufficient and appropriate under the circumstances and no other or further notice is necessary or required.

F.      **Debtors' Stipulations**.  Each stipulation, admission, and agreement contained in this Interim Order, including, without limitation, the stipulations set forth below, shall be binding upon the Debtors, and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes.  The Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The Debtors, on their own behalf and on behalf of their estates (subject to Paragraph 37 below), admit, stipulate, acknowledge, and agree as follows (collectively, the "Debtors' Stipulations"):

i.      Prepetition Credit Agreement.  Prior to the Petition Date, the Debtors, the lenders from time to time party thereto (the "Prepetition Lenders"), and Loan Admin Co LLC, as the

3

administrative agent (the "<u>Prepetition Administrative Agent</u>" and, together with the Prepetition Lenders, the "<u>Prepetition Secured Parties</u>"), entered into that certain Credit Agreement dated as of June 28, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, including as amended by that certain First Amendment to Credit Agreement dated as of September 3, 2019, that certain Second Amendment to Credit Agreement dated as January 8, 2020, that certain Third Amendment to Credit Agreement dated as of August 31, 2020, that certain Fourth Amendment to Credit Agreement, dated as of September 25, 2020, that certain Fifth Amendment to Credit Agreement, dated as of December 21, 2021, that certain Sixth Amendment to Credit Agreement, dated as of November 3, 2022, that certain Seventh Amendment to Credit Agreement, dated as of June 26, 2023, that certain Eighth Amendment to Credit Agreement, dated as of January 11, 2024, and that certain Ninth Amendment to Credit Agreement, dated as of May 14, 2024, the "<u>Prepetition Credit Agreement</u>").  The Prepetition Credit Agreement, each fee letter, guaranty, collateral document, and each subordination agreement related thereto, and all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Secured Parties in connection with, evidencing or securing the Prepetition Secured Obligations (as defined herein), each as the same may be amended, restated, renewed, replaced, supplemented or otherwise modified from time to time, are referred to herein as the "<u>Prepetition Loan Documents</u>".

ii.  <u>Prepetition Secured Obligations</u>.  As of the Petition Date, the Debtors were jointly and severally, justly and lawfully indebted and liable to the Prepetition Secured Parties, without defense, counterclaim or offset of any kind, in an amount not less than $126,400,000 in principal amount of loans and commitments outstanding, including accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors'

fees, in each case, solely to the extent that they are chargeable or reimbursable under the Prepetition Loan Documents), charges, indemnities and all other Obligations (as defined in the Prepetition Credit Agreement) incurred or accrued in connection therewith (whether arising before, on, or after the Petition Date) as provided in the Prepetition Loan Documents (collectively, the "Prepetition Secured Obligations").

iii. <u>Security for Prepetition Secured Obligations</u>.  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Debtors granted to the Prepetition Secured Parties security interests in and liens on (the "Prepetition Liens") all of their right, title and interest in the Collateral (as defined in the Prepetition Loan Documents, the "Prepetition Collateral").

iv. <u>Validity of Prepetition Secured Obligations</u>.  The Prepetition Secured Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the Debtors, jointly and severally, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition Secured Obligations owing to, or any transfers made to the Prepetition Secured Parties, is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other legal or equitable challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

v. <u>Validity, Extent, Perfection, and Priority of Prepetition Liens</u>.  The Prepetition Liens granted to the Prepetition Secured Parties constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and perfected security interests in and liens on the Prepetition Collateral (including the

proceeds thereof), at any time owned by any Debtor and thereafter acquired, were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or equity or regulation by any person or entity, including in any Successor Cases.

vi. <u>No Challenges or Claims Related to Prepetition Secured Indebtedness</u>.   No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations are subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law or equity.   The Debtors and their estates have no valid or meritorious Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action or basis for any equitable relief against the Prepetition Liens or other property of the Prepetition Secured Parties, or the Prepetition Secured Parties or any of their respective affiliates and its and their respective predecessors, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other Claims arising under sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy

Code or applicable non-bankruptcy law equivalents. The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

vii. <u>No Challenges or Claims Related to DIP Facility</u>. No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the DIP Liens or DIP Obligations exist, no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim or counterclaim of any kind or nature to any of the DIP Liens or DIP Obligations exist, and no portion of the DIP Liens or DIP Obligations are subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law or equity. The Debtors and their estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action or basis for any equitable relief against the DIP Lenders or any of their respective affiliates and its and their respective predecessors, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the DIP Obligations, the DIP Liens, DIP Loan Documents or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other Claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable non-bankruptcy law equivalents.

viii. <u>Release</u>. Subject to entry of the Final Order, the Debtors, on behalf of themselves and their respective estates (including any successor trustee or other estate representative in the Chapter 11 Cases and any Successor Cases (as defined herein), and any party acting by, through or under the Debtors or their estates), hereby stipulate and agree that

they absolutely and unconditionally release and forever and irrevocably discharge and acquit the Prepetition Secured Parties, the DIP Lenders, and their respective affiliates and each of its and their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their capacity as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Loan Documents, the Prepetition Loan Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Parties and/or the DIP Lenders (collectively, the "Released Claims") that exist or may exist prior to the entry of this Interim Order by the Court. Subject to entry of the Final Order, the Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors now have or may claim to have against the Released

8

Parties arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Interim Order by the Court.

ix. <u>Indemnity</u>.  The Prepetition Secured Parties and the DIP Lenders have acted in good faith, and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens (as defined below), any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to and all transactions contemplated by the foregoing.  Accordingly, the Prepetition Secured Parties and the DIP Lenders shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, except for claims relating to gross negligence and willful misconduct.  No exception or defense in contract, law or equity exists as to any obligation set forth in this paragraph, in the Prepetition Loan Documents or in the DIP Loan Documents, to indemnify and/or hold harmless the Prepetition Secured Parties or DIP Lenders, as the case may be, and any such defenses are hereby waived.  Any pre-Petition Date indemnification obligations continue unimpaired by commencement of the Chapter 11 Cases or entry of this Interim Order.

x. <u>No Control</u>.  Neither the Prepetition Secured Parties nor the DIP Lenders control the Debtors or are insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the extension of the DIP Facility, the DIP Loan Documents, and/or the Prepetition Loan Documents.

xi.  <u>Sale and Credit Bidding</u>.  The DIP Lenders and/or the Prepetition Secured Parties shall have the right, subject to section 363(k) of the Bankruptcy Code, to credit bid (independently or together) up to the full amount of the applicable outstanding Prepetition Secured Obligations and the DIP Obligations in each case, including, without limitation, any accrued fees, interest and expenses, in a sale of any DIP Collateral or Prepetition Collateral, as applicable, and whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

xii. <u>Cash Collateral</u>.  All of the Debtors' cash and cash equivalents, including cash on deposit in any account or accounts as of the Petition Date, securities or other property, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Prepetition Secured Parties.

