**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Optio Rx, LLC, *et al.*,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 24-11188 (TMH)<br><br>(Jointly Administered)<br><br>**Related D.I.:** 20, 21, 76, 257, 258, 259, 260 |

**RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR THE ENTRY OF AN ORDER (I) APPROVING DEBTORS' DISCLOSURE STATEMENT, (II) DETERMINING DATES, PROCEDURES, AND FORMS APPLICABLE TO THE SOLICITATION PROCESS, (III) ESTABLISHING VOTE TABULATION PROCEDURES, (IV) ESTABLISHING OBJECTION DEADLINE, AND (V) SCHEDULING HEARING TO CONSIDER CONFIRMATION OF THE PLAN**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Optio Rx, LLC and its debtor affiliates (collectively, the "Debtors) hereby files this reservation of rights (the "ROR") regarding the Debtors' motion [D.I. 76] (the "Motion") seeking approval of the *Disclosure Statement relating to the Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 21] (as later amended by D.I. 258, the "Disclosure Statement").[2] In support of the ROR, the Committee states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

[2] Capitalized terms in the ROR shall have the same meanings as set forth in the Disclosure Statement and Plan.

52720210.1

**PRELIMINARY STATEMENT**

The pace of these Chapter 11 Cases has been brisk. Indeed, prior to their filing, the structure and timeline of these cases had already been prenegotiated among the Debtors and their prepetition lenders (who ultimately became their DIP lenders), with the *Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 20] (as later amended by D.I. 257, the "Plan") and Disclosure Statement being filed a mere three days after the Petition Date. It follows that those pivotal documents were prepared without the involvement of the Committee.

Consequently, the Committee has had to seek and digest on an expedited basis enormous volumes of information regarding the Debtors, their operations, their debt structure, and ultimately, their exit strategy. Germane to this pleading, the Committee and its professionals sought extensive documentation for the various representations made in the Plan and Disclosure Statement. Much of that information has been provided, while some remains to be seen and will have to be accounted for by the time of voting and confirmation (as discussed further below). In the interim, however, the Committee held multiple rounds of discussions with the Debtors and their lenders, and have consensually resolved a number of areas of concern with the Plan and Disclosure Statement. Those changes are reflected in the myriad edits in the blacklined versions of those documents filed contemporaneously therewith, along with the Committee letter the Debtors have agreed to include in their packages going out to voting and non-voting creditors alike. With those inclusions, the Committee does not oppose solicitation at this time.

What remains are issues that the Debtors will have to address in order to ultimately confirm their Plan by their proposed September 2024 confirmation date, which the Committee raises now

for the benefit of the Court and all case constituents. These issues revolve around a few key areas: (i) the breadth of the releases being provided in the Plan and the value of the claims being given up; (ii) the secured nature of the Debtors' lender liens and its impact on the treatment of the various unsecured creditor tranches; and (iii) the ultimate capital structure and feasibility of the Debtors' operations in the event they emerge from these proceedings with a confirmed plan.[3] While the Committee remains concerned about these various issues and are continuing to investigate them, the Committee likewise intends to continue in parallel with the constructive discussions they have had with the Debtors to this point in order to resolve same and otherwise maximize recoveries for unsecured creditors. The Committee reserves all rights to object to any or all of the issues raised herein, should they remain unresolved at the time of confirmation.

## BACKGROUND

1. The Debtors commenced these voluntary cases on June 7, 2024 (the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1. The Debtors are continuing to operate their businesses and manage their properties as debtors in possession, and no trustee or examiner has been appointed.

2. On June 21, 2024, the United States Trustee appointed the Committee. On June 27, 2024, the Committee selected Saul Ewing LLP as its counsel.[4] On July 1, 2024, the Committee was reconstituted following the resignation of one of its members.[5] Since being appointed, the Committee and its advisors have been working diligently to get up to speed on the Debtors'

---

[3] The Committee likewise understands that the Debtors will be providing via Plan Supplement information regarding (i) the identity of the Reorganized Debtors' management team; (ii) any perceived value in Causes of Action held by the estate; and (iii) details regarding the Reorganized Debtors' Management Incentive Plan.

[4] The Court approved Saul Ewing's retention on July 26, 2024 at D.I. 244.

[5] Aves Management LLC withdrew as a committee member.

3

business affairs, the Disclosure Statement and Plan, the schedules and financial statements, the DIP financing, and numerous other immediate first-day issues in these cases.

3. Prior to the Committee's appointment, on June 10, 2024, the Debtors filed the Plan and Disclosure Statement. The salient points of the Plan revolve around the conversion of a portion of the Debtors' Lenders debt to equity, with at least some of the balance forming the backbone of an exit facility. The Restructuring Support Agreement approved by this Court[6] binds the Lenders to their support of the same, whose debt nominally stands at more than $120 million. In terms of creditor treatment, the Debtors propose paying certain general unsecured trade creditors in full (Class 5), while the three remaining unsecured classes were originally projected to receive no distribution from or vote on the Plan. Since that time, the Debtors entered into a settlement with Class 7 Noteholders, in which said class members are receiving equity and the potential for cash in exchange for their nominal $73 million in note holdings.

