**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Optio Rx, LLC, *et al.*,<br><br>           Debtors.[1] | Chapter 11<br><br>Case No. 24-11188 (TMH)<br>(Jointly Administered)<br><br><u>Hearing Date</u>: **August 29, 2024 at 10:00 a.m.**<br><u>Objections Deadline</u>: **August 22, 2024 at 4:00 p.m.** |

**MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR
ENTRY OF AN ORDER: (1) GRANTING DERIVATIVE STANDING TO
THE COMMITTEE OF UNSECURED CREDITORS TO COMMENCE,
PROSECUTE AND RESOLVE CERTAIN CLAIMS AND CAUSES OF ACTION;
AND (2) EXTENDING CHALLENGE PERIOD PENDING CONSIDERATION
<u>OF REQUEST FOR DERIVATIVE STANDING</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases

(the "**Chapter 11 Cases**") of the above-captioned debtors and debtors in possession (the

"**Debtors**"), by and through their undersigned counsel, hereby moves (the "**Motion**") for the entry

of an order (the "**Proposed Order**"), substantially in the form attached hereto as **Exhibit A**,

pursuant to sections 105(a), 1103 and 1109 of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), granting derivative standing to the Committee to prosecute certain Challenges[2] (as defined

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the DIP Motion and Final DIP Order [Docket Nos. 17 & 133].

in the Final DIP Order[3]).   In addition, pending consideration of the Committee's derivative standing request, the Committee requests an extension of the Challenge Period (as defined in the Final DIP Order).  In support of its Motion, the Committee states as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (H), (M) and (O).

2.      The statutory predicates for the relief sought herein are sections 105(a), 1103 and 1109 of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedures ("**Bankruptcy Rules**"), and Rule 9006-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware ("**Local Rules**").

3.      Pursuant to Local Rule 9013-1(f), the Committee hereby confirms its consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter a final order or judgment with respect to this Application consistent with Article III of the United States Constitution.

## II.     RELEVANT BACKGROUND

### A.      The Chapter 11 Cases

4.      On June 7, 2024 (the "**Petition Date**"), the Debtors commenced the Chapter 11 Cases under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

---

[3]      "Final DIP Order" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Lenders; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 133].

5.      The Debtors are currently operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On June 21, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**")  appointed the Committee in these Chapter 11 Cases [Docket No. 67][4].  No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      On July 1, 2024, the Court entered the Final DIP Order approving the Debtors' request for postpetition financing ("**DIP Financing**").

**B.      The Committee's Challenge Investigation**

8.      The Debtors and Loan Admin Co LLC, as administrative agent ("**Loan Admin**") were parties to a June 28, 2019 credit agreement, as amended, (the "**Credit Agreement**"), allegedly secured by substantially all the Debtors' assets.

9.      Loan Admin is also the administrative agent for the DIP Financing approved by the Court in the Final DIP Order.  The DIP Financing is being provided by the lenders party to the DIP Credit Agreement (collectively with Loan Admin, the "**DIP Lenders**").

10.     The findings of fact, conclusions of law ("**Findings and Conclusions**") contained in the Final DIP Order set forth extensive stipulations made by the  Debtors (the "**Debtors' Stipulations**") as to the validity, priority, extent, and amount of the liens and claims of the Debtors' prepetition secured lenders and DIP Lenders, and the Debtors' concession that there are no claims, defenses, challenges, or causes of action that could be brought against same. Further, the Debtors agreed to broad releases (the "**Releases**") in favor of the lenders in paragraph 37 of the Final DIP Order.

---

[4]      The U.S. Trustee subsequently filed an Amended Notice of Appointment of Creditors Committee and a Second Amended Notice of Appointment of Creditors Committee [Docket Nos. 81 and 130].

52753126.6 08/15/2024

11.     The Debtors' Stipulations and the Releases, however, are not automatically binding on other parties-in-interest, including the Committee; these parties were afforded express rights in the Final DIP Order to bring a Challenge contesting, *inter alia*, the Prepetition Liens and Secured Obligations, DIP Liens, and DIP Obligations so long as the Challenge is commenced, or the Committee obtains standing for a Challenge, on or before the Challenge Period ends.  Final DIP Order ¶ 37(c)(i).  By agreement of the Committee, Debtors and Loan Admin, the Challenge Period ends September 5, 2024. [Docket No. 289].

