## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OPTIO RX, LLC; *et al.*,[1] | ) | Case No. 24-11188 (TMH) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Related to Docket No. 264 |

### DR. RINKU PATEL'S RESPONSE TO DEBTORS' MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR RELATED RELIEF

Dr. Rinku Patel ("*Patel*"), through her undersigned counsel, hereby files this response to the *Debtors' Motion to Enforce the Automatic Stay* (the "*Motion*") and respectfully states as follows:

### RELEVANT BACKGROUND

1.      On July 22, 2024, Patel initiated a state court action in the Circuit Court of Cook County (the "*Illinois Lawsuit*") naming as defendants Optio RX, LLC ("*Optio*") along with non-debtors CBC Pharma Holdco LLC ("*CBC Pharma Holdco*"), Pharmacy Management LLC ("*Pharmacy Management*"), Ashok Nayyer ("*Nayyer*"), Jeffrey Kelly ("*Kelly*"), Jonathan Tunis ("*Tunis*"), and Barry Best ("*Best*," and together CBC Pharma Holdco, Pharmacy Management, Nayyer, Kelly, Tunis, and Best, the "*Non-Debtor Defendants*").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

2.      The Prinz Law Firm, P.C. ("*Illinois Counsel*") represents Patel in the Illinois Lawsuit.  Illinois Counsel specializes in employment law, and does not have any lawyers on staff who specialize in bankruptcy law.

3.      On July 29, 2024, DLA Piper LLP, on behalf of Pharmacy Management, filed a Notice of Suggestion of Bankruptcy in the Illinois Lawsuit. After Pharmacy Management filed the Notice of Suggestion of Bankruptcy, no substantive steps were taken by either Patel or Illinois Counsel to advance the Illinois Lawsuit against Optio.

4.      On July 30, 2024, the Debtors filed the instant Motion. Prior to filing the Motion, Debtors' counsel made no attempt to contact either Patel or Illinois Counsel to consensually resolve the issue.

5.      On August 14, 2024, Patel filed an amended complaint (the "*Amended Complaint*") removing Optio as a defendant from the Illinois Lawsuit. A copy of the Amended Complaint was provided to Debtors' counsel on August 15, 2024 along with a request to withdraw the Motion.

6.      Given that the asserted stay violation had been remedied, Patel wanted to prevent the parties from incurring unnecessary legal fees with litigating the Motion and requested Debtors withdraw the Motion on August 15, 2024, in light of her amended Illinois Lawsuit excluding Optio as a defendant.

7.      Moreover, such fees would understandably strain an individual, like Patel, more than a conglomerate of corporate debtors like Optio and the other entities in this bankruptcy proceeding.

8.      On August 19, 2024, Debtors' counsel informed Patel's undersigned bankruptcy counsel that the Debtors intended to move forward with the Motion. Debtors' counsel also

confirmed that the only costs incurred to enforce the stay related to filing the instant Motion. The

Motion does not allege that the Debtors suffered any other damage or injury.

## **<u>RESPONSE</u>**

I.  *The Debtors made no effort to consensually resolve the asserted stay violation with Patel before taking formal legal action.*

8.      Neither Optio nor its counsel attempted to contact Patel or Illinois Counsel to

consensually resolve the asserted stay violation before filing the instant Motion. While the

Bankruptcy Code does not explicitly require that a debtor or debtor's counsel contact an

offending creditor prior to filing a motion for damages for violation of the automatic stay,

bankruptcy courts do consider whether the actions taken were appropriate in light of less costly

or time-consuming alternatives. *See, e.g.*, *Rosengren v. GMAC Mortg. Corp.*, No. 00-971, 2001

U.S. Dist. LEXIS 13119, at *5 (D. Minn. Aug. 7, 2001) (the court limited the award of attorney's

fees for stay violation to $150 in light of the *de minimis* nature of damages and as an amount

"which reflects the court's estimation of the limited legal work required to dispose of this matter

short of litigation"); *Clayton v. King (In re Clayton)*, 235 B.R. 801, 811 (Bankr. M.D.N.C. 1998)

(finding that "[a]lthough the Bankruptcy Code does not require a debtor to warn his creditors of

existing violations prior to moving for sanctions, the debtor is under a duty to exercise due

diligence in protecting and pursuing his rights and in mitigating his damages with regard to such

violations"). Mitigation reflects "the sound judicial policy that profit-making from violations of

the automatic stay is inherently improper." *In re Docherty*, 2016 Bankr. LEXIS 511, at *9

(Bankr. N.D. Ohio 2016) (internal quotations and citations omitted).

9.      As one bankruptcy court opined, "[a]n ounce of mitigation effort by debtors'

counsel may work more quickly and effectively than a barrel of litigation—if not, then court

intervention may be reasonable and necessary." *In re Crowder*, 2016 Bankr. LEXIS 2307 at *12

(Bankr. W.D.N.Y. 2016) (finding that attorneys' fees generated by the debtor in connection with the stay litigation were not reasonable and necessary because the debtor made no pre-litigation effort to mitigate any potential for damage, and less costly and much less time-consuming alternatives would have been sufficient to address the alleged stay violations).

