## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Optio Rx, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11188 (TMH)<br><br>(Jointly Administered)<br><br>Objection Deadline: August 22, 2024, at 4:00 p.m. (Eastern Time)<br>Hearing Date: August 29, 2024, at 10:00 a.m. (Eastern Time)<br><br>Related Docket No. 294 |

**DEBTORS' OBJECTION TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER: (1) GRANTING DERIVATIVE STANDING TO THE COMMITTEE OF UNSECURED CREDITORS TO COMMENCE, PROSECUTE AND RESOLVE CERTAIN CLAIMS AND CAUSES OF ACTION; AND (2) EXTENDING CHALLENGE PERIOD PENDING <u>CONSIDERATION OF REQUEST FOR DERIVATIVE STANDING</u>**

Optio Rx, LLC ("**Optio**") and its affiliated debtors and debtors-in-possession (collectively, "**Debtors**"), in the above-captioned chapter 11 cases, hereby submit this Objection (the "**Objection**") to *Motion of Official Committee of Unsecured Creditors for Entry of an Order: (1) Granting Derivative Standing to the Committee of Unsecured Creditors to Commence, Prosecute and Resolve Certain Claims and Causes of Action; and (2) Extending Challenge Period Pending Consideration of Request for Derivative Standing* [Docket No. 294] (the "**Motion**"). In support of this Objection, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

## BACKGROUND

I. **GENERAL BACKGROUND.**

1. On June 7, 2024 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

2. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On June 21, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a creditors' committee (the "**Committee**") in these Chapter 11 Cases [Docket No. 67].[2] No trustee or examiner has been appointed in the Chapter 11 Cases.

4. Additional factual background regarding the Debtors' business operations, corporate and capital structures, and restructuring efforts are described in greater detail in the *Declaration of Leo LaFranco in Support of First Day Pleadings* [Docket No. 3], which is incorporated herein by reference.

II. **THE PREPETITION CREDIT AGREEMENT.**

5. Pursuant to that certain Credit Agreement dated as of June 28, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition Credit Agreement**"), by and among CBC Pharma HoldCo, LLC, Optio Rx, Loan

---

[2] The U.S. Trustee subsequently filed an Amended Notice of Appointment of Creditors' Committee [Docket Nos. 81 and 130].

Admin Co LLC, as administrative agent, and Loan Admin Co LLC, as lead arranger, and the lenders party thereto from time to time (the "**Prepetition Secured Lenders**"), as of the Petition Date, the Debtors are indebted to the Prepetition Secured Lenders in an aggregate principal amount of approximately $127.6 million, including accrued and unpaid interest, fees and other claims (the "**Prepetition Secured Obligations**").  The Prepetition Secured Obligations are secured by first-priority liens and security interests in substantially all the Debtors' assets.

**III.    DISCLOSURE STATEMENT AND CONFIRMATION.**

6. On June 10, 2024, the Debtors filed the *Joint Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 20] and the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 21].

7. On June 24, 2024, Debtors filed the *Motion for Entry of an Order (I) Approving Debtors' Disclosure Statement, (II) Determining Dates, Procedures, and Forms Applicable to the Solicitation Process, (III) Establishing Vote Tabulation Procedures, and (IV) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of the Plan* [Docket No. 76].

8. On July 29, 2024, the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 257] (as may be subsequently amended or modified, the "**Plan**") and the *Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 258] (the "**Disclosure Statement**").

9. On August 1, 2024, the Court entered the *Order (i) Approving Amended Disclosure Statement, (ii) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (iii)*

*Establishing Vote Tabulation Procedures, and (iv) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of the Amended Plan* [Docket No. 276].

10. A hearing to consider confirmation of the Plan is scheduled for September 13, 2024, at 10:00 a.m. (*prevailing* Eastern Time).

### IV. THE FINAL DIP ORDER.

11. On July 1, 2024, the Court entered the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Lenders; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 133] (the "**Final Order**").

12. Pursuant to Final Order the Debtors, as authorized and approved by the Court, granted the DIP Agent for the benefit of itself and the DIP Lenders a lien on all of the Debtors' assets, including proceeds of chapter 5 causes of action, which DIP Liens were automatically perfected and effective as of the Petition Date.

### V. BAR DATE AND PROOFS OF CLAIM.

13. By Order dated June 26, 2024, this Court established August 7, 2024, at 5:00 p.m. (*prevailing* Eastern Time) (the "**Bar Date**") as the deadline for creditors to file proofs of claim for each claim they assert against the Debtors that arose before the Petition Date. Notice of the Bar Date was mailed to all known creditors of the Debtors and published in The New York Times.

