# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Optio Rx, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11188 (TMH)<br><br>(Jointly Administered)<br><br>Hearing Date: September 13, 2024, at 10:00 a.m. (Eastern Time)<br>Objection Deadline: September 6, 2024, at 4:00 p.m. (Eastern Time) |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AGREEMENT AND RELEASE AMONG OPTIO RX, LLC, CRESTVIEW PHARMACY, LLC, BRYAN HENDERSON, HOMETOWN PHARMACY, INC. FKA CRESTVIEW CITY PHARMACY, INC., JENNIFER RESHAY DENSMAN, AND CHRISTOPHER NEIL DENSMAN

Optio Rx, LLC ("**Optio**") and its affiliated debtors and debtors-in-possession (collectively, "**Debtors**") in the above-captioned chapter 11 cases, hereby file this motion (the "**Motion**") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") (a) approving the *Settlement Agreement and Release* among Optio, Crestview Pharmacy, LLC ("**Crestview**" and together with Optio, the "**Plaintiffs**" or "**Plaintiff Parties**"), each a debtor and debtor-in-possession in the Chapter 11 Cases (as defined below); Bryan Henderson ("**Henderson**"); Hometown Pharmacy, Inc. fka Crestview City Pharmacy, Inc. ("**Hometown**"), Jennifer Reshay Densman ("**Reshay Densman**") and Christopher Neil Densman ("**Neil**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

**Densman**") (Hometown, Reshay Densman, and Neil Densman collectively, the "**Densman Defendants**" and collectively with Henderson, the "**Defendants**" or "**Defendant Parties**" and together with the Plaintiff Parties, the "**Parties**") substantially in the form attached to the Proposed Order as **Exhibit 1** (the "**Settlement Agreement**"),[2] and (b) granting the related relief described below. In further support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. This Motion seeks approval of a global settlement between the Plaintiff Parties and Defendant Parties. The proposed settlement resolves all disputes related to the civil action pending in the United States District Court for the Northern District of Florida, Pensacola Division, captioned *Optio Rx, LLC & Crestview Pharmacy, LLC v. Crestview City Pharmacy, Inc., Jennifer Reshay Densman, Christopher Neil Densman & Bryan Henderson*, Case No. 3:23-cv-8993-MCR-HTC (the "**Florida Litigation**"). The Debtors believe, in their reasoned business judgment, that settling the Florida Litigation on the terms set forth in the Settlement Agreement exceeds the value that would be obtained in litigating the issues because of the inevitable costs, delay, and uncertainty associated with ongoing litigation. Further, settling these disputes once and for all will also allow the Debtors to focus on confirming a plan of reorganization, and emerging from bankruptcy. Accordingly, the Debtors submit that the proposed settlement is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and the Debtors request the Court enter the Proposed Order approving the Settlement Agreement.

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Settlement Agreement.

4878-7707-8998, v. 1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry by this Court of a final order in connection with this Motion.

3. The legal predicates for the relief sought herein are section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

### I. BANKRUPTCY CASES.

4. On June 7, 2024 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

5. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On June 21, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a creditors' committee (the "**Committee**") in these

Chapter 11 Cases [Docket No. 67].³  No trustee or examiner has been appointed in the Chapter 11 Cases.

7. A description of the Debtors' businesses and reasons for filing these Chapter 11 Cases is set forth in detail in the *Declaration of Leo LaFranco in Support of First Day Pleadings* [Docket No. 3] (the "**First Day Declaration**"), which is incorporated herein by reference.

## II. BACKGROUND SPECIFIC TO THE SETTLEMENT AGREEMENT.

8. Prior to the Petition Date, the Plaintiffs initiated the Florida Litigation by filing the *Verified Complaint for Injunctive and Other Relief* in the United States District Court for the Northern District of Florida, Pensacola Division, against the Defendants (as subsequently amended, the "**Verified Complaint**").  Through the course of the Florida Litigation, Plaintiffs have asserted certain claims against the Defendants, and Henderson and the Densman Defendants have each asserted certain counterclaims against the Plaintiffs, and the respective Parties have denied and vigorously defended the claims against them.

