## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: September 13, 2024, at 10:00 a.m. (Eastern Time)**<br>**Objection Deadline: September 6, 2024, at 4:00 p.m. (Eastern Time)** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO IMPLEMENT KEY EMPLOYEE INCENTIVE PLAN AND (II) GRANTING RELATED RELIEF

Optio Rx, LLC ("**Optio**") and its affiliated debtors and debtors-in-possession (collectively, "**Debtors**") in the above-captioned chapter 11 cases, by and through their undersigned counsel, hereby submit this motion (the "**Motion**") seeking entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"):  (i) approving the key employee incentive program ("**KEIP**"), and (ii) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the statements contained in the *Declaration of Leo LaFranco in Support of First Day Pleadings* [Docket No. 3] (the "**First Day Declaration**"); and the *Declaration of T. Scott Avila in Support of Debtors' Motion for Entry of Order (I) Authorizing the*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216).  The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

*Debtors to Implement Key Employee Incentive Plan and (II) Grating Related Relief* (the "**Avila Declaration**"); and respectfully state as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      The statutory bases for relief requested in this Motion are sections 105(a), 363(b) and 503(c) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**BACKGROUND**

A.      **GENERAL CASE BACKGROUND.**

4.      On June 7, 2024 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

- 2 -

5.      The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On June 21, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a creditors' committee (the "**Committee**") in these Chapter 11 Cases [Docket No. 67].[2]  No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      On June 24, 2024, the Debtors filed the *Motion for Entry of an Order (I) Approving Debtors' Disclosure Statement, (II) Determining Dates, Procedures, and Forms Applicable to the Solicitation Process, (III) Establishing Vote Tabulation Procedures, and (IV) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of the Plan* [Docket No. 76].

8.      On July 1, 2024, the Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Lenders; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 133] (the "**Final DIP Order**").  Attached as Exhibit 2 to the Final DIP Order is the Approved Budget (as defined therein) for the Debtors in these Chapter 11 Cases.

9.      On July 29, 2024, the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 257] (the "**Plan**") and the *Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 258].

---

[2]     The U.S. Trustee subsequently filed an Amended Notice of Appointment of Creditors' Committee [Docket Nos. 81 and 130].

4884-2578-2233, v. 4

10.     On August 1, 2024, the Court entered the *Order (I) Approving Amended Disclosure Statement, (II) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (III) Establishing Vote Tabulation Procedures, and (IV) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of the Amended Plan* [Docket No. 276].   The hearing to consider confirmation of the Plan is scheduled for September 13, 2024.

**B.     THE PROPOSED KEIP.**

11.     With the assistance of their financial advisor, Paladin Management Group, LLC ("**Paladin**"), and the approval of the DIP Agent, the Debtors have developed a modest-sized KEIP to incentive and reward their Chief Executive Officer, Ben David (the "**Participant**") in achieving certain benchmarks that are instrumental to effectuate a successful restructuring.

12.     The Participant, as Chief Executive Officer, is responsible for determining and executing the strategic goals of the Debtors under the direction and oversight of the Debtors' independent director and Manager.   The Participant also oversees all strategic partner and key customer relationships, all functional areas of development, and all regulatory, finance, legal, commercial, and human resources segments.   The Participant has played, and will continue to play, a crucial role in the Debtors' reorganization process.

13.     The KEIP Participant's services and expertise have been, and will continue to be, critical to the Debtors' overall restructuring efforts, including business consolidation, improved cash flow and sales, and the creation of a centralized purchasing model for the Debtors' businesses. The KEIP's performance targets were developed carefully to ensure they are an appropriate "reach" to drive performance, on the one hand, but will not present unrealistic or unattainable goals, on the other hand—which would of course thwart the incentivizing nature of the KEIP.

4884-2578-2233, v. 4

14.     The KEIP is designed to incentivize the Participant in achieving certain milestones, each within a specific timeline.  It achieves this result by providing the Participant with an incentive bonus (the "**Incentive Bonus**"), which is only payable upon achievement of each milestone.  Each milestone will result in a $25,000 bonus payable upon completion, with a maximum of $100,000 available.  The Debtors believe the Incentive Bonus is necessary and appropriate to drive business performance during these Chapter 11 Cases to maximize the value of the Debtors' assets and successfully reorganize outside of the Chapter 11 Cases.

