IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (Jointly Administered) |

### DECLARATION OF T. SCOTT AVILA IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO IMPLEMENT KEY EMPLOYEE INCENTIVE PLAN AND (II) GRANTING RELATED RELIEF

Pursuant to 28 U.S.C. § 1746, I, T. Scott Avila, hereby declare, under penalty of perjury to the best of my knowledge and belief, that:

1.  I am a Managing Partner of Paladin Management Group, LLC ("**Paladin**"). In April 2024, Optio Rx, LLC ("**OptioRx**") and its debtor affiliates (collectively, the "**Debtors**") engaged Paladin to provide, among other things, compensation consulting services in relation to the Debtors' restructuring activities. I am familiar with the pre- and post-petition structure of the Debtors' compensation plans as well as the structure of the Debtors' proposed Key Employee Incentive Plan (the "**KEIP**") as it is set forth in the *Debtors' Motion for Entry of an Order (I)*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

*Authorizing the Debtors to Implement Key Employee Incentive Plan and (II) Granting Related Relief* (the "**Motion**")[2], filed contemporaneously with this Declaration.

2. I respectfully submit this declaration (the "**Declaration**") on behalf of Paladin in support of the Motion filed contemporaneously herewith. The Debtors have duly authorized me to do so.

3. Except as otherwise indicated, I have personal knowledge of all facts in this Declaration, based on my review of the Debtors' operations and finances, my research into compensation practices for companies that have filed for chapter 11 protection, and information supplied to me by members of the Debtors' management team and the Debtors' other advisors. For the reasons described below, it is my opinion that the Debtors' KEIP is reasonable and consistent with market practice for companies in chapter 11. If called upon to testify, I could and would testify competently to the facts and opinions set forth herein.

A. **EMPLOYMENT AND BACKGROUND**

4. I am the founding partner of Paladin, and I have more than three decades of experience supporting company management teams and stakeholders across multiple industries. I have led over 150 large-scale engagements and have frequently assumed interim executive roles, including serving as a Chief Restructuring Officer in over thirty (30) assignments.

5. Paladin is a middle-market advisory firm that specializes in corporate restructuring, transaction advisory, operations performance improvement, strategic communications and strategic advisory services both in-and-out of court proceedings. Paladin has a wealth of experience in providing chief restructuring and financial advisory services and enjoys an excellent

---

[2] Capitalized terms used but not otherwise defined in this Declaration shall have the meaning ascribed to them in the Motion.

reputation for services it has rendered in complex chapter 11 cases on behalf of debtors and creditors.

6. My responsibilities at Paladin have primarily involved consulting with large companies, including with regard to executive compensation and the development of compensation strategies. I have participated in the development and design of dozens of management and employee incentive/retention plans for companies inside and outside of bankruptcy.

7. I am highly experienced in executive, management, and employee compensation matters with over 30 years of experience in the field. During this time, I have been the lead restructuring advisor in more than twenty-five (25) bankruptcy cases and have frequently testified as to the reasonableness of a variety of postpetition compensation arrangements. Specifically, I have been involved in the review and design of key employee incentive plans, management incentive plans, key employee retention plans, severance plan design, and other similar-type plans in numerous chapter 11 cases.

**B.    OVERVIEW OF OPINION**

8. I have familiarized myself with the Debtors' operations and unique challenges, provided assistance in developing and reviewing the KEIP, gathered relevant market compensation data, and analyzed whether the KEIP is consistent with market practice.

9. Based on my analysis, the KEIP is reasonably designed and consistent with market practice. My conclusion is based on several factors:

>   (a)    The KEIP awards the Debtors' Chief Executive Officer, Ben David (the "**Participant**") in achieving certain benchmarks that are instrumental to effectuate a successful restructuring with an incentive bonus (the "**Incentive Bonus**"), which is only payable upon achievement of each milestone. Each milestone will result in

        a $25,000 bonus payable upon completion, with a maximum of $100,000 available;

(b)     The estimated level of potential compensation provided under the KEIP, when considered within the context of total compensation, is reasonable in comparison to market-based compensation of other similarly-situated companies; and

(c)     The KEIP's design is consistent with other restructuring programs.

## BACKGROUND

**A.   GENERAL CASE BACKGROUND.**

10.     On June 7, 2024 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

11.     The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

12.     On June 21, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a creditors' committee (the "**Committee**") in these Chapter 11 Cases [Docket No. 67].[3] No trustee or examiner has been appointed in the Chapter 11 Cases.

13.     On June 24, 2024, the Debtors filed the *Motion for Entry of an Order (I) Approving Debtors' Disclosure Statement, (II) Determining Dates, Procedures, and Forms Applicable to the Solicitation Process, (III) Establishing Vote Tabulation Procedures, and (IV) Establishing*

---

[3] The U.S. Trustee subsequently filed an Amended Notice of Appointment of Creditors' Committee [Docket Nos. 81 and 130].

*Objection Deadline and Scheduling Hearing to Consider Confirmation of the Plan* [Docket No. 76].

14. On July 1, 2024, the Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Lenders; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 133] (the "**Final DIP Order**"). Attached as Exhibit 2 to the Final DIP Order is the Approved Budget (as defined therein) for the Debtors in these Chapter 11 Cases.

15. On July 29, 2024, the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 257] (the "**Plan**") and the *Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 258].

