## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (Jointly Administered) |
|  | <u>Related D.I.</u>: 294, 332, 333 |

**REPLY IN SUPPORT OF MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER: (1) GRANTING DERIVATIVE STANDING TO THE COMMITTEE OF UNSECURED CREDITORS TO COMMENCE, PROSECUTE AND RESOLVE CERTAIN CLAIMS AND CAUSES OF ACTION; AND (2) EXTENDING CHALLENGE PERIOD PENDING CONSIDERATION OF REQUEST FOR DERIVATIVE STANDING**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases (the "**Chapter 11 Cases**") of the above-captioned debtors and debtors in possession (the "**Debtors**"), by and through their undersigned counsel, hereby files this Reply in support of the motion [D.I. 294] (the "**Motion**")[2] for the entry of an order pursuant to sections 105(a), 1103 and 1109 of title 11 of the United States Code (the "**Bankruptcy Code**"), granting derivative standing to the Committee to prosecute certain Challenges. In further support of its Motion, the Committee states as follows:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Motion.

## I.    PRELIMINARY STATEMENT

1.    The Committee filed the Motion to avoid unperfected liens on valuable property owned by the Debtors.  Upon a request for standing, the Committee need only show a prima facie case for avoidance and demonstrate that the benefit to the estate outweighs the potential detriment. The Complaint attached to the Motion states a prima facie case for avoidance.

2.    The Debtors and Loan Admin filed Objections (as defined below) challenging the Committee's request for standing, largely by arguing that the Committee must be able to specifically liquidate the value of the Unencumbered Assets to pursue them.  This is wholly inappropriate at this stage; a request for standing need only be supported by colorable claims that would survive a motion to dismiss, not claims that are presently ready for trial.

3.    The Objections do not allege that the challenged Prepetition Liens are perfected (an argument that would defeat the Motion and Complaint if true).  They implicitly admit the Prepetition Liens are unperfected on the Unencumbered Assets.  The Debtors' Objection admits that a number of these assets have value, and the information disclosed by the Debtors in this case, primarily in the schedules and statements of financial affairs, further demonstrates that the Unencumbered Assets have substantial value.

4.    The Debtors cannot pursue these assets due to the Releases in the Final DIP Order, so the Committee must be granted standing to recover their value for unsecured creditors.

## II.    RELEVANT BACKGROUND

5.    On July 1, 2024, the Court entered the Final DIP Order approving the Debtors' request for DIP Financing.

6.    The Debtors and Loan Admin were parties to a June 28, 2019 Credit Agreement, as amended, allegedly secured by substantially all the Debtors' assets.

7.      Loan Admin is also the administrative agent for the DIP Financing approved by the Court in the Final DIP Order.

8.      The Final DIP Order sets forth extensive stipulations that all Prepetition Liens are valid and perfected, with broad Releases in favor of the lenders.

9.      The Committee has engaged in an investigation – albeit an expedited one, given the short Challenge Period and the delay in the appointment of the Committee.  In furtherance of this investigation, among other things, the Committee issued, and received responses to, informal written discovery requests to both Loan Admin and the Debtors, reviewed documentation made available to the Committee from parties-in-interest, and conducted extensive legal research. Certain of the relevant documents provided to the Committee in response those requests are attached as Exhibits to the *Declaration of Evan T. Miller* (the "**Miller Declaration**") attached hereto as **Exhibit A**.

10.     As a result of the Committee's investigation, the Committee has determined that viable Challenges exist to the perfection of the Prepetition Secured Obligations and Prepetition Liens in favor of the Prepetition Secured Parties (inclusive of Loan Admin) as of the Petition Date on certain specific collateral.

