## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OPTIO RX, LLC; *et al.*,[1] | ) | Case No. 24-11188 (TMH) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Related to Docket No. 257, 276, and 348 |

### DR. RINKU PATEL'S OBJECTION TO AMENDED CHAPTER 11
### PLAN OF REORGANIZATION OF OPTIO RX, LLC, *ET AL.*

Dr. Rinku Patel ("*Dr. Patel*"), a party-in-interest in the above-captioned Chapter 11 Cases[2], hereby files this objection (the "*Objection*") to the *Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 257] (the "*Plan*") and respectfully states as follows:

### PRELIMINARY STATEMENT

1.      In the recent case *Harrington v. Purdue Pharma L.P.*, decided on June 27, 2024, the United States Supreme Court prudently declared that "a bankruptcy court's powers are not limitless and do not endow it with the power to extinguish without their consent claims held by nondebtors . . . against other nondebtors . . . ." *Harrington v. Purdue Pharma L.P.*, 219 L. Ed. 2d 721, 732 (2024). This is precisely what the Debtors are attempting to do here.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

2.     Dr. Patel respectfully submits that the Plan is patently unconfirmable as drafted because it contains overbroad, non-consensual third-party release and injunction provisions that seek to unlawfully release a multitude of third parties including the Consenting Lenders, the DIP Lenders, the Admin Agent, the Noteholders, and Related Parties (defined as including an exceedingly broad group of additional released entities and individuals) – all without the consent of affected claimants, including Dr. Patel.

3.     In addition, Dr. Patel objects to the Plan insofar as it: (a) improperly precludes her from seeking discovery from Optio Rx (as a witness) or any of the Defendants in the Illinois Lawsuit (as those terms are defined herein) and (b) extinguishes her right of setoff and right to assert counterclaims against Optio Rx and any of the individuals or entities included in the definition of "Released Party" should any of those parties seek affirmative relief against Dr. Patel.

## RELEVANT BACKGROUND

### I.     *The Chapter 11 Cases*

4.     The Debtors operate in four primary specialty pharmacy business segments, including: (i) clinically focused retail dermatology pharmacies; (ii) compounding pharmacies; (iii) hospice pharmacies; and (iv) fertility treatments.   In addition, the Debtors provide prescription fulfilling services to long term care facilities, among other things.   The Debtors currently operate in 18 locations, located in 7 states and service more than 100,000 patients.

5.     On June 7, 2024, the Debtors commenced the Chapter 11 Cases under chapter 11 of the Bankruptcy Code.   The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

6.      The Debtors are currently operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On June 21, 2024, the Office of the United States Trustee for the District of Delaware (the "*U.S. Trustee*")  appointed the Committee of Unsecured Creditors in these Chapter 11 Cases [Docket No. 67].

8.      No trustee or examiner has been appointed in the Chapter 11 Cases.

## II.      *Dr. Patel's Claims Against Optio Rx and Other Non-Debtors*

9.      Dr. Patel has a state court action pending in the Circuit Court of Cook County (the "*Illinois Lawsuit*") against the following non-debtors (collectively, the "*Defendants*"):

- CBC Pharma Holdco LLC ("*CBC Pharma Holdco*") – the parent company of Optio Rx;

- Pharmacy Management LLC ("*Pharmacy Management*") – the manager of Optio Rx;

- Ashok Nayyer ("*Nayyer*") – Managing Director and Chief Investment Officer of MCCP Investment Partners LP ("*MCCP*"), Optio Rx's senior lender;

- Jeffrey Kelly ("*Kelly*") – a member of Optio Rx's Board of Directors and Managing Director of MCCP;

- Jonathan Tunis ("*Tunis*") – a member of Optio Rx's Board of Directors and Managing Director and General Counsel for MCCP; and

- Barry Best ("*Best*") – a member of Optio Rx's Board of Directors and Managing Director of MCCP.

10.      Dr. Patel is a highly skilled and reputable Doctor of Pharmacy, who has been working in the pharmaceutical industry for more than twenty years. She was recruited to join Optio Rx in February 2022 as Chief Executive Officer after founding and growing KloudScript, Inc., a specialty pharmacy software company that was acquired in 2020.

11.     Soon after Dr. Patel joined Optio Rx, she discovered numerous regulatory issues under Sections 503A and 503B of the Federal Food, Drug, and Cosmetic Act of 1938 ("*FDCA*"), 21 U.S.C. §§ 353(a)-(b), the Compounding Quality Act ("*CQA*"), 21 U.S.C. § 301, and the Controlled Substance Act ("*CSA*"), 21 U.S.C.§ 829, that hobbled Optio Rx' s viability and growth.

