## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| OPTIO Rx LLC, *et al.*, [1] | : | Case No. 24-11188 (TMH) |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Hearing Date: Sept. 13, 2024 at 11:30 a.m. ET** |
| | : | **Objections Due: Sept. 3, 2024 at 4:00 p.m. ET** |
| | : | **(extended for U.S. Trustee to Sept. 4)** |
| | : | |
| | : | **Re:  D.I. 257** |

### UNITED STATES TRUSTEE'S OBJECTION TO THE
### DEBTORS' AMENDED PLAN OF REORGANIZATION

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his counsel, files this objection (the "Objection") to the *Amended Joint Chapter 11 Plan of Reorganization of Optio RX LLC, et al.* ("Plan") filed at D.I. 257, and in support of his Objection, states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

**PRELIMINARY STATEMENT**[2]

1. The Debtors' Plan should not be confirmed because: (1) to the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the Plan's exculpation provision is impermissibly overbroad in contravention of Third Circuit precedent; (2) the Third-Party Release of "Related Parties" is impermissibly vague; (3) the injunction enforcing the exculpation and Third-Party Release is not warranted; (4) the Debtor Release does not contain exceptions for certain "bad acts"-type conduct; and (5) the Debtors propose to treat the entire Plan as a settlement without having a basis for doing so.

**JURISDICTION AND STANDING**

2. Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine confirmation of the Plan and this Objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes

---

[2] Undersigned counsel believes that the U.S. Trustee has reached agreement with the Debtors, subject to the Debtors' consultation with certain other parties, on changes to the Plan that would address the U.S. Trustee's issues pertaining to (i) case closing procedures and (ii) payment of statutory fees and related reporting. In the event that such agreement is not finalized, the U.S. Trustee reserves the right to supplement this Objection.

beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

5. The U.S. Trustee has standing to be heard on the Plan pursuant to 11 U.S.C. § 307.

**BACKGROUND**

6. On June 7, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

7. On June 20, 2024, the U.S. Trustee appointed a statutory committee of unsecured creditors in these cases ("Committee").

8. On June 7, 2024, the Debtors filed their disclosure statement [D.I. 20] and plan of reorganization [D.I. 21].

9. On June 24, 2024, the Debtors filed their motion to approve the Debtors' disclosure statement and certain solicitation procedures. [D.I. 76].

10. On July 29, 2024, the Debtors filed an amended disclosure statement [D.I. 258] and the Plan. [D.I. 257].

11. On August 1, 2024, the Court entered the Order approving the Disclosure Statement and solicitation procedures. [D.I. 276]. The Court set the voting and confirmation objection deadlines for September 3, 2024. [D.I. 276]. The confirmation hearing was scheduled for September 13, 2024 at 10:30 a.m. ET. [D.I. 276].

3

12. Section 7.01 of the Plan, titled "General Compromise and Settlement of Claims," provides:

> As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases and other benefits provided pursuant to the Plan, upon the Effective Date, **the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made or treatment provided on account of such Allowed Claim or Interest.**
>
> **The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests and controversies pursuant to Bankruptcy Rule 9019. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. Subject to Article VI hereof, all treatment of Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final**. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against and Interests in or against any of the Debtors and their Estate and Causes of Action against other Entities.

Plan § 7.01 (emphasis added).

13. Section 7.02 of the Plan, titled "Releases By Debtor" (the "Debtor Release[s]"), provides:

> To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by

4

each of the Debtors, the Reorganized Debtors and their Estates, including any successors to the Debtors or any estates representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for or because of the foregoing Entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort or otherwise, that any of the Debtors, the Reorganized Debtors or their Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of a Holder of any Claim against, or Interest in, the Debtors or other Entity, based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership or operation thereof), purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against any of the Debtors), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Restructuring Support Agreement and related prepetition transactions, any Definitive Document, the Disclosure Statement, the New Governance Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the New Governance Documents, the Disclosure Statement, the Exit Facility, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of the new preferred and common equity shares or units of Online Pharmacy Holdings LLC pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing, in each case taking place on or before the Effective Date. For the avoidance of doubt, the following individuals are not, and shall not be deemed to be, Released Parties: (i) Greg Savino, (ii) Jordana Siegel, (iii) Rinku Patel, (iv) Crestview City Pharmacy, Inc., (v) Jennifer Reshay Densman, (vi) Chistopher Neil Densman, (vii) Bryan Henderson, (viii) Amanda Davey, (ix) Claudia Barnett, (x) Kari Waites, (xi) Victoria Ballard, (xii) Morgan Meeks, (xiii) Kyndall Barber, (xiv) Ellen Stafford, (xv) Sergio Zepeda, (xvi) Cold Bore Capital Management, LLC, and (xvii) Marc Wank.

> Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any liabilities arising after the Effective Date or (ii) the rights of any of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of any of the Debtors under any employment agreement with a current or former employee of any the Debtors, subject to applicable nonbankruptcy law.
>
> Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which include by reference each of the related provisions and definitions contained in the Plan, and further shall constitute the Bankruptcy Court's finding that the Debtor Releases are: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Releases; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors or the Debtors' Estates asserting any Cause of Action released pursuant to the Debtor Releases.

Plan § 7.02. The Debtor release does not contain an exception for gross negligence, willful misconduct, or fraud.

    14.    Section 7.03 of the Plan, titled "Releases by Holders of Claims and Interests" (the "Third-Party Release[s]"), provides:

> To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, effective as of the Effective Date, except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of any of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, any of the Debtors (including the capital structure, management, ownership or operation thereof), the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual

arrangements between any of the Debtors [sic] any other Released Party, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against any of the Debtors), intercompany transactions between or among any of the Debtors or an affiliate of a Debtor and another Debtor or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Restructuring Support Agreement and related prepetition transactions, any Definitive Document, the Disclosure Statement, the New Governance Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the New Governance Documents, the Disclosure Statement, the Plan, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of the new preferred and common equity shares or units of Online Pharmacy Holdings LLC pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing, in each case taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any liabilities arising after the Effective Date, (ii) the rights of any current employee of any of the Debtors under any employment agreement or plan or (iii) rights of Holders of Allowed Claims or Allowed Interests to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Plan § 7.03.

15. In the "Exculpation" provision (section 7.05) of the Plan, the Debtors state:

7

As of the Effective Date, except as otherwise specifically provided in the Plan or Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim other than those arising out of or relating to any act by or omission of an Exculpated Party that have been determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on the Plan, distribution of consideration pursuant to the Plan and, to the extent applicable, the offer, issuance and sale or purchase of securities pursuant to the Plan and, therefore, are not, and on account of such solicitation, distribution and issuance shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan, such distributions made pursuant to the Plan and issuance of securities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth above do not release (i) any liabilities arising after the Effective Date, (ii) the rights of any current employee of any of the Debtors under any employment agreement or plan or (iii) the rights of Holders of Allowed Claims or Allowed Interests to receive treatment in accordance with the Plan.

Plan § 7.05.

16. The Plan's "Injunction" (section 7.06) provides:

Effective as of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Enjoined Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, any of the Debtors, any of the Reorganized Debtors, the Exculpated Parties or the Released Parties and their respective assets and properties: (i) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting or enforcing any encumbrance of any kind against such Entities or the property or the Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion

requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Plan § 7.06.

## ARGUMENT

### I. The Exculpation Provision is Overbroad in Contravention of Third Circuit Precedent.

17. To the extent exculpation is permissible beyond the provisions of section 1125(e), this Circuit has only approved exculpations that are limited to estate fiduciaries—which this Court has defined as "estate professionals, the Committees and their members, and the Debtors' directors and officers," *In re Washington Mut., Inc.*, 442 B.R. 314, 351 (Bankr. D. Del. 2011)—and cover acts or omissions from the Petition Date to the Effective Date. The Plan cannot be confirmed because the Exculpation provision exceeds both these limits.

