# EXHIBIT A

**(Blackline)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (*Jointly Administered*) |

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF OPTIO RX, LLC, *et al.*

CHIPMAN, BROWN, CICERO & COLE, LLP

William E. Chipman, Jr.
David Carickhoff
Mark. D. Olivere
Alan M. Root
Hercules Plaza
1313 North Market Street
Suite 5400
Wilmington, Delaware 19801
Email: Chipman@chipmanbrown.com
          Carickhoff@chipmanbrown.com
          Olivere@chipmanbrown.com
          Root@chipmanbrown.com

*Counsel to the Debtors and Debtors-in-Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60061.

**TABLE OF CONTENTS**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME AND GOVERNING LAW ................................................................................................1

    Section 1.01    Defined Terms ........................................................................................1

    Section 1.02    Rules of Interpretation ...................................................................~~16~~17

    Section 1.03    Computation of Time ....................................................................~~16~~17

    Section 1.04    Governing Law .............................................................................~~17~~18

    Section 1.05    References to Monetary Figures ...................................................~~17~~18

    Section 1.06    Reference to the Debtors or the Reorganized Debtors ..................~~17~~18

    Section 1.07    Consent Rights of Consenting Lenders ........................................~~17~~18

    Section 1.08    Controlling Document ..................................................................~~17~~18

ARTICLE II ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES ..........................................................................................................................~~18~~19

    Section 2.01    Administrative Claims ..................................................................~~18~~19

    Section 2.02    Professional Fee Claims ...............................................................~~18~~19

    Section 2.03    Priority Tax Claims ......................................................................~~19~~20

    Section 2.04    DIP Facility ..................................................................................~~20~~21

    Section 2.05    Statutory Fees ...............................................................................~~20~~21

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....~~20~~22

    Section 3.01    Deemed Substantive Consolidation ..............................................~~20~~22

    Section 3.02    Classification of Claims and Interests ..........................................~~21~~22

    Section 3.03    Summary of Classification for the Reorganized Debtors ..............~~21~~22

    Section 3.04    Classification and Treatment of Claims and Interests ..................~~22~~23

    Section 3.05    Special Provisions Regarding Reinstated Unimpaired Claims ......~~26~~29

    Section 3.06    Voting Classes, Presumed Acceptance by Non-Voting Classes ...~~27~~30

    Section 3.07    Elimination of Vacant Classes .....................................................~~27~~30

    Section 3.08    Controversy Concerning Impairment ...........................................~~27~~30

    Section 3.09    Intercompany Interests .................................................................~~27~~30

    Section 3.10    Subordinated Claims ....................................................................~~28~~31

    Section 3.11    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ........~~28~~31

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ................................~~28~~31

    Section 4.01    Restructuring Transactions ...........................................................~~28~~31

    Section 4.02    Sources of Cash for Plan Distributions ........................................~~29~~32

| Section 4.03 | Exit Facility | ~~29~~32 |
| Section 4.04 | Junior Preferred Equity | ~~29~~32 |
| Section 4.05 | Continued Corporate Existence | ~~29~~32 |
| Section 4.06 | Existing Governance Documents | ~~30~~33 |
| Section 4.07 | Members of the Governing Bodies | ~~30~~33 |
| Section 4.08 | Vesting of Assets in the Reorganized Debtors | ~~30~~33 |
| Section 4.09 | Section 1145 Exemption | ~~31~~34 |
| Section 4.10 | Cancellation and Surrender of Instruments and Agreements | ~~31~~34 |
| Section 4.11 | Corporate Action | ~~31~~34 |
| Section 4.12 | Section 1146 Exemption from Certain Taxes and Fees | ~~32~~35 |
| Section 4.13 | Preservation of Causes of Action | ~~32~~35 |
| Section 4.14 | Single Satisfaction of Claims | ~~33~~36 |

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ~~33~~36

| Section 5.01 | Assumption of Executory Contracts and Unexpired Leases | ~~33~~36 |
| Section 5.02 | Claims Based on Rejection of Executory Contracts or Unexpired Leases | ~~34~~37 |
| Section 5.03 | Cure of Defaults and Objections to Cure Amounts and Assumption for Executory Contracts and Unexpired Leases Assumed | ~~34~~38 |
| Section 5.04 | Modifications, Amendments, Supplements, Restatements or Other Agreements | ~~36~~39 |
| Section 5.05 | Reservation of Rights | ~~36~~39 |
| Section 5.06 | Contracts and Leases Entered Into After the Petition Date | ~~36~~39 |
| Section 5.07 | Assumption of Insurance Policies | ~~37~~40 |
| Section 5.08 | Assumption of the Employee Compensation and Benefits Program | ~~37~~40 |
| Section 5.09 | Indemnification Obligations | ~~38~~41 |
| Section 5.10 | Nonoccurrence of Effective Date | ~~38~~41 |

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ~~38~~41

| Section 6.01 | Record Date for Distributions | ~~38~~41 |
| Section 6.02 | Timing of Distributions | ~~38~~41 |
| Section 6.03 | Disbursing Agent | ~~39~~42 |
| Section 6.04 | Delivery of Distributions and Undeliverable or Unclaimed Distributions | ~~39~~42 |
| Section 6.05 | Fractional Distributions | ~~40~~43 |
| Section 6.06 | Undeliverable Distributions and Unclaimed Property | ~~40~~43 |
| Section 6.07 | Manner of Payment | ~~40~~44 |
| Section 6.08 | Compliance with Tax Requirements and Allocations | ~~41~~44 |

Section 6.09    Allocation Between Principal and Interest    4144

Section 6.10    Setoffs and Recoupment    4144

Section 6.11    No Postpetition or Default Interest on Claims    4245

ARTICLE VII SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS    4245

Section 7.01    General Compromise and Settlement of Claims, Interests and Controversies    4245

Section 7.02    Releases by the Debtor    4346

Section 7.03    Releases by Holders of Claims and Interests    4447

Section 7.04    Discharge of Claims    4548

Section 7.05    Exculpation    4649

Section 7.06    Injunction    4649

Section 7.07    Term of Injunctions or Stays    4750

Section 7.08    Protection Against Discriminatory Treatment    4750

Section 7.09    Release of Liens, Claims and Interests    4750

ARTICLE VIII CONDITIONS PRECEDENT TO CONFIRMATION  OF THE PLAN AND THE EFFECTIVE DATE    4851

Section 8.01    Conditions Precedent to Confirmation    4851

Section 8.02    Conditions Precedent to the Effective Date    4851

Section 8.03    Waiver of Conditions    4953

Section 8.04    Effect of Failure of Conditions    5053

Section 8.05    Substantial Consummation    5053

ARTICLE IX MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN    5053

Section 9.01    Modification and Amendments    5053

Section 9.02    Effect of Confirmation on Modifications    5155

Section 9.03    Revocation or Withdrawal of the Plan    5155

ARTICLE X RETENTION OF JURISDICTION    5155

ARTICLE XI MISCELLANEOUS PROVISIONS    5458

Section 11.01    Tax Structure    5458

Section 11.02    Immediate Binding Effect    5458

Section 11.03    Additional Documents    5458

Section 11.04    Reservation of Rights    5458

Section 11.05    Successors and Assigns    5559

Section 11.06    Notices    5559

Section 11.07    Entire Agreement    5660

- iii -

Section 11.08   Severability of Plan Provisions ........................................... ~~56~~60

Section 11.09   Exhibits ........................................................................... ~~56~~60

Section 11.10   Votes Solicited in Good Faith ............................................ ~~56~~61

Section 11.11   Closing of Chapter 11 Cases ............................................. ~~57~~61

Section 11.12   Document Retention .......................................................... ~~57~~61

Section 11.13   Further Assurances ............................................................ ~~57~~61

Section 11.14   Claims Against Other Debtors ........................................... ~~58~~62

Section 11.15   Transaction Expenses ....................................................... ~~58~~62

**INTRODUCTION**

The Debtors propose the Plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the respective meanings set forth in Section 1.01 of the Plan or the Bankruptcy Code. Although proposed jointly for administrative purposes, the Plan also seeks entry of a Bankruptcy Court order deeming the substantive consolidation of the Debtors' Estates into a single Estate for certain limited purposes related to the Plan, including voting, Confirmation, and distribution. As a result of the deemed substantive consolidation of the Estates, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate legal existence of the Debtors. The Plan will not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to voting and distribution rights under the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan and certain related matters.

ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME AND GOVERNING LAW**

**Section 1.01   Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form:

(a)       "AAL" means the Agreement Among Lenders, dated as of November 3, 2022 (as amended), between and among the First Out Holders, the Last Out Holder and the Prepetition Admin Agent.

(b)       "Administrative Claim" means any Claim for the costs and expenses of administration of the Chapter 11 Cases pursuant to section 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors, other than the Professional Fee Claims.

- 1 -

(c)      "<u>Administrative Expense Claim Bar Date</u>" means the date that is forty-five (45) days after notice of entry of the Effective Date, which notice shall set forth such deadline and be served on all parties known by the Debtors to hold or potentially hold Administrative Claims.

(d)      "<u>Affiliate</u>" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if such Person was a Debtor.

(e)      "<u>Allowed</u>" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors in their Schedules as other than "disputed, contingent or unliquidated" (as such terms are defined in the Schedules); (b) a proof of Claim that has been Filed and as to which the Debtors, the Reorganized Debtors, or other parties-in-interest have not Filed an objection by the applicable Claims Objection Bar Date; (c) a Proof of Claim that is neither Disputed nor has been disallowed by a Final Order; (d) a Claim that is allowed pursuant to the terms of this Plan; or (e) a Claim that is estimated pursuant to section 502(c) of the Bankruptcy Code, unless otherwise and explicitly provided by order of the Bankruptcy Court.

(f)      "<u>Aves Settlement Agreement</u>" means that certain Settlement Term Sheet, dated as of June 29, 2024, attached as Exhibit E to the Disclosure Statement and incorporated herein as though set forth at length below.  Certain terms of the Aves Settlement Agreement are expressly set forth herein.  The failure to include any provision of the Aves Settlement Agreement in the Plan shall not diminish or impair the remaining terms or conditions of the Aves Settlement Agreement and notwithstanding anything to the contrary in the Plan, any inconsistencies between the Aves Settlement Agreement and the Plan shall be construed giving effect to the Aves Settlement Agreement.

(g)      "<u>Avoidance Actions</u>" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Company Parties, their Estates, or other parties in interest under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) or other applicable sections of the Bankruptcy Code or under similar or related local, state, federal or foreign statutes and common law, including fraudulent transfer laws.

(h)      "<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

(i)      "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware and, to the extent of any withdrawal of reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

(j)      "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

(k)        "Business Day" means any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the State of New York.

(l)        "Cash" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks or other similar items.

(m)        "Cash Consideration" means $350,000 (subject to the DIP Lender Clawback).

(n)        "Cause of Action" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license or franchise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws).  For the avoidance of doubt, the term "Cause of Action" includes (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (ii) the right to object to or otherwise contest Claims or Interests, (iii) any claim pursuant to section 362 of the Bankruptcy Code, Avoidance Actions, or chapter 5 of the Bankruptcy Code, (iv) any claim or defense, including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (v) any claim under any state or foreign law, including any fraudulent transfer or similar claim.

(o)        "CBC Pharma" means Non-Debtor CBC Pharma Holdco, LLC, the direct or indirect parent company of Optio Rx and each of the other Debtors.

(p)        "Challenges" shall have the meaning under the DIP Orders and shall be released Causes of Action under the Plan.

(q)        (p) "Chapter 11 Cases" means the cases pending for the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

(r)        (q) "Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code.

(s)        (r) "Claims Register" means the official register of Claims against or Interests in any of the Debtors maintained by the Solicitation Agent.

(t)        (s) "Class" means any group of Claims or Interests classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code.

(u)        (t) "Company" means Optio Rx, LLC and certain of its direct and indirect subsidiaries that are Debtors in these Chapter 11 Cases.

(v)     (u) "Company Parties" means, consistent with the Restructuring Support Agreement: (1) Optio Rx, LLC; (2) Braun Pharma, LLC; (3) Dr. Ike's PharmaCare, LLC; (4) Rose Pharmacy SA LLC; (5) Rose Pharmacy SF LLC; (6) Rose Pharmacy RM LLC; (7) Pet Apothecary, LLC; (8) Crestview Holdings, LLC; (9) SBH Medical, LLC; (10) H&H Pharmacy, LLC; (11) Enovex Pharmacy, LLC; (12) SMC Pharmacy, LLC; (13) SMC Lyons Holdings, LLC; (14) Baybridge Pharmacy, LLC; (15) Central Pharmacy, LLC; (16) Pro Pharmacy, LLC; (17) Healthy Choice Compounding LLC; (18) Oakdell Compounding Pharmacy, LLC; (19) The Pet Apothecary LLC; (20) Crestview Pharmacy, LLC; (21) SBH Medical, Ltd.; (22) Concierge Pharmacy, LLC; (23) Firstcare Pharmacy, LLC; (24) Easycare Pharmacy, LLC; and (25) Primecare Pharmacy, LLC.

(w)     (v) "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

(x)     (w) "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

(y)     (x) "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be, or may have been, continued from time to time.

(z)     (y) "Confirmation Order" means the order of the Bankruptcy Court approving the Disclosure Statement and confirming the Plan in the Chapter 11 Cases pursuant to section 1129 of the Bankruptcy Code in a form consistent with the consent rights of the parties to the Restructuring Support Agreement.

(aa)     (z) "Consenting Lender Advisors" means DLA Piper LLP (US) and counsel to the Last Out Holder.

