# **EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Objection Deadline: TBD**<br>**Hearing Date: TBD** |
| | **Related Docket No. 362** |

**DEBTORS' OBJECTION TO MOTION OF SKIN MEDICINALS LLC FOR ENTRY OF
AN ORDER GRANTING AN ALLOWED ADMINISTRATIVE EXPENSE PURSUANT
TO SECTION 503(b) OF THE BANKRUPTCY CODE**

Optio Rx, LLC ("**Optio**") and its affiliated debtors and debtors-in-possession (collectively,

"**Debtors**"), in the above-captioned chapter 11 cases, hereby submit this Objection (the

"**Objection**") to *Motion of Skin Medicinals LLC for Entry of an Order Granting an Allowed

Administrative Expense Pursuant to Section 503(b) of the Bankruptcy Code* [Docket No. 362] (the

"**Motion**").  In support of this Objection, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

Skin Medicinals LLC ("**Skin Medicinals**") is not entitled to an administrative expense

claim in these cases for alleged misappropriation of its alleged trade secrets (the "**Trade Secrets**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216).  The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

Claims") or for any of its other claims, including violations of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("**CFAA Claims**") and the Florida Computer Abuse and Data Recovery Act, Fla. Stat. § 668.801 *et seq.* ("**CADRA Claims**" and together with the CFAA Claims, the "**Unauthorized Access Claims**").  All of the alleged conduct giving rise to the alleged Trade Secret Claims, the Unauthorized Access Claims, or Skin Medicinals' other claims (collectively, the "**Asserted Administrative Claims**") occurred well prior to the Petition Date and are prepetition unsecured claims under section 101(5) of the Bankruptcy Code.  There is nothing in Skin Medicinals' Complaint or cited by Skin Medicinals in its Motion that supports a postpetition administrative expense claim.  Under well settled Third Circuit law, it is the timing of the Debtors' conduct that determines when a claim arises for purposes of qualification as an administrative expense under Section 503(b).  As set forth in detail below, Skin Medicinals' own pleading makes plain that any claim it may have against the Debtors arose prior to the petition date.

Any unidentified or speculative injuries to Skin Medicinals related to Asserted Administrative Claims purportedly arising since the initiation of these Chapter 11 Cases are, at best, mere manifestations of the Debtors' alleged prepetition conduct.  Any injuries suffered by Skin Medicinals result from claims that arose prior to the initiation of the Chapter 11 Cases.  As a result, they are prepetition unsecured claims and the Motion should be denied.

## **BACKGROUND**

I.    **GENERAL BACKGROUND.**

1.    On June 7, 2024 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.  The Chapter

11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

2.      The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On June 21, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a creditors' committee (the "**Committee**") in these Chapter 11 Cases [Docket No. 67].[2]   No trustee or examiner has been appointed in the Chapter 11 Cases.

4.      Additional factual background regarding the Debtors' business operations, corporate and capital structures, and restructuring efforts are described in greater detail in the *Declaration of Leo LaFranco in Support of First Day Pleadings* [Docket No. 3], which is incorporated herein by reference.

**II.     DISCLOSURE STATEMENT AND CONFIRMATION.**

5.      On June 10, 2024, the Debtors filed the *Joint Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 20] and the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 21].

6.      On June 24, 2024, Debtors filed the *Motion for Entry of an Order (I) Approving Debtors' Disclosure Statement, (II) Determining Dates, Procedures, and Forms Applicable to the Solicitation Process, (III) Establishing Vote Tabulation Procedures, and (IV) Establishing*

---

[2]     The U.S. Trustee subsequently filed an Amended Notice of Appointment of Creditors' Committee [Docket Nos. 81 and 130].

4862-6551-8562, v. 5

*Objection Deadline and Scheduling Hearing to Consider Confirmation of the Plan* [Docket No. 76].

7.        On July 29, 2024, the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 257] (as may be subsequently amended or modified, the "**Plan**") and the *Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 258] (the "**Disclosure Statement**").

8.        On August 1, 2024, the Court entered the *Order (i) Approving Amended Disclosure Statement, (ii) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (iii) Establishing Vote Tabulation Procedures, and (iv) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of the Amended Plan* [Docket No. 276].

9.        A hearing to consider confirmation of the Plan is scheduled for September 13, 2024, at 10:00 a.m. (*prevailing* Eastern Time).

