# EXHIBIT A

**(*Proposed* Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (*Jointly Administered*) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND**
**ORDER CONFIRMING THE DEBTORS' SECOND AMENDED**
**JOINT CHAPTER 11 PLAN OF REORGANIZATION OF OPTIO RX, LLC, *et al.***

The *Second Amended Joint Chapter 11 Plan of Reorganization of Optio RX, LLC, et al.* [Docket No. 382] (as modified, amended, or supplemented from time to time, the "**Plan**"), having been filed with the Bankruptcy Court by the above-captioned debtors and debtors-in-possession (each a "**Debtor**" and, collectively, the "**Debtors**"); and the *Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Reorganization of Optio RX, LLC, et al.* [Docket No. 257] (as modified, amended, or supplemented from time to time, the "**Disclosure Statement**"), having been filed with this Court; and the Disclosure Statement, and appropriate ballots for voting on the Plan having been approved, and transmitted to Holders[2] of Claims against the Debtors in the Voting Classes, pursuant to that certain order (the "**Disclosure Statement Order**") [Docket No. 276]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60061.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (*each as defined herein*), as applicable.

approving the Disclosure Statement as containing "adequate information" within the meaning of section 1125 of tile 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "**Bankruptcy Code**"), and authorizing the service and solicitation of acceptances and rejections of the Plan, establishing related deadlines and procedures, and setting September, 13, 2024 as the Confirmation Hearing (the **"Confirmation Hearing"**); and the Plan Supplement having been filed on August 27, 2024 [Docket No. 348]; and the affidavits of service filed in respect of the Disclosure Statement Order, the Disclosure Statement, the Plan (appended to the Disclosure Statement) and the Confirmation Hearing Notice [Docket Nos. 284 and 296] ("**Affidavits of Service**") each having been filed; and the Debtors having filed the *Debtors' Memorandum of Law in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of Optio RX, LLC, et al.* [Docket No. 387] (the "**Confirmation Memorandum**"; and the *Declaration of Gary Lembo in Support of Confirmation of Second Amended Joint Chapter 11 Plan of Reorganization of Optio RX, LLC, et al.* [Docket No. 385] (the "**Lembo Declaration**"); and the *Certification of Stretto, Inc. Regarding Solicitation of Votes and Tabulation of Ballots in Connection with the Amended Joint Chapter 11  Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 378] (the "**Voting Report**"); and after due and sufficient notice was given to Holders of Claims against, and Equity Interests in, the Debtors and other parties-in-interest in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) and the local rules of the Court (the **"Local Rules"**), in each case as established by the affidavits of service, mailing and/or publication filed with this Court prior to the Confirmation Hearing; and upon all of the proceedings held before this Court and after full consideration of: (i) each of the objections to the Confirmation of the Plan filed with this Court and not subsequently withdrawn, settled or deemed moot (the "**Objections**"); (ii) the Plan Supplement; (iii) the

Confirmation Memorandum; (iv) the Voting Report; (v) testimony proffered or presented in support of Confirmation; (vi) the declarations and/or affidavits filed with this Court; and (vii) all other documents comprising the record in these cases, the arguments and representations of counsel, and the evidence proffered and/or adduced in support of Confirmation; and after due deliberation thereon; and good cause appearing therefor; the Court makes and issues the following findings of fact, conclusions of law and Order.

### **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.       On June 7, 2024 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing these cases (the "**Chapter 11 Cases**").  The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.       On June 21, 2024, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**") [Docket No. 67].

C.       These Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

D.       V<small>ENUE</small>, C<small>ORE</small> P<small>ROCEEDING</small>; E<small>XCLUSIVE</small> J<small>URISDICTION</small>.  On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors were qualified and are qualified to be debtors under section 109(d) of the Bankruptcy Code.  Venue was proper as of the Petition Date and continues to be proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the Court has exclusive jurisdiction to

determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

E.    JUDICIAL NOTICE.  The Court takes judicial notice of the docket in these Chapter 11 Cases maintained by Clerk or the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and the transcripts of, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these Chapter 11 Cases.

F.    BURDEN OF PROOF.  The Debtors, as proponent of the Plan, have the burden of proving the elements under sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, and they have met that burden as further found and determined herein.

