## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Optio Rx, LLC, *et al.*, | ) | Case No. 24-11188 (TMH) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

## STATEMENT OF THE
## AD HOC GROUP OF MEZZ LENDERS REGARDING
## INTERCREDITOR AND SUBORDINATION RIGHTS UNDER THE PLAN[2]

The Ad Hoc Group of Mezz Lenders (the "Ad Hoc Group"),[3] through its counsel,
respectfully states the following regarding the Ad Hoc Group's intercreditor and subordination
rights and its proposal to address the related concerns under the Plan:

### Background[4]

1.      In connection with the Debtors' issuance of the Notes to the Ad Hoc Group
pursuant to the Note Purchase Agreement, dated as of September 25, 2020, the Debtors and each

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216).  The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

[2]   "Plan" means the *Second Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 382], as may be amended from time to time in accordance with its terms.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[3]   The Ad Hoc Group comprises all Noteholders within Class 7 under the Plan.

[4]   With respect to the jurisdiction of the Court to hear and rule on the intercreditor dispute described herein and the Ad Hoc Group's proposed alternative language, bankruptcy courts have jurisdiction over matters that involve "a creditor's rights as against another creditor under a subordination agreement," *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 203-04 (3d Cir. 1999), and the Plan contains various provisions confirming this issue is within

Seller Noteholder agreed to amend and restate, and re-issue as of September 25, 2020, each Seller

Note to include subordination provisions that expressly and unequivocally provide, among other

things, that the Seller Notes are subordinated to the Ad Hoc Group's Notes.  Importantly, each

Seller Note states:[5]

> "Notwithstanding anything in this [Seller] Note . . . to the contrary, ***the Seller [Noteholder] hereby agrees and covenants that,*** to the extent set forth herein and on the terms and conditions set forth herein, ***the Subordinated Debt[6] is and shall be subordinate in right of order and payment to the principal in full of the Senior Debt.***"[7]

> Baybridge Seller Note, § 8(b) (emphasis added).

2.      That same provision makes clear that the Ad Hoc Group extended credit to the

Debtors "***in reliance upon*** the provisions contained" in the section in the Seller Notes providing

for subordination of such Seller Notes relative to the Notes.[8]  Based on the foregoing, it should

therefore be without dispute that (a) the Seller Notes are subordinated to the Notes, (b) the Seller

Noteholders unequivocally agreed to such subordination by virtue of amending and restating their

Seller Notes to provide for such subordination, and (c) the Ad Hoc Group relied on such

subordination in connection with extending credit to the Debtors.

---

the Court's jurisdiction.  *See* Plan, Art. X ("[T]he Bankruptcy Court shall retain such jurisdiction over . . . all matters, arising out of or related to, the Chapter 11 Cases and the Plan, including jurisdiction to: . . . (4) . . . adjudicate any and all disputes arising from or relating to distributions under the Plan; . . .  [and] (15) adjudicate any and all disputes arising from or relating to distributions under the Plan; . . . .").

[5]    The following language cited throughout this statement is located in the Seller Note between, among others, certain Debtors and Baybridge Pharmacy, LLC, attached hereto as **Exhibit B** (the "Baybridge Seller Note"). The intercreditor and subordination provisions are identical in each Seller Note from the Ad Hoc Group's perspective aside from two non-substantive, immaterial differences:  (a) the section number of the provisions; and (b) the defined term for the Seller Noteholder and the applicable Debtors.

[6]    "Subordinated Debt" is defined as "all amounts payable to the Seller [Noteholder] pursuant to th[e] [Seller] Note."

[7]    "Senior Debt" is defined as, generally speaking, any amounts owed to the Prepetition Secured Lenders or the Noteholders under their respective debt documents (or to the administrative agents thereunder).

[8]    Baybridge Seller Note, § 8(b) (emphasis added).

3.     To be clear, the Ad Hoc Group has not waived, and does not waive, such intercreditor and subordination rights, which are detailed below and more fully set forth in the Seller Notes.  As a result, consistent with the section 510(a) of the Bankruptcy Code, the Ad Hoc Group previously requested that Section 4.10 of the Plan be clarified to preserve such rights, as stated by the Ad Hoc Group's counsel into the record at the Debtors' confirmation hearing on September 13, 2024.  While the Ad Hoc Group believes a determination is appropriate from the Court now that distributions on account of Class 8 should go directly to the administrative agent under the Note Purchase Agreement,[9] in an effort to allow (a) for confirmation of the Plan and (b) the Debtors to emerge from these chapter 11 cases, the Ad Hoc Group has, in the alternative, proposed the language attached hereto as **Exhibit A**.  As the Court will see, such proposal merely seeks to preserve the status quo while providing a fair process for the parties to assert their applicable rights once distributions on behalf of Class 8 are identified.

## Argument

4.     Section 510(a) of the Bankruptcy Code provides, in relevant part, that a "subordination agreement is enforceable in a [chapter 11 case] to the same extent that such agreement is enforceable under applicable nonbankruptcy law."  As such, section 510(a) of the Bankruptcy Code "broadly allows for enforcement of subordination agreements."[10]  Further, where "a plan of reorganization does nothing more than enforce the unambiguous terms of [a] contractual subordination agreement[] in accordance with section 510(a) of the [Bankruptcy] Code," such plan provisions are valid.[11]  Of note, even in situations where a senior lender neglects

---

[9]    The Ad Hoc Group understands that the Prepetition Secured Lenders are not seeking to enforce their intercreditor and subordination rights under the Seller Notes in connection with distributions on account of Class 8.

[10]   *In re Coastal Broad. Sys., Inc.*, No. CIV. 12-5682 RMB, 2013 WL 3285936, *7 (D.N.J. June 28, 2013), *aff'd*, 570 F. App'x 188 (3d Cir. 2014).

