IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Optio Rx, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11188 (TMH)<br>(Jointly Administered)<br><br><u>Related D.I.</u>: 453 |

### RESPONSE OF THE CREDITORS' COMMITTEE TO THE STATEMENT OF THE AD HOC GROUP OF MEZZ LENDERS REGARDING THEIR INTERCREDITOR AND SUBORDINATION RIGHTS UNDER THE PLAN[2]

The Official Committee of Unsecured Creditors of Optio Rx, LLC, *et al.* (the "**Committee**"), by and through its counsel, files this response (the "**Response**") to the *Statement of the Ad Hoc Group of Mezz Lenders* (the "**Ad Hoc Group**" or "**AHG**") *Regarding Intercreditor and Subordination Rights Under the Plan* [D.I. 453] (the "**Statement**"):

### BACKGROUND

1.  On June 21, 2024, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Committee pursuant to Bankruptcy Code section 1102. The *Notice of Appointment of Committee of Unsecured Creditors* was filed on June 21, 2024 [D.I. 67], followed

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062 (collectively, the "**Debtors**").
[2] "Plan" means the *Second Amended Joint Chapter 11 Plan of Optio Rx, LLC, et. al.* [D.I. 382] as may be amended from time to time in accordance with its terms. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

by the *Amended Notice of Appointment of Creditors' Committee* filed on June 25, 2024 [D.I. 81], and a second *Amended Notice of Appointment of Creditors' Committee* filed on July 1, 2024 [D.I. 130] (the "**Second Notice**").[3]  Notably, the Second Notice reflects the resignation of Aves Management LLC[4] as a committee member, which followed their settlement of all claims with the Prepetition Lenders in these cases (hereafter, the "**Aves Settlement Agreement**").  The Aves Settlement Agreement is attached as Exhibit E to the Disclosure Statement filed in support of the Plan at D.I. 258 on July 29, 2024.

2. The Debtors filed their original iteration of the Plan on June 10, 2024 [D.I. 20] (the "**Original Plan**").  Under the Original Plan, Other General Unsecured Claims (Class 6) and the Seller Note Claims (Class 8) were deemed to reject and receive nothing thereunder, whereas other unsecured creditor classes were expected to receive a distribution (and in the case of Class 5, a 100% payout on their claims).  The argument for that disparate treatment was predicated on the assumption that **all** unsecured creditors were completely out of the money, and the Debtors' secured lenders (inclusive of their capacity as prepetition secured lenders, the "**DIP Lenders**") were not going to be satisfied in full.  Thus, the consideration being allocated to any unsecured party getting a distribution stemmed from the DIP Lenders gifting their property and collateral; otherwise, the Original Plan would have been unconfirmable because, *inter alia*, it would have been riddled with absolute priority and disparate treatment violations.

### UNSECURED CREDITORS COMMITTEE SETTLEMENT

3. On September 10, 2024, the Debtors filed the current iteration of the Plan.  It is

---

[3] The remaining two committee members consist of Baybridge Pharmacy Corp. (Greg Savino) ("**Baybridge**") and PIA Holdings, Inc. (Phil Altman) ("**PIA Holdings**"), both of whom are Seller Noteholders (Class 8) under the Plan. The Committee does not represent the individual interests of either Baybridge or PIA Holdings.
[4] Aves is the agent for AHG.

important for the Court to understand the context of the Plan, which reflects nearly three months of hard-fought negotiations between the DIP Lenders, the Debtors, and the Committee. Immediately upon appointment, the Committee set to work on its investigation into the Debtors' affairs, most notably its relationship with the DIP Lenders. Throughout this process, the Committee engaged on such points as the Debtors' DIP Motion, their Disclosure Statement, and ultimately the Plan.[5] In addition, on August 15, 2024, the Committee filed its *Motion for Entry of an Order: (1) Granting Derivative Standing to the Committee of Unsecured Creditors to Commence, Prosecute and Resolve Certain Claims and Causes of Action; and (2) Extending Challenge Period Pending Consideration of Request for Derivative Standing* [D.I. 294] (the "**Standing Motion**"), which motion was objected to by the DIP Lenders and the Debtors at D.I. 332 and 333, and the parties intended to proceed to a contested hearing on August 29, 2024 (the "**Challenge Hearing**").

4. Prior to the Challenge Hearing, however, the Committee reached a global settlement with the DIP Lenders that obviated the need to pursue the Standing Motion or contest confirmation of the Plan on the grounds previewed in its Disclosure Statement ROR. Later designated as the "UCC Settlement Agreement" in the Plan, it is defined therein as follows:

> a settlement among the Debtors, the Committee, the Prepetition Admin Agent and the DIP Agent resolving all Challenges, whether or not alleged by the Committee or any other party, to the Prepetition Lien Claims and Prepetition Liens and the DIP Lien Claims and DIP Liens, against the Prepetition Admin Agent and the Prepetition Secured Lenders, and against the DIP Agent and the DIP Lenders, and each of their respective Related Parties, ***in consideration for funding of a gift by the Prepetition Admin Agent, the DIP Agent, and the Committee Professionals from their collateral or Professional Fee Claims, as applicable, on the Effective Date of the UCC Settlement Amount, comprising the sum of (x) 10% of the Committee's Professional Fee Claims shall be paid or otherwise contributed by or on behalf of the Committee Professionals into the UCC Settlement Amount plus (y) up to $215,000 for the ratable benefit of Holders of Allowed Claims in Classes 6 and 8 to be distributed on a pro rata basis, and pursuant to which the***

---

[5] *See* D.I. 123 (DIP Objection), D.I. 262 (Disclosure Statement Reservation of Rights or "**ROR**").

