### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (Jointly Administered) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON DEBTORS' OBJECTION TO MOTION OF SKIN MEDICINALS LLC FOR ENTRY OF AN ORDER GRANTING AN ALLOWED ADMINISTRATIVE EXPENSE PURSUANT TO SECTION 503(B) OF THE BANKRUPTCY CODE

**CHIPMAN BROWN CICERO & COLE, LLP**
William E. Chipman, Jr. (No. 3818)
David W. Carickhoff (No. 3715)
Mark D. Olivere (No. 4291)
Alan M. Root (No. 5427)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:     (302) 295-0191
Email:  chipman@chipmanbrown.com
            carickhoff@chipmanbrown.com
            olivere@chipmanbrown.com
            root@chipmanbrown.com

*Counsel for Debtors and Debtors in Possession*

Dated:  October 9, 2024
           Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216).  The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

## **TABLE OF CONTENTS**

**Page No.**

PRELIMINARY STATEMENT ...................................................................................................1

THE UNCONTESTED FACTS ..................................................................................................2

      A.     Skin Medicinals' Administrative Claims ................................................................2

      B.     The Debtors' Objection............................................................................................4

STATUTORY BASIS FOR RELIEF REQUESTED.....................................................................5

THE STANDARD APPLICABLE TO THIS MOTION................................................................5

ARGUMENT ..............................................................................................................................6

      I.     SKIN MEDICINALS IS NOT ENTITLED TO AN
            ALLOWED ADMINISTRATIVE EXPENSE UNDER THE
            BANKRUPTCY CODE.............................................................................................6

      II.    SKIN MEDICINALS IS NOT ENTITLED TO AN
            ADMINISTRATIVE EXPENSE CLAIM UNDER THE CLAIMS
            IT ASSERTS............................................................................................................11

CONCLUSION............................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Adams Arms, LLC v. Unified Weapon Sys., Inc*., No. 8:16-CV-1503-T-33AEP, 2016 WL 5391394 (M.D. Fla. Sept. 27, 2016) ...................................................................... 14

*Ajenifuja v. Dangote*, 485 F. Supp. 3d 120 (D.D.C. 2020)............................................ 12

*Allentown Victory Church v. City of Allentown, Pennsylvania*, No. 22-2817, 2024 WL 3439772 (3d Cir. July 17, 2024) ................................................................... 5

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) ................................................... 5

*Arrivia Inc. v. Rowley*, No. CV-23-01039-PHX-DLR, 2023 WL 7386384 (D. Ariz. Nov. 8, 2023) ..................................................... 12, 13

*Attia v. Google LLC*, 983 F.3d 420 (9th Cir. 2020) ...................................................... 14

*Azima v. Del Rosso*, No. 1:20CV954, 2021 WL 5861282 (M.D.N.C. Dec. 10, 2021)................ 12
*B&P Littleford LLC v. Prescott Machinery*, LLC, 2021 WL 3732313 (6th Cir. Aug. 24, 2021).................................................................. 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 5

*Encompass Ins. Co. v. Stone Mansion Rest. Inc*., 902 F.3d 147 (3d Cir. 2018) ........................... 13

*Houser v. Feldman*, 569 F. Supp. 3d 216 (E.D. Pa. 2021) ............................................ 12

*iBall Instruments, LLC v. Butler*, No. CIV-21-00778-JD, 2024 WL 3642195 (W.D. Okla. Aug. 2, 2024) ....................................................... 12

*In re Energy Future Holdings Corp.*, 990 F.3d 728 (3d Cir. 2021)................................... 6

*In re Goody's Family Clothing Inc.*, 610 F.3d 812 (3d Cir. 2010) ................................... 6

*In re Grossman's Inc*., 607 F.3d 114 (3d Cir. 2010) ..................................................... 7

*In re Mallinckrodt plc*, 646 F. Supp. 3d 565 (D. Del. 2022), *aff'd sub nom. In re Mallinckrodt PLC*, 99 F.4th 617 (3d Cir. 2024)............................................. 10

*In re Mallinckrodt PLC*, No. 20-12522, 2021 WL 4876908 (Bankr. D. Del. Oct. 19, 2021).................................................................. 7

*In re New Century TRS Hldgs., Inc.*, 446 B.R. 656 (Bankr. D. Del. 2011) .................................. 7

*In re Philadelphia Newspapers, LLC*, 690 F.3d 161 (3d Cir. 2012),
as corrected (Oct. 25, 2012) ............................................................................ 7

*In re Rodriguez*, 629 F.3d 136 (3d Cir. 2010) ............................................................ 8

