**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Optio Rx, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11188 (TMH)<br><br>(Jointly Administered)<br><br>Hearing Date: November 15, 2024, at 10:00 a.m. (Eastern Time)<br>Objection Deadline: November 8, 2024, at 4:00 p.m. (Eastern Time) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE PRIVATE SALE OF (a) SUBSTANTIALLY ALL OF THE ASSETS OF DEBTOR
THE PET APOTHECARY, LLC AND (b) THE VETERINARY FILES AND RELATED
ASSETS OF DEBTOR SBH MEDICAL, LLC, FREE AND CLEAR OF ALL LIENS,
CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND
(II) GRANTING OTHER RELATED RELIEF**

Optio Rx, LLC ("**Optio**") and its affiliated debtors and debtors-in-possession (collectively, "**Debtors**") in the above-captioned chapter 11 cases (including Debtors The Pet Apothecary LLC ("**TPA**") and SBH Medical, LLC ("**SBH Medical**"), by and through their undersigned counsel, hereby submit this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto (the "**Order**"), approving the private sale of (a) substantially all of the assets of TPA (the "**TPA Assets**"), and the veterinary files and related assets of SBH Medical (the "**Subject SBH Assets**"), all as more specifically described in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

- 2 -

Letters of Intent (the **"Letters of Intent"** and each a **"Letter of Intent"**) between Optio, TPA and SBH Medical as sellers (collectively, the **"Seller"**) and Mixlab, Inc. (**"Mixlab"** or the **"Purchaser"**), as Purchaser.  Copies of the Letters of Intent are attached hereto as <u>**Exhibit A**</u> and <u>**Exhibit B**</u>.  The sales of the TPA Assets and the Subject SBH Assets shall be free and clear of claims, liens, encumbrances and interests, and otherwise subject to the terms of a sale order acceptable to Purchaser, the Debtors and Loan Admin Co LLC (**"Loan Admin Co"**)[2].  In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

The Pet Apothecary LLC and SBH Medical, LLC are subsidiaries of Optio that comprise the Debtors' veterinary pharmacy business segment (the **"Veterinary Business"**).  The Debtors have made a business decision to exit the Veterinary Business moving forward.  The Veterinary Business represents approximately 2.8% of the Debtors' yearly gross revenue and only approximately 9.7% of the Debtors' pharmacy yearly EBITDA.  The Debtors have been working for the past several months to find a buyer to divest their interests in the Veterinary Business, including the TPA Assets and Subject SBH Assets (collectively, the **"Assets"**), to focus on their core business operations.  During this process, the Debtors contacted five (5) potential buyers in the veterinary pharmaceutical industry who might be interested in acquiring the Assets, including several competitors.  As a result of these contacts, the Debtors identified two (2) parties that were interested in pursuing a purchase of the Assets.  After several months of negotiations with both parties, the Debtors were able to obtain significant increases in the proposed purchase prices for the Assets from the Purchaser, ultimately reflected in the Letters of Intent.

---

[2] The Debtors are currently working with the Purchaser and Loan Admin Co on definitive asset purchase agreements and a final version of a sale order that will be filed as soon as they are finalized and executed.

It is important to note that the Purchaser requires the sale to be approved on or before November 15, 2024, or it can either walk away from the proposed transactions or reduce the proposed purchase price.  The Debtors believe that the Letters of Intent represent the highest and best offer for the Assets.  The Debtors are filing this Motion out of an abundance of caution in the event the Effective Date of the Debtors' Plan does not occur prior to the date upon which these proposed sales close.  And the Debtors are filing this Motion in order to provide sufficient notice while negotiating definitive purchase agreements and a final sale order with the Purchaser.  Accordingly, the Debtors seek to sell the Assets to the Purchaser pursuant to a private sale free and clear of all liens, claims, encumbrances and other interests, but subject to the Debtors' fiduciary duties.  For these reasons, and as set forth more fully below, the Debtors believe the relief sought by this Motion should be granted.

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4895-6111-5120, v. 5

3. The statutory bases for the relief requested in this Motion are sections 105, 363 and 365 of title 11 of the United States Code (the **"Bankruptcy Code"**) and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), and Local Rule 6004-1(b).

