# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (Jointly Administered) |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON DEBTORS' OBJECTION TO MOTION OF SKIN MEDICINALS LLC FOR ENTRY OF AN ORDER GRANTING AN ALLOWED ADMINISTRATIVE EXPENSE PURSUANT TO SECTION 503(B) OF THE BANKRUPTCY CODE

**CHIPMAN BROWN CICERO & COLE, LLP**
William E. Chipman, Jr. (No. 3818)
David W. Carickhoff (No. 3715)
Mark D. Olivere (No. 4291)
Alan M. Root (No. 5427)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:   (302) 295-0191
Email: chipman@chipmanbrown.com
            carickhoff@chipmanbrown.com
            olivere@chipmanbrown.com
            root@chipmanbrown.com

Dated: November 18, 2024
       Wilmington, Delaware

*Counsel for Debtors and Debtors in Possession*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

# TABLE OF CONTENTS

 **Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

   I.   SKIN MEDICINALS FAILS TO MEET ITS SUMMARY JUDGMENT BURDEN ...................................................................................................2

   II.  SKIN MEDICINALS' PURPORTED ADMINISTRATIVE CLAIM IS INVALID AS A MATTER OF LAW ...................................................................6

CONCLUSION .............................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arrivia Inc. v. Reowley*, No. CV-23-01039-PHX-DLR, 2023 WL 7386384 (D. Ariz. Nov. 8, 2023) .................................................................................................................................. 8

*B&P Littleford LLC v. Prescott Machinery*, LLC, 2021 WL 3732313 (6th Cir. Aug. 24, 2021) .. 8

*Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513 (10th Cir. 1987) ........................................... 10

*Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.*, 443 F.2d 867 (2d Cir. 1971).............. 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 3

*Hart v. City of Philadelphia*, 779 Fed. App'x 121 (3d Cir. 2019)................................................. 5

*Hazelquist v. Guchi Moochie Tackle Co.*, 437 F.3d 1178 (Fed. Cir. 2006).................................. 10

*Houser v. Feldman*, 569 F. Supp. 3d 216 (E.D. Pa. 2021) ............................................................ 8

*In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456010 (E.D. Mich. June 6, 2013) .................................................................................................................................. 9

*In re Avaya Inc.*, No. 17-10089 (SMB), 2018 WL 1940381 (Bankr. S.D.N.Y. Apr. 23, 2018)... 10

*In re Beverage Canners Int'l Corp.*, 255 B.R. 89 (Bankr. S.D. Fla. 2000) ................................. 10

*In re Bill's Coal Co.*, 124 B.R. 827 (D. Kan. 1991) .................................................................... 11

*In re B–K of Kansas, Inc.*, 99 B.R. 446 (D. Kan.1989) ................................................................. 9

*In re Diomed, Inc.*, 394 B.R. 260 (Bankr. D. Mass. 2008).......................................................... 10

*In re Eagle Pitcher Industries*, 447 F.3d 461 (6th Cir. 2006)....................................................... 9

*In re Energy Future Holdings Corp.*, 990 F.3d 728 (3d Cir. 2021)............................................... 6

*In re Exide Techs.*, 601 B.R. 271 (Bankr. D. Del. 2019) ............................................................ 11

*In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010) ..................................................................... 6

*In re Mallinckrodt PLC*, No. 20-12522, 2021 WL 4876908 (Bankr. D. Del. Oct. 19, 2021) ........ 8

*In re W.R. Grace & Co.*, 626 B.R. 217 (Bankr. D. Del. 2021)...................................................... 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..................................... 4

*Parilla v. IAP Worldwide Serv., VI, Inc*., 368 F.3d 269 (3d Cir. 2004) .......................................... 3

*Peck v. General Motors Corp*. 894 F.2d 844 (6th Cir. 1990) ........................................................... 9

*Prestone Prod. Corp. v. S./Win, Ltd*., No. 13 C 1853, 2014 WL 12775693 (N.D. Ill. Sept. 26, 2014) ........................................................................................................................................ 10

*Reading Co. v. Brown*, 391 U.S. 471 (1968) .................................................................................. 7

*Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) ..................................................................... 4

*Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 181 (3d Cir. 2008) .......................... 3

*Superior Petroleum Products, Inc. v. NH Dept. of Env. Servs*., 490 B.R. 5, 12 (D.N.H. 2013) ... 11

**Statutes**

11 U.S.C. § 503(b)(1)(A) ................................................................................................................ 10

18 U.S.C. § 1836(d) ....................................................................................................................... 11