G.      **Findings Regarding Postpetition Financing and Use of Cash Collateral**.

i.      Request for Postpetition Financing and Use of Cash Collateral.  The Debtors seek authority to (a) enter into the Credit Agreement on the terms described in the DIP Motion, this Interim Order, and in the DIP Loan Documents, and (b) use Cash Collateral on the terms described herein to administer these Chapter 11 Cases and fund their operations in accordance with the Approved Budget (subject to Permitted Variances (as defined in the DIP Credit Agreement)), the DIP Credit Agreement, and the DIP Loan Documents.  As of the Petition Date, the prepetition revolver available to the Debtors was fully drawn upon and the commitments in respect thereof are cancelled and the Debtors have no access thereto on a postpetition basis.  The Debtors' use of Cash Collateral is limited to postpetition receipts of Prepetition Collateral or DIP Collateral.

ii.     Priming of Prepetition Liens.   The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Loan Documents and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors, and the Debtors would not be able to obtain debtor-in-possession financing in a sufficient amount without granting such priming liens.  Consistent with the requirements of section 364(d) of the Bankruptcy Code, the Prepetition Secured Parties shall receive adequate protection as set forth in this Interim Order under sections 361, 363, and 364 of the Bankruptcy Code for any decrease in the value of their interest in the Prepetition Collateral (including Cash Collateral) resulting from (A) the use, sale, or lease by the Debtors of the Prepetition Collateral during the pendency of these Chapter 11 Cases, (B) the DIP Liens and the Carve-Out pursuant to the DIP Loan Documents and this Interim Order, or (C) the imposition of the automatic stay under

section 362 of the Bankruptcy Code (such potential diminution, collectively, "Diminution in Value").

iii. <u>Immediate Need for Postpetition Financing and Use of Cash Collateral</u>.   The Debtors have an immediate and critical need to obtain financing pursuant to the DIP Facility and to continue to use the Prepetition Collateral (including Cash Collateral) in order to, among other things, (a) pay the fees, costs, and expenses incurred in connection with these Chapter 11 Cases, (b) fund any obligations benefitting from the Carve-Out, (c) permit the orderly continuation of the operation of their businesses, (d) maintain business relationships with customers, vendors, and suppliers, (e) make payroll and provide benefits to employees, and (f) satisfy other working capital and operational needs.  The incurrence of new debt under the DIP Loan Documents and use of Cash Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtors.  Immediate and irreparable harm will be caused to the Debtors and their estates if immediate financing is not obtained and permission to use Cash Collateral is not granted.  The extensions of credit under the DIP Facility are fair and reasonable, and the Debtors' entry into the DIP Facility reflects the sound exercise of the Debtors' business judgment and are supported by reasonably equivalent value and fair consideration.

iv. <u>No Credit Available on More Favorable Terms</u>.  The DIP Facility is the best source of debtor-in-possession financing available to the Debtors.  Given their current financial condition, financing arrangements, and capital structure, and the circumstances of these Chapter 11 Cases, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  Further, the Prepetition Secured Parties have consented to the Debtors incurring debtor-in-possession

12

financing, the priming of their Prepetition Liens, and the use of their Cash Collateral, only on the terms of and subject to the conditions set forth in the DIP Loan Documents and this Interim Order. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims and priming liens to the extent set forth in this Interim Order, the Credit Agreement, and the DIP Loan Documents, and (3) the other protections set forth in this Interim Order.

v. <u>Use of Cash Collateral and Proceeds of DIP Facility</u>. As a condition to the Debtors' entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Prepetition Collateral, including Cash Collateral, the Debtors have agreed that Cash Collateral and the proceeds of the DIP Facility shall be used solely in accordance with the terms and conditions of this Interim Order (as may be amended and supplemented by the Final Order), the DIP Loan Documents, and the Approved Budget (subject to Permitted Variances).

H. **Adequate Protection**. In exchange for their consent to (i) the priming of the Prepetition Liens by the DIP Liens and (ii) the use of the Cash Collateral to the extent set forth

in this Interim Order, the Prepetition Secured Parties shall receive, *inter alia*, adequate protection to the extent of any Diminution in Value of their interests in the Prepetition Collateral, as more fully set forth in this Interim Order.

      I.      **Sections 506(c) and 552(b)**.  Subject to entry of the Final Order, in light of (i) the DIP Lenders' agreement that their liens and superpriority claims shall be subject to payment of the Carve-Out and (ii) the Prepetition Secured Parties' agreement that, with respect to the Prepetition Collateral, their respective liens and claims, including any adequate protection liens and claims, shall be subject to payment of the Carve-Out, and subordinate to the DIP Liens, the DIP Lenders and the Prepetition Secured Parties have negotiated for, and the Debtors intend to seek in the Final Order, (a) a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, (b) a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Facility Obligations, or the Prepetition Collateral, as applicable, and (c) a waiver of the surcharge provisions of section 506(c) of the Bankruptcy Code.

      J.      Good Faith of DIP Lenders and Prepetition Secured Parties.

      i.      Willingness to Provide DIP Financing.  The DIP Lenders have committed to provide financing to the Debtors subject to: (a) entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility (as defined in the DIP Credit Agreement) and those set forth in the DIP Loan Documents, including the DIP Credit Agreement; (c) satisfaction of the closing conditions set forth in the DIP Loan Documents; and (d) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Lenders are extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that the DIP Lenders' claims, superpriority claims, security interests and liens, and other

14

protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

ii.   <u>Business Judgment</u>.  Based on the DIP Motion, the First Day Declaration, and the DIP Declaration, and the record presented to the Court at the Interim Hearing, (i) the terms of the financing embodied in the DIP Loan Documents, including the fees, expenses, and other charges paid and to be paid thereunder or in connection therewith, (ii) the adequate protection authorized by the Interim Order and DIP Loan Documents, and (iii) the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral), in each case pursuant to this Interim Order and the DIP Loan Documents, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represent the best financing and terms available under the circumstances.

iii.   <u>Good Faith Under Section 364(e)</u>.  The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arm's-length among the Debtors, the DIP Lenders, and the Prepetition Secured Parties with the assistance and counsel of their respective advisors.  Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Lenders and the Prepetition Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

iv.   <u>Consent to DIP Facility and Use of Cash Collateral</u>.  The Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral and the other Prepetition Collateral, and the Debtors' entry into the DIP Loan Documents, in accordance with and subject to the terms and conditions in this Interim Order and the DIP Loan Documents.

K.    **Good Cause**.  Good cause has been shown for immediate entry of this Interim Order, and the entry of this Interim Order is in the best interests of the Debtors, their estates and their stakeholders.  Among other things, the Debtors have an immediate need for the liquidity provided by the DIP Facility on an interim basis and interim use of Cash Collateral in order to avoid immediate, irreparable harm, and the relief granted herein will minimize disruption of the Debtors' business and permit the Debtors to pay critical expenses necessary to maximize the value of their estates.  The extensions of credit under the DIP Facility, the use of Cash Collateral, and the proposed adequate protection arrangements, as set forth in this Interim Order, are fair and reasonable under the circumstances, and reflect the Debtors' exercise of prudent business judgment.

L.    **Immediate Entry**.    Sufficient cause exists for the immediate entry and effectiveness of this Interim Order under Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Rules.

**NOW, THEREFORE**, based upon the foregoing findings of fact, the DIP Motion, and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    **Motion Granted**.  The DIP Motion is GRANTED as set forth below.  Entry into the DIP Credit Agreement and the other DIP Loan Documents is hereby authorized and approved, and the use of Cash Collateral on an interim basis is authorized, in each case, subject to the terms and conditions set forth in this Interim Order and in the DIP Loan Documents, including, without limitation, the Approved Budget (subject to Permitted Variances).  All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved, and all

reservations of rights included therein, are hereby denied and overruled on the merits. This Interim Order shall become effective immediately upon its entry.