4. Since the time of its appointment, the Committee has had a number of discussions with the Debtors and Lenders regarding the substance of the Disclosure Statement and Plan. The Debtors have instituted a litany of changes to the original forms of both documents, which changes can be seen in the blacklines filed contemporaneously herewith. *See* D.I. 257-260. While the Committee continues to review the Plan and seek information from the Debtors, the Debtors have not provided all of the information that will be necessary for the Committee to fully evaluate the restructuring being proposed by the Debtors. To the extent that the Committee does not timely receive the information to address its concerns, the Committee reserves the right to object to the same. The Committee likewise continues discussions with the Debtors and Lenders to drive further value and equitable treatment to the general unsecured body as a whole.

---

[6] D.I. 95.

## **RESERVATION OF RIGHTS**

5.   As noted above, the Debtors have provided information, clarification, and accepted almost all of the Committee's suggested edits regarding the Plan and Disclosure Statement based on the parties' dialogue to date.  While not at issue for purposes of the Disclosure Statement, the matters below remain concerns for purposes of confirmation (although this is not meant to be an exhaustive list):

  a. **Release Provisions**: the Committee believes that the Plan provides for releases of causes of action that could otherwise serve as an additional source of recovery for unsecured creditors. The Plan releases certain third parties, including all of the Debtors' current and former directors and officers, without the Debtors first having completed an investigation into whether there are causes of action against these parties. Causes of action against directors and officers could be covered by a sizeable directors and officers insurance policy. As such, it is impossible to conclude whether the Plan (i) releases valuable claims of the Debtors' estates; and/or (ii) details adequate (let alone substantial) consideration to the Debtors' estates in return for releases in favor of certain third-parties.  Moreover, the Debtors do not attempt to provide any sort of estimate of the value of the released causes of action.  Notably, these releases encompass a plethora of "Related Parties" to the directly Released Parties.[7]

  b. **Secured Status of the Debtors' Lender Liens Are Uncertain**: the Debtors' lenders in these cases purport to have perfected liens on substantially all assets of the Debtors.  These purported liens are recognized in loan documents and the Court order authorizing the Debtors to incur post-petition financing in these cases.  Notwithstanding, the Lenders' liens are subject to the Committee's investigation and potential challenge as provided in the DIP Order, and as of the time of the Debtors' solicitation, it has not been verified that all of the Lenders liens are valid.  If they are not, this may be an additional source of recovery to unsecured creditors and may likewise weigh on the viability of differentiating treatment among the various tranches of unsecured claimants.

---

[7] These include: "current and former affiliates, and such party's and such affiliates' current and former affiliates, directors, trustees, managers, officers, investment committee, members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, employees, agents, management companies, fund advisors or managers, managed funds (including any beneficial holders for the account of whom such funds are managed), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors (including, for the avoidance of doubt, any attorneys, investment bankers or other professionals and advisors retained by any current and former director and manager in his or her capacity as director or manager of such person) and any such Person's or Entity's respective heirs, executory, estates and nominees."

    c. **<u>The Debtors' Capital Structure Upon Emergence is Unknown</u>**: the Lenders intend to convert a portion of their $127 million of debt in these cases into equity, with the balance of their claims forming an exit facility to be managed upon emergence. Yet the Debtors provide little insight into the financial performance and projections of the Debtors' business, what the debt load is expected to be upon emergence, and how they intend to manage the amount of debt being undertaken. This may ultimately impact the go-forward viability of the Debtors.

6. The Committee continues to review the Plan and to conduct diligence regarding all matters contained therein. While the Committee intends to continue negotiations regarding the structure of the Plan with the Debtors, the Committee reserves all its rights to object to the Plan at the appropriate time.

Dated: July 30, 2024

**SAUL EWING LLP**

*/s/ Evan T. Miller*
Evan T. Miller (DE Bar No. 5364)
Nicholas Smargiassi (DE Bar No. 7265)
1201 N. Market St, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6864
evan.miller@saul.com
nicholas.smargiassi@saul.com

-and-

Michelle G. Novick, Esq. (admitted *pro hac vice*)
**SAUL EWING LLP**
161 North Clark St., Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
michelle.novick@saul.com

-and-

Jorge Garcia (admitted *pro hac vice*)
**SAUL EWING LLP**
701 Brickell Avenue, Suite 1700
Miami, FL 33131
Telephone: (305) 428-4500
jorge.garcia@saul.com

*Counsel to the Official Committee of Unsecured Creditors of Optio Rx, LLC, et.al.*