12.     The Committee has engaged in an investigation – albeit an expedited one, given the short Challenge Period and the delay in the appointment of the Committee.  In furtherance of this investigation, among other things, the Committee issued, and received responses to, informal written discovery requests to both Loan Admin and the Debtors, reviewed documentation made available to the Committee from parties-in-interest, and conducted extensive legal research.

13.     As a result of the Committee's investigation, the Committee has determined that viable Challenges exist to the perfection of the Prepetition Secured Obligations and Prepetition Liens in favor of the Prepetition Secured Parties (inclusive of Loan Admin) as of the Petition Date on certain specific collateral.

14.     Based upon the Committee's investigation to date, the Prepetition Secured Parties do not have a perfected or otherwise enforceable security interest in the following assets or the proceeds thereof (the "**Unencumbered Assets**"), as of the Petition Date:

- Commercial tort claims of the Debtors, including prepetition tort claims, postpetition avoidance and recovery claims under article 5 of the Bankruptcy Code and any claims for recovery pursuant to Bankruptcy Code Section 362(k).

- Any leasehold, tenancy or real property interests of the Debtors or any fixtures associated therewith;

- any insurance policy proceeds relating to director and officer or management liability; and

- Certain deposit accounts of the Debtors identified more fully below.

15.     Accordingly, the Committee has drafted a complaint asserting such Challenges (as may be further amended, the "**Complaint**"), attached hereto as **Exhibit B**.

## III.     REQUESTED RELIEF

16.     The Committee submits that it is futile to demand that the Debtors file and prosecute the Challenges because they have already stipulated to the validity and amount of the secured claims addressed herein and further have agreed to broad Releases of the very Challenges the Committee seeks to prosecute.

17.     Accordingly, through this Motion, the Committee seeks entry of the Proposed Order, pursuant to sections 105(a), 1103 and 1109 of the Bankruptcy Code, granting derivative standing to the Committee to commence, prosecute and resolve the Challenges against Loan Admin in its capacity as agent for the Prepetition and DIP Lenders set forth in the Complaint.

## IV.     BASIS FOR RELIEF REQUESTED

### A.     Request for Derivative Standing

#### I.     There is a Colorable Claim to Avoid Liens on the Unencumbered Assets.

18.     The Bankruptcy Code provides that a committee may investigate the assets and liabilities of the debtor and "perform such . . . services as are in the interest of those represented." 11 U.S.C. § 1103(c)(2), (5). The Bankruptcy Code also allows a party in interest, including a creditors' committee, to be heard on any issue in a chapter 11 case. *See* 11 U.S.C. § 1109(b). Moreover, section 105(a) empowers the bankruptcy court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See* 11 U.S.C. § 105(a).

19.    "Nearly all courts considering the issue have permitted creditors' committees to bring actions in the name of the debtor in possession." 7 Collier on Bankruptcy ¶ 1103.05[6][a] (16th ed. 2014); *see also In re Clovis Oncology, Inc.*, Case No. 22-11292 (JKS) (Bankr. D. Del. Apr. 18, 2023) [Docket No. 598] (order granting the committee derivative standing to pursue certain claims and causes of action). Generally, the prerequisites for derivative standing are: (a) whether a colorable claim exists that would affect distributions to unsecured creditors; (b) whether the debtor has unjustifiably refused to bring the claim itself; and (c) whether the committee sought permission from the bankruptcy court to initiate the action. *Yes! Entm't.*, 316 B.R. at 145; *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000); *In re Gibson Group, Inc.*, 66 F.3d 1436, 1438 (6th Cir. 1995); *In re La. World Exposition, Inc.*, 858 F.2d 233, 247 (5th Cir. 1988); *Unsecured Creditors Comm. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 904-05 (2d Cir. 1985).