10.     In a case with facts similar to those here, the United States Bankruptcy Court for the District of Connecticut denied debtor's counsel's legal fees in connection with bringing a stay violation sanctions motion after finding that no further acts were taken against the debtor once a suggestion of bankruptcy was filed in the underlying lawsuit and the debtor did not suffer any damages besides his claim for attorney's fees for filing the instant motion. *Jackson v. Parrott (In re Jackson)*, 2017 Bankr. LEXIS 3602 (Bankr. D. Conn. 2017).

11.     Here, Debtors' counsel made no effort to utilize less costly or time-consuming measures to resolve the asserted stay violation. Nor did Debtors' counsel provide Patel or Illinois Counsel with an opportunity to remedy the claimed violation, which she has now done by dismissing Optio from the Illinois Lawsuit. Immediately resorting to litigation by filing the instant Motion and unnecessarily incurring legal fees is precisely the conduct bankruptcy courts have explicitly admonished.

*II.     The Debtors did not suffer any actual injury caused by the asserted stay violation.*

12.     In order to recover damages, a debtor must "prove three elements: (1) the offending party violated the automatic stay; (2) the violation was willful; and (3) that the willful violation caused the debtor an injury." *In re Crowder*, 2016 Bankr. LEXIS 2307, at *2 (Bankr.W.D.N.Y. 2016). A debtor "bears the burden of proving that damages were actually incurred." *In re Sturman*, 2011 U.S. Dist. LEXIS 109599, at *3 (S.D.N.Y. 2011) (where no injury results from the violation of the automatic stay, an award of damages is clearly inappropriate);

*see also, In re Manchanda*, 2016 Bankr. LEXIS 2056, at *5 (Bankr. S.D.N.Y. 2016) (a debtor must prove by a preponderance of the evidence that he or she suffered damages) (unpublished).

13.     And although Section 362(k)(1) provides for the inclusion of costs and attorney's fees among actual damages, many courts have expressed reluctance to award fees and costs in the absence of other actual damages for fear of encouraging an "'excessively litigious approach'" to minor stay violations. *In re Sturman*, 2011 U.S. Dist. LEXIS 109599, at *10-11 (S.D.N.Y. 2011); *see also In re Saratoga Springs Plastic Surgery, PC*, 2005 U.S. Dist. LEXIS 2046, at *5 n.4 (N.D.N.Y. Feb. 11, 2005) (quoting *In re Hill*, 222 B.R. 119, 124 (Bankr. N.D. Ohio 1998)); *In re Whitt*, 79 B.R. 611, 616 (Bankr. E.D. Pa. 1987) (concluding such awards "are allowable only to embellish 'actual damages'").

14.     As aptly stated by the United States District Court for the Southern District of New York, "[t]his concern about the propriety of awarding fees in the absence of other actual damages is particularly compelling where, as here, the only fees and costs at issue were expended not in efforts to withdraw the offending judgment or motion or to halt the offending conduct, but in bringing a motion for damages under §362." *In re Sturman*, 2011 U.S. Dist. LEXIS, at *11-12. Thus, while there is no bright-line rule prohibiting recovery of fees in the absence of other damages, a bankruptcy judge's decision to deny an award of attorney's fees and costs, even for a willful violation of the automatic stay, will be justified where litigation is not "reasonable and necessary to vindicate [the debtor's] rights or the congressional policies underlying § 362(k)." *Id.* (quoting *In re Beebe*, 435 B.R. 95, 102 (Bankr. N.D.N.Y. Aug. 20, 2010)).

15.     Here, Debtors' counsel has admitted that, besides attorney's fees and costs associated with the instant motion, the Debtors have not suffered any actual injury or damages.

*See* Motion at ¶ 35. And just as importantly, Patel has timely rectified the asserted stay violation

by filing the Amended Complaint and removing Optio as a defendant in the Illinois Lawsuit. At

this juncture, Debtors' counsel is pursuing the Motion for the sole purpose of recovering

mounting legal fees – fees Debtors' counsel incurred on its own volition since it neglected to first

pursue less costly and much less time-consuming alternatives to resolve the issue (*i.e.,* a phone

call to Illinois Counsel). The Court would be justified in denying Debtors' request for attorney's

fees and costs.

III.   *The Debtors' attempt to litigate the underlying merits of the Illinois Lawsuit on behalf of*
       *the Non-Debtor Defendants and have such lawsuit be declared void ab initio is entirely*
       *inappropriate.*

16.    In addition to seeking sanctions for fees it unilaterally generated, Optio

erroneously urges this Court to order Patel to cease prosecution of the Illinois Lawsuit against

the *Non-Debtor Defendants* and to find the Illinois Lawsuit void *ab initio*. In doing so, Optio

overlooks this Court's limited subject-matter jurisdiction, mischaracterizes the statutes governing

Patel's claims, and ignores the privity between Patel, CBC Pharma HoldCo, and Pharmacy

Management. Given these flaws, this Court should deny Optio's request to declare the Illinois

Lawsuit void *ab initio*.