### VI. THE MOTION.

14. Through the Motion, the Committee seeks standing to challenge the Prepetition Secured Lenders' interests in the following assets or the proceeds thereof (the "**Unencumbered Assets**"), as of the Petition Date:

a. Commercial tort claims of the Debtors, including prepetition tort claims, postpetition avoidance and recovery claims under article 5 of the Bankruptcy Code and any claims for recovery pursuant to Bankruptcy Code Section 362(k);

b. any leasehold, tenancy or real property interests of the Debtors or any fixtures associated therewith;

c. any insurance policy proceeds relating to director and officer or management liability; and

d. certain deposit accounts of the Debtors.

## OBJECTIONS

i. THERE ARE NO COLORABLE CLAIMS FOR THE COMMITTEE TO PURSUE.

15. In *Cybergenics*, the court held that, to be granted derivative standing, a movant must demonstrate that: (i) the DIP or trustee has unjustifiably refused either to pursue the claim or to consent to the movant's prosecution of the claim on behalf of the estate; (ii) the movant has alleged colorable claims; and (iii) the movant has received leave to sue from the bankruptcy court. *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003).

16. To establish that the claims to be asserted are colorable, the Committee must demonstrate that the pursuit of such claims are reasonably expected to produce an actual benefit for the Debtors' estates. *See Infinity Investors Ltd. v. Kingsborough (In re Yes! Entm't Corp.),* 316 B.R. 141, 145 (D. Del. 2004) (allowing committee to pursue claims after finding that they might "yield substantial recovery to the estate"). "Even if permitted under the Bankruptcy Code, derivative standing is the exception rather than the rule. If the former were to swallow the latter, creditors could usurp the central role that the trustee or debtor-in-possession plays as the representative of the estate. This state of affairs would be problematic, because the interests of a creditor or creditors' committee may not always align with those of the estate." *In re Baltimore Emergency Servs. II, Corp.*, 432 F.3d 557, 562 (4th Cir. 2005) (citing *Official, Unsecured*

*Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1315 (1st Cir.1993) (noting that an unsecured creditors' committee "is a fiduciary for those whom it represents, not for the debtor or the estate generally")).

17. Here, the interests of the Committee, made up of only two holders of subordinated seller notes, clearly do not align with the Debtors' general unsecured creditors, whom the Committee purports to represent. Assuming the Committee is correct, that the Prepetition Secured Lenders were not properly perfected in the Unencumbered Assets, the Debtors believe that there is no value for general unsecured creditors in pursuing such challenges and therefore there are no colorable claims to pursue. The Motion fails to provide any analysis of the value of the Unencumbered Assets or any proposed budget to pursue such claims. Without this information, the Committee has failed to establish that the challenges to be asserted are colorable. The Debtors fear that the only result of granting standing to the Committee to pursue the Unencumbered Assets in these cases will be to incur additional legal fees and increase administrative costs that the Debtors' estates cannot afford to pay.

18. With regard to the Unencumbered Assets, the Debtors are not aware of any valuable commercial tort claims to be pursued by the Debtors' estates. Additionally, under the Plan, the Debtors are retaining all "Causes of Action[3]", including without limitation, "Avoidance Actions", so there are no claims for the Committee to pursue. *See* Sections 4.08 and 4.13 of the Plan. Second, the Debtors do not believe they have any valuable under-market leases. As the Court is aware, leasehold interests only have potential value for unsecured creditors if such leases were to be marketed and sold by the Debtors for cash consideration. Because the Debtors' Plan contemplates a reorganization of the Debtors' businesses, and the assumption of all "Unexpired Leases" that are

---

[3] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

not being rejected, the Debtors do not anticipate selling any leases. *See* Sections 4.11 and 5.01 of the Plan.

19. Third, the D&O Policies are limited to a $3 million primary policy plus an additional $10 million policy of side A coverage only. These policies are in place primarily to protect the Debtors' current and former directors and officers, some of whom are already claiming against these policies. All the Debtors' "D&O Liability Insurance Policies" are being "treated as Executory Contracts under the Plan and, on the Effective Date, shall be deemed assumed (and assigned to the Reorganized Debtors) under section 365 of the Bankruptcy Code and will re-vest in the Reorganized Debtors." *See* Section 5.07 of the Plan. Therefore, because there are no claims or D&O Policies available for the Committee to pursue, there are no Unencumbered Assets or colorable claims to pursue. Additionally, as more fully set forth below, any hypothetical recovery by the Committee on any potential causes of action covered by the D&O Liability Insurance Policies would first need to be used to satisfy administrative and priority creditors ahead of the general unsecured creditors in these cases.