9. Since the filing of the Chapter 11 Cases, the Parties have engaged in settlement discussions, and pursuant to those discussions, the Parties entered into the Settlement Agreement to avoid further expense, uncertainty, and risk involved in continuing the Florida Litigation to the point of judgment on any claims, whether stayed or unstayed, and to avoid the necessity of proceeding with any claims in the Chapter 11 Cases or related adversary proceedings.

## III. THE SETTLEMENT AGREEMENT.

10. As set forth below, the Settlement Agreement provides a consensual resolution among the Parties.  The Settlement Agreement seeks to settle, release, and waive all claims and

---

³ The U.S. Trustee subsequently filed an Amended Notice of Appointment of Creditors' Committee [Docket Nos. 81 and 130].

- 4 -

disputes between the Plaintiffs, on one hand, and Defendants, on the other hand, including, but not limited to, those asserted in the Florida Litigation. Such disputes would otherwise only be resolved through lengthy, expensive, and uncertain litigation. Moreover, a resolution consistent with the terms of the Settlement Agreement will provide the Debtors with a clearer path toward confirming their plan of reorganization. The relevant terms of the Settlement Agreement are summarized below: [4]

a. The Settlement Agreement shall become effective on the date on which the Bankruptcy Court enters an order approving the Settlement Agreement (the "**Effective Date**");

b. All complaints and counterclaims asserted in the Florida Litigation will be dismissed with prejudice;

c. All pending motions filed by any Party in the Florida Litigation will be withdrawn, if not resolved by dismissal with prejudice of that Party's claims;

d. All litigation of any kind between the Parties will end effective as of the Effective Date;

e. All third-party subpoenas issued by any Party in the Florida Litigation will be withdrawn;

f. Upon demand by the producing Party, such demand to be made no later than five (5) business days following the Effective Date, any confidential records produced by any Party to any other Party in connection with the Florida Litigation will be returned or appropriately disposed of to protect confidentiality concerns, including personal identifying data;

g. All Parties will pay their own costs and fees incurred in connection with the Florida Litigation and the Bankruptcy Case;

h. Contemporaneously with the execution of the Settlement Agreement, an authorized representative of Plaintiffs will deliver executed correspondence with the language in Ex. A to the Settlement Agreement to counsel for Henderson. The correspondence will be addressed to the Florida Dept. of Health (Board of Pharmacy) and will confirm Plaintiffs are no longer pursuing the Florida litigation or any complaint against Henderson's license. The

---

[4] The summary of the Settlement Agreement provided herein is not intended to be a comprehensive recitation of all of the terms of the Settlement Agreement. The summary is qualified in its entirety by the actual terms of the Settlement Agreement, and to the extent that there is any inconsistency between the summary provided herein and the actual terms of the Settlement TMNT Agreement, the actual terms of the Settlement Agreement shall control.

        correspondence will be on letterhead with the signature of an authorized executive of Optio RX, LLC;

    i.    Within ten (10) business days following the Effective Date, the Parties shall cause their counsel to file in the Florida Litigation a stipulation dismissing, with prejudice, all claims asserted therein, with each Party to bear its own fees and costs; and

    j.    Mutual releases of all claims between the Plaintiff Parties and Defendant Parties existing as of the Effective Date, including but not limited to the Florida Litigation, are contained in the Settlement Agreement. In addition, Henderson is specifically released from any remaining term for restrictive covenants in his Employment Agreement and/or Seller Note.

## RELIEF REQUESTED

11.    By this Motion, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors respectfully request the Court enter an order (a) approving the Settlement Agreement; and (b) granting related relief.