15.     A summary of the key terms of the KEIP is set forth below: [3]

(a)     *KEIP Participant*: The KEIP will be open to Ben Davis, the Debtors' Chief Executive Officer.

(b)     *Incentive Bonus Milestones*: The structure of the KEIP is straightforward; achievement of each milestone will entitle the Participate to a $25,000 Incentive Bonus:

a.     Hospice consolidation is completed by September 6, 2024;

b.     Achieve an operating cash flow for the company for the period from the Petition Date to September 29, 2024 that is better than negative $2 Million Dollars;

c.     The company adds twenty-five (25) new accounts that purchase compounded products by October 15, 2024; and

d.     Creation of a centralized purchasing model—The Participant will audit all locations in California and create a plan that will eventually centralize purchasing for the entire company.  The physical locations in CA will be audited for their current procedures.  A plan will then be devised that will in stage 1 centralize the purchasing function for the California locations at the corporate level.  Once the model is refined, stage 2 will centralize purchasing for all other locations in the company.  Deliverable is the audit of all five (5) SMC Cares pharmacies, audit of the Rose's Santa Fe Springs location and the creation of the stage one plan for

---

[3]     In the event of a discrepancy between this summary and the KEIP, the KEIP shall control.

centralizing purchasing at the corporate level. Milestone deadline is October 1, 2024.

(c)    The obligations of the Debtors under the KEIP shall be secured by an allowed administrative expense claim against the Debtors' estates.

(d)    *Eligibility to Receive Incentive Bonus*:  The KEIP Participant will be entitled to the Incentive Bonus only if such participant is employed as of the payment date of such Incentive Bonus payment.

(e)    The Debtors shall withhold from the Incentive Bonus all taxes and other governmental withholdings that under applicable law it is required to withhold and remit such amounts to the relevant governmental authority.

16.    Based on the Debtors' understanding of key employee incentive plans approved in comparable Chapter 11 Cases, the Debtors have concluded that the proposed KEIP is reasonable and justified under the facts and circumstances of the Chapter 11 Cases.  The Debtors believe that the KEIP Participant must be sufficiently incentivized given that he is tasked with not only navigating the reorganizational process, but he is also responsible for expanding the business and the normal day-to-day responsibilities in connection with the management and operation of the Debtors' business during the Chapter 11 Cases.  The Debtors believe that the KEIP Participant is indispensable to the attendant goals and are confident that, if properly incentivized, the KEIP Participant will provide immeasurable value to the Debtors' estates in connection with their reorganization.

## RELIEF REQUESTED

17.    By this Motion, the Debtors seek entry of the Proposed Order, pursuant to sections 105(a), 363(b) and 503(c)(3) of the Bankruptcy Code, (i) approving and authorizing the implementation of the KEIP; (ii) authorizing (but not directing) the Debtors to make payments to the Participant under the KEIP under the terms contained therein; (iii) granting administrative expense priority status to all payments to be made by the Debtors thereunder; and (iv) granting related relief.

4884-2578-2233, v. 4

**BASIS FOR RELIEF REQUESTED**

**I.      THE KEIP IS APPROPRIATE UNDER SECTION 363(b)(1) OF THE BANKRUPTCY CODE.**

18.      Section 363(b)(1) provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363 of the Bankruptcy Code, a court may approve a request for relief when the debtor shows a sound business justification for such relief. *See Dai Ilchi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale, or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions.").

19.      If a debtor shows a valid business purpose, the court applies the "business judgment rule," a presumption "that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) (internal citations omitted). The business judgment rule applies in chapter 11 cases and shields a debtor's management from judicial second-guessing. *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992).  In that regard, courts have found that a debtor's use of reasonable performance bonuses and other incentives for employees is a valid exercise of a debtor's business judgment. *See, e.g., In re Glob. Home Prod., LLC*, 369 B.R. 778, 787 (Bankr. D. Del. 2007) (approving incentive plan as proper exercise of the debtors' business judgment); *In re Am. W. Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (noting that it is the proper use of a debtor's business judgment to propose bonuses for employees who helped propel the debtor successfully through the bankruptcy process); *In re Interco*

4884-2578-2233, v. 4

*Inc.*, 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991) (stating that a debtor's business judgment was controlling in the approval of a "performance/retention program").