16. On August 1, 2024, the Court entered the *Order (I) Approving Amended Disclosure Statement, (II) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (III) Establishing Vote Tabulation Procedures, and (IV) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of the Amended Plan* [Docket No. 276]. The hearing to consider confirmation of the Plan is scheduled for September 13, 2024.

B. **THE PROPOSED KEIP.**

17. With the assistance of Paladin, and the approval of the DIP Agent, the Debtors have developed a modest-sized KEIP to incentive and reward their Chief Executive Officer, Ben David (the "**Participant**") in achieving certain benchmarks that are instrumental to effectuate a successful restructuring.

18. The Participant, as Chief Executive Officer, is responsible for determining and executing the strategic goals of the Debtors under the direction and oversight of the Debtors'

independent director and Manager. The Participant also oversees all strategic partner and key customer relationships, all functional areas of development, and all regulatory, finance, legal, commercial, and human resources segments. The Participant has played, and will continue to play, a crucial role in the Debtors' reorganization process.

19. The KEIP Participant's services and expertise have been, and will continue to be, critical to the Debtors' overall restructuring efforts, including business consolidation, improved cash flow and sales, and the creation of a centralized purchasing model for the Debtors' businesses. The KEIP's performance targets were developed carefully to ensure they are an appropriate "reach" to drive performance, on the one hand, but will not present unrealistic or unattainable goals, on the other hand—which would of course thwart the incentivizing nature of the KEIP.

20. The KEIP is designed to incentivize the Participant in achieving certain milestones, each within a specific timeline. It achieves this result by providing the Participant with an incentive bonus (the "**Incentive Bonus**"), which is only payable upon achievement of each milestone. Each milestone will result in a $25,000 bonus payable upon completion, with a maximum of $100,000 available. The Debtors believe the Incentive Bonus is necessary and appropriate to drive business performance during these Chapter 11 Cases to maximize the value of the Debtors' assets and successfully reorganize outside of the Chapter 11 Cases.

21. A summary of the key terms of the KEIP is set forth below: [4]

    (a) *KEIP Participant*: The KEIP will be open to Ben Davis, the Debtors' Chief Executive Officer.

    (b) *Incentive Bonus Milestones*: The structure of the KEIP is straightforward; achievement of each milestone will entitle the Participate to a $25,000 Incentive Bonus:

        a. Hospice consolidation is completed by September 6, 2024;

---

[4] In the event of a discrepancy between this summary and the KEIP, the KEIP shall control.

        b.    Achieve an operating cash flow for the company for the period from the Petition Date to September 29, 2024 that is better than negative $2 Million Dollars;

        c.    The company adds twenty-five (25) new accounts that purchase compounded products by October 15, 2024; and

        d.    Creation of a centralized purchasing model—The Participant will audit all locations in California and create a plan that will eventually centralize purchasing for the entire company. The physical locations in CA will be audited for their current procedures. A plan will then be devised that will in stage 1 centralize the purchasing function for the California locations at the corporate level. Once the model is refined, stage 2 will centralize purchasing for all other locations in the company. Deliverable is the audit of all five (5) SMC Cares pharmacies, audit of the Rose's Santa Fe Springs location and the creation of the stage one plan for centralizing purchasing at the corporate level. Milestone deadline is October 1, 2024.

(c)    The obligations of the Debtors under the KEIP shall be secured by an allowed administrative expense claim against the Debtors' estates.

(d)    *Eligibility to Receive Incentive Bonus*: The KEIP Participant will be entitled to the Incentive Bonus only if such participant is employed as of the payment date of such Incentive Bonus payment.

(e)    The Debtors shall withhold from the Incentive Bonus all taxes and other governmental withholdings that under applicable law it is required to withhold and remit such amounts to the relevant governmental authority.

C.    **PALADIN'S INDEPENDENT REVIEW OF THE REASONABLENESS OF THE KEIP.**

22.    Since Paladin was retained by the Debtors in April 2024, I have familiarized myself with the Debtors' operations and unique business and restructuring challenges. At the start of our engagement, Paladin discussed with the Debtors and their advisors the Debtors' operational history, financial performance, restructuring process, and various issues regarding the Debtors' workforce and employee programs. Paladin reviewed the structure of the Debtors' primary incentive programs and executives' existing base salaries, paying specific attention to the various

incentive plans' performance metrics, participating employees, payout frequency, and target payout levels.

23. Based on my experience and upon a comparison of market data, I believe that the KEIP is objectively and demonstrably reasonable. The size of the KEIP is reasonable in light of the size of the Debtors' estates, the nature of the Debtors' industry, and the likely benefit that the estates will realize from a successful reorganization resulting from the Participant's efforts.

24. Given the above observations, I believe that the Debtors' KEIP is reasonable and in line with relevant market practice for similar roles at similarly-sized companies.

D. **THE DEBTORS' KEIP IS REASONABLE AND JUSTIFIED BY MARKET PRACTICES.**

25. Based on my education, experience and the work I have done on this matter, it is my opinion that the KEIP is designed to be consistent with market practice, is reasonable given the facts and circumstances and provides anticipated value that is appropriate to competitively motivate talented staff.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 23, 2024                    By:    /s/ *T. Scott Avila*
                                                 T. Scott Avila, Partner
                                                 Paladin Management Group, LLC