11.     Based upon the Committee's investigation to date, the Prepetition Secured Parties do not have a perfected or otherwise enforceable security interest in the following Unencumbered Assets or the proceeds thereof as of the Petition Date:

- Commercial tort claims of the Debtors, including prepetition tort claims, postpetition avoidance and recovery claims under article 5 of the Bankruptcy Code and any claims for recovery pursuant to Bankruptcy Code Section 362(k).
- Any leasehold, tenancy or real property interests of the Debtors or any fixtures associated therewith;
- any insurance policy proceeds relating to director and officer or management liability; and

• Certain deposit accounts of the Debtors.

12. Accordingly, the Committee filed the Motion to obtain standing to bring these Challenges, per the Complaint attached thereto.

13. On August 22, 2024, Loan Admin and the Debtors filed objections (collectively the "**Objections**") to the Motion at D.I. 332 and 333.

## III. ARGUMENT

### A. The Claims are Colorable Because the Complaint is Well-Pled

14. The Objections apparently take issue with the manner in which the Complaint identifies Unencumbered Assets. The Objections suggest that, even before a Complaint is filed, the Committee must provide liquidated values for all Unencumbered Assets in order to obtain standing. There is no authority for this proposition.

15. The Debtors' schedules, statements of financial affairs and even the Debtors' Objection demonstrate that the Unencumbered Assets have substantial value. Summaries of the Debtors' schedules prepared by the Debtors are attached as **Exhibit 1** to the Miller Declaration; summaries of the Debtors' statements of financial affairs are attached as **Exhibit 2** to the Miller Declaration.[3]

16. Applying New York law, one court held that "(1) under sections 550, 551, and 552 of the Code, recovery on avoidance actions constitutes after-acquired property that is not subject to prepetition liens and is intended for the benefit of the estate, and (2) for liens to attach to commercial tort claims, including avoidance actions, those claims must be listed in the security

---

[3] These Exhibits do not present novel evidence; they provide consolidated information from all the Debtors' schedules and statements of financial affairs in one place for convenience. The underlying information in the filed schedules and statements of financial affairs is subject to judicial notice.

52912513.5 08/26/2024

documents with specificity, which was not the case here." *In re Residential Cap., LLC*, 497 B.R. 403, 414 (Bankr. S.D.N.Y. 2013).

17.     The Debtors disclose in excess of $29 million in payments to creditors in the 90 days before the Petition Date.  *See* Miller Declaration Ex. 2 § 3.  Some or all of these transfers may be avoided pursuant to 11 U.S.C. § 547.

18.     The Debtors have also filed a motion to enforce the automatic stay, seeking actual damages.  D.I. 264.  A claim under 11 U.S.C. § 362(k) sounds in tort.  *Sundquist v. Bank of Am., N.A.*, 566 B.R. 563, 589 (Bankr. E.D. Cal. 2017), *vacated on other grounds in part sub nom. In re Sundquist*, 580 B.R. 536 (Bankr. E.D. Cal. 2018) (applying "the mainstream of the law of torts" to Section 362(k) damages).

19.     Loan Admin's Objection suggests that commercial tort claims are listed on Annex G attached to the Security Agreement.  Annex G is attached as **Exhibit 5** to the Miller declaration, and lists no commercial tort claims.  These claims are not subject to a perfected prepetition lien, and are thus valuable assets subject to a colorable and well-pled avoidance claim.

20.     Loan Admin likewise alleges that the Debtors possess no valuable leases.  The Debtors' schedules disclose a number of long-term commercial leases that are the locations of the Debtors' operating retail pharmacies or business offices.  *See* Miller Declaration, Ex. 1 § 55. Additionally, in the process of its investigation, the Committee determined that one of the Debtors' long-term leases includes terms capping rent at 90% of fair market value.  *See* Miller Declaration Ex. 6 ¶ 23.0 (Upon exercise of second five-year option to renew, "The Rent for the Second Option shall be Ninety Percent (90%) of fair market rent for the Premises").