12.     Dr. Patel attempted to resolve these issues by hiring new regulatory counsel for the company and developing new processes that would ensure Optio Rx's compliance with the CQA, Sections 503A and B of the FDCA, and the CSA. She regularly communicated the need for these changes to Optio Rx's Board of Directors – which included Kelly, Tunis, and Best – and MCCP – which employs Nayyar as its Managing Director and Chief Investment Officer.

13.     Defendants, however, rejected Dr. Patel's efforts to improve Optio Rx's regulatory standing because her compliance efforts negatively impacted the Optio Rx's bottom-line. Defendants continued to implement and cultivate processes prioritizing the Optio Rx's revenues over its patient's safety and regulatory compliance.

14.     In addition to disregarding Dr. Patel's compliance concerns, Defendants punished Dr. Patel for raising these issues by terminating her employment without cause on February 5, 2024, and withholding compensation Dr. Patel earned, including her 2023 bonus payment, severance pay and benefits, vested equity, and expenses accrued on Optio Rx's behalf.

15.     Dr. Patel's Illinois Lawsuit – which is at its very early stages – bring claims against the Defendants for violations of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*, the Illinois Whistleblower Act, 740 ILCS 174/1 *et esq.*, retaliatory discharge, and breach of contract.

**OBJECTION**

I.    *The Plan is patently unconfirmable due to unlawfully broad release and injunction provisions.*

16.    The Plan defines "Releasing Parties" to include, among others, (i) each of the Released Parties (including the Debtors), (ii) each Related Party of the Debtors (which is broadly defined to include current and former officers of the Debtors, such as Dr. Patel), (iii) all Holders of Claims or Interests that vote to accept or reject the Plan and opt-into the releases, and (iv) all Holders of Claims or Interests that abstain from voting on the Plan and opt-into the releases. *See* Plan, Section 1.01(vvvvv).

17.    The Plan proposes to provide "Released Parties" – defined as including (a) each of the Debtors, (b) the Reorganized Debtors, (c) the Consenting Lenders, (d) the DIP Lenders, (e) the Admin Agent, (f) Aves, (g) the Noteholders, (h) the manager of Pharmacy Management, ***and*** (h) Related Parties[3] to each of the foregoing – with non-consensual third-party releases, including releases of all liability relating to "business or contractual arrangements." *See* Plan, Section 7.03.

18.    The following Plan excerpt provides a sense of the breadth of the proposed releases:

> … **each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged**

---

[3] Related Parties, in turn, is broadly defined as "collectively, with respect to any [Released Party], in each case in its capacity as such with respect to such [Released Party], such [Released Party's] current and former affiliates, and such party's and such affiliates' current and former affiliates, directors, trustees, managers, officers, investment committee, members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, employees, agents, management companies, fund advisors or managers, managed funds (including any beneficial holders for the account of whom such funds are managed), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors (including, for the avoidance of doubt, any attorneys, investment bankers or other professionals and advisors retained by any current and former director and manager in his or her capacity as director or manager of such person) and any such Person's or Entity's respective heirs, executory, estates and nominees." *See* Plan, Section 1.01(ttttt).

**by each Releasing Party from any and all Causes of Action**, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of any of the Debtors, **that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, any of the Debtors (including the capital structure, management, ownership or operation thereof), the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements** between any of the Debtors any other Released Party, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions …

*Id.* (highlighting added).

19.     The Plan Injunction at Section 7.06 then permanently enjoins essentially any kind of action by the Enjoined Parties – defined in Section 1.01(yy) as all entities and individuals who have held, hold or may hold Claims or Interests that have been released or discharged – against not just the Debtors, but ***all the Released Parties***. Plan at Section 7.06 (highlighting added).

20.     The proposed non-consensual third-party release and injunction provisions (as further defined in the Plan) are unlawful under recent binding precedent from the United States Supreme Court, making the Plan patently unconfirmable.

21.     In *Harrington v. Purdue Pharma L.P.*, the United States Supreme Court was tasked with adjudicating the propriety of non-consensual third-party releases and faced the pivotal question of "whether a court in bankruptcy may effectively extend to *nondebtors* the benefits of a Chapter 11 discharge usually reserved for *debtors*." *Harrington v. Purdue Pharma L.P.*, 219 L. Ed. 2d at 732. Rejecting the plan proponents' urging of using Section 1123(b)(6) of the Bankruptcy Code as a catchall basis for the approval of non-consensual third-party releases, the Supreme Court emphatically stated that "the catchall cannot be fairly read to endow a bankruptcy court with the 'radically different' power to discharge the debts of a nondebtor without the consent of affected nondebtor claimants." *Id.* at 734 (internal citations omitted).