18. First, the Plan's definition of Exculpated Parties is inconsistent with controlling case law because it is not limited to estate fiduciaries. In *In re PWS Holding Corp.*, the United States Court of Appeals for the Third Circuit considered whether an official committee of unsecured creditors could be exculpated and held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of immunity to members of the unsecured creditors' committee. *See* 228 F.3d 224, 246 (3d Cir. 2000). This Court has repeatedly interpreted *PWS Holding* as requiring a party's exculpation to be based upon its status as an estate fiduciary. *See Indianapolis Down*s, 486 B.R. 286, 304 (Bankr. D. Del. 2013); *In re PTL Holdings LLC, No.* 11-12676 (BLS), 2011 WL 5509031, at *12 (Bankr. D. Del. Nov. 10, 2011); *In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D.

9

Del. 2011); *Washington Mut.*, 442 B.R. at 350-51.

19. Here, the Plan's definition of Exculpated Parties includes "Related Parties," many who are not fiduciaries of the estates -- namely, each of the Debtors, affiliates, and their respective fund advisors, attorneys, accountants, investment committees, agents, and other professionals, and their successors and assigns. *See Washington Mut.*, 442 B.R. at 350-51 ("[An] exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers.").[3]

20. Additionally, the Reorganized Debtors are covered by the exculpation clause even though they will not come into existence until the Plan's effective date and, by extension, should not receive exculpation. *See Washington Mut.*, 442 B.R. at 348 (rejecting the release of the liquidating trustee, because, *inter alia*, the trustee has not yet taken any action for which he needed a release).

21. Second, the temporal scope of the exculpation provision is overly broad because it encompasses both prepetition and post-Effective Date conduct. For example, the Debtors, the Reorganized Debtors and all Released Parties are exculpated for "the pursuit of Consummation of the Plan, the administration and implementation of the Plan," and the "distribution of property under the Plan." Such conduct exceeds the post-petition, pre-effective date boundaries set by this Court for an exculpation provision that is appropriate in scope.

22. In addition, the definition of Exculpated Claims covers "any other related act or omission, transaction, agreement, event or other occurrence taking place prior to, on or after the

---

[3] This portion of the Objection may be resolved by changes to the Plan. The U.S. Trustee includes this argument here in an abundance of caution; Plan revisions were not filed as of the time this Objection was filed.

10

Petition Date." Plan § 101(ccc). The Exculpation provision excludes "any liabilities arising after the Effective Date." Plan § 7.05. The Exculpation, therefore, is not limited to actions and omissions taking place during the bankruptcy case, but instead extends back to pre-petition activity that cannot be covered by a plan exculpation provision. *See Washington Mut.*, 442 B.R. at 350 (exculpation covers "actions in the bankruptcy case," not before the case was filed; citing *PWS Holding*, 228 F.3d at 246).

## II. The Third-Party Release of "Related Parties" Is Impermissibly Vague and Nonconsensual.

23. The Combined Plan includes a recitation of the Third-Party Release and related definitions. However, the Debtors did not serve any part of the solicitation package, or the confirmation hearing notice, or any other document on the numerous Related Parties that would notify them that (i) they are "Releasing Parties" under the Plan and (ii) the Plan will strip them of their right to pursue their direct claims against a large number of non-debtor entities for no consideration. Moreover, it likely would be impossible for the Debtors to arrange to provide such notice, because the identity of many of the Related Parties – such as all agents of all Related Parties – are not, and cannot be, known by the Debtors.

24. The Debtors include "Related Parties" in the definitions of both "Releasing Parties" (Plan § 1.01 (uuuuuu)) and "Released Parties" (Plan § 1.01(vvvvv)). Related Parties is defined in Plan § 1.01 (ttttt) as:

> collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former affiliates, and such party's and such affiliates' current and former affiliates, directors, trustees, managers, officers, investment committee, members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns,

11

subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, employees, agents, management companies, fund advisors or managers, managed funds (including any beneficial holders for the account of whom such funds are managed), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors (including, for the avoidance of doubt, any attorneys, investment bankers or other professionals and advisors retained by any current and former director and manager in his or her capacity as director or manager of such person) and any such Person's or Entity's respective heirs, executory, estates and nominees.

25. In *Folger Adam Security, Inc. v. DeMatteis/MacGregor*, 209 F.3d 252 (3d Cir. 2000), the Third Circuit ruled that "[d]ue process requires 'notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections.'" 209 F.3d at 265 (citations omitted).