(bb)     (aa) "Consenting Lenders" means the First Out Holders and the Last Out Holder that have executed and delivered counterpart signature pages to the Restructuring Support Agreement.

(cc)     (bb) "Consummation" means the occurrence of the Effective Date.

(dd)     (cc) "Convenience Claim" means a General Unsecured Claim in an amount of $500 or less, or a General Unsecured Claim that has been reduced by its Holder below $500.

(ee)     (dd) "Cure Claim" means a Claim based upon a monetary default, if any, by a Debtor on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code.

(ff)     (ee) "D&O Liability Insurance Policies" means all insurance policies of the Debtors or the Reorganized Debtors or any non-Debtor Affiliate for directors', officers', managers' and any other Insured (as defined in such policy) entities' liability.

- 4 -

(gg) ~~(ff)~~ "Debtors" means the above captioned debtors, in their capacity as debtors and debtors-in-possession in these Chapter 11 Cases.

(hh) ~~(gg)~~ "Definitive Documents" has the meaning set forth in the Restructuring Support Agreement.

(ii) ~~(hh)~~ "DIP Agent" means Loan Admin Co LLC, the administrative agent and the collateral agent for the DIP Lenders with respect to the DIP Facility.

(jj) ~~(ii)~~ "DIP Agent Advisor" means DLA Piper LLP (US).

(kk) ~~(jj)~~ "DIP Credit Agreement" means the debtor-in-possession financing agreement by and among certain Company Parties, the DIP Agent, and the DIP Lenders setting forth the terms of the DIP Facility, in accordance with the DIP Facility Term Sheet.

(ll) ~~(kk)~~ "DIP Documents" means, collectively, the DIP Credit Agreement and any other agreements, documents, and instruments delivered or entered into in connection therewith, including, without limitation, any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, and the Interim DIP Order and Final DIP Order.

(mm) ~~(ll)~~ "DIP Facility" means the loans under the debtor-in-possession financing facility on the terms and conditions set forth in the DIP Facility Term Sheet.

(nn) ~~(mm)~~ "DIP Facility Term Sheet" means the debtor-in-possession to exit financing, to be provided by the DIP Lenders and the Consenting Lenders, as applicable, as specified in the term sheet attached as Exhibit A to the Restructuring Support Agreement.

(oo) ~~(nn)~~ "DIP Lender Clawback" means, as applicable, (i) a dollar-for-dollar reduction in the Cash Consideration by the actual fees of professionals of the official committee of unsecured creditors (the "Committee") allowed on account of final fee applications of such professionals up to $100,000, (ii) a $350,000 reduction in the Cash Consideration if the actual fees of professionals of the Committee allowed on account of final fee applications of such professionals exceeds $100,000, and (iii) a dollar-for-dollar reduction in the amount and liquidation preference of the junior preferred equity received by the Noteholders by the amount (x) the actual fees of professionals of the Committee allowed on account of final fee applications of such professionals *plus* the expenses and professional costs incurred by the Debtors, the Consenting Lenders, and the DIP Lenders, and their respective agents, in defending or opposing any actions, motions, or objections brought by the Committee exceeds (y) $350,000.

(pp) ~~(oo)~~ "DIP Lenders" means the First Out Holders and Last Out Holder under the Prepetition Credit Agreement (or its or their affiliates or related funds).

(qq) ~~(pp)~~ "DIP Lien Secured Claims" means the allowed first-priority, perfected, enforceable and unavoidable secured claims granted to the DIP Lenders in the DIP Orders.

(rr)    (qq) "DIP Lien Conversion" means the conversion of 100% of the DIP Lenders' DIP Superpriority Claims into Exit Facility Claims to effect the Exit Capital Structure attached as an exhibit to the Restructuring Support Agreement on the Effective Date.

(ss)    (rr) "DIP Orders" means collectively the Interim DIP Order and the Final DIP Order.

(tt)    (ss)  "DIP Superpriority Claims" means the allowed superpriority administrative expense claims, granted to the DIP Lenders in the DIP Orders, in excess of the value of the Debtors' interests in the Collateral, if any.

(uu)    (tt) "Disbursing Agent" means the Reorganized Debtors, or the Entity or Entities chosen by the Reorganized Debtors, to make or facilitate distributions pursuant to the Plan, which Entity may include the Solicitation Agent.

(vv)    (uu) "Disclosure Statement" means the disclosure statement with respect to the Plan, including all exhibits, appendices, schedules, ballots and related documents thereto, as amended, supplemented or modified from time to time, to be approved by the Confirmation Order.

(ww)    (vv) "Distribution Date" means the date occurring as soon as reasonably practicable after the Effective Date when distributions under the Plan shall commence.

(xx)    (ww) "Distribution Record Date" means the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests, which date shall be the first Business Day after the day on which the Confirmation Order is entered by the Bankruptcy Court.

(yy)    (xx) "Effective Date" means the first Business Day after the Confirmation Date on which all provisions, terms and conditions specified in Section 8.02 have been either satisfied or waived pursuant to Section 8.03.

(zz)    (yy) "Enjoined Party" means all Persons and Entities who have held, hold or may hold Claims or Interests that have been settled, released or discharged or are subject to exculpation pursuant to the Plan.

(aaa)    (zz) "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

(bbb)    (aaa) "Equity Security" means any equity security, as defined in section 101(16) of the Bankruptcy Code, in any of the Debtors.

(ccc)    (bbb) "Estates" means the estates of each of the Debtors created under section 541 of the Bankruptcy Code.

(ddd)    (ccc) "Exculpated Claim" means any claim and Cause of Action related to any act or omission in connection with, relating to or arising out of the Chapter 11 Cases, the formulation, preparation, dissemination or negotiation, entry into, or filing of the Restructuring

Support Agreement and related prepetition and postpetition transactions, any Definitive Document, the Disclosure Statement, the New Governance Documents, the DIP Facility, the Exit Facility, the Plan Term Sheet, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the New Governance Documents, the Disclosure Statement, the DIP Facility, the Exit Facility, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, and any other contract, instrument, release or other agreement or document created or entered into before or during these Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including, to the extent applicable, the issuance of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event or other occurrence taking place ~~prior to,~~ on or after the Petition Date through the Effective Date.

(eee)    ~~(ddd)~~ "Exculpated Party" means, collectively, and in each case in its capacity as such:  (i) each of the Debtors; (ii) ~~each of the Reorganized Debtors; (iii)~~ any statutory committees appointed in the Chapter 11 Cases; and the members thereof; (iii) the Debtors' officers, directors, and managers, specifically including Pharmacy Management LLC and its Affiliates and lenders (solely in their fiduciary capacities, if any), and (iv) ~~each current~~the Debtors' and ~~former Affiliate of~~ Committee's professionals retained under sections 327 or 1103 of the Bankruptcy Code (each ~~Entity~~ in ~~clause (i) through the following clause (iii); and (v) each Related Party of each Entity in clause (i) through this clause (iii)~~their capacities as such) that served in such capacities at any time between the Petition Date and the Effective Date.

(fff)    ~~(eee)~~ "Exculpation" means the exculpation provision set forth in Section 7.05 hereof.

(ggg)    ~~(fff)~~ "Executory Contract" means a contract to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

(hhh)    ~~(ggg)~~ "Existing Governance Documents" means the Debtors' respective certificates of incorporation, certificates of formation, bylaws, charters, trust agreements, indentures, limited liability company agreements, partnership agreements, shareholder agreements and such other formation and constituent documents in effect prior to the Effective Date.

(iii)    ~~(hhh)~~ "Exit Capital Structure" means the capital structure chart attached to the Restructuring Support Agreement as Exhibit C.

(jjj)    ~~(iii)~~ "Exit Facility" means that certain exit facility, substantially in the form of that certain Exit Facility Term Sheet attached as Exhibit E to the Plan Supplement, comprising the sum of the DIP Lien Conversion and a portion of the Prepetition Lien Claims that are the subject of clause (a) of the Prepetition Lien Conversion and consistent with the terms, conditions, and provisions of an exit facility giving effect to the Exit Capital Structure.

(kkk)   ~~(jjj)~~ "Exit Facility Claims" means the portion of the First Out Holders and Last Out Holder's respective Prepetition Lien Claims and 100% of the DIP Lenders' DIP Superpriority Claims to be rolled in into the Exit Facility under the Plan Term Sheet.

(lll)   ~~(kkk)~~ "Final DIP Order" means the order approving the DIP Facility entered by the Bankruptcy Court on July 1, 2024 [D.I. 133].

(mmm)   ~~(lll)~~ "Final Order" means an order, ruling or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has: (a) not been reversed, stayed, modified, amended, or vacated as to which the time to appeal, petition for certiorari or move for a new trial, stay, reargument, reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration or rehearing has been timely filed; or (b) as to which any appeal, petition for certiorari or motion for a new trial, stay, reargument, reconsideration or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration or rehearing was sought; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

(nnn)   ~~(mmm)~~ "Finance Documents" means (a) the Prepetition Credit Agreement, (b) the AAL, and (c) all other documents entered into, pursuant to, or in connection with, the foregoing documents in clauses (a) and (b) of this definition (including, but not limited to, any cash management arrangements and ancillary facilities).

(ooo)   ~~(nnn)~~ "Financing Orders" means any orders entered in the Chapter 11 Cases authorizing debtor-in-possession financing or the use of cash collateral (whether interim or final).

(ppp)   ~~(ooo)~~ "First Out Holders" means the holders of First Out Term Loans and/or First Out Revolving Loans under the Prepetition Credit Agreement and the AAL.

(qqq)   ~~(ppp)~~ "First Out Term Lien Claims" means First Out Term Loan secured claims.

(rrr)   ~~(qqq)~~ "First Out Term Loans" means the first out term loans provided by the First Out Holders under the Prepetition Credit Agreement and the AAL.

(sss)   ~~(rrr)~~ "First Out Revolving Lien Claims" means First Out Revolving Loan secured claims.

(ttt)   ~~(sss)~~ "First Out Revolving Loans" means the first out revolving loans provided by the First Out Holders under the Prepetition Credit Agreement and the AAL.

(uuu)   ~~(ttt)~~ "General Unsecured Claim" means any unsecured Claim against any of the Debtors that is not a Noteholder Claim, a Seller Noteholder Claim, an Intercompany Claim or a Claim that is Secured, subordinated or entitled to priority under the Bankruptcy Code.

(vvv)    ~~(uuu)~~ "GUC Opt-In Gift" the gift, in the amount of $15,000, from the Prepetition Secured Lenders to the Holders of Allowed Claims or Interests (i) that are entitled to vote on the Plan and (ii) who vote to accept the Plan and opt-in to the releases in favor of the Released Parties.

(www)    ~~(vvv)~~ "General Unsecured Trade Claim" means any General Unsecured Claim held by a trade vendor that agrees to continue to provide goods or services to the Reorganized Debtors following the Effective Date on the same or better terms as immediately prior to the Petition Date by entering into a Trade Agreement with the Debtors.

(xxx)    ~~(www)~~ "GUC Trade Gift" means the gift from the Prepetition Secured Lenders to the Holders of allowed General Unsecured Trade Claims to satisfy (x) ~~[80-95~~85%~~]~~ of all Allowed General Unsecured Trade Claims on the Effective Date and (y) the remaining ~~[5~~15%~~20%]~~ of such Allowed General Unsecured Trade Claims on the one-year anniversary of the Effective Date.

(yyy)    ~~(xxx)~~ "Governing Body" means the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of an Entity.

(zzz)    ~~(yyy)~~ "Governmental Unit" means any domestic, foreign, provincial, federal, state, local or municipal (a) government, (b) governmental agency, commission, department, bureau, ministry or other governmental entity or (c) any other governmental unit as defined in section 101(27) of the Bankruptcy Code.

(aaaa)    ~~(zzz)~~ "Holder" means any Entity holding a Claim or an Interest, as applicable.

(bbbb)    ~~(aaaa)~~ "Impaired" means any Claim or Interest in an Impaired Class.

(cccc)    ~~(bbbb)~~ "Impaired Class" means a Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.  For the avoidance of doubt, Impaired Classes under the Plan are Classes 1, 5, 6, 7, 8, 9, 10 and 12.

(dddd)    ~~(cccc)~~ "Insurance Policies" means any insurance policies, insurance settlement agreements, coverage-in-place agreements or other agreements related to the provision of insurance entered into by or issued to or for the benefit of any of the Debtors or their predecessors.

(eeee)    ~~(dddd)~~ "Insurer" means a counterparty to any Insurance Policy that is not a Debtor, its predecessors, or Affiliates.

(ffff)    ~~(eeee)~~ "Intercompany Claim" means any Claim against a Debtor held by a Debtor or a Company Party.

(gggg)    ~~(ffff)~~ "Intercompany Interest" means an any Interest in a Debtor held by a Debtor or a Company Party.

(hhhh)    (gggg) "Interest" means collectively, (i) any Equity Security, or any other equity, ownership interest (including any such interest in a partnership, limited liability company or other Entity), in any of the Debtors, (ii) any other rights, options, warrants rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any of the Debtors, and (iii) any and all Claims against any of the Debtors that are otherwise determined by the Bankruptcy Court to be an equity interest, including any Claim or debt that is recharacterized as an equity interest or subject to subordination as an equity interest pursuant to section 510(b) of the Bankruptcy Code.

(iiii)    (hhhh) "Interim DIP Order" means the order from the Bankruptcy Court approving the DIP Facility on an interim basis.

(jjjj)    (iiii) "Last Out Holder" means the holder of Last Out Term Loans under the Prepetition Credit Agreement and the AAL.