**III.     BAR DATE AND PROOFS OF CLAIM.**

10.        By Order dated June 26, 2024, this Court established August 7, 2024, at 5:00 p.m. (*prevailing* Eastern Time) (the "**Bar Date**") as the deadline for creditors to file proofs of claim for each claim they assert against the Debtors that arose before the Petition Date.

11.        On August 6, 2024, Skin Medicinals LLC (**"Skin Medicinals"**) filed proofs of claim against each of the Debtors (Proof of Claim Nos. 83, 87, 89, 102, 103, 105–15, 117–21, 123–26, 128–29) (the **"Proofs of Claim"**).  The Proofs of Claim assert the exact same prepetition claims Skin Medicinals is pursuing in the Adversary Proceeding (as defined below) and through the Motion.

- 4 -

IV.    **THE MOTION.**

12.    Through the instant Motion, Skin Medicinals seeks allowance of an administrative expense claim for postpetition damages that could be potentially awarded in its pending adversary proceeding captioned *Skin Medicinals LLC v. Optio Rx, LLC, et al.*, Adv. No. 24-50079 (TMH) (the **"Adversary Proceeding"**).

V.    **THE SKIN MEDICINALS ADVERSARY PROCEEDING.**

13.    On June 17, 2024, Skin Medicinals commenced the Adversary Proceeding against Optio Rx and others in this Court, alleging misappropriation of Skin Medicinals' alleged trade secrets, violations of CFAA and CADRA, unfair competition, and unjust enrichment. The factual basis for each of these claims overlaps and it is clear from the Complaint that the alleged wrongful conduct occurred pre-petition. Skin Medicinals alleges that Optio Rx sought to build a website that "functions like the Skin Medicinals Web Portal" beginning in January 2024. Compl. ¶ 39. Skin Medicinals alleges that Ben David, through Ms. Ippolito, obtained credentials to access the Skin Medicinals Web Portal in February 2024 and at that time shared those credentials with other Optio Rx employees. Compl. ¶¶ 41-43. Skin Medicinals alleges that additional improper access, and downloading of documents, occurred throughout March 2024. Compl. ¶ 49. Skin Medicinals alleges that development of Optio Rx's own dermatology website continued throughout April 2024 and Skin Medicinals alleges that Optio Rx planned to launch its competing dermatology website in May or June 2024. Compl. ¶¶ 56-60. Skin Medicinals sent a cease and desist letter to Optio Rx in April 2024 and there are no allegations about unauthorized access beyond April 2024 – two months prior to the Petition Date.

14.    Through the Adversary Proceeding, Skin Medicinals sought injunctive relief, which has been repeatedly denied by this Court, and monetary, exemplary, and punitive damages.

4862-6551-8562, v. 5

Skin Medicinals filed a motion for temporary restraining order and preliminary injunction based on its alleged Trade Secrets, CFAA and CADRA claims.

15.    On June 20, 2024, the parties agreed to a status quo order (A.D.I. 12) (the **"Status Quo Order"**) pending determination on the request for a preliminary injunction. The Status Quo Order temporarily restrained OptioRx from, among other things, accessing Skin Medicinals' website, launching a competing physician-based dermatology web portal, or selling compounded dermatologic medications derived from Skin Medicinals' alleged proprietary compound list pending trial.

16.    On July 12, 2024, the Court denied Skin Medicinals' request for a preliminary injunction in a bench ruling (A.D.I. 56) and entered an order to that effect on July 15, 2024 (A.D.I. 58). The Bankruptcy Court concluded that Skin Medicinals had failed to "identify the alleged trade secrets with sufficient specificity, as required under the DTSA and the relevant case law." Tr. 25:10-13. Specifically, the Court stated that Skin Medicinals "referred to its compound list in rather sweeping terms, without outlining the specific aspects of the lists that constitute protectable trade secrets" (Tr. 16:7-9) and that Skin Medicinals solely proffered "general assertions about the website and the business model, but not specific evidence, or particular aspects of the website or processes to measurable economic advantages." Tr. 24:22-25.