G.    SOLICITATION AND NOTICE.  On August 1, 2024, the Court entered the Disclosure Statement Order.  The Disclosure Statement Order, among other things, approved the Disclosure Statement as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors to make an informed judgment whether to accept or reject the Plan.  Pursuant to the Disclosure Statement Order, the Debtors served the Solicitation Package (as defined in the Disclosure Statement Order) upon: all known Holders of Claims against the Debtors as of the Voting Record Date who were entitled to vote on the Plan (*i.e.*, Classes 1, 5, 7 and 9); (ii) the Securities & Exchange Commission; (iii) the Internal Revenue Service; (iv) the Office of the United States Trustee; and (v) those parties that have requested service under Bankruptcy Rule 2002.  The Solicitation Packages consisted of: (i) notice of the Confirmation Hearing and objection deadline; (ii) the Disclosure Statement; (iii) the Plan (appended to the Disclosure Statement); (iv) an appropriate ballot; (v) the Disclosure Statement Order; and (vi) a pre-addressed return envelope (collectively, the "**Solicitation Package**").  The

Solicitation Packages were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order. As described in the Disclosure Statement Order, and as evidenced by the Voting Report, the certificates of service filed in connection therewith, (i) the service of the Solicitation Packages was adequate and sufficient under the circumstances of these Chapter 11 Cases and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Code and Bankruptcy Rules, and provided due process and an opportunity to appear and be heard to all parties-in-interest. Pursuant to the Disclosure Statement Order, the Debtors served the Notice of Non-Voting Status on each Holder of a Claim or Interest in the Non-Voting Classes.

H.    VOTING. The Disclosure Statement Order fixed September 3, 2024, at 5:00 p.m. (EDT) as the Voting Deadline. Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement, and Disclosure Statement Order. As set forth in the Voting Report, the Plan has been accepted, within the meaning of section 1126(c) of the Bankruptcy Code, by Classes 1, 5, 7 and 9, which are impaired and entitled to vote on the Plan. Classes 2, 3, 4 and 11 are unimpaired and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and are therefore, not entitled to vote. Classes 6, 8, 10 and 12 receive no distribution under the Plan and are, therefore, conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

I.    PLAN SUPPLEMENT. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the documents included in the Plan Supplement are adequate and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local

Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, compliance with the Bankruptcy Code and the Bankruptcy Rules, and, solely with respect to matters that have a material effect on the assets, liabilities, Executory Contracts of the Reorganized Debtor, with the consent of the Plan Sponsor, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement pursuant to section 5.01 of the Plan.

J. SATISFACTION OF CONFIRMATION REQUIREMENTS. The Plan satisfies the requirements for confirmation set forth in sections 1129(a) and (b) of the Bankruptcy Code, as set forth below:

(a) 11 U.S.C. § 1129(a)(1): The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

(i) 11 U.S.C. § 1122: Each Claim or Equity Interest placed in a particular Class under the Plan is substantially similar to the other claims or interests in that Class. In addition, valid business, legal and factual reasons exist for the separate classification of each of the classes of Claims and Equity Interests created under the Plan, and there is no unfair discrimination between or among holders of Claims and Interests.

(ii) 11 U.S.C. §1123: Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Articles II and III of the Plan classify Claims and Interests into twelve (12) different Classes (except for Administrative Claims, Professional Fee Claims, Priority Tax Claims, DIP Facility Claims, United States Trustee statutory fees, and Other Priority Claims which are not classified) Pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies all Claims and Interests that are not impaired and specifies the treatment of all Claims and Interests that are impaired. Article III identifies Classes 2, 3, 4, and 11 as unimpaired, and identifies Classes 1, 5 through 10 and Class 12 as impaired. Pursuant to section 1123(a)(4) of the Bankruptcy Code, the Plan also provides the same treatment for each Claim or Interest within a particular Class. Pursuant to section 1125(a)(5) of the Bankruptcy Code, the Plan provides adequate means for the Plan's implementation, as set forth in Article IV of the Plan. The Debtors will have, immediately upon the effectiveness of the

Plan, sufficient cash available to make all payments that are required to be made on the Effective Date pursuant to the terms of the Plan. On the Effective Date, and pursuant to the Plan, the Debtors or the Reorganized Debtors, as applicable, shall (as agreed to by the Consenting Lenders consistent with the terms of the Restructuring Support Agreement) consummate the Restructuring Transactions set forth in the Plan Term Sheet in order to effectuate the Debtors' financial reorganization consistent with the terms of the Plan.

(b)  11 U.S.C. § 1129(a)(2): As required by 11 U.S.C. § 1129(a)(2) of the Bankruptcy Code, the Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, including, without limitation, 11 U.S.C. §§ 1125 and 1126 and Bankruptcy Rules 3017, 3018 and 3019. In particular, the solicitation of votes to accept or reject the Plan was (i) in compliance with all applicable nonbankruptcy laws, rules, and regulations governing the adequacy of disclosure in connection with such solicitation, and (ii) solicited after disclosure to holders of Claims and Interests. The Debtors have further complied with all the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice of the Confirmation Hearing, approval of the Disclosure Statement and all other matters considered by the Court in the Chapter 11 Cases. The record in the Chapter 11 Cases further discloses that the Debtors have attempted in good faith to comply with the orders of the Court entered during the pendency of the case and that the Debtors have not violated any such orders.