[11]   *In re Best Prod. Co., Inc.*, 168 B.R. 35, 70 (Bankr. S.D.N.Y. 1994).

3

to file a claim that would assert its rights over a subordinated party in a bankruptcy proceeding, such senior lender's rights under a subordination agreement are not necessarily waived and are still enforceable.[12]

5.      In addition to the language highlighted above, the Seller Notes contain the following key subordination provisions:[13]

- **First**, the Seller Notes provide that, upon an insolvency proceeding where any distribution of the Debtors' assets occurs (to any individual or entity):[14]

    o   the senior lenders, which encompasses the Ad Hoc Group, must be paid "in full in cash . . . (or have such payments duly provided for in a manner satisfactory to [them]) before the Seller [Noteholder] is entitled to receive" any payment on account of its subordinated Seller Note;[15]

    o   "[a]ny payment or distribution of assets of the [Debtors] of any kind or character, whether in cash, property or securities to which the Seller [Noteholder] would be entitled except for the provisions of this [subordination section] shall be paid by the [Debtors], the liquidating trustee or agent or other person making such a payment or distribution, directly to," the senior lenders, which includes the Ad Hoc Group, and related agents in order of priority amongst such parties until their claims are satisfied in full;[16] and

---

[12]   *In re Franklin Bank Corp.*, 526 B.R. 527, 532-33 (D. Del. 2014) (overruling bankruptcy court's holding that a subordination agreement was unenforceable under section 510(a) of the Bankruptcy Code because the senior lender neglected to file a timely claim).

[13]   The Ad Hoc Group additionally believes the provisions of Section 8(c), to the extent applicable, should be respected in connection with any distributions on account of the Seller Notes.

[14]   Importantly, these provisions apply upon "any distribution by the" Debtors in an insolvency proceeding, irrespective of the recipient of that distribution. It is clear the Debtors are making distributions under the Plan, thus triggering these provisions.

[15]   Baybridge Seller Note, § 8(d)(i). ("Upon any distribution by Buyer Parties of assets of any kind or character, whether in cash, property or securities, to creditors upon any dissolution, winding up, liquidation or reorganization of [the Debtors] . . . : (i) The Administrative Agents and the Lenders shall first receive payment in full in cash of all Senior Debt (or have such payments duly provided for in a manner satisfactory to the Administrative Agents and the Lenders) before the Seller is entitled to receive any Subordinated Payment on account of or accrued or incurred in connection with any Subordinated Debt[.]")

[16]   *Id.* at § 8(d)(i)(ii).

- o even if, notwithstanding the foregoing, a Seller Noteholder receives such a payment, it "shall be received and held in trust for the benefit of and shall be promptly paid over to" the senior lenders, which includes the Ad Hoc Group, and related agents in order of priority amongst such parties until their claims are satisfied in full;[17]

- **Second**, the Seller Notes unambiguously provide for the survival of the Ad Hoc Group's rights, stating "[a]ll rights and interests hereunder of the" senior lenders, which includes the Ad Hoc Group, and related agents "shall remain in full force and effect irrespective of (1) any lack of validity or enforceability of any Debt Document or any other loan or note document executed in connection therewith, or of any provision of such agreements or (2) any other circumstance that might otherwise constitute a defense available to, or a discharge of, the [Debtors] in respect of the Senior Debt."[18]

- **Third**, the Seller Notes include important provisions with respect to the ability of the Ad Hoc Group to pursue certain actions to receive payments intended to the Seller Noteholders. Specifically, the Seller Notes provide that each Seller Noteholder "irrevocably authorizes and empowers" the senior lenders, which includes the Ad Hoc Group, and related agents "to demand, sue for, collect and receive such [Seller Noteholder's] ratable share of payments or distributions with respect to Subordinated Debt."[19] Note such provision is agnostic as to the party making the payment or distribution.

6. As noted above, the Ad Hoc Group is simply seeking to clarify that the Plan will not extinguish their bargained-for rights, which were agreed to by the Debtors and the Seller Noteholders and granted to the Ad Hoc Group. Such clarification is appropriate under the circumstances in light of, among other things, section 510(a) of the Bankruptcy Code. The Ad Hoc Group therefore respectfully requests that the Court (a) direct that any distributions on account of Class 8 go directly to the administrative agent under the Note Purchase Agreement, or (b) in the alternative, require that the Plan include the proposed language attached hereto as **Exhibit A**.

---

[17] *Id.* at § 8(d)(i)(ii)(iii).

[18] *Id.* at § 8(e)(ii). It is clear that the Ad Hoc Group (and other senior lenders) are intended third-party beneficiaries under the Seller Notes given the clear and express intention of directly benefitting such parties pursuant to these subordination provisions within the Seller Notes. Accordingly, such parties would have standing to sue for breach of contract and obtain the benefits thereunder, irrespective of whether they are a party to such agreement. *See, e.g., Crispo v. Musk*, No. 2022-0666-KSJM, 2022 WL 6693660, at *2 (Del. Ch. Oct. 11, 2022).

[19] *Id.* at § 8(f).

Dated:  October 1, 2024
Wilmington, Delaware

/s/  Christopher M. Samis
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Levi Akkerman (No. 7015)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone:    (302) 984-6000
Facsimile:    (302) 658-1192
Email:    csamis@potteranderson.com
    kgood@potteranderson.com
    lakkerman@potteranderson.com

-and-

Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Peter A. Candel (admitted *pro hac vice*)
Zak Piech (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    ryan.bennett@kirkland.com
    peter.candel@kirkland.com
    zak.piech@kirkland.com

*Counsel for the Ad Hoc Group*