3

***Committee shall not object to but shall support confirmation of the Plan***. Further, the UCC Settlement Agreement on and following the Effective Date permits the Committee, at its election and sole expense, to seek to establish a trust to reconcile Unsecured Claims and make Distributions to Holders of Allowed Claims in Classes 6 and 8 under the Plan, but not to pursue any Retained Causes of Action or any Causes of Action or Claims released under the Plan.[6]

5.  In other words, the DIP Lenders agreed to fund a *pro rata* payment of $275,000 (the "**UCC Settlement Amount**") to Classes 6[7] and 8[8], which includes a contribution of 10% of the Committee's Professional Fee Claims to the UCC Settlement Amount. As noted *supra*, under the Original Plan, these same two classes of creditors were receiving nothing. So by virtue of the settlement, the Committee ensured that all unsecured creditors would receive a distribution under the Plan in exchange for foregoing the Committee's challenge and confirmation objection rights.[9]

## CONFIRMATION HEARING

6.  More than halfway through the confirmation hearing and after the Court had already made its preliminary findings approving the Plan (subject to revisions necessitated by the hearing), the Committee was informed for the first time that AHG had requested certain additional language in 4.10 of the Plan.[10] While AHG claims that the additional language (attached as modified since the Confirmation Hearing as Statement Exhibit A) is to make sure that AHG's rights under the Subordination Agreement are preserved, the Committee contends that the

---

[6] AHG is a party that is being specifically released under the Plan. *See,* Plan § 1.01 (vvvvv).
[7] The claims of Class 6 total $379,970 represent 1.3% of the total of claims of Classes 6 and 8.
[8] The claims of Class 8 total $30,046,706 represent 98.7% of the total of claims of Classes 6 and 8.
[9] Notably, the UCC Settlement Agreement does not disturb or even reference the Aves Settlement Agreement; said differently, AHG is still receiving exactly what it bargained for when it voted in favor of the Plan.
[10] An excerpt of the transcript from the Confirmation Hearing (the "**Transcript**") is attached to this Response as **Exhibit A**. *See* Transcript at pp. 52-55. Also, for reference, Section 4.10 provides that "On the Effective Date, except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, (i) all rights of any Holder of Interests in the Debtors, including options or warrants to purchase Interests, or obligating the Debtors to issue, transfer or sell Interests in the Debtors, shall be cancelled; and (ii) ***all Seller Notes, Notes and indentures of the Debtors shall cease to be effective, and Aves Management LLC, as Administrative Agent under the Note Purchase Agreement shall not have any continuing duties or obligations thereunder and shall be discharged.***" (emphasis added). Pursuant to the Plan Supplement, the Seller Notes are all rejected contracts. *See* D.I. 348, Exh C.

language runs counter to the facial terms of the UCC Settlement Agreement and instead requests the Court enter the language proposed hereto as **Exhibit B**.[11]

### ARGUMENT

7. The distributions flowing from the UCC Settlement Agreement are gifts from the DIP Lenders. As the funds are purely under the domain and control of the DIP Lenders, they can designate the sequence of their remittance, and they have done so—the gifts must go directly to Classes 6 and 8 without intervention, just like every other class receiving a DIP Lender gift. Indeed, it was solely in exchange for making sure all unsecured classes received a distribution gift in these cases that the Committee stood down on its challenge and confirmation rights.

8. To be clear, the Committee is not requesting that AHG waive any rights that it may have under the rejected Seller Notes. If AHG believes that it has such rights, then it must seek that determination in the appropriate forum under each of the affected Seller Notes. They either have post-Effective Date rights or they don't. But preemptively stalling or redirecting the UCC Settlement Amount to AHG is inappropriate and should not be allowed by this Court, not the least of which because it eviscerates the terms of and intent behind the UCC Settlement Agreement.[12]

**[SIGNATURE PAGE TO FOLLOW]**

---

[11] As of the time of this Response, the Committee remains in discussions with AHG regarding consensual language.

[12] While in many respects a fight for another day among other parties, it bears repeating that this is a gifting plan, otherwise it would be patently unconfirmable. *In re Nuverra Env't Sols., Inc.*, 834 F. App'x 729, 731–32 (3d Cir. 2021) ("gift by secured creditors to . . . unsecured creditors constitutes no unfair discrimination as [unsecureds are] indisputably out of the money and not, otherwise, entitled to any distribution under the Bankruptcy Code's priority scheme"). As such, the distribution gifts contemplated under this Plan and the UCC Settlement Agreement seemingly do not fall under the very terms of the Seller Note language AHG references, as that note facially contemplates distribution from a debtor of debtor assets, which these DIP Lender gifts plainly are not. Moreover, the DIP Lenders have first priority to AHG under the express terms of the Seller Notes that AHG relies on. While AHG alleges that they "understand" the DIP Lenders to tacitly support their position (*see* Statement ¶3, n.9), the Committee's understanding is to the contrary as, *inter alia*, it would be contradictory to the plain meaning embodied in the UCC Settlement Agreement.

| | |
|---|---|
| Dated: October 3, 2024 | **SAUL EWING LLP** |
| Wilmington, Delaware | */s/ Evan T. Miller* |

Evan T. Miller (DE Bar No. 5364)
Nicholas Smargiassi (DE Bar No. 7265)
1201 N. Market St, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6864
evan.miller@saul.com
nicholas.smargiassi@saul.com

-and-

Michelle G. Novick, Esq. (admitted *pro hac vice*)
**SAUL EWING LLP**
161 North Clark St., Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
michelle.novick@saul.com

-and-

Jorge Garcia (admitted *pro hac vice*)
**SAUL EWING LLP**
701 Brickell Avenue, Suite 1700
Miami, FL 33131
Telephone: (305) 428-4500
jorge.garcia@saul.com

*Counsel to the Official Committee of Unsecured Creditors of Optio Rx, LLC, et.al.*