*In re Solar Tr. of Am., LLC*, No. 12-11136(KG),
2015 WL 1011548 (Bankr. D. Del. Jan. 12, 2015) ...................................... 6

*In re Supermedia, Inc.*, 2014 WL 7403448 (Bankr. D. Del. Dec. 29, 2014) ............ 9

*Matter of TransAmerican Nat. Gas Corp.*, 978 F.2d 1409 (5th Cir. 1992) ............ 5

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*,
407 F.2d 288 (9th Cir. 1969) ............................................................................ 12

*Ocimium Biosolutions (India) Ltd. v. LG Corp.*,
2021 WL 931094 (D. Del. Mar. 11, 2021) .................................................... 12

*Parilla v. IAP Worldwide Serv., VI, Inc.*, 368 F.3d 269 (3d Cir. 2004) ................ 6

*Peck v. General Motors Corp.* 894 F.2d 844 (6th Cir. 1990) .................................. 10

*Pompano Helicopters, Inc. v. Westwood One, Inc.*, No. 07-61737-CIV,
2009 WL 1515276 (S.D. Fla. May 29, 2009) .............................................. 13

*Reading Co. v. Brown*, 391 U.S. 471 (1968) ............................................................ 9

*United States v. Moreno*, 727 F.3d 255 (3d Cir. 2013) .......................................... 13

**Statutes**

11 U.S.C. § 503(b)(1)(A) ................................................................................................ 6

765 ILCS § 1065/7 ........................................................................................................ 13

Fed R. Civ. P. 56 ............................................................................................................ 5

Fed. R. Bankr. P. 7056 .................................................................................................. 5

Fed. R. Bankr. P. 9014 .................................................................................................. 5

Fla. Stat. Ann. § 688.007 ............................................................................................ 13

Optio Rx, LLC ("**Optio Rx**") and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**"), in the above-captioned chapter 11 cases, hereby submit this memorandum of law in support of their motion (the "**Motion**"), pursuant the Rules 9014 and 7056 of the Federal Rules of Bankruptcy Procedure, for an order granting summary judgment on the *Debtors' Objection to Motion of Skin Medicinals LLC for Entry of an Order Granting an Allowed Administrative Expense Pursuant to Section 503(B) of the Bankruptcy Code* [Docket No. 384] (the "**Objection**"). By its Objection, the Debtors object to the *Motion of Skin Medicinals LLC for Entry of an Order Granting an Allowed Administrative Expense Pursuant to Section 503(b) of the Bankruptcy Code* [Docket No. 362] (the "**Administrative Claim**" or "**Adm. Cl.**").

## PRELIMINARY STATEMENT

The Administrative Claim filed by Skin Medicinals LLC ("**Skin Medicinals**") is baseless as a matter of law because the alleged "conduct" to which Skin Medicinals contends it was "exposed" that gave rise to its purported "injury" was Optio Rx's alleged improper access to, and use of, alleged trade secrets derived from Skin Medicinal's Web Portal; Skin Medicinals admits the conduct occurred *pre-petition* only, thereby precluding any such injury allegedly resulting from such conduct from qualifying as an administrative expense. *In re Grossman's Inc.*, 607 F.3d 114, 125 (3d Cir. 2010). Indeed, under the non-bankruptcy, statutory predicates for Skin Medicinals' purported claims, the "exposure" occurred upon the original alleged trade secret misappropriation that Skin Medicinals admits occurred *pre-petition*. *See* 18 U.S.C. §§ 1836(d), 1839; 765 ILCS § 1065/7; Fla. Stat. Ann. § 688.007.[2] Any purported continuing or repeated violation thereafter constitutes a single claim that relates back to the initial "exposure" as a matter of law, thereby

---

[2] Copies of Illinois and Florida Uniform Trade Secrets Acts, 765 ILCS § 1065/7 and Fla. Stat. Ann. § 688.007, are attached as Exhibits 1 and 2 to the Declaration of Adam D. Cole, Esq., dated October 8, 2024 ("**Cole Decl.**").

precluding any purported administrative expense. Accordingly, the Debtors are entitled to summary judgment sustaining their Objection and disallowing Skin Medicinals' Administrative Claim.

## THE UNCONTESTED FACTS

Skin Medicinals admits each of the facts material for summary judgment, which are principally derived from its own Administrative Claim and the Adversary Complaint that Skin Medicinals filed in the adversary proceeding, *Skin Medicinals LLC v. Optio Rx, LLC*, Adversary No. 24-50079-TMH, to which the Administrative Claim refers (the "**Adversary Complaint**" or "**Adv. Comp.**") (Adversary Docket No. 14.) Those same material admissions, which are uncontested for purposes of the present motion only, establish conclusively that Skin Medicinals' Administrative Claim must be disallowed as a matter of law. *See* Fed. R. Civ. P. 56(a).