## BACKGROUND

A.   GENERAL CASE BACKGROUND.

4. On June 7, 2024 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

5. The Debtors are authorized to continue operating their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On June 21, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a creditors' committee (the "**Committee**") in these Chapter 11 Cases [Docket No. 67].[3] No trustee or examiner has been appointed in the Chapter 11 Cases.

7. On August 1, 2024, the Court entered an *Order (I) Approving Amended Disclosure Statement, (II) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (III) Establishing Vote Tabulation Procedures, and (IV) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of the Amended Plan* [Docket No. 276].

---

[3] The U.S. Trustee subsequently filed an Amended Notice of Appointment of Creditors' Committee [Docket Nos. 81 and 130].

8. On September 10, 2024, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 382] (the **"Second Amended Plan"**).

9. A hearing to consider confirmation of the Second Amended Plan was held on September 13, 2024 (the "**Hearing**").

10. At the Hearing, the Court approved confirmation of the Second Amended Plan, subject to certain language (the **"Proposed Language"**) being added at the request of the Ad Hoc Group of Mezz Lenders (the **"Ad Hoc Group"**) related to intercreditor and subordination rights under the Plan.

11. The Ad Hoc Group, Baybridge Pharmacy Corp, Central Pharmacy Corp, and Delco Pharmacy Corp (collectively, the "**Seller Noteholders**"), Loan Admin Co and the Committee ultimately reached an agreement on revised Proposed Language.

12. On October 17, 2024, the Debtors filed a modified *Second Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 480] (the **"Modified Second Amended Plan"**), as directed by the Court at the Hearing, including the revised Proposed Language.

13. On October 17, 2024, the Court entered *Findings of Fact, Conclusions of Law and Order Confirming the Debtors' Second Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 484] (the **"Confirmation Order"**).

14. The Debtors expect the Second Amended Plan to become effective once all conditions precedent to the Effective Date (as defined on the Second Amended Plan) have been satisfied.

15. Additional factual background regarding the Debtors' business operations, corporate and capital structures, and restructuring efforts are described in greater detail in the *Declaration of Leo LaFranco in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the **"First Day Declaration"**), which is incorporated herein by reference.

## RELIEF REQUESTED

16. By this Motion, the Debtors seek entry of the Proposed Order, pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 6004, and Local Rule 6004-1(b), (i) approving the private sales of the Assets to the Purchaser for the amount of the TPA Purchase Price and SBH Purchase Price (as each are defined below) as set forth in the Letters of Intent and (ii) granting other related relief.

## BASIS FOR RELIEF

**I.  THE PRIVATE SALES ARE WARRANTED UNDER THE BANKRUPTCY CODE AND LOCAL RULES**

 **A.  Entering into the Letters of Intent and Ultimately the Purchase Agreements for the Sale of the Assets is an Exercise of the Debtor's Business Judgment.**

17. The Debtors believe that the terms of the Letters of Intent are typical, customary, and reasonable under the circumstances, and should be entered into in the sound exercise of the Debtors' business judgment.

18. Pursuant to Bankruptcy Rule 6004(f)(1), sales of property may be by private sale or public auction. The paramount goal of either process is to maximize the proceeds of such sale and the recovery for the estate. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (noting that the debtor "had a fiduciary duty to protect and maximize the estate's assets."); *see also CFTC v. Weintraub*, 471 U.S. 343, 352 (1985) (same); *Cadle Co. v. Mims* (*In re Moore*), 608 F.3d 253, 263 (5th Cir. 2010) (same).

19. In accordance with Local Rule 6004-1, the Letters of Intent, in summary, provide as follows:[4]

    **I.    The Pet Apothecary LLC Asset Sale**

        a. <u>Sale of The Pet Apothecary LLC Assets</u>. The Debtors are seeking approval of the sale of the TPA Assets to the Purchaser by private sale for an aggregate purchase price of $2,998,000, with $2,698,000 in cash at closing, plus a 1-year Performance Earnout of $300,000 in cash to be paid upon maintaining sales volume from current customers over a 12-month period post close, with upward or downward adjustment based on performance and upon the terms and conditions set forth in the TPA Letter of Intent (the **"TPA Purchase Price"**).

        b. <u>Free and Clear of Any and All Encumbrances</u>. The sale will be free and clear of all claims, liens, encumbrances and interests, with such claims, liens, encumbrances and interests to attach to the net proceeds of the private sale enjoying the same extent and priority as on the TPA Assets.

        c. <u>Included Assets</u>. Substantially all of the assets of The Pet Apothecary LLC, except for the real property and other assets to be excluded from the transaction as agreed between the parties.

        d. <u>Attorney's Fees</u>. Debtors and Purchaser will bear their own fees and expenses in connection with the proposed transaction.

        e. <u>Closing</u>. Court approval of the private sale order shall be no later than November 15, 2024 with a closing to occur approximately thirty (30) days thereafter (the **"Closing Date"**).