765 ILCS § 1065/7 ......................................................................................................................... 11

Fed. R. Civ. P. 56(d) ........................................................................................................................ 8

Optio Rx, LLC ("**Optio Rx**") and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**"), in the above-captioned chapter 11 cases, hereby submit this reply memorandum of law in further support of their motion (the "**Motion**"), pursuant the Rules 9014 and 7056 of the Federal Rules of Bankruptcy Procedure, for an order granting summary judgment on the *Debtors' Objection to Motion of Skin Medicinals LLC for Entry of an Order Granting an Allowed Administrative Expense Pursuant to Section 503(B) of the Bankruptcy Code* [Docket No. 384] (the "**Objection**"). By its Objection, the Debtors object to the *Motion of Skin Medicinals LLC for Entry of an Order Granting an Allowed Administrative Expense Pursuant to Section 503(b) of the Bankruptcy Code* [Docket No. 362] (the "**Administrative Claim**" or "**Adm. Cl.**").

## PRELIMINARY STATEMENT

Skin Medicinals LLC ("**Skin Medicinals**"), once again, concedes the crucial fact upon which summary judgment disallowing the purported Administrative Claim should be granted: Skin Medicinals contends it was "exposed" to Optio Rx's "conduct" *prior to* Optio Rx's chapter 11 petition. Under the standard set forth in *In re Grossman's Inc.*, 607 F.3d 114, 125 (3d Cir. 2010)—controlling precedent that Skin Medicinals barely mentions, and then only in passing on the last page of its response to the Motion (the "**Response**" or "**Rsp.**")—Skin Medicinals' purported claim based on the Optio Rx's conduct "arose" *pre-petition*. Accordingly, Skin Medicinals cannot, as a matter of law, establish a basis for an allowed Administrative Claim, as a "continuation" of Optio Rx's purported *pre-petition* conduct in the post-petition period. The Administrative Claim does not provide any legal basis for Skin Medicinals to prime other general unsecured creditors in these cases.

For these reasons, the principal issue—whether the alleged conduct was pre- or post-petition—is strictly legal and compels summary judgment disallowing Skin Medicinals' purported

1

Administrative Claim as a matter of law. Indeed, the present Motion is directed solely to the narrow issue of whether Skin Medicinals' purported claims, even if proven, would be allowable as administrative expense claims and how they would ultimately be treated under the Debtors' confirmed Plan. This Motion is not directed towards the substance of Skin Medicinals' purported general unsecured claims.

## ARGUMENT

### I. SKIN MEDICINALS FAILS TO MEET ITS SUMMARY JUDGMENT BURDEN

The crux of Skin Medicinals' Response is that the Motion is "premature" and lacking in "record evidence." (Resp. at 2, 9-12.) To the contrary, Skin Medicinals' admissions in its pleadings are the "record evidence," are material and are not in dispute. Skin Medicinals, by contrast, has failed to meet its settled legal burden to meet Optio Rx's summary judgment Motion with admissible evidence or to specify the reasons it cannot present facts essential to justify its opposition to the Motion.

Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure and makes clear that a party may move for summary judgment *at any time* thirty days or more prior to the trial date. Fed. R. Bankr. P. 7056 (emphasis added). Rule 9014(c) provides that Rule 7056 applies to contested matters, which was initiated in this instance upon Optio Rx filing an objection to Skin Medicinals' Administrative Claim. *See* Fed R. Bankr. Proc. 9014(c) and Fed. R. Bankr. Proc. & *advisory committee notes*. Accordingly, Optio Rx's Motion for summary judgment is not "premature" under Rule 7056 as it was filed more than 30 days prior to the trial (or a hearing) on Skin Medicinals' Administrative Claim and because it is based upon uncontested facts and admissions that are already of record.