**DIP Facility Authorization**

2.      **Authorization of the DIP Facility.** The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Loan Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute, deliver, and perform under all DIP Loan Documents, including all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Loan Documents (the DIP Liens are perfected by entry of this Interim Order and such perfection shall continue upon entry of the Final Order without the need of the Debtors or any DIP Lender to take any action, file or record any mortgage, lien, or notice, or attach or take possession of any DIP Collateral). The Debtors are hereby authorized to pay, in accordance with this Interim Order, any principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents and this Interim Order, as such amounts become due and owing, without the need to obtain further Court approval (except as otherwise provided in this Interim Order or in the DIP Loan Documents) subject to and in accordance with the terms hereof and thereof, including, without limitation, and to the extent applicable, any closing fees and commitment fees, as well as reasonable and documented fees and disbursements of counsel to the DIP Lenders and the Prepetition Secured Parties, as set forth in this Interim Order and in the DIP Loan Documents, whether or not such professional fees and disbursements arose before, on, or after the Petition Date, and whether or not the transactions contemplated hereby or by the DIP

17

Loan Documents are consummated, and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents shall represent legal, valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates, jointly and severally, in accordance with their terms. Each officer of a Debtor acting individually is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtors.

3.     **Authorization to Borrow**. To prevent immediate and irreparable harm to the Debtors' estates, and to enable the Debtors to continue to operate their business and preserve and maximize the value of their estates, subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order, the Debtors are hereby authorized to borrow under the DIP Facility, subject to any limitations on, or conditions to, borrowing under the DIP Loan Documents, which borrowings shall be used solely for purposes permitted under the DIP Loan Documents, including, without limitation, to provide working capital for the Debtors and to pay adequate protection, interest, fees, costs, charges and expenses, in each case, in accordance with this Interim Order, the DIP Loan Documents, and the Approved Budget (subject to Permitted Variances). The DIP Facility shall be made available for the purposes set forth in the DIP Credit Agreement and this Interim Order (1) in a principal amount of up to $2.75 million on or after the first business day following entry of this Interim Order and satisfaction of the "Conditions Precedent to All Credit Events" (the "Initial Draw"), and (2) in an additional aggregate principal amount of $10 million less the total amount of the Initial Draws on or after the first business day following the entry of the Final Order (together with the Initial Draw, each a "Draw" and

18

collectively the "Draws"), subject to, in each case to the terms of this Interim Order and the DIP Credit Agreement.  On or after the first business day following entry of this Interim Order, the Debtors [shall draw $2.75 million] from the DIP Facility.  All other Draws shall be either in the amount of $500,000 or in multiples of $500,000; provided, however, that the Debtors shall not make more than six (6) Draws following entry of the Final Order.

4.    **DIP Obligations**.    The DIP Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations.  All DIP Obligations shall be enforceable against the Debtors, their estates, and any successors thereto, including without limitation, any trustee appointed in these Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").  Upon entry of this Interim Order, the DIP Obligations will include all loans, reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Lenders, including, without limitation, all principal, accrued interest, costs, charges, fees, expenses, and other amounts, in each case under the DIP Loan Documents.  The Debtors shall be jointly and severally liable for the DIP Obligations.  Absent an Event of Default, the DIP Obligations shall become due and payable, without notice or demand, on the Maturity Date.  No obligation, payment, transfer, or grant of collateral as security hereunder or under the DIP Loan Documents (including any DIP Obligation or DIP Liens) to the DIP Lenders, including in connection with any adequate protection provided hereunder, shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547–550 of the Bankruptcy Code

or under any applicable state or common law), or be subject to any disgorgement, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), claim, counterclaim, charge, assessment, cross-claim, defense, or any other liability or challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for any reason.

5.     **DIP Collateral**.  To secure the DIP Obligations, effective as of the Petition Date, under sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lenders are hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") the DIP Collateral.  The term "DIP Collateral" means, collectively, all assets, rights, and privileges of each Debtor and its respective estate of any nature whatsoever, including avoidance actions under chapter 5 of the Bankruptcy Code, subject to entry of a Final Order, now owned or hereafter acquired, wherever located, by whomsoever held and all proceeds thereof in whatever form received, whether first arising prior to, on, or following the Petition Date, including, but not limited to, any and all cash, cash equivalents and any investment of such cash or cash equivalents, inventory, goods, accounts, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, payment intangibles, documents, instruments, securities, chattel paper, interests in leaseholds (provided, however, that solely to the extent that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, then in such event there shall only be a lien on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests unless the applicable provision is rendered ineffective by applicable

non-bankruptcy law or the Bankruptcy Code), real property, deposit accounts (except for any account created to hold an adequate assurance deposit for utility providers, pursuant to separate order of this Court, but not excepting the Debtors' or their estates' interest in any excess funds in such account after satisfaction of any applicable obligations to utility providers), securities accounts, investment property, letters of credit, letter-of-credit rights, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, commercial tort claims, capital stock of subsidiaries, wherever located, and the proceeds, products, rents, accession and profits of the foregoing, including, but not limited to, (i) all assets constituting Prepetition Collateral, (ii) the Cash Collateral, (iii) all assets of the Debtors that, as of the Petition Date, were not otherwise subject to a security interest, (iv) to the extent a DIP Lien is not permitted by law to attach to any property of any Debtor or its estate, the proceeds of such property, and (v) subject to entry of the Final Order, any proceeds or property recovered, unencumbered or otherwise from all of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law (collectively, "<u>Avoidance Actions</u>").

6.      **<u>DIP Liens</u>**.  The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, other encumbrances on, or claim to any of the DIP Collateral, except that the DIP Liens shall be subject to payment of the Carve-Out, and shall otherwise be junior only to the Permitted Liens (as defined in the DIP Credit Agreement).  Other than as set forth herein or in the DIP Loan Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in these Chapter 11 Cases or any Successor

Cases, and shall be valid and enforceable against any trustee appointed in these Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  The DIP Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.

7.      **DIP Superpriority Claims**.  Subject to payment of the Carve-Out, upon entry of this Interim Order, the DIP Lenders are hereby granted, under section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (collectively, the "DIP Superpriority Claims") for all DIP Obligations (a) with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code, and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.

8.      **No Obligation to Extend Credit**.  The DIP Lenders shall have no obligation to make any loan or advance under this Interim Order or the DIP Loan Documents unless all of the conditions precedent under the DIP Loan Documents and this Interim Order have been satisfied in full or waived by the DIP Lenders in accordance with the terms of the DIP Loan Documents.

9. **Use of DIP Facility Proceeds**.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order and the DIP Loan Documents, and only in compliance with the Approved Budget (subject to the Permitted Variances) and the terms and conditions in this Interim Order and the DIP Loan Documents.

10. **No Monitoring Obligation**.  The DIP Lenders shall not have any obligation or responsibility to monitor any Debtor's respective use of the DIP Facility, and the DIP Lenders may rely upon each Debtor's representation that the use of the DIP Facility at any time is in accordance with the requirements of this Interim Order and the DIP Loan Documents, including, but not limited to, the Approved Budget (subject to the Permitted Variances).