20.    To establish that the claims to be asserted are colorable, the Committee must demonstrate that the pursuit of such claims are reasonably expected to produce an actual benefit for the estate. *See Yes! Entm't*, 316 B.R. at 145 (allowing committee to pursue claims after finding that they might "yield substantial recovery to the estate"). In determining whether a claim is colorable, the Court is not required to conduct a mini-trial. *See STN Enters.*, 779 F.2d at 905 (citation omitted). Instead, the Court may "weigh the 'probability of success and financial recovery,' as well as the anticipated costs of litigation, as part of a cost/benefit analysis" to determine whether the prosecution of claims is likely to benefit the estate. *In re iPCS, Inc.*, 297 B.R. 283, 291 (Bankr. N.D. Ga. 2003). Therefore, the two elements of this analysis are: (i) the colorability of the proposed claims on the merits; and (ii) a cost-benefit analysis.

21.     As to colorability, courts have recognized that establishing it in the context of a motion for derivative standing constitutes a relatively low burden. *In re Adelphia Comms. Corp.*, 330 B.R. 364, 369 (Bankr. S.D.N.Y. 2005) (court need only be satisfied that there is "some factual support" for the claims); *In re Racing Services, Inc.*, 540 F.3d 892, 899 (8th Cir. 2008) ("a creditor's claims are colorable if they would survive a motion to dismiss"); *iPCS*, 297 B.R. at 291 (in determining whether claims are colorable, considering whether a committee has asserted claims for relief that would, upon bringing forth appropriate proof, support recovery).

22.     Here, the Committee submits—based on its investigation to date—that there are colorable Challenges against the purported liens overseen by Loan Admin, warranting a grant of derivative standing because said liens on the Unencumbered Assets were unperfected on the Petition Date:

- To impose a perfected lien, commercial tort claims need to be specifically identified in the security agreement. UCC § 9-108(e); no such claims are described in any security document associated with the Credit Agreement. Section 9-204(b)(2) of the UCC provides that a security interest does not attach to an after-acquired commercial tort claim, so after-acquired commercial tort claims including those under Bankruptcy Code article 5 or section 362(k) are not subject to a perfected lien.

- UCC § 9-109(d)(11) provides that UCC Article 9 does not apply to "the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder." To perfect on an interest in real property, including a lease or fixtures, a filing must be made in the applicable county where the real estate is located. The Committee's investigation has uncovered no documents recorded in the applicable counties where the Debtors leased property or owned fixtures, so liens on these real estate interests are unperfected.

- A debtor may only impose a perfected lien upon property if "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party." UCC § 9-203(b)(2). Insurance policies providing coverage to a debtor's directors and officers are payable on behalf of those directors and officers, not a debtor. Accordingly, many courts regard the proceeds of these D&O policies as non-estate property. See *In re Adelphia Communs. Corp.*, 336 B.R. 610 (Bankr. S.D.N.Y. 2006) (D&O insurance proceeds are not estate property). Since the Debtors did not own and could not transfer the proceeds of D&O insurance, liens on these assets are unperfected.

- A lien in a deposit account is perfected by control.  UCC § 9-314(a).  This is commonly accomplished through a deposit account control agreement ("**DACA**").  DACAs were in place for some deposit accounts owned by certain Debtors, but not for others.  The listed deposit accounts not subject to a DACA, as enumerated in the Complaint, are not subject to a perfected lien.

23.     Each of these rationales supports a colorable claim that the liens on the Unencumbered Assets were unperfected as of the Petition Date and can be avoided pursuant to 11 U.S.C. § 544 and preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.  The practical effect of the Committee's Challenges would be to direct the value of the Unencumbered Assets to the unsecured creditors, increasing their pro rata recovery.

II.     <u>The Committee's Recovery from the Unencumbered Assets Outweighs the Costs</u>.

24.     A cost-benefit analysis also supports a granting of derivative standing. In conducting this analysis, courts generally "weigh the probability of success and financial recovery, as well as the anticipated costs of litigation, as part of a cost/benefit analysis." *iPCS*, 297 B.R. at 291 (internal citations omitted); *Adelphia*, 330 B.R. at 386 (considering whether "prospective rewards can reasonably be expected to be commensurate with the litigation's foreseeable cost"); *Racing Services*, 540 F.3d at 901 (courts consider, among other things, the proposed fee arrangement and the anticipated delay and expense to the estate from the prosecution of litigation).