17.    This Court cannot grant Optio's request because it does not have subject-matter

jurisdiction over Patel's state court matter under section 28 U.S.C. § 1334. Section 1334(a)

provides the district court with "original and exclusive jurisdiction of all cases under title 11,"

while § 1334(b) states "the district courts shall have original but not exclusive jurisdiction of all

civil proceedings arising under title 11, or arising in or related to cases under title 11." Notably,

an action is only related to a bankruptcy proceeding "if the outcome could alter the debtor's

rights, liabilities, options, or freedom of action (either positively or negatively) and which in any

way impacts upon the handling and administration of the bankruptcy estate." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984).

18.     Here, Patel removed Optio from the Illinois Lawsuit when she filed her Amended Complaint, thereby limiting her recovery to the remaining non-debtor individuals and entities not subject to bankruptcy proceedings. The Illinois Lawsuit's outcome, as a result, will not materially impact the administration and handling of Optio's bankruptcy.[2] This conclusion remains even if Patel successfully recovers the damages she seeks against the remaining Non-Debtor Defendants, thereby prompting those individuals and entities to pursue damages against Optio. Such an outcome is only "a mere precursor to the potential third party claim for indemnification by [the Non-Debtor Defendants] against [Optio]," which "would in no way bind [Optio], in that it could not determine any rights, liabilities, or course of action of the debtor." *Id.* at 995. This Court should thus deny Optio's request to find the state court matter void *ab initio*.

19.     The Court should also reject Optio's request due to its mischaracterization of the Illinois Wage Payment Collection Act ("*IWPCA*") and Illinois Whistleblower Act ("*IWA*"). In addition to giving employees a cause of action to pursue unpaid wages from their employer, the IWPCA allows employees to pursue owed compensation from an employer's corporate officers or agents who knowingly permit their employer's violation of the IWPCA. *See* 820 Ill. Comp. Stat. 115/13; *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 112 (2005) (stating liability under the IWPCA "can be imposed upon employers, as that term is traditionally understood, and upon any officers of a corporation or agents of an employer who knowingly permitted the Wage Act violation."). Throughout her initial and Amended Complaint, Patel alleges how the remaining Non-Debtor Defendants used their status as Optio's officers and agents to wrongfully deny her

---

[2] Patel will likely need certain discovery from Optio, as her direct employer under Illinois law. Patel reserves the right to request relief from the automatic stay to pursue such limited discovery.

contractually guaranteed compensation. Optio's contention otherwise reflects nothing but its willfully blind eye, requiring this Court to deny its request to find Patel's Illinois Lawsuit void *ab initio* accordingly.

20.     The same is true of Patel's claims under the IWA. The IWA also confers liability upon any person or entity who enabled an employer to violate the IWA. *See* 740 ILCS §174/5 (defining "employer" as "an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State . . . and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees."). Patel's initial and Amended Complaint alleges the remaining Non-Debtor Defendants acted within the scope of their authority as Optio's agents and officers when they enabled it to terminate Patel after she reported its regulatory failings to its Board of Directors, CBC Pharma HoldCo, and Pharmacy Management. *See Hower v. Cook County Sheriff's Office*, No. 15 C 6404, 2016 U.S. Dist. LEXIS 18322, at *8-9 (N.D. Ill. 2016) (Denying a motion to dismiss an IWA claim brought against individual defendants because the plaintiff alleged they were acting within the scope of their authority when dealing with the plaintiff as an employee).

21.     Lastly, Optio's contention regarding Patel's breach of contract claims are false. As stated in her Amended Complaint, CBC Pharma HoldCo and Cold Bore Capital Management, LLC ("*Cold Bore*") executed Patel's Employment Agreement on Optio's behalf as its holding company and manager, respectively. *See* Motion, Ex. A at 42. Moreover, Pharmacy Management, Optio's current manager, inherited Cold Bore's obligations pursuant to the Employment Agreement's "Successors and Assigns" provision. *See id*. at 40 (stating "[t]his Agreement will be binding upon and will inure to the benefit of any successor or assignee of the business of the

Company.").  In turn, contractual privity exists between Patel and the Non-Debtor Defendants named in the breach of contract claims. The Court should deny Optio's request to order Patel to cease prosecution of the Illinois Lawsuit and declare the Illinois Lawsuit void *ab initio*.

WHEREFORE, Patel respectfully requests that the Court deny the Motion, and grant such other relief as is just.

Dated:  August 20, 2024                    **GOLDSTEIN & MCCLINTOCK LLLP**

By: */s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk, Esq. (Bar ID 3320)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
marias@goldmclaw.com

*Counsel for Dr. Rinku Patel*