20. Finally, the Committee asserts that certain of the Debtors' bank accounts did not have deposit account control agreements in place as of the Petition Date. However, the total cash in these accounts as of the Petition Date was approximately $926,000, all of which has been used by the Debtors in the ongoing operation of their businesses in the ordinary course of business since the Petition Date. Therefore, there is no unencumbered prepetition cash in the Debtors' bank accounts for general unsecured creditors. Furthermore, all cash, whether held on the Petition Date or collected and deposited post-petition, is the Cash Collateral of the DIP Lenders under the Final Order.

4881-6636-0282, v. 3

21.     For the reasons set forth above, given none of the Unencumbered Assets identified by the Committee are of any value to general unsecured creditors in these cases, there are no colorable claims for the Committee to pursue and the Motion should be denied.

ii. **THERE IS NO VALUE IN THE UNENCUMBERED ASSETS AVAILABLE FOR GENERAL UNSECURED CREDITORS.**

22.     Even if there were colorable claims to bring, which there are not, there is no value in the Unencumbered Assets for general unsecured creditors in these cases for another reason. Any recovery on the Unencumbered Assets would need to be used to satisfy any legal fees incurred by counsel to the Committee in pursuing the Unencumbered Assets (the Committee cannot use the DIP Lenders' collateral) and any other unpaid administrative expense claims or priority claims of the Debtors' estates prior to being available for general unsecured creditors.

23.     Additionally, pursuant to paragraph H(ii) of the Final Order, the Prepetition Secured Lenders received adequate protection under sections 361, 363, and 364 of the Bankruptcy Code for any decrease in the value of their interest in the Prepetition Collateral (including Cash Collateral) resulting from (i) the use, sale, or lease by the Debtors of the Prepetition Collateral during the pendency of these Chapter 11 Cases, (ii) the DIP Liens and the Carve-Out pursuant to the DIP Loan Documents and this Final Order, or (iii) the imposition of the automatic stay under section 362 of the Bankruptcy Code.

24.     Section 13 of the Final Order provides for an administrative superpriority expense claim in each of the Chapter 11 Cases (the **"Adequate Protection Superpriority Claims"**) pursuant to section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties under the Final Order is insufficient to compensate for any diminution in value of their interests in the Prepetition Collateral during the Chapter 11 Cases.

25. Even if a challenge by the Committee was successful, that would only occur after significant time and significant unbudgeted and unfunded administrative expenses that would likely lead to a substantial Adequate Protection Superpriority Claims for the Prepetition Secured Lenders under the Final Order.

26. A review of the liquidation analysis attached as Exhibit C to the Disclosure Statement shows that the Prepetition Secured Lenders would only recover approximately 13% to 16% of their allowed claims of approximately $126,700,000 in a liquidation, assuming the Debtors could not confirm the Plan given the Committee's request for standing to pursue the Unencumbered Assets and to set an unbudgeted unfunded fee reserve. This path would cause more than a $100 million dollar deficiency claim in these cases on behalf of the Prepetition Secured Lenders, a claim which would be entitled to almost all the proceeds of any recovery that may result from a challenge. Therefore, if the Court were to grant standing to pursue the Unencumbered Assets, the Prepetition Secured Lenders would be entitled to all or almost all of the recovery, if any, through either a diminution claim or a deficiency claim.

27. It is important to note that the Prepetition Secured Lenders are funding the costs of these chapter 11 cases through the DIP Loan. There are approximately 122 unsecured trade creditors in these cases. Unsecured trade creditors under the Plan, by virtue of the "GUC Trade Gift" from the Prepetition Secured Lenders, will receive payment in full of their respective claims within the one-year anniversary of the Effective Date — a great result for most of the Debtors unsecured creditors.

28. There are only approximately 10 non-trade general unsecured creditors being represented by the Committee in these cases, plus about the same number of seller noteholders.

The seller noteholders' claims are <u>all</u> subordinated to the Prepetition Secured Lenders' claims[4], so any recovery from a challenge by the Committee that could potentially go to the seller noteholders, would have to instead go to the Prepetition Secured Lenders pursuant to the subordination provisions contained in each of the seller notes.