## BASIS FOR RELIEF REQUESTED

12.    Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a). Compromises are favored in bankruptcy because they minimize the costs of litigation and further the parties' interests in expediting administration of a bankruptcy estate. *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996); 10 Collier on Bankruptcy, ¶ 9019.01 (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2006). In deciding whether to approve a compromise under Bankruptcy Rule 9019, the Court must determine if the settlement is "fair, reasonable, and in the interest of the estate." *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (citing *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

13.    Courts within the Third Circuit have considered the following four factors to determine whether to approve a particular compromise or settlement as fair and equitable: (1) the probability of success in litigation concerning the subject matter of the settlement; (2) the projected

difficulty in collecting after obtaining a judgment in such litigation; (3) the complexity of the issues involved, and the expense, inconvenience, and delay that would therefore attend such litigation; and (4) the paramount interest of holders of claims against and interests in the debtor. *Martin*, 91 F.3d at 393 (following *Protective Comm. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968) and clarifying four-factor test); *see also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644–45 (3d Cir. 2006); *In re RNI Wind Down Corp.*, 348 B.R. 286, 297–99 (Bankr. D. Del. 2006); *In re Kaiser Aluminum Corp.*, 339 B.R. 91, 96–97 (D. Del. 2006).

14. A proposed compromise need not be the best result that the Debtor could have achieved, but only must fall within the "reasonable range of litigation possibilities." *See e.g., In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D.Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993); *Key3Media*, 336 B.R. at 92-93 (court is not required to determine that settlement is best possible compromise); *In re Energy Corp.*, 886 F.2d 921, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008). The Court should determine whether a settlement "falls above the lowest point in the range of reasonable litigation possibilities." *Whyte v. Kiviston (In re SemCrude, L.P.)*, 2010 Bankr. Lexis 4160 at *9 (Bankr. D. Del. Nov. 19, 2010) (Shannon, J.).

15. Here, an analysis of the *Martin* factors reflects that the Settlement Agreement is fair and equitable, falls well within the range of reasonableness, and is in the best interests of the Debtors' estates such that the Settlement Agreement should be approved by the Court. *First*, although the Debtors are confident in their legal and factual positions, litigation is unpredictable. There is no guaranty that litigation would prove successful. However, the Settlement Agreement will bring certainty to multiple alleged claims held by multiple parties. Such finality will allow

the Debtors to shed the legacy issues that have interfered with their businesses, provide the Debtors their "fresh start," help preserve the Debtors limited financial resources, and allow the Debtors to instead focus on their reorganization efforts.

16. *Second*, even if the Debtors were to obtain a favorable judgment against the Defendants, the Debtors have limited insight into their ability to collect on that judgment. *Third*, litigating the Debtors' claims in the Florida Litigation would be very fact-intensive and would require considerable discovery. The Florida Litigation would also distract the Debtors and interfere with their desire to quickly reorganize and emerge from bankruptcy. In contrast, the Settlement Agreement provides for an immediate dismissal of the Florida Litigation.

17. *Fourth*, the "paramount interest" of creditors favors approving the Settlement Agreement. The costs associated with the Florida Litigation would be substantial given the fact-intensive nature of those claims. Further, as noted above, the Settlement Agreement will allow the Debtors to avoid further litigation in connection with the Florida Litigation and related claims in the Chapter 11 Cases and focus their efforts on reorganizing and confirming their proposed plan. For these reasons, the Debtors' resources are better spent obtaining confirmation of the plan, and the immediate settlement set forth in the Settlement Agreement provides creditors with a better outcome.

18. Accordingly, for these reasons and in the Debtors' reasoned business judgment, the Debtors believe the Settlement Agreement represents a fair and reasonable compromise that achieves a positive finality and is in the best interests of their estates. Therefore, the Debtors respectfully request that the Court approve the Settlement Agreement.

- 8 -

4878-7707-8998, v. 1

**NOTICE**

19. Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Committee; (c) counsel to the DIP Lender; (d) counsel for the Defendant Parties; and (e) any party that has requested notice under Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required

**NO PRIOR REQUEST**

20. The Debtors have not made any prior request to this or to any other court for the relief sought herein.

**CONCLUSION**

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated:  August 23, 2024
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Mark D. Olivere*
William E. Chipman, Jr. (No. 3818)
David W. Carickhoff (No. 3715)
Mark D. Olivere (No. 4291)
Alan M. Root (No. 5427)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Email:    chipman@chipmanbrown.com
carickhoff@chipmanbrown.com
olivere@chipmanbrown.com
root@chipmanbrown.com

*Counsel for Debtors and Debtors in Possession*