20.     As set forth above, the Debtors have valid and supportable business reasons for implementing the KEIP.  The Debtors determined in their business judgment that implementation of the KEIP is critical to ensure a successful reorganization.  The KEIP establishes goals for the Participant that, if achieved, will have a meaningful impact on the Debtors' reorganizational efforts.

21.     In addition, as set forth in the Avila Declaration, the KEIP is objectively and demonstrably reasonable.  The size of the KEIP is reasonable in light of the size of the Debtors' estates, the nature of the Debtors' industry, and the likely benefit that the estates will realize from a successful reorganization resulting from the Participant's efforts.  Accordingly, the Debtors, in their sound business judgement, believe that the implementation of the KEIP is well justified under the circumstances and will benefit the Debtors' estates and their creditor constituencies.   The Debtors respectfully submit there is ample business justification for implementation of the KEIP, and it should be approved.

## II.     THE KEIP IS WARRANTED UNDER SECTION 503(b)(1) AS ACTUAL, NECESSARY COSTS AND EXPENSES OF PRESERVING THE DEBTORS' CHAPTER 11 ESTATES

22.     Section 503(b) of the Bankruptcy Code states in pertinent part that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including – (1)(A) the actual necessary costs and expenses of preserving the estate including – (i) wages, salaries, and commissions for services rendered after commencement of the case . . . ." 11 U.S.C. § 503(b); *see also In re APF Co.*, 270 B.R. 567, 570-71 (Bankr. D. Del. 2001) (postpetition employee bonus is an administrative expense claim under section 503(b)(1)(A)).  As discussed above, the KEIP is

appropriately designed to preserve, and potentially enhance, the Debtors' estates and is appropriately categorized as wages earned after the Petition Date.

23.     Thus, a reasonable relationship exists between the payments contemplated under the KEIP and the Debtors' chapter 11 goals.  Accordingly, the payments contemplated by the KEIP constitute actual and necessary costs of preserving the Debtors' estates under section 503(b) of the Bankruptcy Code.

### III.     THE KEIP PROVIDES INCENTIVES, NOT RETENTION OR SEVERANCE PAYMENTS, AND THEREFORE SECTIONS 503(C)(1) AND 503(C)(2) DO NOT APPLY

24.     Sections 503(c)(1) and (2) of the Bankruptcy Code govern retention and severance payments to insiders, and therefore do not apply to performance-based incentive plans like the KEIP.  *See, e.g., In re Alpha Natural Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va. 2016) ("On its face, § 503(c)(1) does not apply to a KEIP because the payments thereunder are incentive and not purely retentive."); *In re Nobex Corp.*, 2006 Bankr. LEXIS 417, at *8 (Bankr. D. Del. Jan. 19, 2006) ("The sale-related incentive pay to [senior management] is not governed by sections 503(c)(1) or 503(c)(2) of the Bankruptcy Code.").

25.     By its plain language, section 503(c)(1) of the Bankruptcy Code pertains solely to retention payments to insiders, and section 503(c)(2) of the Bankruptcy Code addresses only the requirements for severance payments to insiders.  Neither provision applies to performance-based incentive plans such as the KEIP.  *See, e.g., In re Global Home Products, LLC*, 369 B.R. 778, 787 (Bankr. D. Del. 2007) ("The Court is fully satisfied on the basis of the facts presented that Debtors are asking it to approve incentive, not retention plans and, therefore, § 503(c) does not come into play."); *In re Dana Corp.*, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006) (applying section 503(c)(3) of the Bankruptcy Code to evaluate management incentive plan and finding that sections 503(c)(1) and 503(c)(2) were inapplicable); *In re Musicland Holding Corp.*, No. 06-10064 (SMB) (Bankr.