21.     This lease provision locks in inherent value worth 10% of the applicable market value rent.  The Debtors' other leases may also have inherent value.  At the Complaint stage of a

proceeding, the Committee is not required to liquidate the value of the leases in order to obtain standing to avoid an unperfected lien.  See *In re Coleman*, 426 F.3d 719, 725 (4th Cir. 2005) (no valuation element in Section 544 claim because "in the absence of equivalent language in § 544, the presence of the phrase "for the benefit of the estate" in § 550 merely highlights the fact that Congress knew how to include such a limitation when it wanted to").

22.     Loan Admin alleges there are no D&O policies so there is no value in these policies. But the Debtors admit, consistent with the schedules, that the Debtors maintain "a $3 million primary policy plus an additional $10 million policy of side A coverage only."  Debtors' Objection at ¶ 19.

23.     Loan Admin's objection questions whether DACAs were recorded for the Unencumbered Accounts and whether those accounts held any value.  But the Complaint adequately pleads that no DACAs were recorded for those accounts, and regarding value, the Debtors' Objection notes, consistent with the schedules, that the "total cash in these accounts as of the Petition Date was approximately $926,000."  Debtors' Objection at ¶ 20.  Even Loan Admin itself concedes this point, at least in part.  *See* Loan Admin Objection at ¶ 13, n.4 ("The Admin Agent, on behalf of the Prepetition Lenders, holds liens on the Debtors' accounts, but certain of such accounts may not be subject to DACAs. See Security Agreement at § 1.1(a)(x).").

24.     Simply put, the Unencumbered Assets have substantial value based just on the Debtors' disclosures alone.  The Complaint's allegations that the Unencumbered Assets are not subject to valid liens is well-pled and more than satisfy a standard for surviving a motion to dismiss.  The Challenges bring colorable claims and the Committee should be permitted to pursue same.

**B.** **The Value of the Unencumbered Assets Will Be Available for General Unsecured Creditors**

25.     The Objections question how, given the perfection of the DIP Liens on even the Unencumbered Assets, any practical value can flow to unsecureds.  In doing so, Loan Admin argues for a kind of anti-marshalling, alleging that its DIP Liens must be paid out of the proceeds of the Unencumbered Assets first, depleting their value before any other collateral value is applied. It cites no support for this proposition, and there is none.

26.     The DIP Liens encumber all Debtors' assets as first-priority liens.  The DIP Liens secure a DIP Facility of approximately $10 million on Debtors' assets far exceeding $10 million. Loan Admin implicitly argues that it will choose to satisfy its DIP Liens first out of the Unencumbered Assets, even though the DIP Liens cover all Debtors' extensive assets.

27.     Second, the Final DIP Order does include a marshalling provision:

> if the DIP Lenders are not indefeasibly paid in full as a result of the liquidation of their collateral (other than the proceeds of Avoidance Actions), then in seeking to satisfy the balance of their claims, shall first seek to sell, liquidate or otherwise monetize collateral that are not proceeds of Avoidance Actions, if any…

Final DIP Order ¶ 38(b).

28.     Pursuant to this provision, the DIP Lien must be satisfied out of any other assets first.  The DIP Liens secure a DIP Facility of approximately $10 million and are a first lien on Debtors' assets far exceeding $10 million.  Put differently, Loan Admin must satisfy its DIP Liens out of other assets which are entirely sufficient to pay the DIP Liens in full before it may touch the Avoidance Actions.  So these Unencumbered Assets are certainly available for unsecured creditors, even if Loan Admin may engage in the anti-marshalling described above.

29.     Third, while the Committee is not able to finally liquidate the value of all unencumbered assets at this time, the preliminary amounts discussed above suggest that a recovery

on Unencumbered Assets exceeding the outstanding amount of the DIP Facility is possible.  Even applying Loan Admin's suggested anti-marshalling in contravention of the Final DIP Order, this scenario would see the Committee's recovery exceed the DIP Facility and its first-priority lien, a result that would generate value for unsecureds.