22.     Ultimately, the Supreme Court held that "the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Id.* at 739-740; *see also In re Parlement Techs., Inc.*, 2024 Bankr. LEXIS 1627, at *11-12 (Bankr. D. Del. 2024).

23.     In light of the *Purdue Pharma* case (as followed by this Court in *In re Parlement Techs, Inc.*)[4], the Debtors' Plan, which contains a plethora of non-consensual third-party releases, is legally unconfirmable. For the avoidance of doubt, Dr. Patel is not opting into and does not consent to the third-party release and injunction provisions.

II.     *The Plan Injunction provision is impermissible insofar as it exempts Optio Rx from discovery obligations in the Illinois Lawsuit.*

24.     Section 7.06 of the Plan permanently enjoins parties – including Dr. Patel – from, among other things, "commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any Claim or Interest" against any of the Debtors, any of the Reorganized Debtors, the Exculpated Parties, ***and*** the Released Parties. *See* Plan, Section 7.06.

25.     Putting aside that this overly broad Injunction provision is unlawful (see *supra* Section I), Dr. Patel further objects to the Injunction provision insofar as it exempts Optio Rx from responding to discovery undertaken in the Illinois Lawsuit.

26.     Courts have uniformly held that whether a debtor has received a discharge or not, the debtor is not relieved of the responsibility to testify at trial and/or participate in discovery as a witness. *See In re Doar*, 234 B.R. 203, 206 (Bankr. N.D. Ga. 1999) (holding that "neither

---

[4] *See In re Parlement Techs., Inc.*, 2024 Bankr. LEXIS 1627, at *10-11 ("[t]he 'bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.'").

§524(a) nor the important policy of granting the debtor a fresh start exempts the debtor from her obligations as a witness to participate in discovery in the state court action."); *In re Gibson*, 172 B.R. 47, 49-50 (Bankr. W.D. Ark. 1994) ("The debtor, whether discharged or not, is under the same obligations as would be any witness regardless of inconvenience, to attend any trial and testify."); *In re Rodgers*, 266 B.R. 834, 837 (Bankr. W.D. Tenn. 2001) (same); *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1307 (10th Cir. 2001) ("[R]equiring a debtor to bear such collateral burdens of litigation as those relating to discovery (as opposed to the actual defense of the action and potential liability for the judgment), does not run afoul of § 524(a)(2).").

27.     Dr. Patel will require discovery from Optio Rx in the pending Illinois Lawsuit because Optio Rx employed Dr. Patel and breached her Employment Agreement by failing to pay her the contractually guaranteed severance, bonuses, and other benefits after she raised regulatory concerns. As a result, Dr. Patel will need documentation, communications, and information in Optio Rx's possession related to: (1) her employment's terms and conditions, commencement, and termination; (2) compensation due to her from Optio Rx and the Defendants; and (3) Optio Rx's operations from the time of Dr. Patel's recruitment in 2021 to the present.

28.     As a result, Dr. Patel respectfully requests that the Debtors modify Section 7.06 to explicitly allow Dr. Patel to obtain discovery from Optio Rx to the extent necessary in connection with the Illinois Lawsuit.

*III.     Dr. Patel expressly preserves her right of setoff and right to assert counterclaims.*

29.     The Injunction provision also seeks to prohibit Dr. Patel from "asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any

such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date . . . ." Plan, Section 7.06. Again, this provision improperly seeks to shield the Debtors, the Reorganized Debtors, **and** a myriad of non-debtor parties. The Injunction provision, in its entirety, should be modified to only apply to the Debtors and Reorganized Debtors.

30.     Moreover, requiring a right of setoff motion on or before the Effective Date puts the proverbial cart before the horse in that it requires Dr. Patel to assert a right of setoff when there are no pending claims being asserted against her and Dr. Patel is unaware of any plausible claims.

31.     Dr. Patel hereby expressly reserves all rights and remedies including, but not limited to, preserving her right of setoff and to assert counterclaims against Optio Rx and any other party included in the definition of Released Party should any of those parties seek affirmative relief against her. Dr. Patel's preservation of rights is even more pressing given that Optio Rx is seeking to specifically retain any and all causes of action against her. *See* Plan, Section 7.02; *see also Notice of Filing Plan Supplement to Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.*, Exhibit B (Schedule of Retained Causes of Action) [Docket No. 348].