26. The Debtors' proposed solicitation procedures will not provide notice to the Related Parties that is "reasonably calculated, under all the circumstances, to apprize [them] of the pendency of the action and afford them an opportunity to present their objections" to having Third-Party Releases extracted from them. *Id.* In fact, most, if not all, of the Related Parties will receive no notice at all, because they are not themselves creditors or interest holders of the Debtors. And none of the Related Parties have been asked to consent to the releases, meaning the Plan would be imposing third-party releases on them without their consent in violation of *Purdue*. Therefore, the Combined Plan's provision that Related Persons are deemed to give releases to non-debtors precludes its confirmation. *See Harrington v. Purdue Pharma L.P.*, 603 U.S. ___, 144 S. Ct. 2071, 2086 (2024) ("nothing in the bankruptcy code contemplates (much less authorizes)" a non-consensual release of direct claims held by creditors against non-debtor third parties); *In re Boy Scouts of America and Delaware BSA, LLC*, 642 B.R. 504, 678 (Bankr. D. Del. 2022) (stating that

the Court was unable to find that the 22 categories of "Related Releasing Parties" received notice, and because Court had concluded that "a request for opt-out consent must be grounded in adequate notice, it was inconsistent to permit releases from persons who do not receive notice by virtue of creditor (or shareholder) status."); *see also Patterson v. Mahwah Bergen Ret. Grp., Inc.*, 636 B.R. 641, 660 (E.D. Va. 2022) (noting that "[t]he Bankruptcy Court did not order that any notice or opt-out forms be sent to all of the Releasing Parties, including the current and former employees, consultants, accountants or attorneys of Debtors, their affiliates, lenders, creditors or interest holders.").

27.     Similarly, the term "Released Parties" is ill-defined in the Third-Party Release because it includes Related Parties.  As noted above, the Debtors are not able to list the entities that comprise their Related Parties.  By extension, the Debtors propose that "opt in" parties release categories of entities that are not fully known.  Such parties cannot consent to giving up their rights against unidentified entities.

**III.     The Injunction Enforcing the Exculpation and Third-Party Release Is Not Warranted.**

28.     This Court also may not approve the injunction (Plan § 7.06) enforcing the "opt in" release by non-debtor parties in interest against other non-debtors.  Even if releases between non-debtors are consensual, there is no Code provision that authorizes chapter 11 plans or confirmation orders to include injunctions to enforce them.  Further, such an injunction is not warranted by the traditional factors that support injunctive relief because, if the release is truly consensual, there is no threatened litigation and no need for an injunction to prevent "immediate and irreparable harm" to either the estates or the released parties.  A consensual release may serve as an affirmative defense in any ensuing, post-effective date litigation between the third-party releasees and

13

releasors, but there is no reason for this Court to be involved with the post-effective date enforcement of those releases. Moreover, this injunction essentially precludes any party deemed to consent to this release from raising any issue with respect to the effectiveness or enforceability of the release (such as mistake or lack of capacity) under applicable non-bankruptcy law.

29. Similarly, to the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), there is no statutory authority in the Code that justifies an injunction to enforce an exculpation, and the Debtors have shown no need for an injunction to prevent "immediate and irreparable harm" to either the estates or the released parties.

**IV.     The Debtor Release Should Contain an Exception for Bad Acts.**

30. The Plan provides for the Debtors and their estates to provide broad releases of all of the Released Parties, which include the pre- and post-petition lenders, Noteholders, Consenting Lenders, the Debtors' present and former directors and officers, employees, agents, managers, advisors, members, and professionals. The release covers not just actions and omissions relating to the bankruptcy cases, but also include any act or omission that took place prior to the Effective Date "relating to or in any manner arising from…the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party." Plan, § 7.02. Additionally, as noted above, given that they are "Released Parties," the Debtors are included in the third-party release provision

31. The five factors set forth in *In re Zenith Electronics Corp.,* 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Investment Fund, Inc.,* 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994), have been employed by courts to determine whether, notwithstanding § 524(e) of the Code, a plan may provide for releases by debtors of non-debtor entities. *See Tribune* 464 B.R.