(kkkk)    (jjjj) "Last Out Term Lien Claims" means the Last Out Term Loan secured claims.

(llll)    (kkkk) "Last Out Term Loans" means the last out term loans provided by the Last Out Holder under the Prepetition Credit Agreement and the AAL.

(mmmm)    (llll) "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

(nnnn)    (mmmm) "Local Rules" means the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware.

(oooo)    (nnnn) "Milestones" have the meaning set forth in Section 6.03 of the Restructuring Support Agreement.

(pppp)    (oooo) "New Governance Documents" means the partnership agreement, certificate of incorporation, certificate of formation, bylaws, charter, trust agreement, indenture, limited liability company agreement, shareholder agreement and such other formation and constituent documents of the Reorganized Debtors, each of which shall be included in the Plan Supplement.

(qqqq)    (pppp) "Notes" means the notes issued by Optio Rx under the Note Purchase Agreement.

(rrrr)    (qqqq) "Noteholders" means the purchasers from time to time of the Notes under the Note Purchase Agreement.

(ssss)    (rrrr) "Noteholder Claims" means the subordinated claims of the Noteholders due under the Notes.

(tttt) ~~(ssss)~~ "Note Purchase Agreement" means that certain Note Purchase Agreement, dated as of September 25, 2020, as amended, between and among CBC Pharma, Optio Rx, the Noteholders, and Aves Management LLC, as Administrative Agent, subject to the Subordination Agreement.

(uuuu) ~~(tttt)~~ "Online Pharmacy Holdings LLC" means the new holding company formed on May 22, 2024 to issue preferred and common equity shares or units in connection with the Prepetition Lien Conversion, the equity structure of which is set forth in that certain Equity Term Sheet attached as Exhibit A-2 to the Plan Supplement.

(vvvv) ~~(uuuu)~~ "Optio Rx" means Debtor Optio Rx, LLC.

(wwww) ~~(vvvv)~~ "Other General Unsecured Claim" means any unsecured Claim against any of the Debtors that is not a Noteholder Claim, a Seller Noteholder Claim, a General Unsecured Trade Claim, an Intercompany Claim or a Claim that is Secured, subordinated or entitled to priority under the Bankruptcy Code.

(xxxx) ~~(wwww)~~ "Other Priority Claim" means any Claim against any Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (i) an Administrative Claim, (ii) a Professional Fee Claim or (iii) a Priority Tax Claim.

(yyyy) ~~(xxxx)~~ "Outside Date" shall be December 31, 2024, which date may be extended solely upon the express written consent from each of the Consenting Lenders.

(zzzz) ~~(yyyy)~~ "Person" means any natural person, corporation, limited liability company, professional association, limited partnership, general partnership, joint stock company, joint venture, association, company, trust, bank, trust company, land trust, business trust or other organization, whether or not a legal entity, and any governmental authority.

(aaaaa) ~~(zzzz)~~ "Petition Date" means the first date on which each of the Debtors commenced a Chapter 11 Case.

(bbbbb) ~~(aaaaa)~~ "Pharmacy Management LLC" means the entity serving as the manager of Optio Rx

(ccccc) ~~(bbbbb)~~ "Plan" means this Second Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, *et al.*, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Restructuring Support Agreement or the terms hereof, as the case may be, and the Plan Supplement, subject to the consent rights of the Consenting Lenders set forth in the Restructuring Support Agreement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

(ddddd) ~~(ccccc)~~ "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules and exhibits to the Plan including, among other things, as applicable: (i) the New Governance Documents providing the identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after Confirmation of the Plan; (ii) the Schedule of Retained Causes of Action; (iii) the Rejected

Executory Contract and Unexpired Lease List; (iv) the Feasibility Analysis; and (v) any other necessary documentation related to the Restructuring Transactions (in each case, as may be altered, amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be filed by the Debtors, to the extent reasonably practicable, no later than seven (7) days before the earlier of (a) the Voting Deadline, (b) the confirmation objection deadline, or (c) such later date as may be approved by the Bankruptcy Court on notice to parties in interest; provided that, through the Effective Date, the Debtors, subject to the consent rights in the Restructuring Support Agreement, shall have the right to amend documents contained in, and exhibits to, the Plan Supplement in accordance with the terms of the Plan and the Restructuring Support Agreement.

(eeeee) ~~(ddddd)~~ "Plan Term Sheet" means the term sheet summarizing the Restructuring Transactions attached to the Restructuring Support Agreement as Exhibit B.

(fffff) ~~(eeeee)~~ "Prepetition Admin Agent" means Loan Admin Co LLC, as administrative agent, and Loan Admin Co LLC, as lead arranger, under the Prepetition Credit Agreement.

(ggggg) ~~(fffff)~~ "Prepetition Credit Agreement" means that certain Credit Agreement, dated as of June 28, 2019 (as amended), by and among CBC Pharma, the Debtors, the Prepetition Admin Agent and the Prepetition Secured Lenders.

(hhhhh) ~~(ggggg)~~ "Prepetition Lien Claims" means the First Out Term Lien Claims, the First Out Revolving Lien Claims and the Last Out Term Lien Claims secured by first-priority liens and security interests in substantially all the Debtors' assets.

(iiiii) ~~(hhhhh)~~ "Prepetition Lien Conversion" means the First Out Holders' and Last Out Holder's conversion of (i) a portion of their Prepetition Lien Claims into Exit Facility Claims and (ii) the remaining portion of their Prepetition Lien Claims into Prepetition Lien Conversion Equity, all to effect the Exit Capital Structure attached to the Restructuring Support Agreement.

(jjjjj) ~~(iiiii)~~ "Prepetition Lien Conversion Equity" means the preferred and common equity shares or units of Online Pharmacy Holdings LLC received by the First Out Holders and Last Out Holder as consideration for committing to the conversion of the remaining portion of their Prepetition Lien Claims after converting a portion of their Prepetition Lien Claims into Exit Facility Claims, and in which Interests in Optio Rx shall vest on the Effective Date.

(kkkkk) ~~(jjjjj)~~ "Prepetition Secured Lenders" means the First Out Lien Holders, the Last Out Lien Holder, and any other lender party to the Prepetition Credit Agreement and AAL from time to time.

(lllll) ~~(kkkkk)~~ "Prepetition Secured Obligations" means the First Out Term Loans, the First Out Revolving Loans, and the Last Out Term Loans.

(mmmmm) ~~(lllll)~~ "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

(nnnnn)    (mmmmm)  "Pro Rata" means, with respect to an Allowed Claim, the percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed and estimated Claims in the same Class as such Claim, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the portion that such Holder's Claim in a particular class bears to the aggregate amount of all Allowed and estimated Claims in such multiple Classes.

(ooooo)    (nnnnn)  "Professional" means an Entity: (a) retained pursuant to a Final Order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

(ppppp)    (ooooo)  "Professional Fee Amount" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses of Professionals that such Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II of the Plan.

(qqqqq)    (ppppp)  "Professional Fee Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.  For the avoidance of doubt, in accordance with the UCC Settlement Agreement, 10% of the Professional Fee Claims of Professionals retained by the Committee shall be paid or otherwise contributed by or on behalf of the Committee Professionals into the UCC Settlement Amount.

(rrrrr)    (qqqqq)  "Professional Fee Escrow Account" means an interest-bearing account to be funded by the Debtors with Cash on or prior to the Effective Date in an amount equal to the Professional Fee Amount.

(sssss)    (rrrrr)  "Reinstated" means, with respect to any Claim or Interest, that the Claim or Interest shall not be discharged hereunder and the Holder's legal, equitable and contractual rights on account of such Claim or Interest shall remain unaltered by Consummation, rendering such Claim or Interest unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstate" or "Reinstatement" shall have correlative meanings.

(ttttt)    (sssss)  "Rejected Executory Contract and Unexpired Lease List" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases (if any) that will be rejected by the Reorganized Debtors pursuant to the Plan, which list, as may be amended from time to time, shall be included in the Plan Supplement.

(uuuuu)    (ttttt)  "Related Parties" means, collectively, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former affiliates, and such party's and such affiliates' current and former affiliates, directors, trustees, managers, officers, investment committee, members, special or other committee members, equity

- 13 -

holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, employees, agents, management companies, fund advisors or managers, managed funds (including any beneficial holders for the account of whom such funds are managed), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors (including, for the avoidance of doubt, any attorneys, investment bankers or other professionals and advisors retained by any current and former director and manager in his or her capacity as director or manager of such person) and any such Person's or Entity's respective heirs, executory, estates and nominees.

(vvvvv)    (uuuuu) "Released Parties" means, collectively, (a) each of the Debtors, (b) the Reorganized Debtors, (c) the Consenting Lenders, (d) the DIP Lenders, (e) the Admin Agent; (f) Aves, (g) the Noteholders; and (h) the Related Parties of each of the foregoing Entities in clauses (a) through (g) of this definition; provided, however, that if any of Aves and the Noteholders do not vote to accept the Plan, such non-accepting parties shall not be Released Parties.  For the avoidance of doubt, the manager of Pharmacy Management LLC and its Related Parties shall be deemed Released Parties.  For the further avoidance of doubt, the following individuals are not, and shall not be deemed to be, Released Parties: (i) Greg Savino, (ii) Jordana Siegel, (iii) Rinku Patel, (iv) Crestview City Pharmacy, Inc., (v) Jennifer Reshay Densman, (vi) Chistopher Neil Densman, (vii) Bryan Henderson, (viii) Amanda Davey, (ix) Claudia Barnett, (x) Kari Waites, (xi) Victoria Ballard, (xii) Morgan Meeks, (xiii) Kyndall Barber, (xiv) Ellen Stafford, (xv) Sergio Zepeda, (xvi) Cold Bore Capital Management, LLC, and (xvii) Marc Wank.

(wwwww) (vvvvv) "Releasing Party" means, collectively, and in each case in their capacity as such: (i) each of the Released Parties; (ii) all Holders of Claims or Interests that vote to accept or reject the Plan and opt-into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (iii) all Holders of Claims or Interests that abstain from voting on the Plan and who affirmatively opt-into the releases provided by the Plan by checking the box on the applicable form indicating that they opt to grant the releases provided in the Plan; (iv) each current and former Affiliate of each Entity in clause (i) through the following clause (v); and (v) each Related Party with respect to each of the foregoing in clauses (i) through (v).

(xxxxx)    (wwwww) "Reorganized Debtors" means, collectively, the Debtors, and any successors thereto, by merger, consolidation or otherwise, as reorganized pursuant to and under the Plan, on or after the Effective Date.

(yyyyy)    "Restructuring Support Agreement" means that certain Restructuring Support Agreement, dated as of May 9, 2024, by and among the Debtors, the First Out Holders, and the Last Out Holder, as may be amended, modified or supplemented from time to time in accordance with its terms.

(zzzzz)    (xxxxx) "Restructuring Transactions" means the transactions set forth in the Restructuring Support Agreement, the Plan Term Sheet attached thereto and all other exhibits to

- 14 -

the Restructuring Support Agreement or the Plan Term Sheet that shall be implemented on or prior to the Effective Date.

(aaaaaa) (yyyyy) "Retained Causes of Action" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any of the Debtors or their Estates may hold against any Entity, including (a) Avoidance Actions; (b) claims and Causes of Action brought prior to the Effective Date, (c) claims and Causes of Action against any Entities for failure to pay for products or services provided or rendered by any of the Debtors, (d) claims and Causes of Action relating to strict enforcement of any of the Debtors' intellectual property rights, including patents, copyrights and trademarks, including claims against third parties for infringement of any such intellectual property rights or other misuse of such intellectual property, and (e) claims and Causes of Action seeking the recovery of any of the Debtors' accounts receivable or other receivables or rights to payment created or arising in connection with any of the Debtors' businesses, including claim overpayments and tax refunds; *provided* that the Retained Causes of Action shall not include (i) all Causes of Action settled, released, or exculpated under the Plan, including the releases in Article VII, and (ii) all Challenges.

(bbbbbb) (zzzzz) "Schedules" means, collectively and if any are required, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs, if any, filed by each of the Debtors pursuant to section 521 of the Bankruptcy Code and the applicable Bankruptcy Rules, as such Schedules may be amended, modified or supplemented from time to time, solely to the extent such filing is not waived pursuant to an order of the Bankruptcy Court.

(cccccc) (aaaaaa) "Secured" means, when referring to a Claim: (a) secured by a Lien on property in which an Estate of any of the Debtors against which the Claim is asserted has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, to the extent of the value of the creditor's interest in the Estates' interest in such property as determined pursuant to section 506(a) of the Bankruptcy Code; (b) subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the property subject to setoff; or (c) otherwise Allowed pursuant to the Plan as a Secured Claim.

(dddddd) (bbbbbb) "Secured Claim" means any Claim that is Secured.

(eeeeee) (cccccc) "Seller Notes" means those certain unsecured notes, that certain of the Debtors are obligated on, issued to prior owners of businesses that were purchased by the Debtors, including, without limitation, unsecured notes issued to BHM Capital, Inc., Universal Pharmaceutical Services, Inc., H&H Pharmacy, Inc. (d/b/a Dr. Ike's Pharmacy #1), Dr. Ike, Inc. (d/b/a Dr. Ike's PharmaCare), Robert Hirsh, Elizabeth Buller, Salo, Inc., PIA Holdings, Inc., Baybridge Pharmacy Corp., 121 Central Pharmacy Corp., Delco Pharmacy Corp., OCPLP, Inc., and John J. Carson.

(ffffff) (dddddd) "Seller Noteholders" means holders of Seller Notes.