17.    The Court's order was subsequently vacated on appeal on August 5, 2024. *Skin Medicinals LLC v. Optio Rx, LLC, et al.*, C.A. No. 24-828 (MN) (D. Del. Aug. 8, 2024). On August 13, 2024, the Court issued a supplemental ruling (the **"Supplemental Ruling"**) again denying Skin Medicinals' request for a preliminary injunction (A.D.I. 80). The Bankruptcy Court concluded that Skin Medicinals failed to establish "a likelihood of success on the merits as to the issue of "loss" or "harm" under the CFAA and CADRA." (D.I. 80 at 4-5.) The Court found no

evidence in the record of "loss arising out of Optio Rx's unauthorized access to Skin Medicinals'
protected computers." (D.I. 80 at 5.)  On August 16, 2024, the Court entered a second order
denying the preliminary injunction (A.D.I. 85).

18.     On August 16, 2024, Skin Medicinals filed a motion to reconsider (A.D.I. 92) the
Court's Supplemental Ruling, which the Court denied at a hearing on August 29, 2024.

## OBJECTIONS

### i.     SKIN MEDICINALS IS NOT ENTITLED TO AN ADMINISTRATIVE EXPENSE CLAIM.

19.     The Bankruptcy Code provides that "the actual, necessary costs and expenses of
preserving the estate" may be allowed administrative expenses. 11 U.S.C. §§ 503(b)(1)(A),
507(a)(2).  To be entitled to an administrative expense claim under section 503(b)(1)(A) of the
Bankruptcy Code, a claimant must show that "(1) there was a postpetition transaction between the
claimant and the estate and (2) those expenses yielded a benefit to the estate." *In re Energy Future
Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021); *In re Women First Healthcare, Inc.*, 332 B.R.
115, 121 (Bankr. D. Del. 2005) (same).  The party seeking to recover expenses must "carry the
heavy burden of demonstrating" that such expenses qualify as an administrative expense. *In re
Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (internal citation omitted); *see
also In re SRC Liquidation, LLC*, 573 B.R. 537, 540 (Bankr. D. Del. 2017) ("The claimant bears
the ultimate burden of establishing a valid administrative expense claim by a preponderance of the
evidence.") (*citing In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173- 74 (3d Cir.1992); *In re New
Century TRS Hldgs., Inc.*, 446 B.R. 656 (Bankr. D. Del. 2011) ("Claimants who seek to have their
claims paid ahead of general unsecured creditors bear the burden of establishing that their claim
qualifies for priority status.").  Here, in other words, Skin Medicinals must demonstrate that its
Asserted Administrative Claims arise from postpetition conduct by the Debtors that conferred a

benefit on the estates or resulted in the preservation of the debtors' estates. *See In re Energy Future Holdings*, 990 F.3d at 741; *In re Mallinckrodt PLC, et al.*, 2021 WL 4876908 * 3 (Bankr. D. Del. Oct. 19, 2021); *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 173 (3d Cir. 2012), as corrected (Oct. 25, 2012).  Skin Medicinals has failed to do so.

20.    To the extent there is any merit to the Trade Secrets Claims or the Unauthorized Access Claims (which, as demonstrated at the numerous hearings before the Court, there is none), such claims arose prior to the Petition Date and, therefore, are not entitled to administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code.

21.    Specifically, in determining when a "claim" arises under the Bankruptcy Code, the Third Circuit has held:

> Irrespective of the title used, there seems to be something approaching a consensus among the courts that a prerequisite for recognizing a "claim" is that the claimant's exposure to a product giving rise to the "claim" occurred pre-petition, <u>even though the injury manifested after the reorganization</u>.  We agree and hold that a "claim" arises when an individual is <u>exposed pre-petition to a product or other conduct giving rise to an injury</u>, which underlies a "right to payment" under the Bankruptcy Code.

*In re Grossman's Inc.*, 607 F.3d 114, 125 (3d Cir. 2010) (emphasis added).

22.    Furthermore, to understand why Skin Medicinals' Motion must fail, it is also critical to remember the "cause of action accrual test" for determining when a claim arose as first articulated by *In re Frenville*, 744 F.2d 332 (3d Cir. 1984) and since rejected.