(c)  11 U.S.C. § 1129(a)(3): The Debtors have proposed the Plan in good faith and not by any means forbidden by law. No person has filed a valid objection to confirmation of the Plan on the grounds that the Plan was not proposed in good faith or by any means forbidden by law. Accordingly, pursuant to Bankruptcy Rule 3020(b)(2), the Court may determine compliance with section 1129(a)(3) of the Bankruptcy Code without receiving evidence on such issues. The Court has examined the totality of the circumstances surrounding the formulation of the Plan and the evidence submitted in connection with the Confirmation hearing. The Plan has been accepted by the requisite holders of Claims in Classes 1, 5, 7 and 9 entitled to vote on the Plan and such acceptance evidences the informed judgment of Creditors that the Plan is in their best interests. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a distribution of such value to Creditors. The Plan was negotiated in good faith and at arms' length among representatives of the Debtors, the Prepetition Secured Lenders, Aves Management LLC and certain other key creditor constituencies during the Chapter 11 Cases. Further, based on the evidentiary record adduced at the Confirmation Hearing and the Court's findings and conclusions based thereon, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of section 5 of the Securities Act of 1933 (15 U.S.C. § 77(e), as amended). Accordingly, the provisions of section 1129(d) of the Bankruptcy Code are met. Therefore, the Plan has been proposed in good faith, as such term is used in section 1129(a)(3) of the Bankruptcy Code.

(d)  11 U.S.C. § 1129(a)(4):  The Plan appropriately provides for Court approval of all payments for services in connection with the Chapter 11 Cases and therefore satisfies section 1129(a)(4) of the Bankruptcy Code.

(e)  11 U.S.C § 1129(a)(5):  The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors, after Confirmation of the Plan, have been fully disclosed in the Plan Supplement, satisfying section 1129(a)(5) of the Bankruptcy Code.

(f)  11 U.S.C. § 1129(a)(6):  No governmental regulatory commission has jurisdiction over the rates of the Debtors.  Section 1129(a)(6) is inapplicable to confirmation of the Plan.

(g)  11 U.S.C. § 1129(a)(7):  With respect to each Impaired Class of Claims or Interests of the Debtors, each holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  A conversion of the Chapter 11 Cases to chapter 7 would likely be accompanied by a decrease in the amount of recovery that Creditors would receive on account of their claims as a result of the elimination of, among other things: (i) the Prepetition Lien Conversion; (ii) the GUC Trade Gift; (iii) the GUC Opt-In Gift; (iv) payment in full of the Allowed Vendor Secured Claims; and (v) the Cash Consideration set forth in the Aves Settlement Agreement, as well as the accrual of commissions and additional administrative fees and expenses during a chapter 7 case.  Further, a chapter 7 liquidation would result in delay in distributions to Creditors.  Thus, the Plan provides a superior recovery to Creditors than conversion of the Chapter 11 Cases, and accordingly, the Plan is in the best interests of creditors under section 1129(a)(7) of the Bankruptcy Code.

(h)  11 U.S.C. § 1129(a)(8) / 11 U.S.C. § 1129(b):  Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek confirmation under section 1129(b), solely with respect to the Deemed Rejecting Classes, rather than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

(i)  11 U.S.C. § 1129(a)(9):  The treatment of Allowed General Administrative Claims, Allowed Priority Tax Claims, and DIP Facility Claims, and U.S. Trustee statutory fees under Article II of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

(j)  11 U.S.C. § 1129(a)(10):  The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Report, the Voting Classes voted

to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

(k)  11 U.S.C. § 1129(a)(11):  The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Reorganized Debtors will have sufficient funds available to meet its obligations under the Plan; and (e) establishes that the Reorganized Debtors will have the financial wherewithal to satisfy its obligations following the Effective Date.

(l)  11 U.S.C. § 1129(a)(12):  The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Article II. of the Plan provides for the payment of all fees due and payable under 28 U.S.C. § 1930 by the Debtors or Reorganized Debtors, as applicable.

(m)  11 U.S.C. § 1129(a)(13):  The requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable to the Plan because the Debtors are not obligated to fund any retiree benefits within the meaning of this statute.

(n)  11 U.S.C. § 1129(a)(14) and (15):  These statutes apply only to individual debtors and thus are inapplicable to confirmation of the Plan.

(o)  11 U.S.C. § 1129(a)(16):  The requirements of section 1129(a)(16) of the Bankruptcy Code are not applicable to confirmation of the Plan because none of the Debtors are a nonprofit entity or trust.