A.    **SKIN MEDICINALS' ADMINISTRATIVE CLAIMS**

1.    Skin Medicinals contends it developed a Web Portal that enables medical providers to prescribe, and customers to purchase, prescription oral medications, and compounded topical medications online. (Adm. Cl. ¶5.)

2.    The Web Portal permits logins by patients and licensed medical providers to access, among other things, to information that Skin Medicinals contends it protects through confidentiality and non-disclosure agreements; strict, plain language terms and conditions expressly prohibiting users from sharing, reproducing, or reverse-engineering any materials found within the Web Portal; password protections and access monitoring; and moderation of the company's public disclosures. (Adm. Cl. ¶¶5, 9.)[3]

---

[3]    This Court previously questioned whether Skin Medicinals is even able to establish a trade secret, ruling on Skin Medicinals' request for preliminary relief, among other things, that Skin Medicinals failed to identify with "specific or sufficient specificity" a trade secret in the first instance, "did not demonstrate how its compound list differs from generally known information in the industry" and, because Skin Medicinals failed to produce

3.      Skin Medicinals contends that *in February and March 2024*, Optio Rx obtained prescriber credentials from a licensed nurse practitioner.  Skin Medicinals further contends that Optio Rx used the credentials to access a password-protected, prescribers-only portion of the Web Portal and to download certain documents and compound lists.  (Adm. Cl. ¶¶13-19; Adv. Comp. ¶¶48-53, 76, 82.)  According to Skin Medicinals, Optio Rx's access was used in March 2024 in Optio Rx's development of its own Web Portal.  (Adm. Cl. ¶¶17-19; Adv. Comp. ¶¶54-58.)

4.      Skin Medicinals further contends that "[i]n late March" 2024, it "learned from a whistleblower that someone at Optio Rx was using physician credentials to login into the Skin Medicinals' Web Portal without authorization and planning to build a competing platform and undercut Skin Medicinals' costs."  (Adm. Cl. ¶20; *see* Adv. Comp. ¶61.)

5.      Skin Medicinals contends it then "immediately" expended resources and time to investigate the allegations and cause its counsel to send Optio Rx and others cease and desist letters in early April 2024.  (Adm. Cl. ¶¶13-19; Adv. Comp. ¶¶62-63.)  At Skin Medicinals' request prior to the petition date, Optio Rx also provided documents relating to Skin Medicinals' concerns and entered a Standstill Agreement with Skin Medicinals.  (Adv. Comp. ¶¶62-63.) [Adv. Docket No. 17 ¶17.]

6.      On June 7, 2024 (the "**Petition Date**"), the Debtors filed their voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  (Adm. Cl. ¶24.)

7.      On June 17, 2024, Skin Medicinals commenced an Adversary Proceeding in this Court against Optio Rx and others alleging, among other things, misappropriation of Skin

---

evidence that its "formulary goes beyond a mere compilation of industry standard ingredients and formulations," Skin Medicinals failed to establish a protectable trade secret.    (Docket No. Tr. at 15:12, 16:18-20; 21:17-20.)

Medicinals' alleged trade secrets under the federal Defend Trade Secrets Act (the "**DTSA**") and the related Illinois and Florida Uniform Trade Secrets Act (the "**UTSA**").

8.      On August 6, 2024, Skin Medicinals filed proofs of claim against each of the Debtors (Proof of Claim Nos. 83, 87, 89, 102, 103, 105–15, 117–21, 123–26, 128–29) (collectively, the "**Proofs of Claim**").  (Adm. Cl. ¶25 n.5.)  The Proofs of Claim assert pre-petition, unsecured claims; the same pre-petition claims Skin Medicinals is pursuing in the Adversary Proceeding and as administrative expenses through its Administrative Claim.

9.      On September 3, 2004, Skin Medicinals filed its "protective" Administrative Claim seeking "apportionment" of "damages arising from or related to OptioRx's alleged post-petition access to and use of Skin Medicinals' trade secrets" claiming that the alleged access constitutes a continuing "post-petition tort committed by the debtor."  (Adm. Cl. ¶¶1, 30.)  Skin Medicinals asserts that "continuing violations of the DTSA give rise to new claims." (Adm. Cl. ¶39.)  But in neither the Administrative Claim nor the Adversary Complaint has Skin Medicinals implied, much less alleged, that Optio Rx accessed the Web Portal post-petition.