    **II.    The SBH Medical, LLC Veterinary Files Sale**

        a. <u>Sale of Veterinary Files of SBH Medical, LLC</u>. The Debtors are seeking approval of the sale of Subject SBH Assets to the Purchaser by private sale for an aggregate purchase price of $1,383,000, with $1,106,000 in cash at closing, plus a 1-year Retention Earnout of $277,000 in cash to be paid upon maintaining sales volume from current customers over a 12-

---

[4] This summary is qualified in its entirety by reference to the provisions of the Letters of Intent. In the event of any inconsistencies between this summary and the Letters of Intent, the terms of the Letters of Intent shall govern.

    month period post close, with upward or downward adjustment based on performance and upon the terms and conditions set forth in the SBH Letter of Intent (the **"SBH Purchase Price"**).

  b. <u>Free of Any and All Encumbrances</u>. The sale will be free and clear of all claims, liens, encumbrances and interests, with such claims, liens, encumbrances and interests to attach to the net proceeds of the private sale enjoying the same extent and priority as on the TPA Assets.

  c. <u>Included Assets</u>. All of SBH Medical, LLC's veterinary files, including compounded prescriptions, commercial prescriptions, compound formulations, processes, studies and other relevant compounding records.

  d. <u>Attorney's Fees</u>. Debtors and Purchaser will bear their own fees and expenses in connection with the proposed transaction.

  e. <u>Closing</u>. The Closing Date (as defined above).

20. Pursuant to Local Rule 6004-1, a copy of a proposed Order is attached to this Motion. In compliance with Local Rule 6004-1(b)(iv), the Debtors further state:

  a. <u>Sale to Insider</u>. The Purchaser is not an insider of the Debtors within the meaning of section 101(31) of the Bankruptcy Code.

  b. <u>Agreements with Management</u>. The Purchaser has not discussed or entered into any agreements with Debtors' management or key employees regarding future compensation or employment.

  c. <u>Releases</u>. N/A.

  d. <u>Private Sale/No Competitive Bidding and Protections for the Purchaser</u>. The Debtors are seeking approval for a proposed sale of the Assets to the Purchaser by private sale free and clear of all liens, claims, encumbrances and other interests, and upon the terms and conditions set forth in the Letters of Intent. The Letters of Intent are not exclusive and therefore allow the consummation of an alternative transaction for a higher or better value. The Purchaser is seeking no protections.

  e. <u>Interim Arrangements with the Purchaser</u>. The Debtors do not have any interim management or other agreement with the Purchaser.

  f. <u>Use of Proceeds</u>. The Letters of Intent do not address the use of proceeds generated by the sale, however, the proceeds will constitute collateral of Loan

4895-6111-5120, v. 5

      Admin Co and be subject to its first priority, enforceable, perfected and valid pre- and post-petition Liens.

    g. <u>Tax Exemption</u>. The Debtors are not seeking to have the sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code.

    h. <u>Record Retention</u>. The Debtors will retain, or have reasonable access to, all records necessary for the administration of these chapter 11 cases.

    i. <u>Sale of Avoidance Actions</u>. The Debtors are not seeking to sell avoidance actions.

    j. <u>Requested Findings as to Successor Liability</u>. The Debtors are seeking to sell the Assets free and clear of successor liability claims.

    k. <u>Credit Bid</u>. The Letters of Intent do not contemplate a right to credit bid.

    l. <u>Relief from Bankruptcy Rule 6004(h)</u>. The Debtors are seeking relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) for the private sale.

21. While the Letters of Intent are in final, agreed form, the Debtors request authorization to enter into definitive Purchase Agreements, on the same or materially similar terms as may be agreed upon between the Purchaser and the Debtors prior to the hearing on this Motion.