Indeed, Optio Rx's Motion is properly supported under Rule 7056. Rule 56 makes clear that a summary judgment motion may be based upon "admissions" of record, and summary judgment is warranted where, as here, Skin Medicinals' admissions establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). Summary judgment is also properly supported by "pointing out" that there is an "absence of evidence to support" the nonmovant's purported claims under applicable law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In its filed Administrative Claim, in its filed adversary proceeding complaint (**"Adv. Cmp."**), and now in its filed Response, Skin Medicinals repeatedly admits that its initial "exposure" to Optio Rx's alleged offending conduct occurred *pre-petition*. (Adm. Cl. ¶¶13-20; Adv. Cmp. ¶¶49-59; Rsp. at 4-6.) Skin Medicinals' assertions in its pleadings constitute judicial admissions upon which summary judgment is warranted under Rule 56(a) for the reasons set forth in Optio Rx's Motion and below. *See also Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 181 (3d Cir. 2008) ("[An] allegation in the [plaintiff's] complaint is a binding judicial admission."); *Parilla v. IAP Worldwide Serv., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) ("Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them."). Moreover, in its Motion, Optio Rx "pointed out" that because Skin Medicinals' "exposure" occurred pre-petition under the non-bankruptcy law upon which its claims are based, its claims arose pre-petition and, therefore, any potential evidence of continued misappropriation or use post-petition, even if available, would be irrelevant. Stated simply, there is an "absence of evidence" to support Skin Medicinals' purported Administrative Claim because the administrative claim, as asserted, does not exist.

Skin Medicinals is the party that has misapplied Rule 56. Once Optio Rx met its initial burden to show the material uncontested fact that the relevant "exposure" occurred pre-petition, the burden shifted to Skin Medicinals, as the nonmoving claimant party, to "'come forward with specific facts'" based upon admissible evidence showing the "presence of a genuine dispute" to be resolved at trial. Fed. R. Civ. P. 56(c)(1)(B); *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Rather than submit admissible evidence establishing a fact—much less a relevant contested fact—Skin Medicinals submitted a Declaration of its counsel, Jed W. Glickstein, which simply confirms that the parties issued discovery requests. (Rsp. Ex. A.) The Declaration, by contrast, fails to establish a material issue of fact because, under Rule 56(c)(4) entitled "*Affidavits or Declarations*":

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4). Assuming Mr. Glickstein has "personal knowledge"—he does not state one way or the other—and he is competent to testify, Mr. Glickstein fails to mention a single fact, much less a fact "admissible in evidence," sufficient to raise a material issue of fact for trial.

Nor is Mr. Glickstein's Declaration sufficient to establish a basis for Skin Medicinals' request for additional "discovery" to establish that Optio Rx's alleged conduct—its purported "misappropriation and use" of trade secrets—"continued" post-petition. (Resp. at 2, 10-15, 18.) A request for additional discovery requires an affiant to provide "specified reasons" the nonmovant "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The declaration must set forth the "particular information that is sought; how, if disclosed, it would preclude summary judgment; and why it has not been previously obtained." *In re W.R. Grace & Co.*, 626

B.R. 217, 233 (Bankr. D. Del. 2021). As the Third Circuit has repeatedly declared, "failure to comply with Rule 56(d) is fatal to a claim of insufficient discovery." *Hart v. City of Philadelphia*, 779 Fed. App'x 121, 128 (3d Cir. 2019).

The Glickstein Declaration lists certain outstanding discovery requests, to be sure. But the Declaration fails to identify the "particular information" sought or, more importantly, the reason the information sought "would preclude summary judgment." Indeed, Mr. Glickstein is unable to do so because it appears from Skin Medicinals' Response that the requested discovery is directed towards whether Optio Rx "continued" to misappropriate and use the purported trade secrets misappropriated pre-petition. As demonstrated in Optio Rx's Motion and below, Skin Medicinals' "continued" use claim cannot qualify as an administrative expense under controlling Third Circuit law and under the non-bankruptcy law Skin Medicinals' purported claim is based. Skin Medicinals' inability and failure to satisfy Rule 56(d) is thus "fatal" to its contention that it lacks sufficient discovery. *Hart*, 779 Fed. App'x at 128.

In short, Optio Rx satisfied its initial burden on summary judgment and Skin Medicinals' failure to satisfy Rule 56(d) is fatal to is request for additional discovery.

## II. SKIN MEDICINALS' PURPORTED ADMINISTRATIVE CLAIM IS INVALID AS A MATTER OF LAW

Skin Medicinals' purported Administrative Claim is founded upon a fundamental misapplication of the law. Skin Medicinals states that "[i]f the evidence shows that OptioRX has *continued* to misappropriate Skin Medicinals' trade secrets since filing the bankruptcy—as Skin Medicinal expects—then Skin Medicinals will be entitled to an administrative claim for damages stemming from that postpetition tortious conduct." (Rsp. at 12) (emphasis added). Skin Medicinals is wrong.