**Use of Cash Collateral**

11. **Authorization to Use Cash Collateral**.  Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and in accordance with the Approved Budget (subject to the Permitted Variances), the Debtors are authorized to use Cash Collateral until the termination of the DIP Credit Agreement.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted by this Interim Order, the DIP Loan Documents, and in accordance with the Approved Budget (subject to the Permitted Variances), as applicable.

12. **Consent of Prepetition Secured Parties**.  The Prepetition Secured Parties hereby consent to (a) the provisions of this Interim Order including the Debtors' entry into the DIP Facility on an interim basis, (b) the granting of the DIP Liens and DIP Superpriority Claims on

23

the terms and subject to the conditions set forth herein, and (c) the Approved Budget (subject to the Permitted Variances).

13.    **Adequate Protection for Prepetition Secured Parties**.  As adequate protection for any Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral resulting from the subordination of the Prepetition Liens to the DIP Liens and the Carve-Out or otherwise, the Prepetition Secured Parties shall receive:

a.    Adequate Protection Liens.  Continuing valid, binding, enforceable, and perfected postpetition replacement liens under sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code on the DIP Collateral, which shall be subject and subordinated only to the Carve-Out, the DIP Liens, and Permitted Liens (as defined in the Prepetition Loan Documents) (the "Adequate Protection Liens") and which (a) shall otherwise be senior to all other security interests in, liens on, or claims against the DIP Collateral, and (b) shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, and shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.

b.    Adequate Protection Superpriority Claims.  Administrative superpriority expense claims in each of the Chapter 11 Cases (the "Adequate Protection Superpriority Claims"), junior and subordinate only to payment of the Carve-Out and the DIP Obligations, pursuant to section 507(b) of the Bankruptcy Code, with priority over any and all other administrative expenses and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever as to and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code.

c.    <u>Adequate Protection Payments</u>.  Upon the terms and conditions of the Prepetition Loan Documents, and subject to the Approved Budget (subject to the Permitted Variances), the First Out Holders (as defined in the DIP Credit Agreement) shall receive quarterly cash payments each in an amount equal to accrued interest on the Prepetition Obligations, in all respects subject to the terms and conditions of that certain Agreement Among Lenders, dated as of November 3, 2022 (as amended, the "<u>AAL</u>").

d.    <u>Payment of Prepetition Secured Parties' Fees and Expenses</u>.  The Prepetition Secured Parties shall receive monthly reimbursement of their respective reasonable and documented fees and expenses including any professional fees (in each case, without the need for the filing of formal fee applications), including as to any amounts arising before, on, or after the Petition Date, incurred in connection with the Chapter 11 Cases.  For the avoidance of doubt, the foregoing shall be limited to the payment of (i) all reasonable and documented fees and out-of-pocket expenses of DLA Piper LLP (US); (ii) reasonable and documented fees and out-of-pocket expenses of [counsel to ACAP] up to $50,000.

e.    <u>Financial Reporting</u>.  The Debtors shall provide the Prepetition Secured Parties with all reports, documents, and other materials, including financial reports, as may be required in this Interim Order and the DIP Credit Agreement, and shall continue to provide all financial reporting required by the Prepetition Loan Documents.  In addition, upon reasonable notice, the Debtors shall provide the Prepetition Secured Parties and their representatives with access to the Debtors' premises, personnel (including, without limitation, senior management and any similar person or firm employed by the Debtors in the Chapter 11 Cases), advisors, books and records, and the Debtors shall cooperate fully in all reasonable requests for information and data made by the Prepetition Secured Parties.

f.   <u>Compliance with Approved Budget</u>.  The Debtors shall comply with, and shall use cash, including Cash Collateral, solely in accordance with the Approved Budget (subject to the Permitted Variances).

14.    **Adequate Protection Reservation**.  Nothing in this Interim Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected, and this Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

**General Provisions Regarding DIP Financing and Use of Cash Collateral**

15.    **Amendments to the DIP Loan Documents**.  The Debtors and the DIP Lenders may enter into one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents, in each case in the DIP Agent's sole discretion, and no further approval of this Court shall be required for any amendment, waiver, consent, or other modification to and under the DIP Loan Documents (and any fees paid in connection therewith) that does not materially and adversely affect the Debtors or which does not (i) shorten the maturity of the DIP Facility, (ii) increase the principal amount of, the rate of interest on, or the fees payable in connection with the DIP Facility, or (iii) change any Event of Default (as defined in the DIP Loan Documents), add any covenants, or amend the covenants to be materially more restrictive; <u>provided</u>, <u>however</u>, notice of any such amendment or other modification shall be

provided by the Debtors to the U.S. Trustee and the Committee (if any) two (2) days in advance of its effectiveness, to the extent reasonably practicable and such amendment or other modification shall be filed on the docket of these Chapter 11 Cases.  No consent to any such amendment, waiver, consent, or modification set forth in this paragraph shall be implied by any action, inaction, or acquiescence of the DIP Lenders and/or the Prepetition Secured Parties. After obtaining the DIP Lenders' and the Prepetition Secured Parties' prior written consent, the Debtors are authorized and empowered, without further notice and hearing or approval of this Court so long as such amendment, or modification is not of the type set forth in clauses (i)–(iii) above, to amend, modify, supplement, or waive any provision of the DIP Loan Documents in accordance with the provisions thereof.

16.    **Approved Budget**.

a.    Attached to this Interim Order as **Exhibit 2** is a 13-week budget approved by the DIP Lenders and the Prepetition Secured Parties, which sets forth, among other things, projected cash receipts and cash disbursements.  Such budget shall be updated from time to time as set forth in the DIP Credit Agreement.  As of any date of determination, the budget or the updated budget that has most recently become the "Approved Budget" in accordance with and as defined in the DIP Credit Agreement shall be referred to herein as the "Approved Budget."  Until any updated budget has become the Approved Budget, the Debtors shall be subject to and be governed by the terms of the Approved Budget then in effect (subject to Permitted Variances). As set forth in the DIP Credit Agreement, "Permitted Variance" means, with respect to the Approved Budget, tested on a four (4)-week rolling basis, cumulative actual cash receipts to be not less than 85% of cumulative budgeted receipts for the period ending with the most recently completed week or cumulative actual expenses for the most recently completed week to be not

more than 115% of cumulative budgeted expenses for the period ending with the most recently completed week, in each case, as determined by the Lenders; _provided_ that if for any four (4)-week rolling period, actual cash receipts exceed expected cash receipts and actual cash expenditures exceed expected cash expenditures, the Permitted Variance for cash expenditures for the period ending with that week will be deemed to have been met if the cumulative actual net cash flow for such period is equal to or greater than the cumulative expected net cash flow for such period. For the avoidance of doubt, documented fees and out-of-pocket expenses paid to the Lenders or their respective professionals shall not be included in the foregoing variance testing; _provided_, _however_, documented fees and out-of-pocket expenses paid to the Debtors' professionals or any professionals retained by any official committee formed during the Chapter 11 Cases shall be included in the foregoing variance testing.

b.   The Approved Budget is approved on an interim basis. The proceeds of the DIP Facility and Cash Collateral under this Interim Order shall be used by the Debtors in accordance with the Approved Budget (subject to Permitted Variances), this Interim Order, and the DIP Loan Documents.

c.   Other than with respect to the Carve-Out, neither the DIP Lenders' nor the Prepetition Secured Parties' consent to, or acknowledgement of, the Approved Budget shall be construed as consent to use the proceeds of the DIP Facility or Cash Collateral beyond the Maturity Date (as defined in the DIP Credit Agreement) or a termination of the DIP Credit Agreement, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

d.   Notwithstanding anything to the contrary herein, the Debtors shall pay the reasonable and documented fees, costs, and expenses of the DIP Lender Professionals (as defined below) in accordance with the DIP Loan Documents and this Interim Order.

e.   Absent relief from the Court, any amendment or modification of the terms and conditions set forth in this Interim Order related to the Approved Budget, or any amendment or modification of the Approved Budget itself, shall be subject to prior written express consent and approval of the DIP Lenders and the Prepetition Secured Parties.  In the event of a dispute concerning the Approved Budget, all rights of the Debtors, the DIP Lenders, and the Prepetition Secured Parties are reserved.