25.     Here, the Committee submits that the cost/benefit analysis clearly favors a grant of derivative standing to the Committee. Based on the Committee's analysis to date, colorable Challenges to the perfection of the liens on the Unencumbered Assets, which assets are valuable and are being retained by the reorganized Debtors pursuant to the proposed plan.  That proposed plan is otherwise likely to selectively pay nothing or only a *de mimimis* recovery to general unsecured creditors.   The successful prosecution of the Challenges will materially impact unsecured creditor recoveries. The Committee anticipates that this litigation is unlikely to cause

8

material delay in the administration of the chapter 11 cases generally. The Committee submits that such Challenges can be adjudicated before confirmation of a plan, or post-confirmation if an appropriate reserve is established.

<blockquote>

III.   <u>The Debtors Cannot Pursue the Challenges, Warranting a Grant of Derivative Standing</u>.
</blockquote>

26.    The Third Circuit has held that derivative standing is available to a creditors' committee to pursue estate claims when it shows that a debtor in possession "unreasonably refuses" to do so. *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) (*en banc*) (derivative standing appropriate if the debtor unreasonably refuses to pursue a fraudulent transfer action); *accord Infinity Investors Ltd. v. Kingsborough (In re Yes! Entm't Corp.)*, 316 B.R. 141, 144-45 (D. Del. 2004) ("The Third Circuit expressed its agreement with approaches taken by the Second and Seventh Circuits;" denial of derivative standing reversed); *Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.)*, 326 B.R. 532 (W.D. Pa. 2005) (retroactive approval of derivative standing and adversary proceeding by committee).

27.    It is "well settled that in appropriate situations the bankruptcy court may allow a party other than the trustee or debtor-in-possession to pursue the estate's litigation . . . [s]o long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial." *See In re Spaulding Composites Co.*, 207 B.R. 899, 903, 904 (B.A.P. 9th Cir. 1997); *see also Cybergenics*, 330 F.3d at 567 (section 503(b)(3)(B) of the Bankruptcy Code, paired with sections 1103(c)(5) and 1109(b), make "unmistakably clear that Congress approved of creditors' committees suing derivatively to recover property for the benefit of the estate."); *see also Coral Petroleum v. Banque Paribas-London*, 797 F.2d 1351, 1362-63 (5th Cir.

1986) (section 1109(b) provides a committee the right to be heard on all matters, which gives a committee rights to sue if its rights would otherwise be harmed).

28.      Courts have conferred derivative standing on an unsecured creditors' committee to prosecute estate causes of action where the debtor in possession did not stipulate to it. *See, e.g.*, *In re Jones*, 178 Fed. Appx. 662, 655 (9th Cir. 2006) (allowing creditor to file suit derivatively after trustee refused to do so); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436, 1440-41 (6th Cir. 1995) (creditor or committee can have standing if debtor in possession declines to sue); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000) (if trustee fails to prosecute a claim, a creditor can proceed in his place); *In re Catholic Bishop of Northern Alaska*, Case No. F08-00100-DMD, Doc. 529, at pg. 9 (Bankr. D. Alaska Sept. 11, 2009) (permitting derivative standing to a creditors' committee to pursue estate causes of action, even absent the debtor's consent).

29.      As the Third Circuit emphasized, the critical inquiry is whether the Debtors have unreasonably or unjustifiably refused to bring the claims. *Cybergenics*, 330 F. 3d at 553 ("We believe that … bankruptcy courts' equitable powers enable them to authorize such [derivative] suits as a remedy in cases where a debtor-in-possession unreasonably refuses to pursue an avoidance claim."); 330 F. 3d at 568 ("The problem at bar is that the intended system broke down. The Debtor refused to bring an action that the Bankruptcy Court found would benefit the estate, and thereby violated its fiduciary duty to maximize the estate's value.").

30.      Refusal to pursue an avoidance action can be implicit, even without any demand from a creditors' committee. *See, e.g., G-I Holdings, Inc. v. Those Parties Listed on Exhibit A (In re G-1 Holdings, Inc.)*, 313 B.R. 612, 630 (Bankr. D. N.J. 2004). Similarly, "it cannot be said that a formal request, in order to obtain a formal refusal, a request which would surely be refused,

should be required." *Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.)*, 304 B.R. 214, 222 (Bankr. W.D. Pa. 2004).