29. After you remove the claims of former directors and officers, that the Debtors believe are frivolous, there are approximately only $350,000 to $550,000 of valid non-trade general unsecured creditors not being paid in these cases. If you factor in the Prepetition Secured Lenders' deficiency claim or any diminution claim and the unfunded and unbudgeted administrative expenses the Committee would incur pursing any challenge, there is no possible meaningful recovery that can go to general unsecured creditors in these cases that would warrant the cost and delay of challenge brought by the Committee and the Motion should be denied.

    iii. **THE COMMITTEE MAY BE PRECLUDED FROM OBTAINING STANDING UNDER DELAWARE LAW.**

30. The Committee has not filed an "LLC Challenge Motion", as set forth in paragraph 35 of the Final Order, nor did they address the LLC standing issue in their Motion. As the Court is aware, it is not clear that the Committee can pursue derivative claims on behalf of the Debtors' estates because the Debtors are LLCs. In three Delaware bankruptcy court decisions[5], this Court applied the plain language of the Delaware Limited Liability Company Act (the "**DLLCA**"), which provides that in a derivative action, the plaintiff must be a member or an assignee of the

---

[4] Some seller noteholder claims are also subordinated to $73.8 million of Prepetition Noteholder Obligations due under that certain Note Purchase Agreement, dated as of September 25, 2020. Aves Management LLC serves as the Administrative Agent for these Prepetition Noteholder Obligations.

[5] *In re Citadel Watford City Disposal Partners, L.P.*, 603 B.R. 897 (Bankr. D. Del. 2019); *In re HH Liquidation, LLC*, 590 B.R. 211 (Bankr. D. Del. 2018); *In re PennySaver USA Publishing, LLC*, 587 B.R. 445 (Bankr. D. Del. 2018).

limited liability company.[6] These decisions also followed the seminal Delaware case *CML V, LLC v. Bax*, 28 A.3d 1037 (Del. 2011), where the Delaware Supreme Court denied derivative standing to the creditors of the Delaware limited liability company and held that section 18–1002 of the DLLCA, by its plain language, limits derivative standing to members or assignees of the LLC. *Id.* at 1046.

31. However, in *In re Pack Liquidating LLC*, 658 B.R. 305 (Bankr. D. Del. 2024) Judge Goldblatt issued an opinion holding that federal law, not state law, sets forth the procedures that govern derivative actions in federal court. *Id.* at 318. Although the opinion notes that the Court is "loath to break" with the prior opinions to have addressed this topic, it found that the Third Circuit Court of Appeal's decision in *Cybergenics* was controlling. *Cybergenic*s treated "the authority to grant a committee derivative standing to pursue an estate claim as one that stems from the Bankruptcy Code rather than state law." *Id*. at 312. (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003)).

32. With all due respect to Judge Goldblatt, there is a split of authority in this District on the derivative standing issue. The Debtors believe that even if there were colorable claims for the Committee to pursue, which there are not, the Committee would be precluded under section 18–1002 of the DLLCA from pursuing such claims on behalf of the Debtors' estates and the Motion can be denied on this basis as well.

---

[6] *See* 6 Del. C. § 18-1002 ("In a derivative action, the plaintiff must be a member or an assignee of a limited liability company interest at the time of bringing the action . . . ."); *see also* 6 Del. C. § 18-1001 ("A member or an assignee of a limited liability company interest may bring an action in the Court of Chancery in the right of a limited liability company to recover a judgment in its favor if managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed.").

### iv. THE COMMITTEE CANNOT USE DIP COLLATERAL, CASH COLLATERAL, OR PREPETITION COLLATERAL TO PURSUE A CHALLENGE.

33. Paragraph 35 of the Final Order restricts the use of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out from being used directly or indirectly, by any of the Debtors or the Committee in connection with any Committee challenge. Given the Committee has not set forth a budget to pursue the Unencumbered Assets, and there is no ability to use Cash Collateral or any of the Prepetition Lenders or DIP Lenders' collateral, the Committee has not shown how their challenge could be funded. The Debtors are concerned that the Committee will incur a large administrative expense claim pursing claims that the Debtors believe are not colorable (as set forth above), with no ability for the Debtors to pay such claims under their Plan, and in such circumstances no assurances that the Plan will be pursued or confirmed to the detriment of all creditors, and therefore the Motion should be denied.

34. The Debtors reserve the right to amend, modify or supplement this Objection.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order denying the Motion and granting such other and further relief as the Court may deem just and proper.

Dated: August 22, 2024  
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

/s/ William E. Chipman, Jr.
William E. Chipman, Jr. (No. 3818)  
David W. Carickhoff (No. 3715)  
Mark D. Olivere (No. 4291)  
Alan M. Root (No. 5427)  
Hercules Plaza  
1313 North Market Street, Suite 5400  
Wilmington, Delaware 19801  
Telephone: (302) 295-0191  
Email: chipman@chipmanbrown.com  
carickhoff@chipmanbrown.com  
olivere@chipmanbrown.com  
root@chipmanbrown.com

*Counsel for Debtors and Debtors in Possession*