S.D.N.Y. Feb. 1, 2006) (finding that incentive-based compensation under management incentive plan did not violate section 503(c) of the Bankruptcy Code); *In re Alpha Natural Resources, Inc.*, 546 B.R. 348, 355-56 (Bankr. E.D. Va. 2016) ("[T]he analysis under § 503(c) changes when a debtor purports to make a payment not to retain an insider, but primarily to incentivize the insider to achieve certain goals, and] [o]n its face, § 503(c)(1) does not apply to the KEIP because the payments thereunder are incentive and not purely retentive.").

26.    Also, the KEIP is not subject to the restrictions set forth in section 503(c)(2) of the Bankruptcy Code with respect to severance payments to insiders because no payments under the KEIP are tied to the termination of employment.  *See In re Dana Corp.*, 358 B.R. 567, 577-78 (Bankr. S.D.N.Y 2006) (incentive plan was not subject to section 503(c)(2) of the Bankruptcy Code because incentives were not tied to termination of employment); accord *In re Pilgrim's Pride Corp.*, 401 B.R. 229, 235-36 (Bankr. N.D. Tex. 2009) (consulting agreement did not fall under section 503(c)(2) of the Bankruptcy Code because payments were not intended as severance).

27.    The KEIP was designed in order to incentivize the Participant in achieving certain milestones, each within a specific timeline to enhance the Debtors' overall restructuring efforts, including business consolidation, improved cash flow and sales, and the creation of a centralized purchasing model for the Debtors' businesses.  The KEIP was not designed to retain the Participant, although a prerequisite to receiving a payment under the KEIP is that the Participant must be employed at the time of the payment.  This should not bar its implementation; any successful incentive program would be expected to have this indirect benefit.  *See, e.g., In re Global Home Prods., LLC*, 369 B.R. at 786 ("The fact, as Debtors pointed out, that all compensation has a retention element does not reduce the Court's conviction that Debtors' primary goal [is] to create value by motivating performance.  All companies seek to retain employees they

- 10 -

value by fairly compensating them.").  As a result of the foregoing, the Debtors respectfully submit that sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code do not apply to the KEIP.

IV.     **THE KEIP IS JUSTIFIED BY THE FACTS AND CIRCUMSTANCES OF THESE CHAPTER 11 CASES AND THEREFORE SATISFIES SECTION 503(C)(3).**

28.     Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3).  Courts have found that the requirement that a transfer or obligation be "justified by the facts and circumstances of the case" is a "reiteration" of the business judgment rule (or sound business judgment test) incorporated into section 363(b). *In re Nobex Corp.*, No. 05-20050 (MFW) (Bankr. D. Del. Jan. 12, 2006), ECF No. 194 ("I find [503(c)(3)] quite frankly nothing more than a reiteration of the standard under 363 . . ."); *cf. Dana*, 358 B.R. at 576-77 (describing six factors that courts may consider when determining whether the structure of a compensation proposal meets the "sound business judgment test" in accordance with section 503(c)(3) of the Bankruptcy Code).

29.     In assessing a debtor's business judgment regarding the implementation of key employee payment programs, courts in this District have looked to the "Dana factors" for guidance to evaluate a proposed incentive or retention program under section 503(c)(3). *See In re Glob. Home Prod., LLC*, 369 B.R. 778, 785 (Bankr. D. Del. 2007) (applying Dana factors).  These factors include: (i) whether a reasonable relationship exists between the proposed plan and the desired results; (ii) whether the cost of the plan is reasonable in light of the overall facts of the case; (iii) whether the scope of the plan is fair and reasonable; (iv) whether the plan is consistent with industry standards; (v) whether the debtor has exercised sufficient due diligence in formulating the plan; and (vi) whether the debtor has received sufficient independent counsel in performing any

- 11 -

due diligence and formulating the plan. *In re Dana Corp.*, 358 B.R. at 576-77, applied in In re

Global Home Products, LLC, 239 B.R. at 786.