30.     The Debtors allege that all prepetition cash in the Unencumbered Accounts has been spent and cannot provide value to the estate.  While the Committee cannot seek to surcharge the Prepetition Liens or DIP Liens, no provision in the Final DIP Order prohibits a surcharge against any other liens.  The liens of certain creditors are "Permitted Liens" superior to the DIP Lien on certain Debtors' inventory.  The prepetition cash – not encumbered by any valid prepetition lien – was used to pay ordinary business expenses to those certain creditors and others.  In doing so, that cash preserved or augmented this collateral.  If, as the Committee asserts, the cash is subject to no prepetition lien, the Committee may surcharge these Permitted Liens and recover the value spend on inventory for the estate.

31.     The Objections question why any of these challenges are relevant when the Debtors' proposed Plan retains the Unencumbered Assets.  The Plan has not been confirmed, and may not be confirmable.  *See Reservation of Rights of the Official Committee of Unsecured Creditors to the Debtors' Motion for the Entry of an Order (I) Approving Debtors' Disclosure Statement, (II) Determining Dates, Procedures, and Forms Applicable to the Solicitation Process, (III) Establishing Vote Tabulation Procedures, (IV) Establishing Objection Deadline, and (V) Scheduling Hearing to Consider Confirmation of the Plan* [D.I. 262].  It would be premature to deny standing based on a potential future confirmation, especially where the proposed Plan treatment of the Prepetition Liens is questionable given their unperfected status on the Unencumbered Assets.

8

32.     The Debtors allege that any recovery here would go to Loan Admin anyway because all equal-priority creditors are being paid from a gift from Loan Admin and all remaining creditors are subordinate to a deficiency unsecured claim of Loan Admin's.  Yet the Debtors later admit this is inaccurate: The Debtors allege that there are "approximately only $350,000 to $550,000 of valid non-trade general unsecured creditors not being paid in these cases."  Debtors' Objection at ¶ 29.  The Objections demand the Committee abandon these unsecureds instead of pursuing the valid and valuable Challenges.  The Committee declines to do so; the value of the Unencumbered Assets may be sufficient to ensure a meaningful return to these and other out-of-the-money constituents of the Committee.  While the Committee is sensitive to the practicalities of the proposed reorganization, it has a fiduciary duty to look out for all unsecured creditors.

33.     Since the Unencumbered Assets are not subject to perfected liens, Loan Admin is providing a "gift" out of assets where it is unperfected.  The value in the Unencumbered Assets is not Loan Admin's to gift on account of the Prepetition Liens.  Loan Admin cannot shield itself from the consequences of its unperfected status via gifting; if the Debtors' own argument is correct, the Plan represents some form of improper treatment of Loan Admin's unsecured claim: either misclassification or disparate treatment from other unsecured creditors.

34.     The Debtors allege that, if an unperfected prepetition lien is avoided, Loan Admin would become entitled to an Adequate Protection Superpriority Claim for the amount of the avoided lien, neutralizing any practical recovery.  Notably, Loan Admin does not make this argument even though it would be the party benefited thereby.  Yet adequate protection in the Final DIP Order cannot grant a creditor greater protection than it would have outside bankruptcy: "In other words, [adequate protection] should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing."

*Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994).

35.     The Final DIP Order provides Loan Admin an Adequate Protection Superpriority Claim "for any Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral."  Final DIP Order ¶ 13.  The Committee's claims challenge the Prepetition Secured Parties' interest in portions of the Prepetition Collateral.  If the challenge is successful, a portion of the claim becomes unsecured and is not entitled to adequate protection.  This is exactly the same result that would occur if another creditor obtained a judicial lien or unsatisfied execution against the Debtors outside a bankruptcy: that other creditor would obtain a superior interest.  11 U.S.C. § 544(a) (granting the trustee status of a hypothetical judicial lien creditor or unsatisfied execution creditor on the petition date).  By failing to perfect its lien on all assets, Loan Admin entered the bankruptcy with certain lien rights, and the Final DIP Order does not increase them in order to transform unperfected liens into invincible claims entitled to be paid 100% no matter what.