*IV.     The Plan unfairly discriminates against General Unsecured Claims in favor of General Unsecured Trade Claims.*

32.     The Plan proposes to pay Allowed General Unsecured Trade Claims (Class 5) **in full** while cancelling, releasing, and extinguishing Other General Unsecured Claims (Class 6) **without any distribution**. *See* Plan, Section 3.04(e) (highlighting added). Holders of Claims in Class 6 are conclusively presumed to have rejected the Plan. *Id.*

33.     The requirements for confirmation are set forth in Section 1129 of the Bankruptcy

Code. In a case such as this one, in which an impaired class does not vote to accept the plan, the plan proponent must show that the plan meets the additional requirements of Section 1129(b), including the requirements that the plan does not unfairly discriminate against dissenting classes and the treatment of the dissenting classes is fair and equitable *In re Exide Techs*, 303 B.R. 48, 58 (Bankr. D. Del. 2003). In order to confirm the Plan, the Debtors must show that (i) there is a reasonable basis for the Debtor' separate classification of the general unsecured creditors; and (ii) that the Debtors cannot confirm a plan absent the separate classification of unsecured claims. *Id.* at 78.

34.     The Debtors have failed to meet their burden of establishing that the separate classification of the general unsecured claims is both reasonable and necessary and does not discriminate unfairly as required by Section 1129(b)(1). The Plan cannot be confirmed for this additional reason.[5]

## CONCLUSION

35.     Dr. Patel respectfully requests that the Court deny confirmation of the Plan until the foregoing issues are addressed.

Dated:  September 3, 2024                    **GOLDSTEIN & MCCLINTOCK LLLP**

By: */s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk, Esq. (Bar ID 3320)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
marias@goldmclaw.com

*Counsel for Dr. Rinku Patel*

---

[5] Dr. Patel filed a bifurcated proof of claim in these Chapter 11 Cases: a priority claim in the amount of $15,150 and a general unsecured claim in the amount of $1,511,924.50. *See* Claim No. 72. Under the current iteration of the Plan, with respect to the unsecured portion of her claim, Dr. Patel is conclusively presumed to reject the Plan. *See* Plan, Section 3.04(f). However, Dr. Patel received a *Notice of Non-Voting Status of Holders of Unimpaired Claims Conclusively Presumed to Accept the Debtors' Plan of Reorganization Under Chapter 11 of the Bankruptcy Court*. The Debtors' treatment and classification of Dr. Patel's claim is unclear. For the avoidance of doubt, Dr. Patel expressly votes to reject the Plan and does not opt-into the third-party releases.

## CERTIFICATE OF SERVICE

I, Maria Aprile Sawczuk, certify that on September 3, 2024, in addition to the Court's CM/ECF notification, I caused true and correct copies of *Dr. Rinku Patel's Objection to Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* to be served in the manner indicated below.

By: */s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk, Esq. (Bar ID 3320)

**Debtors via First Class Mail**:
Optio Rx, LLC, *et al.*
Attn: Leo LaFranco, Chief Financial Officer
3701 Commercial Avenue, Suite 14
Northbrook, Illinois 60061

**Counsel to the Debtors via First Class Mail & Electronic Mail**:
Chipman Brown Cicero & Cola, LLP
Attn: William E. Chipman, Jr. & Mark D. Olivere
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

William E. Chipman, Jr., Esq. (chipman@chipmanbrown.com);
Mark D. Olivere, Esq. (olivere@chipmanbrown.com);

**Office of the United States Trustee for the District of Delaware via First Class Mail & Electronic Mail**:
J. Caleb Boggs Federal Building
Attn: Jonathan W. Lipshie
844 North King Street, Suite 2207
Lockbox #35
Wilmington, Delaware 19801

Jonathan W. Lipshie, Esq. (jon.lipshie@usdoj.gov)

**Counsel to the DIP Lenders via First Class Mail & Electronic Mail**:
DLA Piper LLP (US)
Attn: Stuart Brown
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801

Stuart Brown, Esq. (stuart.brown@dlapiper.com)

**Counsel to the Official Committee of Unsecured Creditors via First Class Mail & Electronic Mail**:
Saul Ewing LLP
Attn: Evan T. Miller
1201 North Market Street, Suite 2300
Wilmington, Delaware 19801

Evan T. Miller, Esq. (evan.miller@saul.com)