at 186; *Washington Mut.*, 442 B.R. at 346; *In re Spansion, Inc.* 426 B.R. 114, 142-43 n. 47 (Bankr. D. Del. 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004). The five factors are:

    a. identity of interests between debtor and non-debtor releasee, so that a suit against the non-debtor will deplete the estate's resources (e.g., due to a debtor's indemnification of a non-debtor);

    b. substantial contribution to the plan by non-debtor;

    c. necessity of release to the reorganization;

    d. overwhelming acceptance of plan and release by creditors; and

    e. payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*Tribune*, 464 B.R. at 186 (citing *Washington Mut.*, 442 B.R. at 346). "The factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *Tribune*, 464 B.R. at 186 (citing *Washington Mutual*, 442 B.R. at 346). The Debtors have the burden to establish whether the *Zenith/Master Mortgage* factors have been met as to each of the non-debtors who are the beneficiaries of the Debtor Releases.

32. The Debtor Release has no exception for known or unknown claims of actual fraud, willful misconduct, criminal acts or gross negligence. The lack of such exceptions is objectionable for at least three reasons. First, non-debtor parties who are to receive a release from the Debtors should not be released from claims as to which a debtor could not be discharged under section § 523(a) of the Bankruptcy Code. *See* 11 U.S.C. § 523(a)(2, 4, 6) (barring claims of fraud and willful misconduct from discharge).

33. Second, the Debtors are releasing, among others, all of their current and former directors, officers and employees from all claims, whether known or unknown. If, for example, it is later learned that a current or former officer or employee of one the Debtors misappropriated Debtor funds at any time up to the Effective Date, it appears that any claim based on such misappropriation would be released under the Plan.

34. Third, the Debtor Release releases claims against certain fiduciaries of the estate, such as those of the Debtors' directors and officers who served during these cases, and professionals the Debtors retained in these cases. To the extent that applicable law permits exculpation beyond that provided in 11 U.S.C. § 1125(e), such exculpation must carve out claims of intentional misconduct and gross negligence, as the Exculpation provision in the Plan does. However, because the Debtor Release does not have carve-outs for intentional misconduct and gross negligence, these estate fiduciaries would obtain immunity from such claims even though such immunity is not permitted under the Third Circuit's ruling in *PWS Holding*. As recognized by this Court in *Washington Mutual*, the receipt of Debtor releases by exculpated parties is "unnecessary, duplicative and ***exceed[s] the limits of what they are entitled to receive***" under the exculpations. *Washington Mut.,* 442 B.R. at 350 (emphasis added).

35. Similarly, in *Tribune*, this Court rejected the release by the debtors of their Related Persons, which included all the debtors' "current and former officers, directors, employees, attorneys, advisors and professionals." 464 B.R. at 187. Applying the *Zenith/Master Mortgage* factors, the Court stated:

> There is no basis in the record to support any finding that any "substantial contribution" has been made by the Debtors' Related Persons or that a release is necessary to the reorganization. Despite acceptance by a majority of creditors, I cannot conclude that the

16

> Plan's release of the Debtors' Related Persons, based on this record, would be fair.

*Id*. at 188.

36. In *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), the Court also rejected the debtors' proposed releases of their officers, directors, employees and professionals, holding that:

> [T]he release of the debtors' pre-petition claims against the officers, directors, employees and professionals of the debtors is beyond the ***post-petition focus*** of the *PWS Holding Corporation* [228 F.3d 224 (3d Cir. 2000)] release clause. . . . As in *Zenith*, the officers and directors of the debtors no doubt made meaningful contribution to the reorganization by designing and implementing the operational restructuring of the companies, and negotiating the financial restructuring with parties in interest. However, the officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of "assets" to the reorganization.

*Genesis,* 266 B.R. at 606–07 (emphasis added).

37. Because an evidentiary predicate is necessary to approve the Debtor Releases, the U.S. Trustee reserves argument on this issue until the record at the confirmation hearing is closed. At a minimum, however, the Plan cannot be confirmed unless exceptions are added to the Debtor Release for known and unknown claims arising from fraud, intentional misconduct, criminal acts and gross negligence.