(gggggg) (eeeeee) "Seller Noteholder Claims" means the unsecured Claims of the Seller Noteholders.

(hhhhhh)   (fffff) "Solicitation Agent" means Stretto, Inc.

(iiiiii)   (gggggg) "Subordinated Claim" means a Claim that is subordinated pursuant to section 510(b) of the Bankruptcy Code or any other applicable law.

(jjjjjj)   (hhhhhh) "Subordinated Lender" means, collectively, Aves Special Opportunities Fund I, L.P., Allstate Insurance Company, Cross Country Mortgage, LLC, and Siguler Guff (Optio Rx) Holdings, LLC.

(kkkkkk)   (iiiiii) "Subordination Agreement" means that certain Subordination Agreement, dated as of September 25, 2020, between and among, the Subordinated Lender, Optio Rx as the Borrower, Aves Management, LLC as the Subordination Agent, and Loan Admin Co LLC, as Administrative Agent, as amended, modified, extended, restated, replaced, or supplemented from time to time, subordinating the Noteholder Claims under the Note Purchase Agreement to the Prepetition Secured Obligations.

(llllll)   (jjjjjj) "Third-Party Release" means the release set forth in Section 7.03 of the Plan.

(mmmmmm)   (kkkkkk) "Trade Agreement" means an agreement to continue to provide goods or services to the Reorganized Debtors, on the same or similar terms that existed immediately prior to the Petition Date, for the duration of the Chapter 11 Cases.

(nnnnnn)   (llllll) "Transaction Expenses" means all reasonable and documented fees, costs, and expenses of the Consenting Lender Advisors and DIP Agent Advisor in connection with the negotiation, formulation, preparation, execution, delivery, implementation, consummation of the Definitive Documents, and/or enforcement of the Restructuring Support Agreement and/or any of the other Definitive Documents, and/or the transactions contemplated thereby, including any amendments, waivers, consents, supplements, or other modifications to any of the foregoing.

(mmmmmm) "Restructuring Support Agreement" means that certain Restructuring Support Agreement, dated as of May 9, 2024, by and among the Debtors, the First Out Holders, and the Last Out Holder, as may be amended, modified or supplemented from time to time in accordance with its terms.

[numbering] "UCC Settlement Agreement" means the settlement among the Debtors, the Committee, the Prepetition Admin Agent and the DIP Agent resolving all Challenges, whether or not alleged by the Committee or any other party, to the Prepetition Lien Claims and Prepetition Liens and the DIP Lien Claims and DIP Liens, against the Prepetition Admin Agent and the Prepetition Secured Lenders, and against the DIP Agent and the DIP Lenders, and each of their respective Related Parties, in consideration for funding of a gift by the Prepetition Admin Agent, the DIP Agent, and the Committee Professionals from their collateral or Professional Fee Claims, as applicable, on the Effective Date of the UCC Settlement Amount, comprising the sum of (x) 10% of the Committee's Professional Fee Claims shall be paid or otherwise contributed by or on behalf of the Committee Professionals into the UCC Settlement Amount plus (y) up to $215,000 for the ratable benefit of Holders of Allowed Claims in Classes 6 and 8 to be distributed on a pro rata basis, and pursuant to which the Committee shall not

object to but shall support confirmation of the Plan.  Further, the UCC Settlement Agreement on and following the Effective Date permits the Committee, at its election and sole expense, to seek to establish a trust to reconcile Unsecured Claims and make Distributions to Holders of Allowed Claims in Classes 6 and 8 under the Plan, but not to pursue any Retained Causes of Action or any Causes of Action or Claims released under the Plan.

[numbering] "UCC Settlement Amount" means the aggregate amount of $275,000.

(oooooo)    ~~(nnnnnn)~~ "Unexpired Lease" means a lease to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

(pppppp)    ~~(oooooo)~~ "Unimpaired" means a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

(qqqqqq)    ~~(pppppp)~~ "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

(rrrrrr)    ~~(qqqqqq)~~ "Vendor Secured Claims" means any Secured Claims held by any of the Debtor's vendors.

(ssssss)    ~~(rrrrrr)~~ "Voting Deadline" means 4:00 p.m. (prevailing Eastern Time) on September 3, 2024.

**Section 1.02   Rules of Interpretation**

For the purposes of the Plan: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and neutral gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule or exhibit having been filed or to be filed shall mean that document, schedule or exhibit, as it may thereafter be amended, modified or supplemented; (iv) unless otherwise specified, all references herein to "Sections" and "Articles" are references to Sections and Articles hereof or hereto; (v) unless otherwise stated, the words "herein," "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions, headings to Articles and subheadings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (viii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (ix) any immaterial effectuating provisions may be interpreted by the Debtors or Reorganized Debtors, as applicable, in a manner that is consistent with the overall purpose and intent of the Plan without further Bankruptcy Court order; (x) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release or other agreement or document created or entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (xi) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (xii) any reference herein to the word "including" or any word of similar import shall be read to mean "including without limitation"; (xiii) the word "or" shall not be exclusive; (xiv) all references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's Case Management/Electronic Case Files system; and (xv) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws.

**Section 1.03   Computation of Time**

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If any payment, distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act, or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

**Section 1.04    Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the jurisdiction of incorporation of the Debtors or Reorganized Debtors, as applicable.

**Section 1.05    References to Monetary Figures**

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

**Section 1.06    Reference to the Debtors or the Reorganized Debtors**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Company, the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

**Section 1.07    Consent Rights of Consenting Lenders**

Notwithstanding anything herein to the contrary, any and all consent rights of the Consenting Lenders, and as set forth in the Restructuring Support Agreement (or otherwise) with respect to the form and substance of the Plan, the Plan Supplement and the other Definitive Documents, including any amendments, restatements, supplements or other modifications to such documents, or with respect to any other document, actions or anything else referred to herein, and any consents, waivers or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Section 1.01 hereof) and fully enforceable as if stated in full herein.  In case of a conflict between the consent or approval rights of such parties set forth in the Restructuring Support Agreement with the consent rights of such parties set forth in the Plan, the Plan Supplement, and any other documents contemplated under the Plan, the consent or approval rights in the Restructuring Support Agreement shall control.

**Section 1.08    Controlling Document**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects, subject to the consent rights of the Consenting Lenders in the Restructuring Support Agreement.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document or the Confirmation Order and subject to consent rights set forth in the Restructuring Support Agreement.  In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, other than documents contained in the Plan Supplement, the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; provided, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of the Plan.

# ARTICLE II
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III, are not entitled to vote on the Plan and shall receive the following treatment:

**Section 2.01   Administrative Claims**

Except to the extent that a Holder of an Allowed Administrative Expense Claim and the Debtors or Reorganized Debtors, as applicable, agrees to a less favorable treatment, or as otherwise provided in the Plan, each Holder of an Allowed Administrative Claim against any of the Debtors shall receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, within five (5) Business Days after the Effective Date, or as soon as reasonably practicable thereafter, (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than five (5) Business Days after such Administrative Claim is Allowed, or as soon as reasonably practicable thereafter; or (iii) at such time and upon such terms as set forth in an order of the Bankruptcy Code; provided that Administrative Claims incurred by any Debtor in the ordinary course of such Debtor's business may be paid in the ordinary course of business by the Debtors, consistent with past practice and in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.

**Section 2.02   Professional Fee Claims**

(a)      Final Fee Application and Payment of Professional Fee Claims

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court in the Chapter 11 Cases.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from (but not limited by the estimates provided for in Section 2.02(c)) the Professional Fee Escrow Account.  Any objections to Professional Fee Claims must be filed and served on the Debtors and the Reorganized Debtors and the requesting party no later than twenty-one days after service of the final request for payment of Professional Fee Claims.

(b)      Professional Fee Escrow Account

Prior to the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors other than the Reorganized Debtors' reversionary interest therein.  The amount of Professional Fee Claims owing to the Professionals on and after the Confirmation Date shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account, without interest or other earnings therefrom, as soon as reasonably practicable after such Claims are Allowed by a Bankruptcy Court order.  When all Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

(c)      Professional Fee Amount Estimates

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such estimate to the Debtors no later than one (1) Business Day before the Effective Date; *provided*, *however*, that such estimates shall not be considered an admission, cap or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the Estimates. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional; *provided*, *however*, that such estimate shall not be binding or considered an admission with respect to the fees and expenses of such Professional.

(d)    Post-Confirmation Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional or other fees and expenses related to implementation of the Plan and Consummation, incurred by the Debtors or any Professional following the Confirmation Date. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

## Section 2.03   Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim has been paid by the Debtors before the Effective Date, or the applicable Reorganized Debtor and such Holder agree to less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors, one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim within five (5) Business Days after the Effective Date; (ii) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in regular installments over a period not to exceed five (5) years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (iii) such other treatment as may be agreed upon by such Holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court.

The Reorganized Debtors shall have the right, in their sole discretion, to pay any Allowed Priority Tax Claim or any remaining balance of an Allowed Priority Tax Claim (together with accrued but unpaid interest) in full at any time on or after the Effective Date without premium or penalty.

## Section 2.04   DIP Facility

4865-3582-3548, v. 912

On the Effective Date, all Allowed DIP Lien Claims and DIP Superpriority Claims due and owing under the DIP Facility shall be the subject of the DIP Lien Conversion into Exit Facility Claims.  All property of every kind and nature of the Debtors, except for the GUC Trade Gift and UCC Settlement Amount, shall vest in the Reorganized Debtors encumbered by the perfected and enforceable DIP Liens granted and perfected under the DIP Orders, which DIP Liens shall be assumed by the Reorganized Debtors on the Effective Date and remain perfected by virtue of the DIP Orders and the Confirmation Order in favor of the Exit Facility administrative agent and collateral agent, for the benefit of the Exit Facility lenders, without any further notice or possession or other method of perfection under applicable non-bankruptcy law on the part of the Exit Facility administrative agent and collateral agent, or Exit Facility lenders.

**Section 2.05   Statutory Fees**

The Debtors shall pay in full, in Cash, any

All fees due and owing to the U.S. Trustee, including quarterly fees payable under 28 U.S.C. §1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 (if any), on all disbursements, including Plan payments and disbursements in and outside the ordinary course ofpayable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("**Quarterly Fees**") prior to the Effective Date shall be paid by the Debtors' business at on the time of Confirmation.  On and afterEffective Date.  After the Effective Date, to the extent the Chapter 11 Cases remain open,Debtors and for so long as anythe Reorganized Debtor remains obligated to pay quarterly fees, such Reorganized Debtor shall pay the applicable U.S. Trustee fees for that Reorganized Debtor when due in the ordinary course until such time as the Bankruptcy Court enters a final decree inDebtors shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, each of the Reorganized Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors and the Reorganized Debtors' Chapter 11 Cases shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

# ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**Section 3.01    Deemed Substantive Consolidation**

The Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order deeming the substantive consolidation of the Debtors' Estates into a single Estate for certain limited purposes related to the Plan, including voting, Confirmation and distribution.  As a result of the deemed substantive consolidation of the Estates, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate legal existence of the Debtors.  The Plan will not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to voting and distribution rights under the Plan.

**Section 3.02    Classification of Claims and Interests**

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is in a particular Class for the purposes of voting on, and receiving distributions pursuant to, the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class, and such Claim or Interest has not been paid, released, withdrawn or otherwise settled before the Effective Date.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.

**Section 3.03    Summary of Classification for the Reorganized Debtors**

The following chart represents the general classification of Claims and Interests for the Debtors pursuant to the Plan.  To the extent there are no Allowed Claims or Allowed Interests in a particular Class, such Class is deemed to be omitted with respect to the Debtors.

| CLASS | CLAIM | IMPAIRMENT | ENTITLED TO VOTE |
|---|---|---|---|
| 1 | Prepetition Lien Claims | Impaired | Yes |
| 2 | Vendor Secured Claims | Unimpaired | No (deemed to accept) |

4865-3582-3548, v. 912

| CLASS | CLAIM | IMPAIRMENT | ENTITLED TO VOTE |
|---|---|---|---|
| 3 | Other Secured Claims | Unimpaired | No<br>(deemed to accept) |
| 4 | Other Priority Claims | Unimpaired | No<br>(deemed to accept) |
| 5 | General Unsecured Trade Claims | Impaired | Yes |
| 6 | Other General Unsecured Claims | Impaired | No, but subject to UCC Settlement Agreement<br>(deemed to reject) |
| 7 | Noteholder Claims | Impaired | Yes |
| 8 | Seller Note Claims | Impaired | No, but subject to UCC Settlement Agreement<br>(deemed to reject) |
| 9 | Convenience Class Claims | Impaired | Yes |
| 10 | Intercompany Claims | Impaired | No<br>(deemed to reject) |
| 11 | Intercompany Interests | Unimpaired | No<br>(deemed to accept) |
| 12 | Equity Interests in Optio Rx | Impaired | No<br>(deemed to reject) |

**Section 3.04   Classification and Treatment of Claims and Interests**

Subject to Section 3.05 to the extent applicable, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the (i) Reorganized Debtors and, to the extent applicable under the Restructuring Support Agreement, the Consenting Lenders, and (ii) the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter or as soon as practicable after a particular Claim or Interest becomes Allowed.

- 25 -

(a)    Class 1 – Prepetition Lien Claims

*Classification*: Class 1 consists of any Prepetition Lien Claims against the Debtors.