23.    That "accrual test" was expressly rejected and overruled by the Third Circuit, which held the following in *Grossman's*:

> *Frenville* held that a "claim," as that term is defined by the Bankruptcy Code, arises <u>when the underlying state law cause of action accrues</u>. The applicable New York law provides that a cause of action for asbestos-related injury does not accrue until the injury manifests itself . . . . The *Frenville* court focused on the "right to

- 8 -

payment" language in § 101(5) and, according to some courts, "imposed too narrow an interpretation on the term claim," by failing to give sufficient weight to the words modifying it: "contingent," "unmatured," and "unliquidated." <u>The accrual test in *Frenville* does not account for the fact that **a "claim" can exist under the Code before a right to payment exists under state law**</u>. We are persuaded that the widespread criticism of *Frenville's* accrual test is justified, as it imposes too narrow an interpretation of a "claim" under the Bankruptcy Code. Accordingly, the *Frenville* accrual test should be and now is overruled.

*In re Grossman's Inc.*, 607 F.3d at 118, 121 (emphasis added) (internal citations omitted); *see also Wright v. Owens Corning*, 679 F.3d 101, 103 (3d Cir. 2012) ("We overruled *Frenville* with our *en banc* decision in *Grossman's*, in which we rejected *Frenville's* 'accrual test,' and in its place established the rule that a 'claim' arises when an individual is exposed prepetition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code.") (internal citations omitted); *In re Rodriguez*, 629 F.3d 136, 139 (3d Cir. 2010) ("In *Grossman's*, this Court, sitting *en banc*, endorsed this broad interpretation of the term 'claim,' overruling the narrow 'accrual test' established in *Avellino & Bienes v. M. Frenville Co.*, which focused on the phrase 'right to payment' in § 101(5) and when the right arose.").

24.    Thus, under *Grossman's*, the Third Circuit endorsed a very broad reading of "claim," one which encompasses conduct before it even gives rise to a cause of action. The critical question in determining when a claim arises under the Bankruptcy Code (and, hence, whether the claim is to be treated as prepetition or postpetition) is when the alleged conduct occurred, not when either the creditor's cause of action accrues nor when the creditor's injuries from such conduct manifest themselves (or otherwise become known or liquidated in the future). The latter is the essence of a contingent and unliquidated prepetition claim under the *Grossman's* test and the Bankruptcy Code generally.

4862-6551-8562, v. 5

25.     The Third Circuit expressly recognized in *Grossman's* that a prepetition claim could exist under the Bankruptcy Code even if (and notwithstanding whether) a cause of action had not yet accrued, or injury had not yet occurred, under applicable non-bankruptcy law.  Skin Medicinals cites to *Reading Co. v. Brown* and its progeny to argue that its asserted administrative claims must be allowed.  However, *Reading* simply holds that postpetition tort claims may, under certain limited circumstances, be allowed as administrative expense claims. *Reading Co. v. Brown*, 391 U.S. 471 (1968).  Moreover, the mere allegation of postpetition injury does not, by itself, constitute a postpetition tort or other conduct by a debtor resulting in an administrative expense. Rather, the postpetition injury can simply be the manifestation of a debtor's prepetition conduct (including torts) and, hence, be a prepetition claim only. *See In re Supermedia, Inc.*, 2014 WL 7403448, at \*19-20 (Bankr. D. Del. Dec. 29, 2014) (denying administrative expense request because no tort occurred during the chapter 11 case and holding that "the mere postpetition effects of prepetition conduct cannot trigger *Reading*").  *Reading* does not apply to Skin Medicinals' claims, which arose prepetition.

26.     Skin Medicinals' reliance on *In re Mallinckrodt PLC, et al.*, is likewise misplaced. 2021 WL 4876908 (Bankr. D. Del. Oct. 19, 2021).  In *Mallinckrodt*, Judge Dorsey merely held that the Debtors' decision to continue selling a product known as Acthar post-petition, at allegedly anticompetitive prices, could constitute an antitrust violation with each sale.  *Id.* at \*9. In so holding, Judge Dorsey relied, in part, on *Peck v. General Motors Corp.* where the Sixth Circuit made clear, that for antitrust cases, "when a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants." 894 F.2d 844, 849 (6th Cir. 1990) (citations and quotations omitted).  As discussed below, the same is not true of a trade secrets claim.  In *Grossman's, Owens Corning* and *Mallinckrodt,* a claim arises when a claimant

- 10 -

was exposed to the debtors' product or conduct. *See Mallinckrodt,* 2021 WL 4876908, at *8; *Grossman's,* 607 F.3d at 125; *Owens Corning*, 679 F.3d at 107. Here, the exposure all occurred prepetition.