(p)  "Cram Down" Requirements – Section 1129(b)(1) and (2):  The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.  Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  Second, the Plan is fair and equitable with respect the Deemed Rejecting Classes.  The Plan has been prepared in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Claim will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.  Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes.  Third, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because, either (i) similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class, or (ii) unsecured creditors are entitled

to nothing under the Bankruptcy Code's priority scheme, and the increased distribution to unsecured creditors holding trade claims in Class 5 does not diminish the distribution to holders of claims in Classes 6 or 8. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

(q)    11 U.S.C. § 1129(c): The Plan is the only plan filed in these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

(r)    11 U.S.C. § 1129(d): The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

(s)    11 U.S.C. § 1129(e): The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

(t)    11 U.S.C. § 1125(e): The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

K.    SATISFACTION OF CONFIRMATION REQUIREMENTS. Based upon the foregoing, the

Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

L.    LIKELIHOOD OF SATISFACTION OF CONDITIONS PRECEDENT TO THE EFFECTIVE

DATE. Each of the conditions precedent to the Effective Date, as set forth in Article VIII of the

Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with

Article VIII of the Plan.

M.    IMPLEMENTATION. All documents necessary to implement the transactions

contemplated by the Plan, including those contained or summarized in the Plan Supplement, and

all other relevant and necessary documents have been negotiated in good faith and at arm's length,

are in the best interests of the Debtors, and shall, upon completion of documentation and execution,

be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state,

or local law.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

N.    EXECUTORY CONTRACTS.  The Debtors' decisions to assume and to reject certain Executory Contracts, as provided in Article V of the Plan and in the Plan Supplement, are reasonable exercises of the Debtors' business judgment.  The Debtors have demonstrated adequate assurance of future performance of the Executory Contracts within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

O.    GOOD FAITH.  The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby, and (b) take the actions authorized and directed by this Confirmation Order.

## **ORDER**

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT HEREBY IS ORDERED THAT:**

1.    **FINDINGS OF FACT AND CONCLUSIONS OF LAW**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

2.    **SOLICITATION**.  To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

3.      **BALLOTS**.  The forms of Ballots are in compliance with Bankruptcy Rule 3018(c), the Disclosure Statement Order, the Bankruptcy Code and the Local Rules.

4.      **NOTICE OF CONFIRMATION HEARING**.  The Notice of Confirmation Hearing was appropriate and satisfactory and is approved in all respects, and was in compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

5.      **CONFIRMATION**.  The Plan and all exhibits thereto or related thereto, including, without limitation, the Restructuring Support Agreement, the Aves Settlement Agreement, and the documents contained in the Plan Supplement, are approved in their entirety and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

6.      **OBJECTIONS**.  Any objections to confirmation of the Plan that have not been withdrawn or resolved by stipulation are hereby overruled.

7.      **PROVISIONS OF PLAN AND ORDER NON-SEVERABLE AND MUTUALLY DEPENDENT**.  The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are (a) non-severable and mutually dependent; (b) valid and enforceable pursuant to their terms; and (c) integral to the Plan and this Confirmation Order, respectively, and may not be deleted or modified except in accordance with Article IX of the Plan.

8.      **RECORD CLOSED**.  The record of the Confirmation Hearing is closed.

9.      **BINDING EFFECT AND VALIDITY**.  The provisions of the Plan and this Order shall bind the Debtors, the Estates, the Reorganized Debtors, and all holders of Claims against and Equity Interests in the Debtors, including their successors and assigns, whether or not the Claims or Equity Interests of these entities are impaired under the Plan, whether or not these entities have voted to accept or reject the Plan, and whether or not these entities have filed proofs of Claim or

proofs of Interest in the Chapter 11 Cases.  Each Plan term and provision, as it may be interpreted in accordance with the Plan, is valid and enforceable under its terms.

10.     **PLAN CLASSIFICATION CONTROLLING**.  The classification of Claims and Interests for purposes of distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan (a) were set forth on the Ballots solely for the purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by and creditors as representing the actual classification of such Claims under the Plan for distribution purposes, and (d) shall not be binding on the Debtors, the Reorganized Debtors, or the Holders of Claims and Interests for purposes other than voting on the Plan.

11.     **DEEMED SUBSTANTIVE CONSOLIDATION**.  On the Effective Date, (a) all Intercompany Claims among the Debtors shall be eliminated and there shall be no distributions on account of such Intercompany Claims; (b) each Claim Filed or to be Filed against more than one Debtor shall be deemed Filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the Debtors, and (c) any joint or several liability of the Debtors shall be deemed one obligation of the Debtors, with each of the foregoing effective retroactive to the Petition Date.  Except as otherwise set forth in the Plan, on the Effective Date all Claims based upon guarantees of collection, payment or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect.  Such deemed substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structure of the Reorganized Debtors; *provided, however*, that such substantive

consolidation shall not affect any obligation of any of the Debtors to pay fees due and owing to the United States Trustee.

12.     **CONTINUED CORPORATE EXISTENCE OF THE REORGANIZED DEBTORS**.  On and after the Effective Date, the Reorganized Debtors will continue to exist as separate legal entities and shall retain all of the powers of those entities under applicable non-bankruptcy law, and without prejudice to any right to amend their charters, dissolve, merge or convert into another form of business entity, or to alter or terminate their existence.  On and after the Effective Date, the Reorganized Debtors shall be permitted to conduct their businesses without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. The Reorganized Debtors shall be authorized, without limitation, to use and dispose of their assets, to acquire and dispose of other property, and to otherwise administer their affairs.