10.     Skin Medicinals' Administrative Claim does not include a date and time for a hearing or a date and time for any objection.

## B.      THE DEBTORS' OBJECTION

11.     On September 10, 2024, the Debtors filed their Objection to Skin Medicinals' Administrative Claim.  [Docket No. 384.]

12.     By their Objection, the Debtors object to Skin Medicinals' Administrative Claim on the ground that the conduct upon which the claim is based occurred pre-petition and as dictated by settled Bankruptcy law and that the claim's applicable statutory basis cannot form the basis for a post-petition administrative claim.  (Objection ¶¶20, 28-29, 34.)

4

13.    The present motion for summary judgment follows.  For the reasons set forth below, the Court should grant summary judgment sustaining the Debtors' Objection and denying Skin Medicinals' Administrative Claim as a matter of law.

## STATUTORY BASIS FOR RELIEF REQUESTED

The Debtors' objection to Skin Medicinals' Administrative Claim constitutes a contested matter governed by Fed. R. Bankr. P. 9014.  *Matter of TransAmerican Nat. Gas Corp*., 978 F.2d 1409, 1416 (5th Cir. 1992); *see* Fed. R. Bankr. P. 9014, *advisory committee notes* ("Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter.").  Rule 9014 provides that Fed. R. Bankr. P. 7056 applies to contested matters.  Fed. R. Bankr. P. 9014(c).  Fed. R. Bankr. P. 7056 provides for summary judgment under Fed R. Civ. P. 56.  By the present Motion, the Debtors seek summary judgment sustaining their Objection and disallowing Skin Medicinals' Administrative Claim pursuant to Fed. R. Bankr. P. 7056.

## THE STANDARD APPLICABLE TO THIS MOTION

A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Rule 56(a) makes clear, accordingly, that summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual "dispute" is genuine if the evidence is such that a reasonable factfinder "could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  And a fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*.; *Allentown Victory Church v. City of Allentown, Pennsylvania*, No. 22-2817, 2024 WL 3439772, at *2 (3d Cir. July 17, 2024).

4857-7208-7021, v. 2

In its Administrative Claim and Adversary Complaint, Skin Medicinals *admits* the material facts that compel summary judgment. *See Parilla v. IAP Worldwide Serv., VI, Inc*., 368 F.3d 269, 275 (3d Cir. 2004) ("Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them."); *In re Solar Tr. of Am., LLC*, No. 12-11136(KG), 2015 WL 1011548, at *2 (Bankr. D. Del. Jan. 12, 2015) ("summary judgment is appropriate if the pleadings, depositions, and admissions that are part of the record, demonstrate the absence of any genuine issue of material fact which in turn would entitle the moving party to judgment as a matter of law.").[4]  The *conduct* upon which Skin Medicinals' purported Administrative Claim is based occurred pre-petition.  Summary judgment, accordingly, is warranted because Skin Medicinals' claim cannot qualify as an administrative expense as a matter of law.

## ARGUMENT

### I.      SKIN MEDICINALS IS NOT ENTITLED TO AN ALLOWED ADMINISTRATIVE EXPENSE UNDER THE BANKRUPTCY CODE

The Bankruptcy Code provides that "the actual, necessary costs and expenses of preserving the estate" may be recovered as allowed administrative expenses. 11 U.S.C. § 503(b)(1)(A).  To be entitled to an allowed administrative expense under section 503(b)(1)(A) of the Bankruptcy Code, a claimant must show that "(1) there was a postpetition transaction between the claimant and the estate and (2) those expenses yielded a benefit to the estate."  *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021).  The party seeking to recover expenses carries "the heavy burden of demonstrating" that the expenses requested qualify as administrative expenses.  *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (internal citation omitted); *see*

---

[4]      For purposes of this motion, the Debtors take no contrary view, but the Debtors reserve all rights to contest the substantive factual allegations in the Administrative Clam and Adversary Complaint should this motion for summary judgment be denied.