    **B.**    **The Sale of the Assets is Appropriate Under Section 363(b)(1) of the Bankruptcy Code.**

22. Bankruptcy Code section 363(b) governs transactions outside the ordinary course of business involving property of the debtor's estate. Specifically, that section provides, in relevant part, that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b).

23. The Debtors' sale or use of property of the estates outside the ordinary course of business should be approved by the Court if the Debtors can demonstrate a sound business justification for the proposed transaction. *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169 (D.

Del. 1991); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394–95 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513 (7th Cir. 1991)).

24. Courts have applied the following four factors in determining whether a sound business justification exists: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *See In re Del. & Hudson Ry. Co.*, 124 B.R. at 175–76 (adopting *Lionel* factors to consider in determining whether sound business purpose exists for sale outside ordinary course of business in this District); *Lionel Corp.*, 722 F.2d at 1071 (setting forth the "sound business" purpose test); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147–49 (3d Cir. 1986) (implicitly adopting the articulated business justification test set forth in Lionel and adding the "good faith" requirement).

25. Once debtors articulate a valid business justification, their decision to sell property out of the ordinary course of business enjoys a strong "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res. Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Therefore, any party objecting to a debtor's proposed asset sale must make a showing of "bad faith, self-interest, or gross negligence," as courts are loath to interfere with corporate decisions absent such a showing. *See id*. at 656; *see also In re Promise Healthcare Group, LLC*, et al., Case No. 18-12491 (CSS) [D.I. 770] (order approving the private sale of the Debtor's certain Louisiana facilities upon the Debtor's showing they properly exercised their business judgment and set forth sound business justifications for pursuing such a private sale,

having marketed the private sale and showing that the purchaser was the only bidder for the Louisiana facilities that could close a sale promptly on terms favorable to the Debtors).

26. It is well settled that the sale of assets outside of the ordinary course of business by means of a private sale can, and in appropriate cases should, be approved. *See, e.g., In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the former Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion… to conduct public or private sales of estate property.") (internal quotations and citations omitted); *In re Dewey & LeBeouf*, Case No. 12-12321 (MG), 2012 WL 5386276, at *6 (Bankr. S.D.N.Y. Nov. 1, 2012) (authorizing private sale of art collection because the debtor established a good business reason to proceed by private sale); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property pursuant to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale… and there is no requirement that the sale be by public auction."); *see also In re Promise Healthcare Group, LLC, et al.*, Case No. 18-12491 (CSS) [D.I. 426, 770, and 778] (orders approving the private sale of the Debtor's Louisiana facilities and their St. Alexius facility outside the ordinary course of business).

27. The Debtors have made a business decision to exit the Veterinary Business moving forward. The Veterinary Business represents approximately 2.8% of the Debtors' yearly gross revenue and only approximately 9.7% of the Debtors' pharmacy yearly EBITDA. The Debtors have been working for the past several months to find a buyer to divest their interests in the Assets to focus on its core business operations. Furthermore, the Debtors believe that the proposed sales are reasonable and likely to maximize value given that (a) the Purchaser can consummate the private sale transaction more quickly than if an auction were held, (b) thus far,

4895-6111-5120, v. 5

no other expressions of interest or bids have been received for the Assets, and (c) nothing in the Letters of Intent (or the Purchase Agreements when executed) prohibits the Debtors from exercising their fiduciary duties and consummating an alternative transaction for a higher amount. The Debtors believe, in their business judgment, that an auction will not lead to higher or otherwise better bids and will be expensive and involve harmful delay. Accordingly, the Debtors respectfully submit that the proposed private sale of the Assets to the Purchaser should be approved.

      **C.    The Proposed Sales Should be Approved Free and Clear of Liens, Interests and Encumbrances.**

28. Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property free and clear of any lien, claim, interest or encumbrance in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

29. Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale. *See In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995) ("Section 363(f) is phrased in the disjunctive, such that only one of the enumerated conditions must be met in order for the Court to approve the proposed sale"); *Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apts., Ltd.)*, 159 B.R.

821, 827 (N.D. Ill. 1993) (sale extinguishes liens under section 363(f) as long as one of the five specified exceptions applies).