4893-6105-3434, v. 3

An administrative expense claim under 11 U.S.C. § 503(b)(1)(A) requires there to have been a "postpetition transaction" between the Debtor and the claimant that "yielded a benefit to the estate." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021). Moreover, a "claim" arises under the Bankruptcy Code at the time a person is first "exposed" to "conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." *In re Grossman's Inc.*, 607 F.3d 114, 125 (3d Cir. 2010). In its Administrative Claim, in its adversary proceeding complaint and now in its Response, Skin Medicinals repeatedly concedes that it was "exposed" to Optio Rx's "conduct" that gave rise to its alleged injury when Optio Rx "accessed" Skin Medicinals' Web Portal and "misappropriated" and "used" Skin Medicinals' trade secrets— acts that occurred *pre-petition* in February and March 2024. (Adm. Cl. ¶¶13-20; Adv. Cmp. ¶¶49-59; Rsp. at 4-6.) Controlling Bankruptcy law and the non-bankruptcy law upon which Skin Medicinals based its claims make clear that those claims were triggered upon the initial occurrence. Having been "exposed" to Optio Rx's conduct pre-petition, Skin Medicinals possesses a pre-petition, general unsecured claim—which Skin Medicinals already filed (*see* Adm. Cl. ¶25 n.5)— and it is not now entitled to prime other general unsecured creditors by elevating its general unsecured claim into an administrative expense.

That Optio Rx may have "continued" using post-petition the alleged trade secrets that had already been misappropriated pre-petition thereby allegedly further injuring Skin Medicinals is irrelevant. (Resp. at 2, 10-15, 18.) Any such "continued" use and misappropriation—even if it could be proven—does not constitute new torts and "overt" acts disconnected from the initial "conduct" and "exposure." *See, e.g.*, *Reading Co. v. Brown*, 391 U.S. 471 (1968) (estate's post-petition negligence disconnected with any pre-petition conduct gives rise to a post-petition claim); *Energy Future Holdings*, 990 F.3d at 741 (fees attributable to post-petition merger agreement are

administrative expense). Indeed, the very federal and state trade secret laws upon which Skin Medicinals bases its purported trade secrets claims, including the Defend Trade Secrets Act (the "**DTSA**"), make clear that those claims arose and accrued as of the initial alleged acts of misappropriation and any purported "continuing violation constitutes a single claim of misappropriation"; the purported claims do not constitute continuing torts. *Ocimium Biosolutions (India) Ltd. v. LG Corp.*, 2021 WL 931094, at *7 (D. Del. Mar. 11, 2021); *see* 18 U.S.C. § 1836(d); 765 ILCS § 1065/7; Fla. Stat. Ann. § 688.007. A trade secret claim "'arises only once . . . at the time of the initial misappropriation, subject to the discovery rule.'" *Houser v. Feldman*, 569 F. Supp. 3d 216, 226 (E.D. Pa. 2021) (quoting *B&P Littleford LLC v. Prescott Machinery*, LLC, 2021 WL 3732313, at *6 (6th Cir. Aug. 24, 2021)). Here, Optio Rx's alleged "initial misappropriation" indisputably occurred pre-petition and, therefore, any post-petition continuation did not constitute a separate tort detached from the initial act, as the tort under the applicable non-bankruptcy law arose "only once" as part of the same pre-petition conduct.[2]

In comparison is *In re Mallinckrodt PLC*, No. 20-12522, 2021 WL 4876908 (Bankr. D. Del. Oct. 19, 2021), to which Skin Medicinals again refers and which, as explained in Optio Rx's moving memorandum, *supports* summary judgment. (Rsp. at 15.) *Mallinckrodt* involved federal antitrust law under which an antitrust plaintiff is "exposed"—the test in *Grossman's*—to the

---

[2] As Skin Medicinals points out, the limitations provision in the DTSA, 18 U.S.C. § 1836(d), provides that "a continuing misappropriation constitutes a single claim of misappropriation" for determining when a claim under that statute accrues and the statute of limitations is triggered. (Rsp. at 14.) Indeed, it is because the claim accrues—and at the same time arises—that the statute of limitations begins to run on the "single claim" under the statute. For instances in which the purported initial misappropriation occurred prior to the DTSA, which was not retroactive, the "single act of misappropriation" supporting the claim could only occur and trigger the statute of limitations after the statute was enacted and the claim existed. For this reason, some courts hold that the statute of limitations is triggered in the unique instance in which the initial misappropriation occurred pre-enactment of the DTSA (when there was no claim) but could only constitute a claim post-enactment (after a claim was promulgated). *See Arrivia Inc. v. Reowley*, No. CV-23-01039-PHX-DLR, 2023 WL 7386384, at *5 (D. Ariz. Nov. 8, 2023). Skin Medicinals' claim accrued post-enactment and, therefore, the cases resolving whether a pre-enactment violation triggers the statute of limitations are inapplicable.