17.   **Budget Reporting**.  The Debtors shall at all times comply with the Approved Budget (subject to the Permitted Variances) and shall further comply with the Permitted Variance and other reporting requirements set forth in the DIP Credit Agreement.

18.   **Modification of the Automatic Stay**.  The automatic stay of section 362 of the Bankruptcy Code is hereby modified and vacated to the extent necessary to permit the Debtors, the DIP Lenders and/or the Prepetition Secured Parties to accomplish the transactions contemplated by this Interim Order.

19.   **Perfection of DIP Liens and Adequate Protection Liens**.  This Interim Order shall be sufficient and conclusive evidence of the creation, extent, validity, perfection, and priority of all liens granted in the DIP Credit Agreement, any security DIP Loan Document executed and delivered in connection therewith or herewith, or granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice, attachment, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of

any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens or to entitle the DIP Lenders and the Prepetition Secured Parties to the priorities granted in this Interim Order.  Notwithstanding the foregoing, the DIP Lenders and the Prepetition Secured Parties are authorized, but not required, to file, as each deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  Each of the DIP Lenders and the Prepetition Secured Parties may, in its discretion, file an electronic copy or photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices of lien or similar instruments.  To the extent that the Prepetition Secured Parties are, with respect to the DIP Collateral, a secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements or any other Prepetition Loan Documents or is listed as loss payee, lenders' loss payee or additional insured under any of the Debtors' insurance policies, the DIP Lenders shall also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.

20.     **Proceeds of Subsequent Financing**.  If the Debtors, any trustee, any examiner, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt under sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations (other than unasserted contingent obligations that expressly survive termination of the DIP Loan Documents which shall be cash collateralized) and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, then, after satisfaction of the Carve-Out, and unless otherwise agreed by the DIP Lenders, all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lenders to be distributed in accordance with this Interim Order and the DIP Loan Documents.  For the avoidance of doubt, if the Debtors, any trustee, any examiner, or any responsible officer subsequently appointed in the Chapter 11 Cases, or any Successor Cases, shall obtain credit or incur debt (other than the DIP Facility) under section 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full of the Prepetition Secured Obligations (other than unasserted contingent obligations that expressly survive termination of the Prepetition Loan Documents which shall be cash collateralized), the Prepetition Secured Parties' and/or the DIP Lenders' rights to object to the Debtors' use of Cash Collateral and assert a lack of adequate protection shall be fully preserved.

21.     **Maintenance of DIP Collateral**.   Until the payment in full of the DIP Obligations and the Prepetition Secured Obligations, or the conversion of such DIP Obligations or Prepetition Secured Obligations in accordance with a plan of reorganization filed in these Chapter 11 Cases, the Debtors shall: (a) insure the DIP Collateral as required under the DIP

Loan Documents or the Prepetition Loan Documents, as applicable; and (b) maintain the cash management system consistent with the terms and conditions of the Cash Management Order and the DIP Loan Documents.

22. **Rights to Credit Bid**.

a. ~~Under~~Subject to entry of the Final Order, under section 363(k) of the Bankruptcy Code and the Prepetition Loan Documents, the Prepetition Secured Parties (subject to the terms and conditions of the AAL) may credit bid all or any portion of their claims, including, without limitation, the Prepetition Secured Obligations and the Adequate Protection Superpriority Claim, in connection with any proposed sale of any, all, or substantially all of the Debtors' assets, including, without limitation, any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of a reorganization plan under section 1123 of the Bankruptcy Code, including a plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii), or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

b. Under section 363(k) of the Bankruptcy Code and the DIP Loan Documents, the DIP Lenders may credit bid all or any portion of their claims, including, without limitation, the DIP Obligations and the DIP Superpriority Claims, in connection with any proposed sale of any, all, or substantially all of the Debtors' assets, including, without limitation, any sale occurring pursuant to Bankruptcy Code section 363 or included as part of a reorganization plan under section 1123 of the Bankruptcy Code, including a plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii), or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

23.   **DIP Milestones**.   As a condition to the DIP Facility and the use of Cash Collateral, the Debtors have agreed to the following milestones (the "DIP Milestones"):

    a.   the Debtors shall have obtained entry by the Court of this Interim Order no later than five (5) business days after the Petition Date;

    b.   the Debtors shall obtain entry by the Court of the Final Order no later than 45 days after the Petition Date;

    c.   the Debtors shall have assumed the Restructuring Support Agreement under section 365 of the Bankruptcy Code no later than 45 days after the Petition Date;

    d.   the Debtors shall obtain entry by the Court of an order approving a disclosure statement with respect to the plan of reorganization contemplated under the Plan Term Sheet and the Restructuring Support Agreement, in form and substance reasonably acceptable to the DIP Lenders, no later than 45 days after the Petition Date; and

    e.   the Debtors shall obtain entry by the Court of an order confirming the plan of reorganization contemplated under the Plan Term Sheet and the Restructuring Support Agreement, in form and substance reasonably acceptable to the DIP Lenders, no later than 75 days after the Petition Date.

For the avoidance of doubt, unless waived by the DIP Lenders and the Prepetition Secured Parties, each in their sole discretion, or otherwise ordered by the Court, the failure of the Debtors to meet the DIP Milestones by the applicable specified deadlines set forth therefor shall constitute an Event of Default under the DIP Loan Documents and this Interim Order.

24.   **Termination Date**.   On the applicable Termination Date (defined below), all applicable DIP Obligations shall be immediately due and payable and all commitments to extend credit under the applicable DIP Facility will terminate.

25.   **Events of Default**.   Until the payment in full of the DIP Obligations, the occurrence of any of the events under Section 12 of the DIP Credit Agreement, unless waived by the Required Lenders (defined in the DIP Credit Agreement) in writing (which may be by

electronic mail) and in accordance with the terms of the DIP Loan Documents, shall constitute an event of default hereunder (collectively, the "Events of Default").