31.     Here, pursuant to the Final DIP Order, the Debtors have conceded that, *inter alia*, the Prepetition Liens are validly perfected and encumber all of the Debtors' property.  The Committee disputes the Debtors' Stipulations as to the Unencumbered Assets and must be permitted to assert a proper challenge with respect thereto.

32.     Here, all requirements for derivative standing have been met.  The Committee has determined that the Challenges, in the aggregate, are colorable and, if prosecuted, will positively affect distributions to unsecured creditors; the Debtors refused to prosecute the Challenges due to the Debtors' Stipulations and Releases; and the Committee seeks derivative standing to prosecute those Challenges for which the Committee does not possess direct standing by this Motion.

33.     Finally, the Committee notes that the Final DIP Order expressly contemplates the possibility of the Committee or another party-in-interest asserting a Challenge, and further expressly contemplates that the Committee or another party-in-interest would seek to assert claims or causes of action belonging to the Debtors or their estates. Final DIP Order, ¶ 37(c)(i) ("The Debtors' Stipulations and releases contained in Paragraph G hereof and in section (b) immediately above shall be binding upon the Debtors' estates and each other party-in-interest, including the Committee (and including any chapter 11 trustee or chapter 7 trustee),except to the extent such party in interest (A) first obtains standing [before the end of the Challenge Period]").  Hence, to deprive the Committee of the opportunity to file and prosecute Challenges when that opportunity was expressly contemplated by the Final DIP Order would cause substantial prejudice to the Committee and its constituents, and would effectively negate the Challenge rights in the Final DIP Order.

**B.    Request for Extension of Challenge Period**

34.    The Committee has timely filed its Challenge within the current Challenge Period of September 5, 2024. However, the Committee recognizes that there may be some ambiguity in paragraph 37 of the Final DIP Order concerning the question of whether the Committee had to have obtained derivative standing – to the extent necessary – *prior* to commencing the Challenge. While the Committee believes that the Final DIP Order imposes no such requirement,[5] out of an abundance of caution, and in order to avoid the severe prejudice that would result from the Committee being time-barred from asserting Challenges on account of claims which this Court determines are derivative in nature, the Committee requests an extension of the Challenge Period pending the Court's adjudication of the Committee's derivative standing request.

35.    Bankruptcy Rule 9006(b)(1) governs a request for extension of time to object to claims and provides, in relevant part:

> [W]hen an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion . . . order the period enlarged if the request therefore is made before expiration of the period originally prescribed or as extended by a previous order . . . .

Fed. R. Bankr. P. 9006(b)(1).

36.    Further, Local Rule 9006-2 provides that "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by . . . Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry

---

[5]    Specifically, the ambiguous provision in paragraph 37(c)(i) of the Final DIP Order states the Debtors' Stipulations and Releases become binding on all parties "except to the extent such party in interest (A) first obtains standing [before the end of the Challenge Period] but also requires that the party "obtains a final, non-appealable order in favor of such party-in-interest sustaining any such Challenge" with no time limitation.  The Committee submits that the filing of this timely Motion satisfies the first of these provisions and the court's entry of the Proposed Order will satisfy the second.  The Committee makes this request to extend the Challenge Period only out of an abundance of caution.

of a bridge order." Accordingly, by the filing of this Motion, the Challenge Period is automatically extended until the Motion has been adjudicated.

## V.   CONCLUSION

The Committee respectfully requests that the Court enter an order pursuant to sections 105(a), 1103 and 1109 of the Bankruptcy Code, granting the Motion; granting derivative standing to the Committee to commence, prosecute and resolve any or all Challenges brought in the Complaint for which the Committee does not possess direct standing; and granting such other and further relief as the Court deems fair and equitable.

Dated:  August 15, 2024

**SAUL EWING LLP**

*/s/ Evan T. Miller*
Evan T. Miller (DE Bar No. 5364)
Nicholas Smargiassi (DE Bar No. 7265)
1201 N. Market St, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6864
evan.miller@saul.com
nicholas.smargiassi@saul.com

-and-

Michelle G. Novick, Esq. (admitted *pro hac vice*)
**SAUL EWING LLP**
161 North Clark St., Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
michelle.novick@saul.com

-and-

Turner N. Falk (admitted *pro hac vice*)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-8415
turner.falk@saul.com

*Counsel to the Official Committee of Unsecured
Creditors of Optio Rx, LLC, et.al.*