A.     **The KEIP is Justified by the Facts and Circumstances of these Chapter 11 Cases.**

         i.     *A Reasonable Relationship Exists Between the KEIP and Desired Results.*

30.     First, the KEIP is structured to achieve the desired performance.  The Debtors, in

consultation with Paladin, designed the KEIP to motivate and reward the Participant who will have

significant influence upon these Chapter 11 Cases and the Debtors' ability to successfully compete

and operate upon emergence from bankruptcy.  As discussed above, the KEIP payments are

directly tied to the achievement of individual milestones.  Thus, the KEIP is appropriately designed

to motivate the Participant to meet these objectives.

         ii.     *The Cost of the KEIP is Reasonable.*

31.     Second, the cost of the KEIP is reasonable under the circumstances of these Chapter

11 Cases.  As discussed in the Avila Declaration, the costs associated with the KEIP are modest in

terms of the overall program costs and the total potential benefit to be realized by the Debtors.

Accordingly, the Debtors believe that the costs are reasonable and justified given the size of the

Debtors' business and the significant value that achievement of the KEIP milestones would

provide to the Debtors' estates and creditors.  The Debtors DIP Lenders also support the Debtors'

implementation of the KEIP.

         iii.     *The Scope of the KEIP is Fair and Reasonable.*

32.     Third, the scope of the KEIP is fair and reasonable.  As noted here, the KEIP is

limited to a single Participant and is for a modest amount.  The Participant's unique knowledge

and skills are essential to the Debtors' operations and successful reorganization, and the

achievement of the milestones set forth in the KEIP would have significant impact on the Debtors'

reorganization.

> iv.     *The KEIP Is Consistent with Industry Standards and the Debtors Exercised Sufficient Due Diligence in Formulating the KEIP.*

33.     As to the remaining Dana Factors, as set forth in the Avila Declaration, the KEIP

was designed by the Debtors with the assistance of Paladin, which (a) priced the KEIP based on

comparisons with similar incentive plans of other comparable companies; (b) designed the KEIP

to be within industry standards; (c) performed due diligence for purposes of designing and

implementing the KEIP; and (d) provided independent counsel in performing due diligence and

formulating the KEIP.

34.     Additionally, Courts in this district have approved similar incentive plans.  *See,*

*e.g., In re Melinta Therapeutics, Inc., et al.*, Case No. 19-12748 (LSS) (Bankr. D. Del. Feb. 5,

2020) (KEIP with sale thresholds); *Pacific Sunwear of California, Inc., et al*., Case No. 16-10822

(LSS) (Bankr. D. Del. May 12, 2016) (plan confirmation and compliance with DIP covenants

metrics); *New Gulf Resources, LLC, et al*., Case No. 15-12566 (BLS) (Bankr. D. Del. January 19,

2016); *In re Hipcricket, Inc.*, Case No. 15-10104 (LSS) (Bankr. D. Del. March 18, 2015) (plan

confirmation performance goals); *In re Longview Power, LLC, et al*., Case No. 13-12211 (BLS)

(Bankr. D. Del. December 18, 2013) (KEIP with chapter 11 confirmation and power capacity

operation milestones).

## **WAIVER OF STAY**

35.     The Debtors request a waiver of a 14-day stay that would otherwise apply to

approval of the KEIP under Bankruptcy Rule 6004(h).  In order to successfully implement the

KEIP, the Debtors must be able to provide the Participant with certainty that he will be

compensated for his efforts to maximize the value of the Debtors' estates, despite the uncertainty

of the chapter 11 process.  Therefore, the Debtors respectfully submit that waiver of the 14-day stay under Bankruptcy Rule 6004(h) is appropriate.

## NOTICE

36.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Committee; (c) counsel to the DIP Lenders; and (d) any party that has requested notice under Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

37.     The Debtors have not previously sought the relief requested herein from this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court (i) enter the Proposed Order granting the relief requested herein, and (ii) grant such other and further relief as this Court may deem just and proper.

Dated:  August 23, 2024
       Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Mark D. Olivere*

William E. Chipman, Jr. (No. 3818)
David W. Carickhoff (No. 3715)
Mark D. Olivere (No. 4291)
Alan M. Root (No. 5427)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Email:         chipman@chipmanbrown.com
           carickhoff@chipmanbrown.com
           olivere@chipmanbrown.com
           root@chipmanbrown.com

*Counsel for Debtors and*
*Debtors in Possession*