### C.     The Debtors Have Unjustifiably Refused to Pursue the Challenges

36.     As highlighted in the Motion, refusal to pursue an avoidance action can be implicit, even without any demand from a creditors' committee. *See, e.g., G-I Holdings, Inc. v. Those Parties Listed on Exhibit A (In re G-1 Holdings, Inc.)*, 313 B.R. 612, 630 (Bankr. D.N.J. 2004).  Similarly, "it cannot be said that a formal request, in order to obtain a formal refusal, a request which would surely be refused, should be required." *Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.)*, 304 B.R. 214, 222 (Bankr. W.D. Pa. 2004).  The Committee submits that it is futile to demand that the Debtors file and prosecute the Challenges because they have already stipulated to the validity and amount of the secured claims addressed herein and further have agreed to broad Releases of the very Challenges the Committee seeks to prosecute.

37.     The Debtors' Objection takes the position that the Unencumbered Assets are of no value to the Debtors, so the failure to pursue them is justified.   First, the Committee simply disagrees with the Debtors regarding valuation: as set forth above, the Unencumbered Assets are valuable.

38.     Second, the Debtors' actual reason for not pursuing the Unencumbered Assets is the stipulations in the Final DIP Order; the argument against value in the Objection is a post-hoc rationalization for a position to which the Debtors are already legally bound.   This is not meant as a criticism of the Debtors: they exercised their business judgment to obtain DIP lending necessary to have a shot at reorganization; the price of the DIP lending was release of the claims against the Unencumbered Assets.   The genius of the Bankruptcy Code is that it creates independent fiduciaries like the Committee that are free from the business pressures that forced the Debtors into waiving and releasing claims.   The Committee's Motion represents the system working as intended.   The Debtors have not and cannot bring valid and valuable claims, so the Committee must step in.   The Court must grant derivative standing.

### D.     A Cost-Benefit Analysis Favors a Grant of Standing

39.     The Objections allege that the Committee should not be granted standing because the Unencumbered Assets are valueless.   As set forth above, the Unencumbered Assets are valuable.

40.     The Objections also demand – without a legal basis – that the Committee present a litigation budget in order to obtain standing.   The Objections allege that any administrative expense generated by the Challenges is not included in the budget the DIP Facility is required to pay.

41.     The Complaint does not seek recovery on highly-complex or fact-specific claims. A cursory review of the Complaint shows that the claims the Committee seeks to assert are simple

technical failures to perfect on specific assets.  The Objections do not argue that the Prepetition Liens are perfected on these assets – as they surely would if the liens were perfected.

42.     The Objections seek to deny the Committee derivative standing to pursue valuable claims merely because the Committee will incur unbudgeted estate-compensated expenses in doing so.  This is not a basis to deny standing; this argument has no limiting principle.  If accepted, the argument would allow debtors and DIP lenders to financially engineer bankruptcy case budgets that effectively prohibit any party from ever challenging a prepetition lender, neutering one of the key aspects of a committee's role.

43.     Put differently, the Committee has a fiduciary duty to pursue claims that, in the exercise of its business judgment, it determines are viable and valuable.  It is irrelevant to the standing analysis whether the costs of this Challenge are payable from the DIP facility, because the value to the estate substantially outweighs the minimal cost to pursue them via the Complaint.

44.     Given the straightforward technical nature of the claims asserted in the Complaint, the cost to the Committee to pursue these claims is reasonable and commensurate with the potential benefits to the estate.  The Committee must be granted standing.