### V.    The Plan Is Impermissibly Deemed to Be a Settlement.

38. Section 1123(b)(3)(A) of the Bankruptcy Code allows a plan proponent to "provide for [] the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A) (emphasis added).

39. Section 1123(b)(3) only allows a debtor to settle claims it has against others; it does

not allow a debtor to settle claims that creditors and interest holders may have against it, which is what Plan § 6.9 seeks to do. *See Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 496 (B.A.P. 9th Cir. 2003) ("The only reference in [section 1123(b)] to adjustments of claims is the authorization for a plan to provide for 'the settlement or adjustment of any claim or interest belonging to the debtor or to the estate.' . . . It is significant that there is no parallel authorization regarding claims against the estate.") (quoting section 1123(b)(3)(A)) (internal citation omitted).

40. The resolution of claims against the Debtors is governed by sections 1129 and 1141.

41. A plan may incorporate one or more negotiated settlements, but a plan is not itself a settlement. Sending a plan to impaired creditors for a vote is not equivalent to parties negotiating a settlement among themselves. A "settlement" is "an agreement ending a dispute or lawsuit." BLACK'S LAW DICTIONARY (10th ed. 2014). An "agreement" is "a mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." *Id.*

42. Approval of settlements is governed by Federal Rule of Bankruptcy Procedure 9019, which provides that, "[o]n motion by the trustee [or chapter 11 debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." But, because a "settlement" requires an agreement between the settling parties, Rule 9019 governs only parties that have entered into an express settlement agreement; it is not a blanket provision allowing general "settlements" to be unilaterally imposed upon broad swaths of claimants that have no formal agreement with any party to "settle" their claims.

43. The decision whether to approve a settlement under Rule 9019 is left to the sound

discretion of the bankruptcy court, which "must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'" *Washington Mut.*, 442 B.R. at 338 (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)). In contrast, chapter 11 plans are subject to the requirements of Bankruptcy Code sections 1123 and 1129. What may be permissible under a negotiated settlement agreement that is considered "fair, reasonable, and in the best interest of the estate" outside of the plan context is different from what may be permissible under a plan.

44. In Plan § 7.01, the Debtors attempt to impermissibly designate the entire Plan as a Rule 9019 "settlement." Further, it appears § 7.01 is not limited to settling claims belonging to the Debtor or the estate. Thus, § 7.01 exceeds the scope of what can be settled under section 1123(b)(3)(A). Unless § 7.01 is narrowed so that (i) it pertains only to claims the Debtors are settling against others and (ii) the Plan itself is not a settlement, the Plan does not comply with section 1123(b)(3)(A) and does not satisfy section 1129(a)(1).

45. Similarly, Plan § 7.03 purports to treat the opt-in releases as a settlement and compromise under Rule 9019. The reference to Rule 9019 is completely inappropriate because the provision primarily addresses the exchange of releases between non-debtors, which is beyond the ambit of the Bankruptcy Code (including section 1123(b)(3)(A)) and the Federal Rules of Bankruptcy Procedure (including Rule 9019).[4] Further, for the reasons discussed in the next section, given that there are separate legal standards governing debtor and non-debtor releases, the Debtors should be removed from the ambit of § 7.03 in order to ensure that the releases they are giving are appropriately limited. Consequently, the settlement and compromise language

---

[4] 28 U.S.C. § 2075 of title 28 commands that bankruptcy rules shall not expand substantive rights; Rule 9019 cannot provide a settlement right that does not exist under applicable law.

contained in § 7.03 should be removed from the Plan.

## CONCLUSION

In conclusion, for the reasons specified above, the U.S. Trustee requests that confirmation of the Plan be denied, or in the alternative, that the Court direct the Plan be modified to address his concerns listed above.

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

**By:** */s/ Jonathan W. Lipshie*
  Jonathan W. Lipshie
  Trial Attorney
  U.S. Department of Justice
  Office of the U.S. Trustee
  844 N. King Street, Room 2207
  Wilmington, DE 19801
  (202) 567-1124
  Jon.Lipshie@usdoj.gov

Dated: September 4, 2024