*Treatment:* Except to the extent that a Holder of an Allowed Prepetition Lien Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Prepetition Lien Claim, each such Holder shall receive the following treatment in accordance with the Restructuring Support Agreement and the Plan Term Sheet:

>     i.    in connection with the Prepetition Lien Conversion, (a) a portion of the Holder's respective Prepetition Lien Claims shall constitute first-priority, perfected, enforceable and unavoidable Exit Facility Claims in full force and effect, which Exit Facility Claims and Exit Facility Liens shall be first-priority, enforceable, unavoidable and automatically perfected by virtue of entry of the Confirmation Order; *provided, however*, on the Effective Date, each of the Holders of the Prepetition Lien Claims shall (i) provide their proportionate share of the GUC Trade Gift to the holders of allowed General Unsecured Claims and (ii) provide their proportionate share of the GUC Opt-In Gift, as applicable; and (b)(i) on the Effective Date, the Holder shall receive its respective portion of the Prepetition Lien Conversion Equity, and which shall fully vest and be entitled to such rights as may be detailed in the New Governance Documents and which on the Effective Date, except for the equity shares or units to be issued to the Noteholders pursuant to the Aves Settlement Agreement, shall constitute all of the issued and outstanding equity shares or units, subject to the management incentive plan.

*Impairment and Voting*:  Class 1 is Impaired under the Plan, and the Holders thereof are entitled to vote to accept or reject the Plan.

(b)    Class 2 – Vendor Secured Claims

*Classification*:   Class 2 consists of the Vendor Secured Claims against the Debtors.

*Treatment*: On the Effective Date, each Holder of an Allowed Vendor Secured Claims shall receive, in full satisfaction of such claim, at the election of the Reorganized Debtors: (a) Cash payment in full on the Effective Date, or as soon as reasonably practicable thereafter, in satisfaction of their respective allowed

- 26 -

Secured Claims; (b) receive the return of their collateral; or (c) receive such other treatment as the Reorganized Debtors and such vendor agree.

*Impairment and Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Claims.

(c)     <u>Class 3 – Other Secured Claims</u>

*Classification*:  Class 3 consists of all Other Secured Claims against the Debtors.

*Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive Cash on the Effective Date, or as soon as reasonably practicable thereafter, in an amount equal to such Allowed Other Secured Claim.

*Impairment and Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 3 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Claims.

(d)     <u>Class 4 – Other Priority Claims</u>

*Classification*:  Class 4 consists of all Other Priority Claims against the Debtors.

*Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive Cash on the Effective Date, or as soon as reasonably practicable thereafter, in an amount equal to such Allowed Other Priority Claim.

*Impairment and Voting*:  Class 4 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 4 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Claims.

(e)    Class 5 – General Unsecured Trade Claims

*Classification*:  Class 5 consists of all General Unsecured Trade Claims against the Debtors.

*Treatment:*    The Holders of Allowed General Unsecured Trade Claims are impaired by the Plan and shall, by virtue of the GUC Trade Gift, (x) on the Effective Date, receive [80%-95%] of their respective Allowed General Unsecured Trade Claim and (y) on the one-year anniversary of the Effective Date, receive the remaining [5%-20%] of their respective Allowed General Unsecured Trade Claim.

*Impairment and Voting*:  Class 5 General Unsecured Trade Claims are Impaired, and the Holders thereof are entitled to vote to accept or reject the Plan.

*GUC Opt-In Gift*:  The Holders of Allowed General Unsecured Trade Claims may also be entitled to receipt of their respective share of the GUC Opt-In Gift to the extent such Holder of an Allowed General Unsecured Trade Claim (i) votes to accept the Plan and (ii) opts-in to the releases in favor of the Released Parties.

(f)    Class 6 – Other General Unsecured Claims

*Classification*:  Class 6 consists of Other General Unsecured Claims against the Debtors.

*Treatment*: On the Effective Date, all Other General Unsecured Claims shall ~~be cancelled, released, and extinguished without any distribution~~ receive, by virtue of the gift funding the UCC Settlement Amount under the UCC Settlement Agreement, their respective pro rata share of the UCC Settlement Amount among the Holders of Allowed Claims treated under Classes 6 and 8 of the Plan.

*Impairment and Voting*:  Class 6 is Impaired under the Plan.  Class 6 votes were not solicited because under the prior version of the Plan Class 6 and Class 8 creditors were not to receive a Distribution under the Plan.  By virtue of the UCC Settlement Agreement, the UCC Settlement Amount will be Distributed pro rata to Holders of Allowed Claims in ~~Class~~ Classes 6 ~~are conclusively presumed to have rejected the Plan pursuant to~~ and 8.  For purposes of seeking Confirmation of the Plan, the Debtors will treat Classes 6 and 8 as rejecting Classes and seek Confirmation under section ~~1126~~ 1129(~~a~~b) of the Bankruptcy Code.  ~~Therefore, such Holders are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Claims.~~

(g)    <u>Class 7 – Noteholder Claims</u>

*Classification*:  Class 7 consists of Noteholder Claims against the Debtors.

*Treatment*: On the Effective Date, (A) provided Aves and each of the Noteholders votes to accept the Plan, the Noteholders shall receive, all as set forth in the Aves Settlement Agreement, (i) the Cash Consideration, (ii) 1.5% of the common equity in Online Pharmacy Holdings LLC (prior to dilution for any management incentive plan), allocated pro rata to the Noteholders, and (iii) $3,000,000 (subject to the DIP Lender Clawback) in aggregate liquidation preference of junior preferred equity in Online Pharmacy Holdings LLC, allocated pro rata to the Noteholders; or (B) if any of Aves or any Noteholder does not vote to accept the Plan, then Class 7 shall receive no distribution under the Plan and retain no property of any Debtor

*Impairment and Voting*:  Class 7 is Impaired under the Plan and the Holders thereof are entitled to vote to accept or reject the Plan.

(h)    <u>Class 8 – Seller Note Claims</u>

*Classification*:  Class 8 consists of Seller Note Claims against the Debtors.

*Treatment*: On the Effective Date, all Seller Note Claims shall ~~be cancelled, released, and extinguished without any distribution~~<u>receive, by virtue of the gift funding the UCC Settlement Amount under the UCC Settlement Agreement, their respective pro rata share of the UCC Settlement Amount among the Holders of Allowed Claims treated under Classes 6 and 8 of the Plan.</u>

*Impairment and Voting*:  Class 8 ~~is Impaired under the Plan.~~ <u>votes were not solicited because under the prior version of the Plan Class 6 and Class 8 creditors were not to receive a Distribution under the Plan.  By virtue of the UCC Settlement Agreement, the UCC Settlement Amount will be Distributed pro rata to</u> Holders of <u>Allowed</u> Claims in ~~Class 8 are conclusively presumed to have rejected the Plan pursuant to~~<u>Classes 6 and 8.  For purposes of seeking Confirmation of the Plan, the Debtors will treat Classes 6 and 8 as rejecting Classes and seek Confirmation under</u> section ~~1126~~<u>1129</u>(~~g~~<u>b</u>) of the Bankruptcy Code. ~~Therefore, such Holders are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Claims.~~

(i)    <u>Class 9 – Convenience Class Claims</u>

- 29 -

*Classification*:  Class 9 consists of all Convenience Class Claims against the Debtors.

*Treatment*: The Holders of Allowed Convenience Claims shall, on the later of (i) the Effective Date and (ii) the date that is ten (10) business days after such Convenience Claim becomes an Allowed Claim, in full and final satisfaction of such Claim, receive payment in Cash equal to the lesser of (x) 100% of the Allowed amount of such Convenience Claim and (y) such Holder's pro rata share of the pool of Convenience Claims.

*Impairment and Voting*:  Class 9 Convenience Class Claims are Impaired, and the Holders thereof are entitled to vote to accept or reject the Plan.

(j)  Class 10 – Intercompany Claims

*Classification*:  Class 10 consists of all Intercompany Claims.

*Treatment*: On the Effective Date, all Intercompany Claims shall be cancelled, released, and extinguished without any distribution.

*Impairment and Voting*:  Class 10 is Impaired under the Plan.  Holders of Claims in Class 10 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Claims.

(k)  Class 11 – Intercompany Interests

*Classification*:  Class 11 consists of all Intercompany Interests.

*Treatment*: Each Allowed Intercompany Interest shall be, at the option of the applicable Debtor(s), and with the consent of the Consenting Lenders, which consent shall not be unreasonably withheld, either (a) Reinstated or (b) canceled and released.

*Impairment and Voting*:  Class 11 is Unimpaired under the Plan.  Holders of Allowed Interests in Class 11 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Interests.

(l)  Class 12 – Equity Interests in Optio Rx

*Classification*:  Class 12 consists of all Equity Interests in Optio Rx.

*Treatment*:  On the Effective Date, all Equity Interests in Optio Rx shall be cancelled, released, and extinguished.

*Impairment and Voting:* Class 12 is Impaired under the Plan.  Holders of Claims in Class 12 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled

to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Claims.

**Section 3.05   Special Provisions Regarding Reinstated Unimpaired Claims**

Except as otherwise provided in the Plan, the Plan Supplement, the Restructuring Support Agreement or in the Confirmation Order, nothing in the Plan shall affect any, and the Debtors and the Reorganized Debtors shall retain all, rights regarding legal and equitable defenses, counterclaims, rights to setoff, and rights to recoupment, if any, as to Unimpaired Claims that are Reinstated.  Holders of Unimpaired Claims that are Reinstated shall not be required to file a proof of claim with the Bankruptcy Court and shall retain all their rights under applicable nonbankruptcy law to pursue their Unimpaired Claims.  Notwithstanding anything to the contrary in the Plan, subject to Article VII, Unimpaired Claims shall not be deemed settled, satisfied, resolved, released, discharged, barred or enjoined by any provision of the Plan, unless and until such Unimpaired Claim has been either (a) paid in full (i) on terms agreed to between the Holder of such Unimpaired Claim and the Debtors or the Reorganized Debtors, as applicable, (ii) in the Allowed amount of such Unimpaired Claim as determined by applicable law or (iii) in accordance with the terms and conditions of the applicable documentation or laws giving rise to such Unimpaired Claim or (b) otherwise satisfied or disposed of as determined by a court of competent jurisdiction.  If the Debtors or the Reorganized Debtors, as applicable, disputes any Unimpaired Claim, such dispute shall be determined, resolved or adjudicated pursuant to applicable non-bankruptcy law.

**Section 3.06   Voting Classes, Presumed Acceptance by Non-Voting Classes**

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.  If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

**Section 3.07   Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of a Claim that is Reinstated, an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## Section 3.08    Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## Section 3.09    Intercompany Interests

To the extent retained under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but solely for administrative convenience and due to the importance of maintaining the prepetition corporate structure.

## Section 3.10    Subordinated Claims

The allowance, classification and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to Section 510 of the Bankruptcy Code, and subject to the Restructuring Support Agreement, the Debtors or the Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal or equitable subordination relating thereto.

## Section 3.11    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

The Debtors reserve the right, subject to the prior consent of the Consenting Lenders, to modify the Plan in accordance with Article IX hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including the right to modify the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**Section 4.01    Restructuring Transactions**

On the Effective Date, and pursuant to the Plan, the Debtors or the Reorganized Debtors, as applicable, shall (as agreed to by the Consenting Lenders consistent with the terms of the Restructuring Support Agreement) consummate the Restructuring Transactions set forth in the Plan Term Sheet in order to effectuate the Debtors' financial reorganization consistent with the terms of the Plan.    Without limiting the foregoing, before, on or as soon as reasonably practicable after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, and their respective officers and members of the Governing Body, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan, including: (i) the execution, delivery, filing, registration or recordation of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, the Plan Supplement and the Restructuring Support Agreement; (ii) the execution, delivery, filing, registration or recordation of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Plan Supplement and the Restructuring Support Agreement and having other terms to which the applicable Entities may agree; (iii) the execution, delivery and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law, including any applicable New Governance Documents; (iv) such other transactions that are required to effectuate the Restructuring Transactions; and (v) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law; provided that all such actions are consented to by the Consenting Lenders, which consent shall not be unreasonably withheld.    Pursuant to sections 363 and 1123 of the Bankruptcy Code, the Confirmation Order shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan. The authorizations and approvals contemplated by this Section 4.01 shall be effective notwithstanding any requirements under non-bankruptcy law.

**Section 4.02    Sources of Cash for Plan Distributions**

Any Cash payments or distributions required to be made hereunder shall be obtained from existing Cash of the Debtors and the Exit Facility.

**Section 4.03    Exit Facility**

The ~~exit term loan (the "~~Exit ~~Term Loan")~~Facility to be entered into by the applicable Reorganized Debtors on the Effective Date shall contain, among other things, the following terms:  (a) the Exit ~~Term Loan~~Facility will not have scheduled amortization prior to maturity;

- 34 -

and (b) the applicable Reorganized Debtors will have the ability to pay interest on the Exit ~~Term Loan~~Facility in kind, solely with respect to the Exit Facility term loans, as additional loans under the Exit ~~Term Loan~~Facility, rather than in cash, based on conditions to be determined, which additional loans will be on par with the priority of the Exit ~~Term Loan~~Facility.

## Section 4.04   Junior Preferred Equity

The junior preferred equity in Online Pharmacy Holdings LLC (the "Preferred Equity") shall have the following terms, and otherwise be reasonably acceptable to the Prepetition Secured Lenders and Aves:  (a) junior in right of payment to the junior preferred equity to be received by the Last Out Holder on the Effective Date, (b) the Preferred Equity will accrue dividends (which will be payable in kind) at a rate equal to the interest rate applicable to the last out term loans under the Exit Term Loan, which accrued dividends and additional Preferred Equity will be on par with the priority of the Preferred Equity, (c) as long as the Preferred Equity is outstanding, Online Pharmacy Holdings LLC will be subject to (with customary exceptions and other exceptions to be agreed) (i) limitations on non-arm's length affiliate transactions, (ii) limitations on adverse or disproportionate amendments to operating agreement, and (iii) limitations on common equity dividends and repurchases, (d) the Preferred Equity shall have customary preemptive and tag along rights, and (e) so long as the Noteholders hold any Preferred Equity, such Noteholders shall have reasonable reporting and information rights to be agreed.