27.     In another *Mallinckrodt* decision, Judge Ambro (sitting by designation at the District Court) found that royalties owed to Sanofi, from whom Mallinckrodt had purchased the Achtar intellectual property, were discharged in bankruptcy. 646 F. Supp. 3d 565 (D. Del. 2022). Sanofi and Mallinckrodt had entered into an Asset Purchase Agreement in 2001 whereby Mallinckrodt received the intellectual property relating to Achtar and Sanofi was entitled to an annual royalty of all net sales of Achtar that exceeded $10 million. *Id.* at 567. After analyzing *Grossman's* and its progeny, Judge Ambro held that Sanofi's claim to future royalties arose at the time the APA was signed, making it discharged on confirmation of the plan of reorganization. *Id.* at 570. The Court recognized that "to allow the [r]oyalty to survive discharge would give Sanofi special treatment over other unsecured creditors for which it did not bargain." *Id.* at 571. The same result is true here – Skin Medicinals' claims arose prepetition, even if damages will allegedly continue to accrue.

28.     Here, Skin Medicinals asserts claims, including the Unauthorized Access Claims, in addition to its Trade Secrets Claims but focuses its entire Motion on the Trade Secrets claims. For this reason, this Court should find that Skin Medicinals' other claims, including the Unauthorized Access Claims, are prepetition claims and are discharged under the Plan. Specifically with respect to the Unauthorized Access Claims, Skin Medicinals makes no allegations that the Debtors accessed the Skin Medicinals website postpetition. The Unauthorized Access Claims set forth in the complaint and Motion only allege pre-petition conduct. There can be no question that the Unauthorized Access Claims arose pre-petition and no later than April

2024. Skin Medicinals' non-Trade Secrets Claims, including the Unauthorized Access Claims are, therefore, prepetition claims not entitled to administrative claims status that will be discharged under the Plan. *Mallinckrodt*, 646 F. Supp. 3d 565.

29.     The Trade Secrets Claims also arose prepetition and Skin Medicinals' arguments to the contrary are unavailing.  In the context of a claim under the Defend Trade Secrets Act, courts analyzing when a claim arises for purposes of statute of limitations have found that "a claim for misappropriate arises only once…at the time of the initial misappropriation."  *B&P Littleford LLC v. Prescott Machinery, LLC*, 2021 WL 3732313, at *6 (6th Cir. Aug. 24, 2021).  This is true even though additional actions may be considered an additional act of misappropriation.  *Id.*  The District of Delaware has recognized the same, holding that "a continuing violation constitutes a **single claim** of misappropriation" under the DTSA.  *Ocimium Biosolutions (India) Ltd. v. LG Corp.*, 2021 WL 931094, at *7 (D. Del. Mar. 11, 2021) (emphasis added).  The District Court in the Eastern District of Pennsylvania has expressly endorsed this analysis:

> Underlying this question is a more fundamental one about what trade secrets are. One school of thought does not treat trade secrets as property per se, but instead premises harm based on the violation of a relationship in which the trade secret owner had reason to believe the information would be kept in confidence.  Once there has been a misappropriation, the basis for trust in the relationship is destroyed and the trade secret owner's cause of action arises.

*Houser v. Feldman*, 569 F. Supp. 2d 216, 225 (E.D. Pa. 2021).

30.     Skin Medicinals admits that its Trade Secrets Claims arose prepetition and has included those claims in their proofs of claim.  Despite asserting prepetition claims, Skin Medicinals argues that "the Debtors' continued use or disclosure of Skin Medicinals' trade secrets to create their competing platform gives rise to new claims for misappropriation under both Illinois law and the DTSA, which are entitled to administrative expense status under *Reading*."  Motion at ¶ 40.  But that is plainly incorrect under the cases that have analyzed when a cause of action

arises under the DTSA – it arises once and only when the conduct begins, even if the alleged wrong continues.