13.     **CORPORATE ACTION**.  On the Effective Date, the matters under the Plan involving or requiring corporate, partnership or limited liability company action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, shareholders, managers or members of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by this Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, managers or members of the Debtors.  The Debtors' charters shall be amended to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.  The Debtors may prepare, execute and/or file with the relevant governmental authorities having jurisdiction over the Debtors such amendments of their respective charters as may be necessary or appropriate under applicable non-bankruptcy law to fully effectuate such amendments.  From and

after the Effective Date, the Holders of Interests in the Reorganized Debtors may take any and all necessary or appropriate actions to appoint directors, officers, and managers of any Reorganized Debtor consistent with the charter, articles of incorporation, and/or by-laws of any Reorganized Debtor, subject to any limitations in applicable non-bankruptcy law and subject to the Plan Supplement.

14.    **U.S. TRUSTEE FEES AND POST-CONFIRMATION REPORTS**.  After the Effective Date, the Reorganized Debtors shall (i) pay any statutory fees due for the post-Effective Date period pursuant to 28 U.S.C. § 1930(a)(6), and such fees shall be paid until entry of a final decree or an order converting or dismissing the bankruptcy case of the Remaining Case, and (ii) file post-confirmation status reports in the form of a post-confirmation operating report on a quarterly basis up to the entry of a final decree closing the Chapter 11 Cases.

15.    **RETAINED CAUSES OF ACTION OF THE DEBTORS**.  Except as otherwise provided in the Plan, the Plan Supplement, the Restructuring Support Agreement or any agreement, instrument or other document incorporated therein, on the Effective Date, all property of the Estates and all Causes of Action of the Debtors (except those released pursuant to the Debtor Releases) shall vest in the applicable Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens, if any, granted to secure the Reorganized Debtors' obligations under the Plan).

16.    **DISSOLUTION OF CREDITORS' COMMITTEE**.  On the first (1st) Business Date following the Effective Date, the Creditors' Committee shall be dissolved and the Creditors' Committee, its members, and Creditors' Committee's Retained Professionals in accordance with section 1103 of the Bankruptcy Code will be released and discharged from their respective fiduciary obligations, duties, and responsibilities arising from or related to the Chapter 11 Cases,

*except* with respect to (i) prosecuting applications for Accrued Professional Compensation Claims; (ii) asserting, disputing, challenging and participating in the resolution of Accrued Professional Compensation Claims; and (iii) prosecuting or participating in any appeal of this Order or any request for reconsideration thereof.   Upon the conclusion of (i) through (iii), the Creditors' Committee shall be immediately dissolved, released, and discharged.  The Creditors' Committee's Retained Professionals and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the first (1st) Business Day following the Effective Date on behalf of the Creditors' Committee, *except* for services rendered and expenses incurred, as approved by the Court, in connection with (i) through (iii) above.

17.     **EXECUTORY CONTRACTS**.  Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each of the Debtors' Executory Contracts and Unexpired Leases shall be deemed assumed (or assumed and assigned to the respective Reorganized Debtor, as applicable) pursuant to sections 365(a) and 1123 of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by a Debtor, pursuant to a Final Order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to reject filed on or before the Effective Date; or (iv) is identified on the Rejected Executory Contract and Unexpired Lease List.   Entry of this Confirmation Order shall constitute an order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan and the Rejected Executory Contract and Unexpired Lease List, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.   Unless otherwise indicated, all assumptions or

assumptions and assignments of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party on or before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms may have been modified by such order or the provisions of the Plan.  All assumed Executory Contracts or Unexpired Leases shall be enforceable by the Reorganized Debtors or such party such Executory Contract or Unexpired Lease was assigned to in accordance with their terms notwithstanding any provision in such contract or lease that prohibits, restricts or conditions assumption, assignment or transfer.  Any provision in any such contract or lease that permits a Person to terminate or modify such agreement or to otherwise modify the rights of any of the Debtors or the Reorganized Debtors or assignee, as applicable, based on the filing of the Chapter 11 Cases or the financial condition of any of the Debtors or the Reorganized Debtors, as applicable, shall be unenforceable.  To the extent any provision in any Executory Contract or Unexpired Lease assumed, or assumed and assigned, pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, any of the Debtors' assumption, or assumption and assignment, of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party or parties thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  After the Effective Date, each of the Reorganized Debtors shall have the right to terminate, amend or modify any contracts, including intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.

18.    **CLAIMS ON ACCOUNT OF THE REJECTION OF EXECUTORY CONTRACTS**.    All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts, pursuant to the Plan or this Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after service of an order of the Bankruptcy Court (including this Order) approving such rejection. Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract that fails to timely do so shall be forever barred, estopped, and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtors, or their Estates, and the Debtors, the Reorganized Debtors, and their Estates and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in <u>Section 7.06</u> of the Plan.