*also In re New Century TRS Hldgs., Inc.*, 446 B.R. 656 (Bankr. D. Del. 2011) ("Claimants who seek to have their claims paid ahead of general unsecured creditors bear the burden of establishing that their claim qualifies for priority status."). Skin Medicinals, accordingly, bears the "heavy burden" to demonstrate that its Administrative Claim arises from Optio Rx's post-petition conduct that conferred a benefit to the Debtors' estates or resulted in the preservation of the Debtors' estates. *See Energy Future Holdings*, 990 F.3d at 741; *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 173 (3d Cir. 2012), as corrected (Oct. 25, 2012); *In re Mallinckrodt PLC*, No. 20-12522, 2021 WL 4876908, at *3 (Bankr. D. Del. Oct. 19, 2021). Skin Medicinals cannot do so because to the extent there is any factual merit to Skin Medicinals' allegations—which, as demonstrated at the numerous hearings in this Court, there is not—any claim based upon those same allegations arose *prior to* the Petition Date and, therefore, is not entitled to administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code.

A "claim" arises under the Bankruptcy Code when, among other things, a person is "exposed" to pre-petition "conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." *In re Grossman's Inc*., 607 F.3d 114, 125 (3d Cir. 2010). Under this test, the primary consideration is "when" a person is exposed to "conduct giving rise to an injury" regardless of whether the injury manifested itself pre-petition or post-petition. *Id*.; *Wright v. Owens Corning*, 679 F.3d 101, 103 (3d Cir. 2012). Indeed, in overruling *In re Frenville*, 744 F.2d 332 (3d Cir. 1984), the Third Circuit in *Grossman's* declared that the date on which a cause of action "accrues" under applicable law is no longer the relevant inquiry because it "does not account for the fact that a 'claim' can exist under the Code before a right to payment exists under state law." 607 F.3d at 121; *see also Wright*, 679 F.3d at 103 ("We overruled *Frenville* with our *en banc* decision in *Grossman's*, in which we rejected *Frenville's* 'accrual test,' and in its place

established the rule that a 'claim' arises when an individual is exposed prepetition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code.") (internal citations omitted); *In re Rodriguez*, 629 F.3d 136, 139 (3d Cir. 2010) ("In *Grossman's*, this Court, sitting *en banc*, endorsed this broad interpretation of the term 'claim,' overruling the narrow 'accrual test' established in *Avellino & Bienes v. M. Frenville Co.*, which focused on the phrase 'right to payment' in § 101(5) and when the right arose.").

Thus, under *Grossman's*, the Third Circuit endorsed a very broad reading of "claim," one which focuses on exposure to conduct even before it gives rise to a cause of action. The critical question in determining when a claim arises under the Bankruptcy Code (and, hence, whether the claim is to be treated as pre-petition or post-petition), accordingly, is when exposure to the alleged conduct occurred, not when a creditor's cause of action based upon that conduct *accrues* or when *the creditor's injury manifests itself*. The latter is the essence of a contingent and unliquidated pre-petition claim under *Grossman's* and the Bankruptcy Code.

The "conduct" to which Skin Medicinals was "exposed," as alleged in the Administrative Claim and Adversary Complaint, was Optio Rx's purported improper use of prescriber credentials to access a Web Portal and to download certain documents and compound lists, and then use the information gleaned to develop its own Web Portal. (Adm. Cl. ¶¶13-20; Adv. Cmp. ¶¶49-59.) The purported access, copying and use occurred in *February and March 2024*; indeed, Skin Medicinals concedes that by "March" 2024, it had already "learned from a whistleblower that someone at Optio Rx was using physician credentials to login into the Skin Medicinals' Web Portal without authorization and planning to build a competing platform and undercut Skin Medicinals' costs." (Adm. Cl. ¶20.) Assuming Skin Medicinals' admissions in its Administrative Claim and Adversary Complaint are true, the Debtors are entitled to summary judgment because, under

8

*Grossman's*, the relevant "conduct" to which Skin Medicinals was "exposed" occurred *pre-petition* separate and apart from whether a cause of action may have *accrued* thereafter. Indeed, based upon its own admissions, Skin Medicinals is unable to establish "a postpetition transaction between the claimant and the estate" as a matter of law. *Energy Future Holdings*, 990 F.3d at 741.

Notwithstanding Optio Rx's alleged pre-petition conduct and Skin Medicinals' pre-petition exposure, Skin Medicinals argues that an administrative expense may be recovered when attributable to injury caused by a post-petition tort, referring to *Reading Co. v. Brown*, 391 U.S. 471 (1968). (Adm. Cl. ¶¶30-32.) Skin Medicinals' argument, however, begs the question; *Reading* is consistent with the rule in *Grossman's* because the claimant in *Reading* was exposed to the *post-petition* negligence of the receiver in bankruptcy and his employee which, as such, gave rise to a *post-petition* claim based on post-petition exposure and conduct. It bears repeating, by contrast, that Skin Medicinals alleges and concedes it was "exposed" to Optio Rx's alleged tortious "conduct" in February and March 2024, *prior to* the Petition Date. (*See* Adm. Cl. ¶37 ["To be sure, the Debtors' initial theft of Skin Medicinals' trade secrets and unlawful access to the Web Portal occurred prepetition."].)[5] Confirming its assertion, Skin Medicinals even filed its Proofs of Claim seeking recovery for Optio Rx's alleged pre-petition conduct. (Adm. Cl. ¶25 n.5.)