30.    The Debtors will serve notice of the Motion on the Office of the United States Trustee, the Committee, the DIP lenders, Loan Admin Co (the agent to the Debtors' pre-petition lenders) any other secured parties with liens in the Assets, and all applicable taxing authorities, and each will have an opportunity to object to the private sale.  The Debtors understand that Loan Admin Co's Liens far exceed the value of the Assets and, therefore, the Debtors dispute that any other party holds an interest in the Assets.   Loan Admin Co fully supports, and has consented to, the sales of the Assets to the Purchaser.  The Debtors contend that no other party asserts or holds a valid, perfected lien on the subject property.  Accordingly, to the extent any party contends that it holds a valid lien on such property, such lien is subject to bona fide dispute, and the Debtors may sell the property free and clear of such purported lien, under section 363(f)(4) of the Bankruptcy Code. Therefore, the Debtors request that the private sale be approved free and clear of all encumbrances and interests, with the proceeds of the Sale to be distributed in accordance with the Modified Second Amended Plan.

    **D.**    **The Sale is Proposed in Good Faith.**

31.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

32.    Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments

4895-6111-5120, v. 5

upon which third parties rely.'" *Abbotts Dairies of Penn., Inc.*, 788 F.2d at 147 (quoting *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)). *See also United States v. Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) (same).

33. While the Bankruptcy Code does not define "good faith", some courts have held that a good faith purchaser is one who "purchases the assets for value, in good faith, and without notice of adverse claims." *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1323 (5th Cir. 1988) (*quoting Willemain v. Kivitz (In re Willemain)*, 764 F.2d 1019, 1023 (4th Cir. 1985)). Furthermore, the good faith status of a purchaser can be destroyed with evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 521 (5th Cir. 2014).

34. The private sale has been proposed in good faith. The Letters of Intent (and Purchase Agreements to be executed) were the product of extensive good faith, arm's length negotiations between the Debtors, on the one hand, and the Purchaser, on the other. The Debtors believe and submit that the sale of the Assets to the Purchaser, pursuant to the terms and conditions of the Letters of Intent, are not the product of collusion or bad faith. No evidence suggests that the Letters of Intent are anything but the product of arm's length negotiations between the Debtors and the Purchaser. In connection with approval of the proposed private sale, the Debtors request that the Court make a finding that the Purchaser is a good faith purchaser and entitled to the protections of section 363(m) of the Bankruptcy Code.

4895-6111-5120, v. 5

35. Furthermore, the Debtors are unaware of any circumstances or facts that could be perceived as or that the Purchaser or any other party colluded.

## WAIVER OF BANKRUPTCY RULE 6004(h)

36. The Debtors respectfully request that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h). Timely consummation of the proposed sale is of critical importance to both the Debtors and the Purchaser, and is vital to the Debtors' efforts to maximize the value of the Debtors' estates. Accordingly, the Debtors hereby request that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

## NOTICE AND NO PRIOR REQUEST

37. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) counsel for the Committee; (iv) the Purchaser; (v) counsel to the DIP Lenders; (vi) any party claiming a lien in the Assets; and (vii) all creditors and parties-in-interest entitled to notice under Rule 2002. In light of the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

4895-6111-5120, v. 5

WHEREFORE, the Debtors respectfully request that this Court (i) enter the proposed Order, substantially in the form of attached hereto, granting the relief requested in this Motion, and (ii) grant such other and further relief as this Court may deem just and proper.

Dated: October 22, 2024　　　　　　　**CHIPMAN BROWN CICERO & COLE, LLP**
　　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　 */s/ William E. Chipman, Jr.*
　　　　　　　　　　　　　　　　　　　　William E. Chipman, Jr. (No. 3818)
　　　　　　　　　　　　　　　　　　　　Mark D. Olivere (No. 4291)
　　　　　　　　　　　　　　　　　　　　Hercules Plaza
　　　　　　　　　　　　　　　　　　　　1313 North Market Street, Suite 5400
　　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　　Telephone:　(302) 295-0191
　　　　　　　　　　　　　　　　　　　　Email:　　　chipman@chipmanbrown.com
　　　　　　　　　　　　　　　　　　　　　　　　　olivere@chipmanbrown.com

　　　　　　　　　　　　　　　　　　　　*Counsel for Debtors and*
　　　　　　　　　　　　　　　　　　　　*Debtors in Possession*