debtor's conduct each time the antitrust plaintiff purchases the debtor's violative product at an illegally inflated price; each purchase constitutes a separate "overt act" and violation as a matter of relevant antitrust law. Unlike Skin Medicinals' DTSA claim, a defendant's wrongs under the antitrust laws are new with each violative sale and, if occurring post-petition, then the post-petition sales potentially give rise to post-petition administrative priority claims. 2021 WL 4876908, at *8 (citing *Peck v. General Motors Corp.* 894 F.2d 844, 849 (6th Cir. 1990) ["when a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants"]); *see also In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456010, at *5 (E.D. Mich. June 6, 2013) (Rsp. at 16) (in price fixing action, "each time [the debtor] charged for a sale it committed an overt act").[3] Skin Medicinals' trade secret claims, by contrast, are based upon Optio Rx's alleged pre-petition "conduct" under relevant non-bankruptcy law—the purported February and March 2024 acts of misappropriation and use giving rise to a single claim under the DTSA and related state law.

Skin Medicinals' reference to cases outside the Third Circuit relating to post-petition breaches of pre-petition royalty agreements do not support a finding of an administrative expense; to say the least, they are far from controlling. *See, e.g., In re Avaya Inc.*, No. 17-10089 (SMB), 2018 WL 1940381 (Bankr. S.D.N.Y. Apr. 23, 2018) (Rsp. at 17); *In re Diomed, Inc.*, 394 B.R.

---

[3] Skin Medicinals also refers to the patent and trademark cases. *See In re Eagle Pitcher Industries*, 447 F.3d 461, 462 (6th Cir. 2006) (Rsp. at 16) and *Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.*, 443 F.2d 867, 874 (2d Cir. 1971); *In re B–K of Kansas, Inc.*, 99 B.R. 446, 448 (D. Kan.1989). Skin Medicinals' Administrative Claim does not arise under the patent or trademark laws, but instead under laws that render continuing conduct part of same claim as the initial conduct. By contrast, and like the antitrust claims in *Mallinckrodt*, "each act of patent infringement gives rise to a separate cause of action," including for bankruptcy purposes. *Hazelquist v. Guchi Moochie Tackle Co.*, 437 F.3d 1178, 1180 (Fed. Cir. 2006) (engaging continuing infringing activity after bankruptcy discharge constitutes new claims). Trademark infringement is likewise a continuing tort. *See Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 526 (10th Cir. 1987) ("Trademark infringement is a continuous wrong and, as such, gives rise to a claim for relief so long as the infringement persists."); *Prestone Prod. Corp. v. S./Win, Ltd.*, No. 13 C 1853, 2014 WL 12775693, at *3 (N.D. Ill. Sept. 26, 2014) ("Infringement—whether trademark or patent—is a continuing tort" with "each act of infringement of a trademark or a patent as an independent cause of action.").

260, 267 (Bankr. D. Mass. 2008) (Rsp. at 18 n. 6); *In re Beverage Canners Int'l Corp.*, 255 B.R. 89 (Bankr. S.D. Fla. 2000) (Rsp. at 18 n.5). Indeed, Judge Ambro (sitting by designation in the District Court) considered that very issue in the *Mallinckrodt* chapter 11 case. Consistent with *Grossman's*, the court held that the conduct and exposure fixing the parties' rights "arose" *pre-petition* when the parties entered a royalty agreement even though a cause of action to recover for a later breach of the same agreement may have only "accrued" through a post-petition breach. *In re Mallinckrodt plc*, 646 F. Supp. 3d 565, 570 (D. Del. 2022). The Third Circuit affirmed which, along with the District Court decision, are controlling. *In re Mallinckrodt PLC*, 99 F.4th 617 (3d Cir. 2024).[4]

Skin Medicinals ignores the law dictating that its purported trade secrets claim arose "only once," instead urging the Court to consider the "fundamental fairness doctrine" announced in *Reading* as justifying administrative expense treatment for its "continuing" use claim. (Rsp. at 13.) The "fundamental fairness doctrine," however, is addressed to whether a *post-petition* tort may be accorded administrative expense treatment where the *post-petition* tort provides no "benefit" to the debtor's estate. *Energy Future Holdings*, 990 F.3d at 738 (fundamental fairness doctrine is "a narrow exception to the requirement that an applicant must show a benefit to the estate in order to recover administrative fees"). The claimant's initial "exposure" to the offending tortious "conduct" must nevertheless have occurred *post-petition* for the tort to qualify as a potential administrative expense, which, in this case, it did not as a matter of law. *Grossman's*,