26. **Rights and Remedies Upon Event of Default**. Upon the occurrence and continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, other than as set forth in this Interim Order: (a) the DIP Lenders may send a written notice to the Debtors, counsel to the Committee (if appointed), and the U.S. Trustee (any such declaration shall be referred to herein as a "Termination Declaration") declaring (1) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (2) the commitment of the DIP Lenders to make DIP Loans to be terminated, whereupon such commitments and obligation shall be terminated to the extent any such commitment remains under the DIP Facility, (3) the termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (4) the application of the Carve-Out has occurred following the delivery of the Carve-Out Trigger Notice (as defined below) to the Borrower; (b) interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Loan Documents; (c) the DIP Lenders and/or the Prepetition Secured Parties, as applicable, may declare a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral, except to satisfy payroll, tax, and benefits obligations, and to pay required pharmaceutical licensing fees, in each case necessary to avoid immediate and irreparable harm to the Debtors and their estates. The earliest date on which a Termination Declaration is delivered by the DIP Lenders shall be referred to herein as the "Termination Date." Following a Termination Date, neither the DIP Lenders nor the Prepetition Secured Parties shall be required

to consent to the use of any Cash Collateral or provide any loans or other financial accommodations under the DIP Facility.   The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee (if any), and the U.S. Trustee.

27.    **Emergency Hearing**.  The Debtors may seek an emergency hearing during the five (5) business days following the date a Termination Declaration is delivered (such five (5) business day period, the "Remedies Notice Period") to contest whether an Event of Default has occurred or is continuing.  During the Remedies Notice Period, the Debtors shall continue to have the right to use Cash Collateral in accordance with the terms of Paragraph 26 of this Interim Order, solely to satisfy payroll, tax, and benefits obligations, and pay required pharmaceutical licensing fees, in each case necessary to avoid immediate and irreparable harm to the Debtors and their estates to assert that no Event of Default has occurred and is continuing.  Nothing in this paragraph shall preclude the Court from hearing anything in its discretion beyond what is expressly set forth above.

28.    **Rights and Remedies Following Termination Date**.  Following a Termination Date and unless the Court has entered an order prior to the expiration of the Remedies Notice Period finding that an Event of Default has not occurred, the DIP Lenders shall be entitled to exercise all rights and remedies in accordance with the DIP Loan Documents, this Interim Order, and applicable law, including causing a sale of the DIP Collateral.

29.    **Carve-Out**.

a.    Carve-Out Definition.   As used in this Interim Order and the DIP Facility Documents, the term "Carve-Out" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section

35

1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors or the Committee pursuant to Sections 327, 328, 363, or 1103 of the Bankruptcy Code (the "Retained Professionals") at any time before or on the first business day following delivery by the DIP Lenders of a Carve Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Retained Professionals in an aggregate amount not to exceed $50,000 incurred after the first business day following delivery by DIP Lenders of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice (including email or other electronic means) by the DIP Lenders to the Debtors, their counsel, and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

b.   No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.  The DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Case Professionals incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate

the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation to, or to reimburse expenses of, any of the Case Professionals, or to guarantee that the Debtors or their estates have sufficient funds to pay such compensation or reimbursement. Nothing herein shall be construed as consent to the allowance of any Professional Fees or Expenses of any of the Debtors, the Committee, any other official or unofficial committee in these Chapter 11 Cases or any Successor Cases, or of any other person or entity, or shall affect the right of the DIP Lenders and/or the Prepetition Secured Parties to object to the allowance and payment of any such fees and expenses.

30.    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order**. The DIP Lenders and the Prepetition Secured Parties have acted in good faith in connection with the DIP Facility, the DIP Loan Documents, the Prepetition Loan Documents (subject to entry of the Final Order), and this Interim Order, and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, and notwithstanding any reversal or modification on appeal of any or all of the provisions of this Interim Order by a subsequent order of this Court or any other court, the DIP Lenders and Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.

31.    **Approval of DIP Fees**. In consideration for the DIP Facility and the consent to the use of Cash Collateral in accordance with the terms of this Interim Order, the Prepetition Administrative Agent shall be paid its annual administrative agent fee in an amount equal to $100,000 (the "Agency Fee") under the DIP Loan Documents as such become due, including, without limitation, and to the extent applicable, commitment fees, exit fees, and the reasonable

37

and documented fees and expenses of the DIP Lenders in connection with the DIP Facility, without regard to whether or not the transactions contemplated hereby are consummated (all such fees, together, the "DIP Fees").  The DIP Fees are hereby deemed to be fully earned and payable in accordance with the terms of the DIP Loan Documents without the need for any further order of this Court.  The DIP Fees shall be part of the DIP Obligations.

32.    **Lender Professional Fees**.  Professionals for the DIP Lenders (the "DIP Lender Professionals") and professionals for the Prepetition Secured Parties ("Prepetition Professionals," and together with the DIP Lender Professionals, the "Lender Professionals") shall not be required to file applications or motions with, or obtain approval of, this Court for compensation and reimbursement of fees and expenses.  The DIP Lender Professionals shall submit copies of summary invoices to the Debtors, the U.S. Trustee, and counsel for any Committee prior to payment of such invoices.  The summary invoices shall provide only the total aggregate number of hours billed and a summary description of services provided and the expenses incurred by the applicable party and/or professionals, and shall be subject to all applicable privilege and work product doctrines.  The Debtors, U.S. Trustee, or any Committee shall have ten (10) business days after receipt of such invoices (which, for the avoidance of doubt, may be by email) to object to the reasonableness of the fees and expenses of any Lender Professional.  If an objection is timely asserted and cannot be resolved within ten (10) days of when it is asserted, then the Debtors, U.S. Trustee, or the Committee, as the case may be, shall file with this Court and serve on such DIP Professional an objection (a "Fee Objection"), providing not less than ten (10) days for the Lender Professional to respond, and the Fee Objection will then be resolved by the Court at the next regularly scheduled omnibus hearing or such other hearing as the parties may agree (subject to Court availability) or the Court may

order.  Any failure by any such party to (a) timely assert such objection within the ten (10) day period or (b) having timely asserted such objection, file a Fee Objection within such ten (10) day period shall constitute a waiver of any right of such party to object to the applicable invoice. Notwithstanding any provision herein to the contrary, any objection to payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of the Lender Professionals shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection.  The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed and (b) all fees, costs and expenses on any invoice to which no objection has been timely asserted or Fee Objection has been timely filed.

33.    **Indemnification**.  Subject to entry of the Final Order, the Debtors shall jointly and severally indemnify and hold harmless the DIP Lenders and each of their affiliates and its and their respective directors, officers, employees, agents, attorneys, accountants, advisors, controlling persons, equity holders, partners, members, and other representatives and each of their respective successors and permitted assigns (each, an "Indemnified Party") against, and to hold each Indemnified Party harmless from, any and all losses, claims, damages, liabilities, and reasonable, documented and invoiced out-of- pocket fees and expenses (including, without limitation, fees and disbursements of counsel but limited, in the case of counsel, to the extent set forth in the DIP Loan Documents) that may be incurred by or asserted or awarded against any Indemnified Party, in each case, arising out of, or in any way in connection with, or as a result of: (i) the execution or delivery of any of the DIP Loan Documents, the performance by the parties thereto of their respective obligations thereunder and the other transactions contemplated