**E.      The LLC Standing Issue Applies to Shareholders' Debtor-Derivative Claims Against Managers, Not Avoidance Claims Derivative of the Estates**

45.     Delaware law potentially prohibits creditors from asserting derivative claims against an LLC's members and officers outside of a bankruptcy case, even if the applicable LLC is insolvent.  *CML V, LLC v. Bax*, 28 A.3d 1037 (Del. 2011) (citing DLLCA 18-1002).  While the Objections cite case law and statutes to this effect, they miss key points.  First of all, not all Debtors are Delaware LLCs.  Ten of the Debtors are LLCs or Ltds. created under other state laws including New York, Texas and California.  These LLCs cannot take advantage of DLLCA 18-1002 in this or any other proceeding.  Moreover, the invocation of DLLCA 18-1002 is a red herring, since the

principles articulated in *Bax* apply only to fiduciary duty derivative suits against members and officers.

46.     The bankruptcy cases cited in the Objections apply the same rationale, permitting derivative standing for avoidance claims.  In *In re PennySaver USA Publ'g, LLC*, 587 B.R. 445 (Bankr. D. Del. 2018), that court dismissed a derivative breach of fiduciary duty claim for lack of standing but permitted actual and constructive fraud claims to stand.  Another court held that a "Committee has no standing to bring a breach of fiduciary duty claim" against an LLC's managers. *In re HH Liquidation, LLC*, 590 B.R. 211, 284 (Bankr. D. Del. 2018).  However that same court dismissed an avoidance claim not because of lack of standing, but because that debtor was solvent when the challenged transfer was made and because the debtor could repay all creditors so avoidance provided no benefit to the estate.  *Id*. at 271.  Yet another court held that a liquidating trustee succeeding to the rights of a committee "does not have standing to assert the derivative fiduciary duty claims" under Delaware's LLC law.  *In re Citadel Watford City Disposal Partners*, *L.P.*, 603 B.R. 897, 900 (Bankr. D. Del. 2019).  In *In re Pack Liquidating, LLC*, 658 B.R. 305, 312 (Bankr. D. Del. 2024), "[t]he defendants in the adversary proceeding do not challenge the Committee's authority to pursue the claims other than those for breach of fiduciary duty."  The committee in that case alleged claims for actual and constructive fraudulent transfer avoidance. *Id.*

47.     Put simply, no Delaware bankruptcy court has ever dismissed an avoidance claim because of DLLCA 18-1002.  The *PennySaver* court explicitly permitted an avoidance claim to stand, and the *HH Liquidation* court dismissed an avoidance claim for entirely different reasons without invoking the derivative standing issue.  This makes sense, as an avoidance claim under Section 544 – the only kind of claim alleged in the Complaint – derives from the bankruptcy estate,

13

not the prepetition debtor.  If the debtor-in-possession, as trustee of the estate, will not pursue it, a committee may obtain standing to do so.  This entirely federal process cannot be frustrated by state law, and the principles articulated in *Bax* are inapplicable here.  The Committee has standing to bring Section 544 claims.

## IV.    CONCLUSION

The Unencumbered Assets are valuable claims of the estate subject to unperfected liens. The Debtors unjustifiably refused to pursue these claims, but the Committee may do so at a reasonable cost for the benefit of otherwise out-of-the-money unsecured creditors.  The Committee respectfully requests that the Court enter an order pursuant to sections 105(a), 1103 and 1109 of the Bankruptcy Code, granting the Motion; granting derivative standing to the Committee to commence, prosecute and resolve any or all Challenges brought in the Complaint for which the Committee does not possess direct standing; and granting such other and further relief as the Court deems fair and equitable.

Dated:  August 26, 2024

**SAUL EWING LLP**

*/s/ Evan T. Miller*
Evan T. Miller (DE Bar No. 5364)
Nicholas Smargiassi (DE Bar No. 7265)
1201 N. Market St, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6864
evan.miller@saul.com
nicholas.smargiassi@saul.com

-and-

Michelle G. Novick, Esq. (admitted *pro hac vice*)
**SAUL EWING LLP**
161 North Clark St., Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
michelle.novick@saul.com

-and-

Turner N. Falk (admitted *pro hac vice*)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-8415
turner.falk@saul.com

*Counsel to the Official Committee of Unsecured*
*Creditors of Optio Rx, LLC, et.al.*