## Section 4.05   Continued Corporate Existence

Except as otherwise provided in the Plan, the Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date as separate corporate entities, limited liability companies, partnerships or other form, with all the powers of a corporation, limited liability company, partnership or other form, pursuant to the applicable law in the jurisdiction in which the Debtors are incorporated or formed pursuant to the New Governance Documents.

**Section 4.06   Existing Governance Documents**

On or as soon as reasonably practicable after the Effective Date, subject in each case to the consent rights of the Consenting Lenders as set forth in the Restructuring Support Agreement, the Existing Governance Documents of the Debtors in effect prior to the Effective Date shall be amended or restated and replaced by the New Governance Documents.  Solely to the extent required under the Plan, the Bankruptcy Code, or applicable non-bankruptcy law or necessary to effectuate the transactions contemplated by the Plan, on or immediately prior to the Effective Date, the Reorganized Debtors shall file the New Governance Documents (in a manner acceptable to the Debtors and the Consenting Lenders and consistent with the Restructuring Support Agreement) with the applicable Secretary of State and/or other applicable authorities in the state of incorporation or formation or otherwise (as the case may be) in accordance with the applicable federal laws or state laws of the respective state.  The New Governance Documents shall be deemed to be amended pursuant to the Plan and shall require no further action or approval (other than any requisite filings required under applicable non-bankruptcy law).  The New Governance Documents shall be in the form filed with the Plan Supplement, shall be as set forth in the Governance Term Sheet and shall be acceptable in form and substance to the Consenting Lenders. After the Effective Date, the Reorganized Debtors may amend and restate their New Governance Documents, as applicable, and may file such documents as permitted by the laws of the respective states without further authorization from the Bankruptcy Court.

**Section 4.07   Members of the Governing Bodies**

As of the Effective Date, and subject to the Restructuring Support Agreement, the existing members of the Reorganized Debtors' Governing Bodies shall remain in their current capacities as members of such Governing Body of the applicable Reorganized Debtor, unless or until replaced or removed in accordance with the New Governance Documents of the Reorganized Debtors in the sole discretion of such Reorganized Debtor.  To the extent any such officer of the Reorganized Debtors is an "insider" as defined in section 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such trustee and officer shall also be disclosed in the Plan Supplement.

**Section 4.08   Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided in the Plan, the Restructuring Support Agreement or any agreement, instrument or other document incorporated therein, on the Effective Date, all property of the Estates and all Causes of Action of the Debtors (except those released pursuant to the Debtor Releases) shall vest in the applicable Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens, if any, granted to secure the Reorganized Debtors' obligations under the Plan).  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims, Interest or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation order.

**Section 4.09    Section 1145 Exemption**

Except with respect to any Person that is an underwriter as defined in section 1145(b) of the Bankruptcy Code, the offer, issuance, sale or distribution under the Plan of the new preferred and common equity shares or units of Online Pharmacy Holdings LLC shall be exempt from registration under Section 5 of the Securities Act (or any State or local law requiring registration for offer or sale of a security) under section 1145 of the Bankruptcy Code.  The offer, issuance, sale or distribution under the Plan of the new preferred and common equity shares or units of Online Pharmacy Holdings LLC will be subject to the restrictions on resale of securities held by Affiliates of an issuer.

**Section 4.10    Cancellation and Surrender of Instruments and Agreements**

On the Effective Date, except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, (i) all rights of any Holder of Interests in the Debtors, including options or warrants to purchase Interests, or obligating the Debtors to issue, transfer or sell Interests in the Debtors, shall be cancelled; and (ii) all Seller Notes, Notes and indentures of the Debtors shall cease to be effective, and Aves Management LLC, as Administrative Agent under the Note Purchase Agreement shall not have any continuing duties or obligations thereunder and shall be discharged.

**Section 4.11    Corporate Action**

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) to the extent undertaken, selection and appointment of the members of the Governing Body and officers of the Reorganized Debtors; (ii) adoption of or modification to the Existing Governance Documents, if required; (iii) the assumption or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (iv) implementation of the Restructuring Transactions; and (v) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan (including the grant of security interests set forth in the Plan) shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, the members of the Governing Body or officers of the Debtors or the Reorganized Debtors.  On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors.  The authorizations and approvals contemplated by this Section 4.11 shall be effective notwithstanding any requirements under nonbankruptcy law.

**Section 4.12    Section 1146 Exemption from Certain Taxes and Fees**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtors to the Reorganized Debtors or to any other Person) of property under the Plan or pursuant to: (i) the issuance, reinstatement, distribution, transfer or exchange of any debt, Equity Security, or other interest in the Debtors or the Reorganized Debtors; (ii) the Restructuring Transactions; (iii) the creation, modification, consolidation, assumption, termination, refinancing and/or recording of any mortgage, deed of trust, or other security interest or the securing of additional indebtedness by such or other means; (iv) the making, assignment or recording of any lease or sublease; or (v) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to the Plan, shall not be subject to any stamp tax or similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, recordation fee or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Section 4.13    Preservation of Causes of Action**

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Debtor Releases provided in Section 7.02 hereof), each of the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and each of the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VII of the Plan, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date.  Each of the Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of such Reorganized Debtor.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that any of the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  Except with respect to Causes of Action as to which any of the Debtors or Reorganized Debtors have released any Person or Entity on or before the Effective Date (including pursuant to the Debtor Releases), each of the Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished,

exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, each of the Reorganized Debtors expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action as a consequence of the Confirmation or Consummation.  Each of the Reorganized Debtors shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.  Notwithstanding anything in the Plan to the contrary, any and all Challenges (including without limitation as to  Rinku Patel and Skin Medicinals LLC) and all challenges, Causes of Action and Claims, including, without limitation, challenges, Causes of Action and Claims asserted or assertable against the Prepetition Admin Agent, the Prepetition Secured Lenders, the DIP Agent and the DIP lenders, or the Related Parties of the foregoing, whenever arising, whether in contract, tort, law or equity or mixed, directly or derivatively, are expressly released, compromised and settled pursuant to this Plan and/or as part of the UCC Settlement Agreement effective on the Effective Date.

**Section 4.14   Single Satisfaction of Claims**

Holders of Allowed Claims may assert such Claims against the Debtors and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the Debtors based upon the full Allowed amount of the Claim.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of Allowed Claims exceed 100% of the underlying Allowed Claim plus applicable interest.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 5.01   Assumption of Executory Contracts and Unexpired Leases**

Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each of the Debtors' Executory Contracts and Unexpired Leases shall be deemed assumed (or assumed and assigned to the respective Reorganized Debtor, as applicable) pursuant to sections 365(a) and 1123 of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by a Debtor, pursuant to a Final Order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to reject filed on or before the Effective Date; or (iv) is identified on the Rejected Executory Contract and Unexpired Lease List.  Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan and the Rejected Executory Contract and Unexpired Lease List, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, all assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date, provided, however, no Seller Note shall be assumed.  Each

Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party on or before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms may have been modified by such order or the provisions of the Plan.  All assumed Executory Contracts or Unexpired Leases shall be enforceable by the Reorganized Debtors or such party such Executory Contract or Unexpired Lease was assigned to in accordance with their terms notwithstanding any provision in such contract or lease that prohibits, restricts or conditions assumption, assignment or transfer.  Any provision in any such contract or lease that permits a Person to terminate or modify such agreement or to otherwise modify the rights of any of the Debtors or the Reorganized Debtors or assignee, as applicable, based on the filing of the Chapter 11 Cases or the financial condition of any of the Debtors or the Reorganized Debtors, as applicable, shall be unenforceable.  To the extent any provision in any Executory Contract or Unexpired Lease assumed, or assumed and assigned, pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, any of the Debtors' assumption, or assumption and assignment, of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party or parties thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  After the Effective Date, each of the Reorganized Debtors shall have the right to terminate, amend or modify any contracts, including intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.  Notwithstanding anything to the contrary in the Plan, the Debtors, or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List at any time through and including ninety days after the Effective Date.

**Section 5.02   Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejections, if any, of any Executory Contracts or Unexpired Leases as provided for in the Plan or the Rejected Executory Contract and Unexpired Lease List, as applicable.  Unless otherwise provided by a Final Order of the Bankruptcy Court, all proofs of claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Solicitation Agent and served on the Reorganized Debtors no later than thirty days after the effective date of such rejection.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Solicitation Agent within such time shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Section 7.06 of the Plan, notwithstanding anything in a proof of claim to the contrary.

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General

Unsecured Claim pursuant to Section 3.04 of the Plan and may be objected to in accordance with the provisions of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**Section 5.03    Cure of Defaults and Objections to Cure Amounts and Assumption for Executory Contracts and Unexpired Leases Assumed**

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned to the respective Reorganized Debtor, as applicable) pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash upon the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  The Debtors shall provide notices of proposed cure amounts (if any) to counterparties to Executory Contracts and Unexpired Leases to be assumed reflecting the Debtors' intention to assume or assume and assign the Executory Contract or Unexpired Lease in connection with the Plan and setting forth the proposed cure amount (if any) or the Reorganized Debtors' ability to provide "adequate assurance of future performance thereunder" (within the meaning of section 365 of the Bankruptcy Code).  If a counterparty to any Executory Contract or Unexpired Lease that the Debtors or Reorganized Debtors intend to assume does not receive such a notice, the proposed cure amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0), subject to such counterparties' rights to dispute such proposed cure amount.  In the event of a dispute regarding (i) the amount of any payments to cure such a default, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  The cure notices shall include procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases and any amounts of Cure Claims to be paid in connection therewith and resolution of disputes by the Bankruptcy Court.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served and actually received by counsel to the Debtors on the confirmation objection deadline or other deadline that may be set by the Bankruptcy Court.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.  Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.  Any proof of claim filed with respect to an Executory Contract or Unexpired Lease that is assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

The payment of the cure amount shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption in the event of a dispute regarding:

(i) the amount of any payments to cure such a default; (ii) the ability of the Reorganized Debtors or any assignee to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease to be assumed; or (iii) any other matter pertaining to assumption.

The Debtor or the Reorganized Debtor, as applicable, shall be authorized to reject any executory contract or unexpired lease to the extent the Debtor or the Reorganized Debtor, as applicable, in the exercise of its sound business judgment, concludes that the amount of the Cure obligation as determined by Final Order or as otherwise finally resolved, renders assumption of such contract or lease unfavorable to the applicable Debtor's Estate or the Reorganized Debtor. Such rejected contracts, if any, shall be deemed as listed on the Rejected Executory Contract and Unexpired Lease List.

**Section 5.04   Modifications, Amendments, Supplements, Restatements or Other Agreements**

Unless otherwise provided in the Plan or specifically provided in the Plan Supplement, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan. Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by any of the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

**Section 5.05   Reservation of Rights**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan or Plan Supplement shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the relevant Debtor or Reorganized Debtor, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date. The deemed assumption provided for herein shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Debtors following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

- 42 -

**Section 5.06    Contracts and Leases Entered Into After the Petition Date**

Contracts and leases entered into after the Petition Date by any of the Debtors, including any Executory Contracts and Unexpired Leases assumed by any Debtor (or assumed and assigned, as applicable), will be performed by such Debtor or Reorganized Debtor, or the Entity to which such Executory Contract or Unexpired Lease was assigned, as applicable, in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order except as otherwise provided in the Plan.

**Section 5.07    Assumption of Insurance Policies**

Notwithstanding anything in the Plan or the Confirmation Order, including any provision that purports to be preemptory or supervening, the Insurance Policies (including all of the D&O Liability Insurance Policies) are hereby treated as Executory Contracts under the Plan and, on the Effective Date, shall be deemed assumed (and assigned to the Reorganized Debtors) under section 365 of the Bankruptcy Code and will re-vest in the Reorganized Debtors.  Regardless of whether any Insurance Policy is an Executory Contract, on and after the Effective Date, the Insurance Policies will remain valid and enforceable in accordance with their terms and shall not be impaired by the Plan or Confirmation Order, and the Debtors, the Reorganized Debtors or any such assignee, as applicable, and the Insurers will perform their respective obligations to one another, if any, under the Insurance Policies.  After the Effective Date, to the extent consistent with applicable law and New Governance Documents, the Reorganized Debtors (or any such assignee) may increase, reduce, restrict, or otherwise modify, in their sole discretion, the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect as of the Effective Date, and all members, managers, directors, and officers of each of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy (and all tail coverage related thereto) regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date.

Nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third party administrators pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Reorganized Debtors) or draw on any collateral or security therefor. For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, proof of claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

**Section 5.08    Assumption of the Employee Compensation and Benefits Program**

Unless otherwise provided in the Plan (or the Plan Supplement), the Confirmation Order or any other order of the Bankruptcy Court in the Chapter 11 Cases, all employment agreements, severance policies, indemnification agreements, compensation and benefit plans, policies, and programs of the Company including, without limitation, all workers' compensation programs, savings plans, retirement plans, deferred compensation plans, SERP plans, rabbi trusts, healthcare plans, disability plans, severance benefit plans, incentive plans, life and accidental death and dismemberment insurance plans or other agreements with or applicable to any of its current or former employees, retirees, members of any Governing Body, officers or managers of the Debtors shall be treated as Executory Contracts under the Plan, shall be set forth in the Plan Supplement, and shall be deemed assumed (or assumed and assigned to the respective

- 44 -

Reorganized Debtors, as applicable) pursuant to section 365(a) of the Bankruptcy Code as of the Effective Date. For the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

**Section 5.09    Indemnification Obligations**

Consistent with applicable law, all indemnification provisions in place as of the Effective Date for the Released Parties only (whether in the by-laws, trust agreements, certificates of incorporation or formation, limited liability company agreements, limited partnership agreements, other governance documents, board resolutions, indemnification agreements, employment contracts or otherwise) for the current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers and other professionals of, or acting on behalf of, any of the Debtors, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, any of the Debtors than the indemnification provisions in place prior to the Effective Date.

**Section 5.10    Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases, if any, pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**Section 6.01    Record Date for Distributions**

With respect to Impaired Claims, on the Distribution Record Date, the Claims Register and the various transfer registers for each of the Classes of Claims, as maintained by the Debtors or their agents, shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims. The Debtors shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date.

**Section 6.02    Timing of Distributions**

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such a Claim or Interest becomes an Allowed Claim or Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against or an Allowed Interest in the Debtors shall receive the full amount of the distributions that the Plan provides for such an Allowed Claim or such an Allowed Interest in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**Section 6.03    Disbursing Agent**

The Debtors or Reorganized Debtors may retain a Disbursing Agent (or the Committee may elect to establish a trust and appoint a trustee at its election and sole cost with respect to Distributions to creditors asserting Claims under Classes 6 and 8 of the Plan) to assist with the distributions to be made under the Plan as directed by the Debtors or Reorganized Debtors. The Disbursing Agent shall make all distributions required under the Plan.

(a)    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out of pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out of pocket expense reimbursement claims (including reasonable, actual, and documented attorney and/or other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.  The Disbursing Agents shall submit detailed invoices to the Debtors or the Reorganized Debtors, as applicable, for all fees and expenses for which the Disbursing Agent seeks reimbursement, and the Debtors or the Reorganized Debtors, as applicable, shall pay those amounts that they deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors or the Reorganized Debtors, as applicable, deem to be unreasonable.  In the event that the Debtors or the Reorganized Debtors, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Disbursing Agent's invoice, the Debtors or the Reorganized Debtors, as applicable, and such Disbursing Agent shall endeavor, in good faith, to reach mutual agreement

on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Debtors or the Reorganized Debtors, as applicable, and a Disbursing Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

**Section 6.04    Delivery of Distributions and Undeliverable or Unclaimed Distributions**

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims or Allowed Interests shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent: (i) to the signatory set forth on any proof of claim or proof of interest filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no proof of claim or proof of interest is filed or if the Debtors have not been notified in writing of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the applicable Disbursing Agent, as appropriate, after the date of any related proof of claim or proof of interest; or (iii) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Distributions under the Plan on account of Allowed Claims and Allowed Interests shall not be subject to levy, garnishment, attachment or like legal process, so that each Holder of an Allowed Claim or Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan. None of the Debtors, the Reorganized Debtors and the applicable Disbursing Agent shall incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

**Section 6.05    Fractional Distributions**

Whenever any payment of a fraction pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole share (up or down), with half or less being rounded down. Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

**Section 6.06    Undeliverable Distributions and Unclaimed Property**

In the event that any distribution to any Holder of Claim or Interest is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made as soon as practicable after such distribution has become deliverable or has been claimed to such Holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable Distribution Date. After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtors (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred. Notwithstanding the foregoing under of the Plan, any Unimpaired Claims shall not be deemed settled, satisfied, resolved, released, discharged, barred or enjoined by any provision of

the Plan, unless and until such Unimpaired Claim has been either (a) paid in full (i) on terms agreed to between the holder of such Unimpaired Claim and the Debtors or the Reorganized Debtors, as applicable, (ii) in the Allowed amount of such Unimpaired Claim as determined by applicable law or (iii) in accordance with the terms and conditions of the applicable documentation or laws giving rise to such Unimpaired Claim or (b) otherwise satisfied or disposed of as determined by a court of competent jurisdiction. If the Debtors or the Reorganized Debtors dispute any Unimpaired Claim, such dispute shall be determined, resolved or adjudicated pursuant to applicable non-bankruptcy law.

## Section 6.07   Manner of Payment

At the option of the Disbursing Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements

## Section 6.08   Compliance with Tax Requirements and Allocations

In connection with the Plan and all instruments issued in connection therewith, to the extent applicable, the Reorganized Debtors and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any federal, state or local taxing authority, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.   Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they determine in good faith are reasonable and appropriate.   The Reorganized Debtors reserve the right, in their sole discretion, to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, other spousal awards, Liens, and encumbrances.   For the avoidance of doubt, any amounts withheld pursuant to this Section 6.08 shall be treated as if distributed to the Holder of the Allowed Claim.

Any Holder of an Impaired Claim entitled to receive any property as an issuance or distribution under the Plan shall, upon request by the Disbursing Agent, provide an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8.   If such request is made and such Holder of an Impaired Claim fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Debtors or the Reorganized Debtors, as applicable, and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Debtors, the Reorganized Debtors and their respective property.

## Section 6.09   Allocation Between Principal and Interest

Except as otherwise provided in the Plan, for U.S. federal income tax purposes, distributions shall be allocated first to the principal amount of such Allowed Claims (as

4865-3582-3548, v. 912

determined for U.S. federal income tax purposes), with any excess allocated to unpaid interest that accrued on such Claims.

**Section 6.10    Setoffs and Recoupment**

Except as otherwise provided in the Plan and Confirmation Order, the Debtors and the Reorganized Debtors may, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, withhold (but not set off except as set forth in the Plan) from the distributions called for under the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim or Interest.  In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the holder of any such Allowed Claim or Interest are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim or Interest and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim or Interest) the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that any of the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim or Interest, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, equity interests, rights and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such holder, except as specifically provided herein.

**Section 6.11    No Postpetition or Default Interest on Claims**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy or non-bankruptcy law, postpetition and/or default interest shall not accrue or be paid on any prepetition Claims against any of the Debtors, and no Holder of a prepetition Claim against any of the Debtors shall be entitled to interest accruing on or after the Petition Date or interest at the contract default rate on any such prepetition Claim.

**ARTICLE VII**
**SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS**

**Section 7.01    General Compromise and Settlement of Claims, Interests and Controversies**

As discussed in detail in the Disclosure Statement and as otherwise provided herein, ~~pursuant to section 1123 of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019 and~~ in consideration for the classification, distributions, releases and other benefits provided pursuant to the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith ~~compromise and settlement~~resolution of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made or treatment provided on account of such Allowed Claim or Interest.

~~The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests and controversies pursuant to Bankruptcy Rule 9019.~~ The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the ~~compromise or settlement~~resolution of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such ~~compromise or settlement~~resolution is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. Subject to Article VI hereof, all treatment of Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against and Interests in or against any of the Debtors and their Estate and Causes of Action against other Entities.

**Section 7.02    Releases by the Debtor**

**To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, in addition to other provisions of the Plan or Orders of the Court granting or providing for releases of Claims, and not in any way diminishing any such releases, effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by each of the Debtors, the Reorganized Debtors and their Estates, including any successors to the Debtors or any estates representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for or because of the foregoing Entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort or otherwise, that any of the Debtors, the Reorganized Debtors or their Estates would have**

- 50 -

been legally entitled to assert in its own right (whether individually or collectively) or on behalf of a Holder of any Claim against, or Interest in, the Debtors or other Entity, based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership or operation thereof), purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against any of the Debtors), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Restructuring Support Agreement and related prepetition transactions, any Definitive Document, the Disclosure Statement, the New Governance Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the New Governance Documents, the Disclosure Statement, the Exit Facility, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of the new preferred and common equity shares or units of Online Pharmacy Holdings LLC pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing, in each case taking place on or before the Effective Date. For the avoidance of doubt, the following individuals are not, and shall not be deemed to be, Released Parties: (i) Greg Savino, (ii) Jordana Siegel, (iii) Rinku Patel, (iv) Crestview City Pharmacy, Inc., (v) Jennifer Reshay Densman, (vi) Chistopher Neil Densman, (vii) Bryan Henderson, (viii) Amanda Davey, (ix) Claudia Barnett, (x) Kari Waites, (xi) Victoria Ballard, (xii) Morgan Meeks, (xiii) Kyndall Barber, (xiv) Ellen Stafford, (xv) Sergio Zepeda, (xvi) Cold Bore Capital Management, LLC, and (xvii) Marc Wank.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any liabilities arising after the Effective Date or (ii) the rights of any of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of any of the Debtors under any employment agreement with a current or former employee of any the Debtors, **or any seller of business assets or equity in any Debtor**, subject to applicable nonbankruptcy law.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, ~~pursuant to Bankruptcy Rule 9019,~~ of the Debtor Releases, which include by reference each of the related provisions and definitions contained in the Plan, and further shall constitute the Bankruptcy Court's finding that the Debtor Releases are: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring

- 51 -

Transactions and implementing the Plan; (ii) a good faith ~~settlement and compromise~~resolution of the Claims released by the Debtor Releases; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors or the Debtors' Estates asserting any Cause of Action released pursuant to the Debtor Releases.

**Section 7.03    Releases by Holders of Claims and Interests**

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, in addition to other provisions of the Plan or Orders of the Court granting or providing for releases of Claims, and not in any way diminishing any such releases, effective as of the Effective Date, except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of any of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, any of the Debtors (including the capital structure, management, ownership or operation thereof), the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors any other Released Party, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against any of the Debtors), intercompany transactions between or among any of the Debtors or an affiliate of a Debtor and another Debtor or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Restructuring Support Agreement and related prepetition transactions, any Definitive Document, the Disclosure Statement, the New Governance Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the New Governance Documents, the Disclosure Statement, the Plan, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of the new preferred and common equity shares or units of Online Pharmacy Holdings LLC pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing, in each case taking place on or before the Effective Date. For the avoidance of doubt, no direct third-party claims are non-consensually released herein.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any liabilities arising after the Effective Date, (ii) the rights of any current employee of any of the Debtors under any employment agreement or plan or any seller of business assets or equity in any Debtor, or (iii) rights of Holders of Allowed Claims or Allowed Interests to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includesinclude by reference each of the related provisions and definitions contained hereinin the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromiseresolution of the Claims released by the Third-Party ReleaseReleases; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Section 7.04   Discharge of Claims

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a proof of claim or Interest based upon such debt, right or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted the Plan or voted to reject the Plan.   The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan.

**Section 7.05    Exculpation**

As of the Effective Date, except as otherwise specifically provided in the Plan or Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim other than those arising out of or relating to any act by or omission of an Exculpated Party that have been determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.    The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on the Plan, distribution of consideration pursuant to the Plan and, to the extent applicable, the offer, issuance and sale or purchase of securities pursuant to the Plan and, therefore, are not, and on account of such solicitation, distribution and issuance shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan, such distributions made pursuant to the Plan and issuance of securities pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth above do not release (i) any liabilities arising **prior to the Petition Date or** after the Effective Date, (ii) the rights of any current employee of any of the Debtors under any employment agreement or plan or (iii) the rights of Holders of Allowed Claims or Allowed Interests to receive treatment in accordance with the Plan.

**Section 7.06    Injunction**

Effective as of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Enjoined Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, any of the Debtors, any of the Reorganized Debtors, the Exculpated Parties or the Released Parties and their respective assets and properties: (i) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting or enforcing any encumbrance of any kind against such Entities or the property or the Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection

**with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

### Section 7.07    Term of Injunctions or Stays

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### Section 7.08    Protection Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, no Entities, including Governmental Units, shall discriminate against any of the Reorganized Debtors or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, any of the Reorganized Debtors or another Entity with whom such Reorganized Debtor has been associated, solely because the Debtors have been a debtor under chapter 11 of the Bankruptcy Code, have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge) or have not paid a debt that is dischargeable in the Chapter 11 Cases.

### Section 7.09    Release of Liens, Claims and Interests

**Except as otherwise provided herein or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all Claims, Interests or Liens, including but not limited to mortgages, deeds of trust, Liens, pledges or other security interests, against or in any property of the Estates shall be fully released, discharged, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Entity, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any Entity holding such Liens, Claims or Interests will, if necessary or reasonably requested by the Debtors or Reorganized Debtors, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors and shall incur no liability to any Entity in connection with its execution and delivery of any such instruments. Any Holder of a Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtors held by such Holder (and the applicable agents for such Holder), and to take such actions**

as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens. For the avoidance of doubt, the **Exit Facility Claims and the Liens securing the** Exit Facility Claims effected through the Prepetition Lien Conversion and the DIP Lien Conversion pursuant to the Plan shall not be released, discharged, terminated or extinguished to effect the Exit Capital Structure attached to the Restructuring Support Agreement.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

**Section 8.01    Conditions Precedent to Confirmation**

It shall be a condition to Confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Section 8.03.

1.    The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Consenting Lenders, approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code (which, for the avoidance of doubt, may be the same order as the order confirming the Plan).

2.    The Plan and the Plan Supplement, including any schedules, documents, agreements, supplements and exhibits thereto (in each case in form and substance acceptable to the Debtors and the Consenting Lenders as provided for under the Restructuring Support Agreement) shall have been filed.

3.    The Restructuring Support Agreement shall not have been rejected by the Debtors, shall not have been terminated as of immediately prior to the Confirmation Date, nor shall there have been any breach thereof by any party.