31.    Skin Medicinals states that "courts have expressly held that continuing violations of the DTSA give rise to new claims, rejecting the theory that misappropriation constitutes a single claim." Motion ¶ 39.  That is inaccurate and not supported by the cases it cites.  To the contrary, the cases Skin Medicinals cites for this proposition considered whether a party could assert a cause of action under the DTSA where the conduct began before enactment of the DTSA.  As the Ninth Circuit explained, it was the specific absence of language in the DTSA that allows claims to be brought even though the misappropriation began pre-enactment. *Attia v. Google LLC*, 983 F.3d 420, 425 (9th Cir. 2020).   Unlike the Uniform Trade Secrets Act that came before it, the "DTSA does not contain an anti-continued use provision." *Id.*  The UTSA, on the other hand, does contain an anti-continued use provision which stated, "[w]ith respect to a continuing misappropriation that began prior to the effective date, it does not apply to the continuing misappropriate that occurs after the effective date." *Id.* (quotations omitted).  In other words, those cases dealt with a specific statutory issue, and not with when a claim arose.  And while Skin Medicinals lumps all of its claims together, it at times attempts to invoke Illinois law and Illinois' uniform act.  Motion at ¶ 40.  Even under Skin Medicinals' own cases, the Uniform Trade Secrets Act specifically has an anti-continued use provision, thus confirming that any claims Skin Medicinals has under Illinois law are prepetition and not entitled to administrative claim status.  Skin Medicinals' claims under Illinois law are prepetition claims subject to discharge and the Court should find the same with respect to its claims under the Defend Trade Secrets Act.

32.    To the extent the Court views a conflict between the statute of limitations- based cases relied upon by the Debtors and the cases relied upon by Skin Medicinals, it is clear that the

- 13 -

Debtors' cited cases are analogous to the circumstances.  As discussed above, the Third Circuit in *In re Grossman's* expressly overruled *Frenville's accrual* test in favor of a much broader definition of claim.  Accordingly, because Skin Medicinals' claim accrued prepetition under the DTSA exclusively from prepetition acts, there is no basis to conclude that Skin Medicinals holds a postpetition administrative claim.

33.     Moreover, the Third Circuit has referred to statute of limitations law in analogous circumstances to deny an administrative claim.  In *In re Philadelphia Newspapers LLC*, the Third Circuit denied an administrative claim for a defamation claim based on a re-posting of an article that had been posted prepetition initially.  690 F.3d 161 (3d Cir. 2012).  As part of its analysis, the Third Circuit recognized that the statute of limitations for defamation claims is one year from the date of publication and that Pennsylvania has adopted the "single publication rule" where "it is the original printing of the defamatory material and not the circulation of it which results in a cause of action." *Id.* at 174.  The same should be true here where the statute of limitations under the DTSA begins to run with the original alleged misappropriation, regardless of whether it continues. Finally, the United States District Court for the District of Arizona has likewise held that the statute of limitations cases were more analogous than the statute enactment claims when considering whether claims under the DTSA had been released by a settlement agreement between the parties. *Arrivia Inc. v. Rowley*, 2023 WL 7386384, at * 6 (D. Ariz. Nov. 8, 2023) (distinguishing *Attia* because "the holding there concerned misappropriation before and after the statute's enactment – not before and after a release of claims").

34.     The conduct alleged by Skin Medicinals occurred prior to the Petition Date.  Not one of Skin Medicinals' pleadings, proofs of claim or other filing in these chapter 11 cases cites to a single, specific postpetition act by the Debtors that would give rise to an administrative

- 14 -

expense claim. Notwithstanding the foregoing, depending on the extent, if any, this Court grants Skin Medicinals an administrative expense claim, the Debtors likely may not have sufficient liquidity to pay or provide fully for such claim, preventing the occurrence of the Effective Date under the Plan, should it be confirmed. Forcing the Debtors to remain in bankruptcy indefinitely would be value-destructive to all parties in interest and is contrary to public policy.

35.     The Debtors reserve the right to amend, modify or supplement this Objection and to respond or object to any other motions, objections, pleadings, or proofs of claim filed by Skin Medicinals in these cases.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order denying the Motion and granting such other and further relief as the Court may deem just and proper.

Dated: September 10, 2024
         Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

_/s/ William E. Chipman, Jr._

William E. Chipman, Jr. (No. 3818)
David W. Carickhoff (No. 3715)
Mark D. Olivere (No. 4291)
Alan M. Root (No. 5427)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:     (302) 295-0191
Email:         chipman@chipmanbrown.com
               carickhoff@chipmanbrown.com
               olivere@chipmanbrown.com
               root@chipmanbrown.com

_Counsel for Debtors and Debtors in Possession_

- 15 -

4862-6551-8562, v. 5