19.    **EFFECTUATION OF THE PLAN**.    The Estates, the Debtors and the Reorganized Debtors, are authorized to execute and deliver any and all documents and instruments and take any and all actions necessary or desirable to implement the Plan and this Order and to effect any other transactions contemplated therein or thereby. To effectuate the Plan and such transactions, the officers or responsible representatives of the Debtors and the Reorganized Debtors are authorized - without further noticed or application to or order of the Court - to execute, deliver, file, or record such agreements or documents, and to take such other actions as any such individual may determine to be necessary or desirable to effectuate the Plan and such transactions, regardless of whether such actions or documents are specifically referred to in the Plan or this Order. To the extent that, under applicable non-bankruptcy law, any of these actions otherwise would require the consent or approval of the shareholders or boards of directors of the Debtors, this Order constitutes

such consent and approval.  As of the Effective Date, Cold Bore Capital's and each other Person's or Entity's equity interests in Optio Rx are deemed cancelled.  Notwithstanding the foregoing, in accordance with section 1142 of the Bankruptcy Code and this Order, the former direct and indirect owners of the Debtors, including, but not limited to, Cold Bore Capital and each such other Person or Entity, shall cooperate with the Debtors to provide all required information, documentation, and authorizations required by any licensing or accrediting body, government authority, payor, or as otherwise necessary to acknowledge and effectuate the transfer of equity from Cold Bore Capital and each such other Person or Entity to Online Pharmacy Holdings LLC and the Reorganized Debtors, as applicable, pursuant to the Plan, and if Cold Bore Capital or such other Person or Entity is unwilling or unable, then state licensing or accrediting bodies, government authorities, and payors shall accept from the Debtors all required information, documentation, and authorizations, including this Order as an acknowledgement of the cancellation of Cold Bore Capital's or such other Person's or Entity's equity interests in Optio Rx, and process the same as if provided, submitted, or certified by Cold Bore Capital or any other Person or Entity that owns, directly or indirectly, any interest in any Debtor.

20.    **TREATMENT IS IN FULL SATISFACTION**.  Except as otherwise agreed in writing and approved by the Court, the treatment set forth in the Plan for each Class of Claims and Equity Interests is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each Entity holding a Claim or an Equity Interest may have in or against the Debtors, their Estates, the Reorganized Debtors, or their respective property.  This treatment supersedes and replaces any agreements or rights those Entities may have in or against the Debtors, their Estates, the Reorganized Debtors, or their respective property.

21.     **RELEASES AND EXCULPATION.**     The releases, exculpation and injunction provisions contained in the Plan, including, but not limited to, the Debtor Releases and Third-Party Releases provided in Article VII of the Plan, are critical to the Plan and the consummation thereof, are necessary to have induced the Plan Sponsor to support the Plan, and are hereby authorized, approved and binding on all Persons and Entities described therein.

22.     **DISCHARGE.** Pursuant to Section 7.04 of the Plan, to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or this Order, effective as of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Interests and Causes of Action of any kind or nature whatsoever against the Debtors or any of their respective assets or properties, including any interest accrued on such Claims or Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed or retained under the Plan on account of such Claims, Interests or Causes of Action.  Except as otherwise expressly provided by the Plan or this Order, upon the Effective Date, the Debtors shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

23.     **INJUNCTION.** Pursuant to Section 7.06 of the Plan, except as otherwise expressly provided in the Plan or this Order, from and after the Effective Date, all Persons and Entitles are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy

Code, permanently enjoined from (i) commencing or continuing, in any manner or in any place, any suit, action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff or right of subrogation of any kind; or (v) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any claim, demand, liability, obligation, debt, right, cause of action, equity interest, or remedy released or to be released, settled or to be settled or discharged or to be discharged under the Plan or this Order against any person or entity so released or discharged (or the property or estate of any person or entity so released, discharged). All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

24.    **BINDING NATURE OF THE PLAN**. Pursuant to Section 11.02 of the Plan, on the Effective Date, and effective as of the Effective Date, the Plan shall bind, and shall be deemed binding upon, the Debtors, the Reorganized Debtor, any and all Holders of Claims against and Equity Interests in the Debtors, all persons and entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each person acquiring property under the Plan, any and all non-debtor parties to Executory Contracts and Unexpired Leases with the Debtors and the respective successors and assigns of each of the foregoing, to the maximum extent permitted by applicable law, and notwithstanding whether or not such person or entity (i) will receive or retain any property, or interest in property, under the Plan, (ii) has filed a proof of claim or interest in the Chapter 11 Cases or (iii) failed to vote to

accept or reject the Plan, affirmatively voted to reject the Plan or is conclusively presumed to reject the Plan.