Skin Medicinals fails to allege any facts in its Administrative Claim that, if true, could establish post-petition tortious "conduct" as opposed to an alleged manifestation of post-petition injury. The rule in *Reading*, accordingly, *supports* summary judgment because, if anything, Skin Medicinals fails to identify "conduct" to which it was first "exposed" post-petition that gave rise to an administrative expense. *See In re Supermedia, Inc.*, 2014 WL 7403448, at *19-20 (Bankr.

---

[5]    Skin Medicinals' admissions demonstrate, and it concedes, that other than its Trade Secret Claims, all of its other alleged claims in the Adversary Proceeding are pre-petition claims subject to discharge.

D. Del. Dec. 29, 2014) (denying administrative expense request because no tort occurred during the chapter 11 case and holding that "the mere postpetition effects of prepetition conduct cannot trigger *Reading*").

Skin Medicinals also refers to *Mallinckrodt*, 2021 WL 4876908 (Adm. Cl. ¶¶34-35), but, if anything, that decision, and other decisions in the same chapter 11 case, *support* summary judgment. In *Mallinckrodt*, Judge Dorsey explained in the context of an antitrust claim that an antitrust plaintiff is "*exposed*" to the debtor's conduct—the test in *Grossman's*—when the antitrust plaintiff purchases the debtor's offending product; Judge Dorsey indicated that if the antitrust laws had been violated—which had yet to be determined—the same laws stated that purchases attributable to any such antitrust violation constituted separate "overt acts" of the debtor. 2021 WL 4876908, at *8 (emphasis added) (citing *Peck v. General Motors Corp*. 894 F.2d 844, 849 (6th Cir. 1990) ["when a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants"]).

By contrast, in affirming Judge Dorsey's later order in the *Mallinckrodt* chapter 11 case that post-petition breaches of a pre-petition contract constitute pre-petition claims subject to discharge, Judge Ambro (sitting by designation in the District Court) confirmed—also consistent with *Grossman's*—that the conduct and exposure fixing the parties' rights "arose" *pre-petition* when they entered the contract even though a cause of action to recover for a later breach of the same contract may have only "accrued" post-petition. *In re Mallinckrodt plc*, 646 F. Supp. 3d 565, 570 (D. Del. 2022), *aff'd sub nom. In re Mallinckrodt PLC*, 99 F.4th 617 (3d Cir. 2024).[6]

Skin Medicinals readily concedes it was "exposed" to the Debtors' conduct pre-petition. (*See* Adm. Cl. ¶37 ["To be sure, the Debtors' initial theft of Skin Medicinals' trade secrets and

---

[6]    A copy of Judge Dorsey's order, dated November 8, 2021, is attached as Exhibit 3 to the Cole Decl.

10

unlawful access to the Web Portal occurred prepetition."].)  Indeed, Skin Medicinals fails to allege any post-petition "conduct" upon which it can even argue that a new claim arose.  Accordingly, Skin Medicinals' "claim" under *Reading*, *Grossmans* and *Mallinckrodt*, arose pre-petition and, therefore, its Administrative Claim is invalid as a matter of applicable Bankruptcy law and should be disallowed in its entirety.

## II.   SKIN MEDICINALS IS NOT ENTITLED TO AN ADMINISTRATIVE EXPENSE CLAIM UNDER THE CLAIMS IT ASSERTS

Any remaining question concerning whether Skin Medicinals' Administrative Claim is unfounded because it arises from pre-petition conduct is put to rest by the nature of the actual causes of action Skin Medicinals asserts as the bases for its claim.  Each not only *arose*, but also *accrued*, pre-petition—the claims "arose" and "accrued" "at the same time" as a matter of applicable non-bankruptcy law.  *Mallinckrodt*, 2021 WL 4876908, at *8.

Skin Medicinals bases its Administrative Claim upon Optio Rx's alleged violations of the federal DTSA and the Illinois and Florida UTSA (collectively, the **"Trade Secret Claims"**). (Adm. Cl. ¶¶38-40.)  Under those statutes, however, Skin Medicinals' purported claims arose pre-petition, when the alleged offending conduct occurred.  Skin Medicinals appears to admit as much by having included its Trade Secrets Claims in its Proofs of Claim filed in this Court.