---

[4] Skin Medicinals' reference to governmental "penalty" cases from outside the Third Circuit are similarly off the point. *See Superior Petroleum Products, Inc. v. NH Dept. of Env. Servs.*, 490 B.R. 5, 12 (D.N.H. 2013) (Rsp. At 16); *In re Bill's Coal Co.*, 124 B.R. 827, 829 (D. Kan. 1991) (Rsp. At 16). Skin Medicinals' purported Administrative Claim has nothing to do with government-imposed penalties. Moreover, in the Third Circuit, both criminal and civil penalties "for prepetition conduct that continued unabated postpetition" do not support administrative expense priority. *In re Exide Techs.*, 601 B.R. 271, 289 (Bankr. D. Del. 2019), *aff'd*, 613 B.R. 79 (D. Del. 2020).

9

607 F.3d at 125; *see Mallinckrodt*, 2021 WL 4876908, at *3. Optio Rx does not challenge the legal concept that a *post-petition tort* may, in certain circumstances, be accorded administrative expense treatment; rather, Skin Medicinals' claims—assuming they are valid, which they are not—arose pre-petition thereby rendering the "fundamental fairness doctrine" beside the point.

Perhaps recognizing that its Administrative Claim fails as a matter of law, Skin Medicinals appeals to a "fear" that it would be deprived of "any meaningful damages remedy" and Optio Rx may continue to use the purportedly misappropriated trade secrets "in perpetuity" with "no fear of being held accountable." (Rsp. at 3, 15.)[5] It bears repeating, however, that the present Motion is directed solely towards the limited issue of whether Skin Medicinals' claim—if it can ever be proven—can qualify as an administrative expense. As with the royalty agreements in *Mallinckrodt*, Skin Medicinals' general unsecured creditor status is demanded because the conduct and exposure fixing the parties' rights—if at all—"arose" *pre-petition* as a matter of law when Optio Rx's alleged misappropriation occurred. 646 F. Supp. 3d at 570.

In sum, Skin Medicinals' "continuing" trade secret claims arose pre-petition as a matter of law. As such, Optio Rx is entitled to summary judgment disallowing Skin Medicinals' Administrative Claim.

---

[5] This same result is already baked into the DTSA and related state law upon which Skin Medicinals relies as those statutes limit Skin Medicinals to a single claim and bars future claims based upon continued use after expiration of the relevant limitations period.

**CONCLUSION**

For all the foregoing reasons, the Court should grant summary judgment sustaining the Debtors' Objection and disallowing Skin Medicinals' Administrative Claim.

Dated: November 18, 2024　　　　　　**CHIPMAN BROWN CICERO & COLE, LLP**
　　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　 */s/ William E. Chipman, Jr.*
　　　　　　　　　　　　　　　　　　　William E. Chipman, Jr. (No. 3818)
　　　　　　　　　　　　　　　　　　　David W. Carickhoff (No. 3715)
　　　　　　　　　　　　　　　　　　　Mark D. Olivere (No. 4291)
　　　　　　　　　　　　　　　　　　　Alan M. Root (No. 5427)
　　　　　　　　　　　　　　　　　　　Hercules Plaza
　　　　　　　　　　　　　　　　　　　1313 North Market Street, Suite 5400
　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　Telephone:　(302) 295-0191
　　　　　　　　　　　　　　　　　　　Email:　　　chipman@chipmanbrown.com
　　　　　　　　　　　　　　　　　　　　　　　　carickhoff@chipmanbrown.com
　　　　　　　　　　　　　　　　　　　　　　　　olivere@chipmanbrown.com
　　　　　　　　　　　　　　　　　　　　　　　　root@chipmanbrown.com

　　　　　　　　　　　　　　　　　　　Adam D. Cole, Esquire
　　　　　　　　　　　　　　　　　　　**CHIPMAN BROWN CICERO & COLE, LLP**
　　　　　　　　　　　　　　　　　　　501 Fifth Avenue, 15th Floor
　　　　　　　　　　　　　　　　　　　New York, New York 10017
　　　　　　　　　　　　　　　　　　　Telephone:　(646) 685-8363
　　　　　　　　　　　　　　　　　　　Email:　　　cole@chipmanbrown.com

　　　　　　　　　　　　　　　　　　　*Counsel for Debtors and Debtors in Possession*