thereby; (ii) the use of the proceeds of the DIP Facility; (iii) the enforcement or protection of their rights in connection with any of the DIP Loan Documents; (iv) the negotiation of and consent to this Interim Order; or (v) any claim, litigation, investigation or proceeding relating to any of the foregoing, whether or not any Indemnified Party is a party thereto and regardless of whether such matter is initiated by a third party or the Debtors or any of their subsidiaries or affiliates or creditors; provided that the foregoing indemnity shall not apply to any claims arising (i) prior to the Petition Date or (ii) out of, or in any way in connection with, or as a result of provisions of the Prepetition Loan Documents (for the avoidance of doubt, nothing in this Interim Order alters, amends, expands or minimizes any indemnification under the Prepetition Loan Documents, subject to applicable law); provided further that no Indemnified Party will be indemnified for any loss, claim, damage, liability, cost, or other expense to the extent such loss, claim, damage, liability, cost, or expense that (i) is determined by a final, non-appealable judgment of a court of competent jurisdiction to have resulted from (A) the gross negligence, bad faith, or willful misconduct of such Indemnified Party or (B) a material breach of the obligations of such Indemnified Party under the DIP Loan Documents or (ii) relates to any proceeding between or among Indemnified Parties other than claims arising out of any act or omission on the part of the Debtors in accordance with this paragraph.

34.     **Proofs of Claim**.  The DIP Lenders shall not be required to file a proof of claim in any of the Chapter 11 Cases or Successor Cases, and the Debtors' stipulations herein shall be deemed to constitute a timely filed proof of claim.  Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Chapter 11 Cases or Successor Cases shall not apply to the DIP Lenders. Notwithstanding the foregoing, the DIP Lenders, on behalf of themselves, are hereby authorized

40

and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Cases for any claim allowed herein.

35. **Limitations on the Use of DIP Proceeds, Cash Collateral, the Carve-Out, and Other Funds**. Except as otherwise permitted in this Interim Order and the Approved Budget, the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may not be used, directly or indirectly, by any of the Debtors, the Committee, if any, or any trustee or other estate representative appointed in the Chapter 11 Cases (or any Successor Cases) or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with any of the following (each, a "Challenge") (a) seeking authorization to obtain liens or security interests that are senior to or *pari passu* with the DIP Liens or the Prepetition Liens or (b) investigating (including by way of examinations or discovery proceedings), preparing, asserting, joining, commencing, supporting or prosecuting any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the DIP Lenders and/or the Prepetition Secured Parties, and each of their respective officers, directors, controlling persons, employees, agents, attorneys, affiliates, assigns, or successors of each of the foregoing (all in their capacities as such), with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) any claims or causes of action arising under Chapter 5 of the Bankruptcy Code, (ii) any so-called "lender liability" claims and causes of action, (iii) any action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset

to, the DIP Obligations, the DIP Liens, the DIP Loan Documents, the Adequate Protection Liens, the Prepetition Liens, the Prepetition Loan Documents or the Prepetition Secured Obligations, (iv) any action seeking to invalidate, modify, set aside, avoid or subordinate, in whole or in part, the DIP Obligations or the Prepetition Secured Obligations, (v) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either (A) the DIP Lenders or the Prepetition Secured Parties under any of the DIP Loan Documents or this Interim Order, or (B) the Prepetition Secured Parties under any of the Prepetition Loan Documents or this Interim Order (in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Lenders' or the Prepetition Secured Parties' assertions, enforcements, realizations or remedies on or against the DIP Collateral or the Prepetition Collateral, as applicable, in accordance with the DIP Loan Documents or the Prepetition Loan Documents, as applicable, and this Interim Order), or (vi) objecting to, contesting, or interfering with, in any way, the DIP Lenders' or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral or the Prepetition Collateral, as applicable, once an Event of Default has occurred, _provided_, _however_, that no more than $25,000 in the aggregate of the proceeds of the DIP Facility or the DIP Collateral (including Cash Collateral) may be used by any Creditors' Committee (if one is formed) to investigate the Prepetition Secured Obligations and the Prepetition Liens.

36.    **Payments Held in Trust**.  Except as expressly permitted in this Interim Order or the DIP Loan Documents and other than with respect to the Prepetition Collateral, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral or receives any DIP Collateral or any proceeds of DIP Collateral prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Loan Documents, and termination

of the DIP Facility in accordance with the DIP Credit Agreement, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Lenders and shall immediately turn over such proceeds to the DIP Lenders upon written notice, for application in accordance with the DIP Credit Agreement and this Interim Order.

37. **Releases; Challenge Rights**.

a. <u>Binding Effect on Debtors</u>.  ~~The~~<u>Subject to entry of the Final Order, the</u> Debtors' Stipulations and releases contained in Paragraph F of this Interim Order shall be binding in all circumstances upon the Debtors ~~upon entry of this Interim Order~~ and upon their estates ~~subject to entry of the Final Order~~.

b. <u>Release of DIP Lenders</u>.  Upon entry of this Interim Order, the Debtors, on their own behalf and their estates, forever and irrevocably: (a) release, discharge, and acquit the DIP Lenders and each of their affiliates and its and their respective former or current officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors-in-interest, in each case solely in their capacity as such, of and from any and all Challenges; and (b) waive, discharge and release any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and avoidability of the DIP Liens and the DIP Obligations.  For the avoidance of doubt, in accordance with the Restructuring Support Agreement, none of the following shall receive any release, discharge, or acquittal by virtue of this Interim Order or any Final Order: (i) Greg Savino, (ii) Jordana Siegel, (iii) Rinku Patel, (iv) Crestview City Pharmacy, Inc., (v) Jennifer Reshay Densman, (vi) Chistopher Neil Densman, (vii) Bryan Henderson, (viii) Amanda

43

Davey, (ix) Claudia Barnett, (x) Kari Waites, (xi) Victoria Ballard, (xii) Morgan Meeks, (xiii)
Kyndall Barber, (xiv) Ellen Stafford, (xv) Sergio Zepeda, (xvi) Cold Bore Capital Management,
LLC, and (xvii) Marc Wank.

     c.   <u>Binding Effect on Non-Debtor Third Parties</u>.

       i.   Subject to entry of the Final Order, the Debtors' Stipulations and releases
contained in Paragraph F hereof and in section (iib) immediately above shall be binding upon the
Debtors' estates and each other party-in-interest, including the Committee (and including any
chapter 11 trustee or chapter 7 trustee), except to the extent such party in interest first obtains
standing by no later than 75 calendar days following the date of entry of the Interim Order, (such
time period shall be referred to as the "<u>Challenge Period</u>," and the date that is the next calendar
day after the termination of the Challenge Period in the event that either (i) no Challenge (as
defined below) is properly raised during the Challenge Period or (ii) with respect only to those
parties who properly file a contested matter, adversary proceeding, or other Challenge, such
Challenge is fully and finally adjudicated, (i) and (ii) shall be referred to as the "<u>Challenge
Period Termination Date</u>")) and second, obtains a final, non-appealable order in favor of such
party-in-interest sustaining any such Challenge in any such timely-filed contested matter,
adversary proceeding, or other action (any such Challenge timely brought for which such a final
and non-appealable order is so obtained, a "<u>Successful Challenge</u>").

      ii.   Except as otherwise expressly provided in this Interim Order, from and
after the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and
any Successor Cases (and after the dismissal of these Chapter 11 Cases or any Successor Cases),
and without further notice, motion, or application to, order of, or hearing before this Court, (i)
any and all payments made to or for the benefit of the Prepetition Secured Parties or otherwise

authorized by this Interim Order (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance by any party in interest, (ii) any and all such Challenges by any party-in-interest shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition Secured Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations shall be binding on all parties in interest in these Chapter 11 Cases or any Successor Cases, including any Committee or chapter 11 or chapter 7 trustee.

iii.    Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party-in-interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge; provided that all other stipulations (other than those subject to a Successful Challenge) shall remain binding on any Committee or other party-in-interest.

iv.    Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' estates.  The failure of any party-in-interest, including any Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge

Period Termination Date as required under this paragraph or to require or permit an extension of the Challenge Period Termination Date.