**Section 8.02    Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Section 8.03.

1.    Each document or agreement constituting the Definitive Documents shall have been executed and/or effectuated and shall be in form and substance consistent with the Restructuring Support Agreement, including any consent rights included therein.

2.    The Plan shall have been filed and the Bankruptcy Court shall have entered the Confirmation Order in form and substance consistent with the Restructuring Support Agreement, including any consent rights included therein, and such Confirmation Order shall not have been

stayed, modified, vacated, appealed or subjected to an injunction and shall have become a Final Order.

3.     The Bankruptcy Court shall have entered one or more Final Orders (which may include the Confirmation Order) authorizing the assumption, assumption and assignment, and rejection, as applicable, of Executory Contracts and Unexpired Leases by the Debtors as contemplated herein.

4.     All (i) governmental and regulatory approvals, clearances and consents necessary and legally required, if any, under applicable non-bankruptcy law and (ii) material third-party consents and approvals, if any, in each case in connection with the transactions provided for in the Plan shall have been obtained, are not subject to unfulfilled conditions, and are in full force and effect, and all applicable waiting periods have expired without any action having been taken by any competent authority that restrains, prevents or enjoins the Restructuring Transactions.

5.     To the extent invoiced at least one (1) Business Day before the Effective Date, all amounts on account of invoiced and unpaid Transaction Expenses shall have been paid in full.

6.     The Professional Fee Escrow Account shall have been established and funded with the Professional Fee Amount in accordance with Section 2.02.

7.     The transactions contemplated in the Restructuring Transactions shall have been executed and completed by all of the Entities that are parties thereto.

8.     The Restructuring Support Agreement shall have been assumed pursuant to the Confirmation Order.

9.     The New Governance Documents shall have been filed with the appropriate governmental authority, as applicable.

10.    The Existing Governance Documents shall have been amended, restated, or replaced by the New Governance Documents, respectively, in all cases consistent with the consent rights of the Consenting Lenders as set forth in the Restructuring Support Agreement.

11.    The Restructuring Support Agreement shall not have been terminated as of immediately prior to the Effective Date and there has been no breach thereof by any party.

12.    [The GUC Trade Gift and the UCC Settlement Amount shall have been funded in full.]

**Section 8.03    Waiver of Conditions**

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article VIII may be waived, in whole or in part, at any time by the Debtors, with the prior written consent of the Consenting Lenders (email shall suffice), without notice, leave or order of the Bankruptcy Court or any formal action; *provided*, *however*, that the Debtors may not waive entry of the Confirmation Order.

**Section 8.04    Effect of Failure of Conditions**

If the Consummation of the Plan does not occur by the Outside Date (as defined in the Restructuring Support Agreement) as to any Debtor, the Plan shall be null and void in all respects as to such Debtor and nothing contained in the Plan, the Disclosure Statement, or the Restructuring Support Agreement shall: (i) constitute a waiver or release of any claims by or Claims against or Interests in any of the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holder of Claims or Interests or any other Entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by any of the Debtors, any Holder or any other Entity in any respect.

**Section 8.05    Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

<h2 style="text-align:center">ARTICLE IX<br>MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN</h2>

**Section 9.01    Modification and Amendments**

Except as otherwise provided in the Plan, the Debtors (with the consent of the Consenting Lenders) reserve the right to modify the Plan as to material and/or immaterial terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019 and applicable restrictions on modifications set forth in the Plan, the Debtors (with the consent of the Consenting Lenders) expressly reserve their respective rights to revoke, withdraw, alter, amend or modify the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in each case in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article IX.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, any alterations, amendments or modifications of the Plan proposed in writing by the Debtors at any time prior to or after the Confirmation Date, but prior to the Effective Date, and in all cases subject to the consent of the Consenting Lenders, Holders of Claims that have accepted the Plan shall be

deemed to have accepted the Plan, as altered, amended or modified, without the re-solicitation if the proposed alteration, amendment or modification do not materially and adversely change the treatment of the Claim of such Holder; *provided*, *however*, that any Holders of Claims or Interests that were deemed to accept the Plan because such Claims or Interests were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims continue to be Unimpaired.

**Section 9.02    Effect of Confirmation on Modifications**

Entry of a Confirmation Order, including under section 1127 of the Bankruptcy Code, shall mean that all modifications or amendments to the Plan occurring after the solicitation are approved pursuant to section 1127(a) of the Bankruptcy Code or section 1127(b) of the Bankruptcy Code, as applicable, and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**Section 9.03    Revocation or Withdrawal of the Plan**

The Debtors reserve the right, upon prior notice to and with the consent of the Consenting Lenders, to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization, either entirely or as to any one or more of the Debtors. If the Plan is revoked or withdrawn as to fewer than all of the Debtors, such revocation or withdrawal shall not affect the enforceability of the Plan as it relates to the Debtors for which the Plan is not revoked or withdrawn. If (i) the Debtors revoke or withdraws the Plan in its entirety in accordance with this Section 9.03, (ii) the Restructuring Support Agreement is terminated by the Outside Date (as defined in the Restructuring Support Agreement), or (iii) Confirmation or Consummation does not occur by the Outside Date (as defined in the Restructuring Support Agreement), then, absent further order of the Bankruptcy Court: (i) the Plan shall be null and void in all respects unless extended by the Debtors, with the prior written consent of the Consenting Lenders; (ii) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity, including the Holders of Claims or Interests or the Consenting Noteholders; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor or any other Entity, including the Holders of Claims or Interests or the Consenting Noteholders.

**ARTICLE X**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases, the Plan and all matters, arising out of or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (i) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor or Reorganized Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Reorganized Debtors amending, modifying or supplementing, after the Effective Date, pursuant to Article IX, any Executory Contracts or Unexpired Leases; and (iv) any dispute regarding whether a contract or lease is, or was, executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide or resolve any and all motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.      adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, Plan Supplement or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

9.      resolve any and all cases, controversies, suits, disputes or Causes of Action that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.      resolve any and all cases, controversies, suits, disputes or Causes of Action with respect to existence, nature, scope or enforcement of any discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in Article VII and enter such

orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12.    resolve any and all cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI;

13.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

14.    determine any and all matters that may arise in connection with, relate to or be necessary to execute, implement or consummate, the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

15.    adjudicate any and all disputes arising from or relating to distributions under the Plan;

16.    consider any and all modifications of the Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.    determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.    hear and determine disputes, cases, controversies or Causes of Action arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

19.    hear and determine any and all matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

20.    enforce any and all orders previously entered by the Bankruptcy Court;

21.    hear any other matter not inconsistent with the Bankruptcy Code; and

22.    enter an order and/or final decree concluding or closing the Chapter 11 Cases.

*provided, that,* on and after the Effective Date and after the consummation of the following agreements or documents, the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement, including, among other documents, the New Governance Documents and any documents related thereto that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court, and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

- 62 -

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**Section 11.01  Tax Structure**

As reasonably determined by the Debtors, upon emergence from the Chapter 11 Cases, Optio Rx shall be structured as a limited liability company, and the Restructuring Transactions shall, subject to the terms and conditions of the Restructuring Support Agreement, be structured to achieve a tax-efficient structure, in a manner reasonably acceptable to the Reorganized Debtors and subject to the consent rights of the Consenting Lenders in the Restructuring Support Agreement.

**Section 11.02  Immediate Binding Effect**

Subject to Section 8.02 hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**Section 11.03  Additional Documents**

On or before the Effective Date, and consistent with the terms of the Restructuring Support Agreement, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Subject to their respective obligations under the Restructuring Support Agreement, the Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be reasonably necessary or advisable to effectuate the provisions and intent of the Plan.

**Section 11.04  Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the filing of the Plan, any statement or provision contained in the Plan or any action taken or not taken by the Debtors with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

**Section 11.05 Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, trustee, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

**Section 11.06 Notices**

All notices, requests and demands to or upon the Debtors, the Reorganized Debtors or the Consenting Lenders, as applicable, or any required by or in connection with the Plan shall be in writing (including by facsimile or electronic transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile and electronic transmission, when received and telephonically or electronically confirmed, addressed as follows:

If to the Debtors or the Reorganized Debtors:

Optio Rx, LLC
3701 Commercial Avenue
Suite 14
Northbrook, Illinois 60061
Attn:  Ben David, CEO
Email:  bdavid@optiorx.com

With a copy to:

CHIPMAN BROWN CICERO & COLE, LLP
William E. Chipman, Jr.
Mark D. Olivere
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:     (302) 295-0191
Facsimile:     (302) 295-0199
Email:  chipman@chipmanbrown.com
             olivere@chipmanbrown.com

If to the Consenting Lenders:

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, NY 10020-1104
Attn:  Jamie Knox

Email: Jamie.Knox@us.dlapiper.com
and

DLA Piper LLP (US)
1201 North Market Street
Suite 2100
Wilmington, DE 19801-1147
Attn: Stuart Brown
Email: stuart.brown@us.dlapiper.com

After the Effective Date, the Reorganized Debtors may, in their sole discretion, notify Entities that, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

**Section 11.07 Entire Agreement**

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

**Section 11.08 Severability of Plan Provisions**

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Consenting Lenders; and (iii) nonseverable and mutually dependent.

**Section 11.09 Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed,


copies of such exhibits and documents shall be available upon request to the Debtors' counsel, or at the website of the Solicitation Agent, at OptioRXInquiries@stretto.com.https://cases.primeclerk.com/ferrellgasballots  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

**Section 11.10  Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable nonbankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, trustees, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code and the applicable nonbankruptcy law in the offer, issuance, sale and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or Reorganized Debtors will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale or purchase of the securities offered and sold under the Plan and any previous plan.

**Section 11.11  Closing of Chapter 11 Cases**

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; provided, however, that, as of the Effective Date, the Reorganized Debtors may submit separate motions and orders to the Bankruptcy Court under certification of counsel previously provided torequesting the U.S. Trustee closing of certain individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly; provided further that matters concerning Claims may be heard and adjudicated in one of the Debtors' Chapter 11 Cases that remains open regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed.  Nothing in the Plan shall authorize the closing of any case *nunc pro tunc* to a date that precedes the date any such order is entered.  Any request for *nunc pro tunc* relief shall be made on motion served on the United States Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing.  Upon the filing of a motion to close the last Chapter 11 Case remaining open, the Reorganized Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Bankruptcy Rule 3022-1(c).

**Section 11.12  Document Retention**

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified or supplemented by the Reorganized Debtors.

**Section 11.13  Further Assurances**

The Debtors, the Reorganized Debtors and all Holders of Claims or Interests receiving distributions hereunder and all other parties-in-interest agree to prepare, execute and deliver any agreements, instruments or documents and take any other actions, in addition to the matters specified in the Plan, as may be reasonably appropriate, necessary or advisable, or as may be required by order of the Bankruptcy Court, from time to time, to effectuate the provisions and intent of the Plan.

**Section 11.14  Claims Against Other Debtors**

Nothing in the Plan or the Disclosure Statement or any document or pleading filed in connection therewith shall constitute or be deemed to constitute an admission that any of the Debtors are subject to or liable for any Claim against any other Debtor.

**Section 11.15  Transaction Expenses**

The Transaction Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms set forth herein and in the Restructuring Support Agreement, as applicable, without any requirement to file a fee application with the Bankruptcy Court, without the need for itemized time detail and without any requirement for Bankruptcy Court's review or approval.  All Transaction Expenses to be paid on the Effective Date (to the extent not previously invoiced) shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least three (3) Business Day before the anticipated Effective Date; *provided*, *however*, that such estimates shall not be considered an admission or limitation with respect to such Transaction Expenses.  In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay when due the reasonable pre- and post-Effective Date Transaction Expenses related to the implementation, consummation and defense of the Plan, whether incurred before, on or after the Effective Date, upon receipt of invoices therefor.

*[Remainder of page intentionally left blank]*

Dated: ~~July 29~~<u>September 10</u>, 2024

Respectfully submitted,

**Optio Rx, LLC**
**Braun Pharma, LLC**
**Dr. Ike's PharmaCare, LLC**
**Rose Pharmacy SA LLC**
**Rose Pharmacy SF LLC**
**Rose Pharmacy RM LLC**
**Pet Apothecary, LLC**
**Crestview Holdings, LLC**
**SBH Medical, LLC**
**H&H Pharmacy, LLC**
**Enovex Pharmacy, LLC**
**SMC Pharmacy, LLC**
**SMC Lyons Holdings, LLC**
**Baybridge Pharmacy, LLC**
**Central Pharmacy, LLC**
**Pro Pharmacy, LLC**
**Healthy Choice Compounding LLC**
**Oakdell Compounding Pharmacy, LLC**
**The Pet Apothecary LLC**
**Crestview Pharmacy, LLC**
**SBH Medical, Ltd.**
**Concierge Pharmacy, LLC**
**Firstcare Pharmacy, LLC**
**Easycare Pharmacy, LLC**
**Primecare Pharmacy, LLC.**


By:        */s/ Ben David*
Name:  Ben David
Title:   Chief Executive Officer

- 69 -

Document comparison by Workshare Compare on Tuesday, September 10, 2024 7:28:15 PM

| Input: | |
|---|---|
| Document 1 ID | netdocuments://4865-3582-3548/9 |
| Description | OptioRx - Plan of Reorganization |
| Document 2 ID | netdocuments://4865-3582-3548/12 |
| Description | OptioRx - Plan of Reorganization |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 315 |
| Deletions | 292 |
| Moved from | 1 |
| Moved to | 1 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 609 |