25.     **NOTICE OF ENTRY OF CONFIRMATION ORDER AND EFFECTIVE DATE.**    In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable on or after the Effective Date, the Debtors or Reorganized Debtor shall provide notice of the entry of this Confirmation Order and of the occurrence of the Effective Date by serving a Notice of Effective Date, on all known creditors, equity security holders, the U.S. Trustee and other parties-in-interest in these Chapter 11 Cases; *provided, however*, that such notice need not be given or served under or pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or this Confirmation Order to any Person or Entity to whom the Debtors mailed a notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person or Entity of that Person's or Entity's new mailing address.  The notice described herein is adequate and appropriate under the particular circumstances and no other or further notice is necessary or required.  The Notice of Effective Date shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

26.     **REVERSAL OR MODIFICATION OF CONFIRMATION ORDER.**  Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of the Bankruptcy Court, or any other court of competent jurisdiction, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the date

that the Debtors or the Reorganized Debtors received actual written notice of the effective date of such reversal, stay, modification or vacatur. Notwithstanding any such reversal, stay, modification or vacatur of this Confirmation Order, any such act, obligation, indebtedness, liability, priority or Lien incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the date that the Debtors or the Reorganized Debtors received actual written notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Confirmation Order and the Plan, or any amendments or modifications thereto, in each case in effect immediately prior to the date that the Debtors or the Reorganized Debtors received such actual written notice.

27. **INCONSISTENCY**. Unless otherwise provided in this Order, in the event of any inconsistency between the Plan and this Order, this Order shall govern.

28. **MEDICARE SUPPLIER AGREEMENTS.** Debtors hereby assume their Medicare Supplier Agreements as of the Effective Date of the Plan. Notwithstanding anything to the contrary in the Plan or in this Confirmation Order, "cure," for purposes of the assumption by the Debtors shall consist of the agreement by the Debtors to continue participation in the Medicare program in the ordinary course of business, and to be governed by, and subject to, the terms and conditions of their Medicare Supplier Agreements and the incorporated Medicare statutes, regulations, policies and procedures, and to remain liable for any debt to CMS as if the bankruptcy cases had not occurred. Such terms and conditions under the Medicare Supplier Agreements shall include, but shall not be limited to, the recoupment or recovery by CMS or its contractors of any Medicare overpayments determined to be due from the Debtors, whether related to prepetition or postpetition services. In addition, nothing in the Plan or this Confirmation Order shall release (or operate to enjoin) any claim of the United States, on behalf of CMS, against the Debtors or against any non-

debtor. Furthermore, because any amount due shall be collected in the ordinary course, the United

States, on behalf of CMS, shall not be required to file any separate claims in the bankruptcy cases

to collect any amounts due to CMS under the Medicare program, whether via a proof of claim,

claim for cure, or administrative claim.

29. **UNITED STATES.** Notwithstanding any provision in the Plan, the Plan Supplement,

this Confirmation Order or other related Plan documents (collectively, **"Plan Documents"**):

> Nothing discharges or releases the Debtors, the Reorganized
> Debtors, or any non-debtor from any right, claim, liability, defense
> or cause of action of the United States or impairs the ability of the
> United States to pursue any right, claim, liability, defense, or cause
> of action against any Debtor, Reorganized Debtor or non-debtor.
> Contracts, purchase orders, agreements, leases, covenants,
> guaranties, indemnifications, operating rights agreements or other
> interests of or with the United States shall be, subject to any
> applicable legal or equitable rights or defenses of the Debtors or
> Reorganized Debtors under applicable non-bankruptcy law, paid,
> treated, determined and administered in the ordinary course of
> business as if the Debtors' bankruptcy cases were never filed and
> the Debtors and Reorganized Debtors shall comply with all
> applicable non-bankruptcy law. All rights, claims, liabilities,
> defenses or causes of action, of or to the United States shall survive
> the Chapter 11 Cases as if they had not been commenced and be
> determined in the ordinary course of business, including in the
> manner and by the administrative or judicial tribunals in which such
> rights, claims, liabilities, defenses or causes of action would have
> been resolved or adjudicated if the Chapter 11 Cases had not been
> commenced; *provided*, that nothing in the Plan Documents shall
> alter any legal or equitable rights or defenses of the Debtors or the
> Reorganized Debtors under non-bankruptcy law with respect to any
> such claim, liability, or cause of action. Without limiting the
> foregoing, for the avoidance of doubt, nothing shall: (i) require the
> United States to file any proofs of claim or administrative expense
> claims in the Chapter 11 Cases for any right, claim, liability,
> defense, or cause of action; (ii) affect or impair the exercise of the
> United States' police and regulatory powers against the Debtors, the
> Reorganized Debtors or any non-debtor; (iii) be interpreted to set
> cure amounts or to require the United States to novate or otherwise
> consent to the transfer of any federal contracts, purchase orders,
> agreements, leases, covenants, guaranties, indemnifications,
> operating rights agreements or other interests; (iv) affect or impair

the United States' rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (vi) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law.