Despite asserting pre-petition claims, Skin Medicinals argues that "the Debtors' continued use or disclosure of Skin Medicinals' trade secrets to create their competing platform gives rise to new claims for misappropriation under both Illinois law and the DTSA, which are entitled to administrative expense status under *Reading*."  (Adm. Cl. ¶40.)  Skin Medicinals' assertion, however, is incorrect under the cases that have analyzed when a cause of action arises under the DTSA—it arises *once* and only when the conduct begins, even if the alleged wrong continues; indeed, no new claim arises from each daily use.

11

The DTSA provides a claim for "misappropriation" of a trade secret. 18 U.S.C. §§ 1836, 1839. A DTSA claim accrues when the trade secret misappropriation or related action is first discovered and expires thereafter in three years. *See id.* § 1836(d). Courts in this Circuit, therefore, hold that "a continuing violation constitutes a single claim of misappropriation" under the DTSA. *Ocimium Biosolutions (India) Ltd. v. LG Corp.*, 2021 WL 931094, at *7 (D. Del. Mar. 11, 2021) (emphasis added); *see Houser v. Feldman*, 569 F. Supp. 3d 216, 226 (E.D. Pa. 2021) ("'although the initial wrongful acquisition of the trade secret and each subsequent misuse are separate acts of misappropriation, a claim for misappropriation arises only once . . . at the time of the initial misappropriation, subject to the discovery rule'") (quoting *B&P Littleford LLC v. Prescott Machinery*, LLC, 2021 WL 3732313, at *6 (6th Cir. Aug. 24, 2021)).[7]

This is true even though subsequent conduct may be considered an additional act of misappropriation. As the Court in *Houser* explained, trade secret law

> premises harm based on the violation of a relationship in which the trade secret owner had reason to believe that the information would be kept in confidence. ***Once there has been a misappropriation, the basis for trust in the relationship is destroyed and the trade secret owner's cause of action arises***. In other words, "[i]t is the relationship between the parties at the time the secret is disclosed that is protected.... *[t]he fabric of the relationship once rent is not torn anew with each added use or disclosure, although the damage suffered may thereby be aggravated*."

569 Supp. 3d at 225 (*quoting Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 293 (9th Cir. 1969)) (emphasis added). Stated another way, subsequent misappropriations "do not further breach the relationship" and, therefore, "do not constitute independent claims." *Id.*

---

[7] Courts in other Circuits are in accord. *See, e.g., iBall Instruments, LLC v. Butler*, No. CIV-21-00778-JD, 2024 WL 3642195, at *7 (W.D. Okla. Aug. 2, 2024); *Arrivia Inc. v. Rowley*, No. CV-23-01039-PHX-DLR, 2023 WL 7386384, at *5 (D. Ariz. Nov. 8, 2023); *Azima v. Del Rosso*, No. 1:20CV954, 2021 WL 5861282, at *8 (M.D.N.C. Dec. 10, 2021); *Ajenifuja v. Dangote*, 485 F. Supp. 3d 120, 127 (D.D.C. 2020).

Skin Medicinals' view that the DTSA recognizes "continuing misappropriation" would make a mockery of the DTSA's statute of limitations provision because the claim would accrue once for purposes of the statute of limitations but multiple times for the litigation generally. The provision makes clear that for purposes of its three-year statute of limitations, "a continuing misappropriation constitutes a single claim of misappropriation." 18 U.S.C. §§ 1836(d). Were Skin Medicinals' argument correct, a trade secret owner could plead an otherwise untimely continuing misappropriation based upon each misuse of a misappropriated trade secret simply to evade the express statute of limitations that bars the very same "continuing misappropriation" based upon it being a "single" claim. *See Arrivia Inc. v. Rowley*, No. CV-23-01039-PHX-DLR, 2023 WL 7386384, at *5 (D. Ariz. Nov. 8, 2023). Settled statutory construction principles counsel against such a "'nonsensical and superfluous'" interpretation of the DTSA. *Encompass Ins. Co. v. Stone Mansion Rest. Inc*., 902 F.3d 147, 152 (3d Cir. 2018) (quoting *United States v. Moreno*, 727 F.3d 255, 259 (3d Cir. 2013)).