38.     **Waivers**.  Subject to entry of a Final Order and as a further condition of the DIP Loan Documents and any obligation of the DIP Lenders to make credit extensions pursuant to the DIP Loan Documents (and the consent of the DIP Lenders to the payment of the Carve-Out to the extent provided herein and the consent of the Prepetition Secured Parties of the priming of the Prepetition Liens by the DIP Facility and the use of Cash Collateral):

a.     <u>Limitation on Charging Expenses</u>.  No costs or expenses of administration of the Chapter 11 Cases or any Successor Cases shall be charged against or recovered from or against the DIP Lenders and/or the Prepetition Secured Parties with respect to the DIP Collateral or the Prepetition Collateral, in each case pursuant to section 105 or section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lenders or the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Lenders or the Prepetition Secured Parties.

b.     <u>No Marshaling</u>.  In no event shall the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, or the Prepetition Collateral, as applicable, and all proceeds shall be received and applied in accordance with this Interim Order, the DIP Credit Agreement, and the Prepetition Loan Documents, as applicable.

c.     <u>Equities of the Case</u>.  In no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties or Prepetition Collateral.

39.    **No Lender Liability**.  In determining to make any loan (whether under the DIP Loan Documents or the Prepetition Loan Documents or otherwise) or to permit the use of Cash Collateral, neither the DIP Lenders nor the Prepetition Secured Parties are or will be in control of the Debtors and none shall owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

40.    **Limitation of Liability**.    Nothing in this Interim Order, the DIP Loan Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lenders or Prepetition Lenders of (a) any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts or (b) any fiduciary duties to the Debtors, their respective creditors, shareholders, or estates.  So long as the DIP Lenders or the Prepetition Lenders comply with their obligations under the DIP Loan Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any Diminution in Value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne by the Debtors.

41. **No Third Party Beneficiaries**.  Except as explicitly provided for in this Interim Order, this Interim Order does not create any rights for the benefit of any third party, creditor, landlord, lessor, equity holder, or any direct, indirect, or incidental beneficiary.

42. **Insurance Proceeds and Policies**.  Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Lenders and the Prepetition Secured Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

43. **No Waivers or Modifications of Interim Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Lenders and the Prepetition Secured Parties and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Lenders or the Prepetition Secured Parties.

44. **Binding Effect of this Interim Order**.  Immediately upon entry of this Interim Order by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lenders, the Prepetition Secured Parties, all other creditors of any of the Debtors, the Committee, if any, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any chapter 11 case or Successor Case; provided, that neither the DIP Lenders nor the Prepetition Secured Parties shall have an obligation to permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral) or to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the Debtors' estates.

45. **Discharge; Conversion of DIP Liens**. Except as otherwise agreed in writing by the DIP Lenders or the Prepetition Secured Parties, as applicable, or as otherwise provided in the DIP Credit Agreement or this Interim Order, the DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (and, in the case of DIP Obligations, paid in full) or, as applicable, converted to Exit Facility Claims, on or before the effective date of such confirmed plan of reorganization.

46. **Joint and Several Liability**. Nothing in this Interim Order shall be construed to constitute or authorize a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Interim Order.

47. **Survival**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the DIP Lenders and the Prepetition Secured Parties pursuant to this Interim Order and the DIP Loan Documents, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until: (i)

in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Loan Documents and this Interim Order, have been paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms); and (ii) in respect of the Prepetition Loan Documents, all of the Prepetition Secured Obligations pursuant to the Prepetition Loan Documents and this Interim Order, have been paid in full.  The terms and provisions concerning the indemnification of the DIP Lenders shall continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Facility and/or the indefeasible repayment of the DIP Obligations. In addition, the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Secured Parties notwithstanding the satisfaction in full or termination of the DIP Obligations until the satisfaction in full of the Prepetition Secured Obligations.

48.    **Necessary Actions**.  The Debtors are authorized and directed to take any and all such necessary actions as are reasonable and appropriate to implement the terms of this Interim Order.

49.    **Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon entry thereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules, any applicable Local Bankruptcy Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be effective immediately and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

50.  **Rights Reserved**.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the DIP Lenders or the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the DIP Lenders or the Prepetition Secured Parties under the DIP Loan Documents, the Prepetition Loan Documents, or the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Lenders or the Prepetition Secured Parties.

51.  **Headings**.  All paragraph headings used in this Interim Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

52.  **Final Hearing**.  The Final Hearing is scheduled for **July 1, 2024, at 2:00 p.m. (*prevailing* Eastern Time)**, at which time any party in interest may present any timely filed objections to the entry of the Final Order.  The Debtors shall promptly serve a copy of this Interim Order and a notice of the Final Hearing by regular mail upon (a) the parties that were provided notice of the Interim Hearing; (b) any party that has filed prior to such date a request for notices with this Court; and (c) counsel for the Committee, if any appointed.  Such notice shall state that objections to the entry of a Final Order shall be in writing and shall be filed with the Court no later than **June 24, 2024, at 4:00 p.m. (*prevailing* Eastern Time)**, which

objections shall be served so as to be received on or before such date by (i) proposed counsel to the Debtors, Chipman, Brown, Cicero & Cole LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (Attn: William Chipman, Esquire (Chipman@chipmanbrown.com) and Mark D. Olivere, Esquire (Olivere@chipmanbrown.com)); (ii) counsel to the DIP Lenders and the Prepetition Secured Parties, (a) DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, DE 19801, Attn: Stuart M. Brown (stuart.brown@us.dlapiper.com) and Matthew S. Sarna (matthew.sarna@us.dlapiper.com), and (iii) the Office of the U.S. Trustee for Region 3, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jonathan W. Lipshie, Esquire. (Jon.Lipshie@usdoj.gov).  Any objections by creditors or other parties in interest to any of the provisions of a Final Order incorporating the terms of this Interim Order, or including any other or different provisions, shall be deemed waived unless filed and served in accordance with this paragraph.

53. **Retention of Jurisdiction**.  The Court shall retain jurisdiction with respect to all matters arising out of or related to the interpretation, implementation, or enforcement of this Interim Order or the DIP Facility.

4870-3786-7207, v. 34

Document comparison by Workshare Compare on Tuesday, June 11, 2024
1:53:00 PM

| Input: | |
|---|---|
| Document 1 ID | netdocuments://4870-3786-7207/3 |
| Description | Optio - Interim DIP Order |
| Document 2 ID | netdocuments://4870-3786-7207/4 |
| Description | Optio - Interim DIP Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 6 |
| Deletions | 6 |
| Moved from | 1 |
| Moved to | 1 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 14 |