30.    **HUMANA.**  The Reorganized Debtors assume all obligations under that certain Regional/National Pharmacy Provider Agreement with Humana Pharmacy Solutions, Inc., effective date April 17, 2020, and that certain Ancillary Services Agreement with Humana Military Healthcare Services, Inc., effective November 1, 2004 (collectively, the **"Humana Agreements"**). Notwithstanding anything to the contrary in the Plan or this Confirmation Order, Humana shall continue to be able to recoup overpayments in the ordinary course of business due under the Humana Agreements.

31.    **BEXAR COUNTY AD VALOREM TAXES.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Allowed Claim of Bexar County (Texas) with respect to ad valorem taxes (the **"Bexar County Tax Claim"**) shall be classified as "Other Secured Claims."  The Bexar County Tax Claim for 2024 ad valorem taxes will be paid the later of (a) the Effective Date (or as soon thereafter as is reasonably practical) or (b) when due pursuant to applicable non-bankruptcy law (subject to any applicable extensions, grace periods, or similar rights under applicable law).  The Bexar County Tax Claim shall include all accrued interest properly charged under applicable non-bankruptcy law and the Bankruptcy Code through the date of payment, to the extent the Texas Tax Code provides for interest with respect to any portion of the Bexar County Tax Claim; provided that, the Debtors' defenses and rights to object to such Claim or to the inclusion of such interest in such Claim are fully preserved.  With respect to the Bexar County Tax Claim, the prepetition tax liens of the Bexar County, to the extent they are

entitled to such liens, shall be expressly retained in accordance with applicable non-bankruptcy law until the applicable Bexar County Tax Claim is paid in full.  The Bexar County Tax Claim lien priority shall not be primed or subordinated by any exit financing approved by the Court in conjunction with the confirmation of the Plan or otherwise solely to the extent the Bexar County tax lien (i) arose in the ordinary course of business pursuant to applicable non-bankruptcy law, and (ii) are valid, senior, properly perfected, binding, enforceable, and non-avoidable pursuant to applicable non-bankruptcy law.  In the event that collateral that secures the Bexar County Tax Claim is returned to a creditor holding a Lien that is junior to that of the Bexar County tax lien, the Debtors shall first pay all ad valorem property taxes that are secured by such collateral, solely to the extent that the Debtors are liable for such ad valorem property taxes under applicable non-bankruptcy law.  Bexar County may amend any timely filed Proof of Claim to liquidate an unliquidated claim; provided that the foregoing does not prejudice the Debtors' or Reorganized Debtors' rights to object to such Proofs of Claim in accordance with the Bankruptcy Code. I n the event of a default in the payment of the Bexar County Tax Claim as provided herein, Bexar County shall provide notice to counsel for the Reorganized Debtors, and the Reorganized Debtors shall have twenty (20) days from the date of such notice to cure the default.  If the default is not cured, Bexar County shall be entitled to pursue collection of all amounts owed pursuant to applicable non-bankruptcy law outside the Bankruptcy Court.  Failure to pay the 2024 ad valorem taxes prior to the applicable non-bankruptcy law delinquency date shall constitute an event of default.  All rights and defenses of the Debtors and the Reorganized Debtors, as applicable, under applicable law are reserved and preserved with respect to such Bexar County Tax Claim.  The Debtors and Reorganized Debtors, as applicable, reserve all their defenses and rights to dispute or object to any proofs of claim filed by Bexar County for ad valorem taxes.

32.    **TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, REVENUE ACCOUNTING DIVISION**

Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtors or Reorganized Debtors, from any liability owed to the Texas Comptroller of Public Accounts for a tax debt, including interest and penalties on such tax.  This provision is not admission by any party that such liability exists.  Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Texas Comptroller's setoff rights under 11 U.S.C. § 553.  This provision is not admission by any party that such setoff rights exist.

33.    A failure by the reorganized Debtor to make a payment to the Texas Comptroller pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Texas Comptroller, the Texas Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the reorganized Debtor at: 3701 Commercial Avenue, Suite 14, Northbrook, IL  60061, Attn:  Ben David, CEO, and up Debtor's attorney at Chipman Brown Cicero & Cole, LLP, 1313 North Market St., Suite 5400, Wilmington, DE  19801; Attn: William E. Chipman, Esq.; chipman@chipmanbrown.com.  Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the Texas Comptroller, at its option, may declare the default non-cureable and proceed to collect the remainder of the debt.

34.    **RETENTION OF JURISDICTION**.  The Court shall retain jurisdiction as provided in Article X of the Plan.

35.    **STAY OF CONFIRMATION ORDER SHORTENED**.  The 14-day stay otherwise applicable to this Order under Federal Rule of Bankruptcy Procedure 3020(e) is hereby waived.