Skin Medicinals' purported trade secret claim under the Illinois and Florida UTSA fairs no better. (*See* Cole Decl. Exs. 1, 2.) Under both states' laws, like the DTSA, "a continuing misappropriation constitutes a single claim" accruing when the offending conduct is first discovered. 765 ILCS § 1065/7; Fla. Stat. Ann. § 688.007; *see Pompano Helicopters, Inc. v. Westwood One, Inc*., No. 07-61737-CIV, 2009 WL 1515276, at *6 (S.D. Fla. May 29, 2009) ("It is clear that the wrongful taking of trade secrets is not a continuing tort"). *See also Houser*, 569 F. Supp. 3d at 225–26 ("the commentary to the UTSA expressly states that the phrase 'continuing misappropriation constitutes a single claim' is a rejection of the 'continuing wrong' approach") (quoting Unif. Trade Secrets Act § 6, cmt.)).

13

Skin Medicinals contends that "courts have expressly held that continuing violations of the DTSA give rise to new claims, rejecting the theory that misappropriation constitutes a single claim." (Adm. Cl. ¶39.)  But each of the cases to which Skin Medicinals points concerned whether a party could assert a cause of action where the violative conduct began before the DTSA even existed.[8]  As the Ninth Circuit explained, it was the *absence* of language in the DTSA precluding claims from being brought concerning post-enactment acts even though the misappropriation began pre-enactment.  *Attia v. Google LLC*, 983 F.3d 420, 425 (9th Cir. 2020).   Unlike the UTSA that came before it, the "DTSA does not contain an anti-continued use provision" as part of its retroactivity provision.  *Id.*  The UTSA (inapplicable to this contested matter), on the other hand, contains an anti-continued use provision relating to retroactivity which states that "[w]ith respect to a continuing misappropriation that began prior to the effective date, it does not apply to the continuing misappropriate that occurs after the effective date." *Id.* (quotations omitted).  Thus, *Attia* and the other cases Skin Medicinals references concern a specific statutory issue concerning retroactivity, and not when a DTSA claim arises, particularly in the context of determining whether a claim in bankruptcy qualifies as an administrative expense consistent with *Grossman's*.  *See also Arrivia*, 2023 WL 7386384, at *5 (distinguishing *Attia* because "the holding there concerned misappropriation before and after the statute's enactment – not before and after a release of claims"; thus, "continued improper use or disclosure of a trade secret after a defendant's initial misappropriation of that trade secret constitutes a 'single claim of misappropriation' accruing at the time of the initial misappropriation".).

---

[8]  The DTSA is not retroactive and applies only "with respect to any misappropriation of a trade secret . . . for which any act occurs on or after the date of the enactment of this Act."  Pub. L. No. 114-153, § 2(e); *see Adams Arms, LLC v. Unified Weapon Sys., Inc*., No. 8:16-CV-1503-T-33AEP, 2016 WL 5391394, at *7 (M.D. Fla. Sept. 27, 2016).

14

In short, Skin Medicinals' Trade Secret Claims—the only claims referenced in its Administrative Claim—arose and accrued *once* under the statutory predicates for those claims when initial misappropriation occurred.  As Skin Medicinals readily concedes, the initial purported misappropriation arose pre-petition; indeed, Skin Medicinals fails to identify any purported misappropriation that occurred post-petition.  For these separate reasons, accordingly, Skin Medicinals' Administrative Claim is unfounded as a matter of law and should be disallowed in its entirety.

## CONCLUSION

For all the foregoing reasons, the Court should grant summary judgment sustaining the Debtors' Objection and disallowing Skin Medicinals' Administrative Claim.

Dated: October 9, 2024
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*

William E. Chipman, Jr. (No. 3818)
David W. Carickhoff (No. 3715)
Mark D. Olivere (No. 4291)
Alan M. Root (No. 5427)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Email:        chipman@chipmanbrown.com
              carickhoff@chipmanbrown.com
              olivere@chipmanbrown.com
              root@chipmanbrown.com

Adam D. Cole, Esquire
**CHIPMAN BROWN CICERO & COLE, LLP**
501 Sixth Avenue, 15th Floor
New York, New York 10017
Telephone: (646) 685-8363
Email: cole@chipmanbrown.com

*Counsel for Debtors and Debtors in Possession*

—and—

15

**RICHARDS, LAYTON & FINGER, PA**
Jeffrey L. Moyer (#3309)
Chad M. Shandler (#3796)
Kelly E. Farnan (#4395)
Katharine L. Mowery (#5629)
Sara M. Metzler (#6509)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Email: moyer@rlf.com
            shandler@rlf.com
            farnan@rlf.com
            mowery@rlf.com
            metzler@rlf.com

*Special Litigation Counsel for Debtors*
*and Debtors in Possession*