## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Related Docket No. 589, 608 and 610** |

### REPLY IN SUPPORT OF DEBTORS' SECOND OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS EFFECTIVE AS OF THE REJECTION DATE

Optio Rx, LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases, by and through their undersigned counsel, hereby submit this reply (the "**Reply**"): (i) in support of the *Debtors' Second Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Executory Contracts Effective as of the Rejection Date* [Dkt. No. 589] (the "**Rejection Motion**"), and (ii) in opposition to the objections by contract counterparty (a) Pouya Farzadfar [Docket No. 608], and (b) Payam Tizabgar (together, the "**Objections**" and the "**Objecting Parties**")[2] [Docket No. 610].   In support of this Reply, the Debtors rely upon the *Declaration of Leo LaFranco in Support of Debtors' Reply in Support of Debtors' Second Omnibus Motion for Entry of an Order*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Rejection Motion.

*Authorizing the Debtors to Reject Certain Executory Contracts Effective as of the Rejection Date* [the "**LaFranco Declaration**"], attached hereto as <u>Exhibit A</u>, and respectfully represent as follows:

**BACKGROUND**

**I.    THE CHAPTER 11 CASES.**

1.      On June 7, 2024 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.   The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

2.      On October 17, 2024 the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law and Order Confirming the Debtors' Second Amended Joint chapter 11 Plan of Reorganization of Optio Rx, et al.* [Docket No. 484] (the "**Confirmation Order**").   Under the *Second Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 480] (the "**Plan**"), and Confirmation Order, the Debtors Executory Contracts and Unexpired Leases (as defined in the Plan) are deemed assumed (or assumed and assigned to the respective Reorganized Debtor, as applicable) as of the Effective Date (as defined in the Plan) unless, *inter alia*, such contract is the subject of a motion to reject filed on or before the Effective Date.   *See* Plan, Section 5.01.   As the Court is aware, the Plan has not yet become effective or substantially consummated.

3.      The Plan also provides that, unless otherwise provided by a Final Order of this Court, any claims based on rejection of Executory Contracts must be filed no later than thirty (30) days after the effective date of such rejection.   *See* Plan, Section 5.02.   Here, the Rejection Motion seeks a rejection date as of December 2, 2024.   To address any unintended prejudice to

the Objecting Parties, the Debtors are submitting a modified Proposed Order to allow for claims arising from the rejection of these Contracts to be filed within thirty (30) days from entry of the Proposed Order granting the Rejection Motion.

4.      On December 2, 2024, the Debtors filed the Rejection Motion.  Pursuant to the notice of hearing, responses to the Rejection Motion were due no later than December 16, 2024. In response to the Rejection Motion, the Debtors received the Payam Objection via email on December 10, 2024, and the Pouya Objection was filed on December 18, 2024 [Docket No. 608]. The Payam Objection was subsequently docketed in the Bankruptcy Cases on December 20, 2024 [Docket No. 610].

## II.    THE CONTRACTS.

5.      The Contracts that the Debtors seek to reject are prepetition employment agreements with the Objecting Parties.  As noted in the Objections, Mr. Farzadfar has served as President of FirstCare Pharmacy, EasyCare Pharmacy, and PrimeCare Pharmacy, and Mr. Tizabgar has served as President of SMC Pharmacy LLC and Vice President of Pharma.  Both Mr. Farzadfar and Mr. Tizabgar currently serve in these capacities.  Notably, **both** of the Contracts identified in the Rejection Motion expire by their own terms on **January 8, 2025**. Absent the relief sought in the Rejection Motion, when these Contracts expire, in addition to other potentially significant amounts, the Debtors could be obligated to pay more than $300,000 to the Objecting Parties for severance.

6.      Prior to filing the Rejection Motion, the Debtors met individually with each of Mr. Farzadfar and Mr. Tizabgar, at which time they were informed of the Debtors' decision to reject their employment agreements while also retaining each of Mr. Farzadfar and Mr. Tizabgar on an at-will basis.  The Debtors believe that they could have terminated both of the Objecting

Parties for cause under their Contracts, entitling them to no severance.  However, rather than terminating the Objecting Parties, the Debtors believed it was in the best interests of the company and the Objecting Parties to offer each of them a revised employment structure moving forward.  Under this new arrangement, each of Mr. Farzadfar and Mr. Tizabgar were informed that their base pay would remain the same, however a new reporting and incentive structure would be utilized by the Debtors, and they were both placed on performance improvement plans.

7.     As set forth in the LaFranco Declaration, the Debtors and their advisors have reviewed and analyzed the various contracts to which the Debtors are parties.  Based upon this analysis, in their reasonable business judgment, the Debtors determined that the Contracts are burdensome with potential liabilities and do not provide a material benefit to the Debtors or their estates.

**<u>REPLY</u>**

8.     The Debtors' rejection of an executory contract is governed by the "business judgment" standard, which requires a debtor to have determined that the requested rejection would benefit its estate. *See In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *Sharon Steel Corp*. v. *Nat'l Fuel Gas Distrib. Corp*., 872 F.2d 36, 39–40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *see also In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("In general, motions to reject executory contracts are evaluated under the business judgment test."); *In re HQ Glob. Holdings*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) ("Under the business judgment standard, the sole issue is whether the rejection benefits the estate.").

4926-0105-2936, v. 5

9.    In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject contracts. *See, e.g.*, *In re Fed. Mogul Glob., Inc.*, 293 B.R. at 126 ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."); *In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010) (quoting *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice."). Courts defer to a debtor's business judgment in rejecting an executory contract, and upon finding that a debtor has exercised its sound business judgment, approve the rejection under section 365(a) of the Bankruptcy Code. *See NLRB*, 465 U.S. at 523 (recognizing "business judgment" standard used to approve rejection of executory contracts).

10.    Moreover, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) allows the bankruptcy court to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235-36 (3d Cir. 2004) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.* v. *Chinery*, 330 F.3d 548, 568 (3d Cir. 2003)). Section 105(a) therefore provides additional authority for the Court to grant the relief requested in the Rejection Motion.

11.    The Objecting Parties do not assert any legitimate bases on which to deny the Rejection Motion.  As an initial matter, both of the Contracts are set to expire by their own terms on January 8, 2025.  Thus, the Objections appear to be nothing more than attempts to leverage

negotiations with respect to potential severance obligations that would unduly burden the Debtors and their estates.  Further, as set forth in the LaFranco Declaration, the Debtors and their advisors have reviewed and analyzed the various contracts to which the Debtors are parties. Based upon this analysis, in their reasonable business judgment, the Debtors determined that the incentive structures contained in the Contracts are not appropriate, would be detrimental to the Debtors' reorganization under the Plan, and do not provide a material benefit to the Debtors' or their estates.  The Debtors have agreed to retain Mr. Farzadfar and Mr. Tizabgar on an at-will basis, each retaining their original salary, with a revised incentive structure.  The Debtors believe rejecting the Contracts utilizing this revised payment structure is best for the Debtors go-forward business once the Plan becomes effective.  Absent granting the Rejection Motion as of the Rejection Date, the Debtors face potential significant liabilities to the detriment of their creditors. Accordingly, the Debtors believe that rejecting the Contracts as of the Rejection Date is in the best interests of the Debtors, their creditors, and the estates.  Doing so will allow the Debtors to avoid the accrual of unnecessary expenses with no commensurate benefits to the Debtors' estates.  Further, the Debtors determined in consultation with their advisors that any benefits provided by these Contracts do not equal or exceed the potential costs and/or obligations associated with the Contracts.  By rejecting the Contracts, the Debtors are relieving the estates of any potential burdensome liabilities and/or obligations with respect thereto. [3]

12.     The Debtors submit that they have met the Business Judgment Standard by evaluating the Contracts in consultation with their professional advisors and determining that any

---

[3]   The Debtors do not concede that the Debtors or their estates have any liabilities or obligations with respect to the Contracts or that the counterparties to the Contracts have any claims of any nature or priority against the Debtors or their estates whether arising under, in connection with, or related to the Contracts, the counterparties' employment by the Debtors or otherwise.  As set forth more fully below, the Debtors reserve and do not waive: (i) all rights, arguments and defenses with respect to any and all claims asserted by any counterparty to the Contracts and (ii) all claims and causes of action of any nature against all counterparties to the Contracts.

benefits provided by these Contracts do not equal or exceed the potential costs and/or obligations associated with the Contracts. Accordingly, the decision to reject the Contracts is a proper exercise of the Debtors' business judgment, and rejection of the Contracts therefore should be approved pursuant to section 365(a) of the Bankruptcy Code.

13. Finally, as set forth above, under the revised Proposed Order the Objecting Parties ability to file a claim in connection with the rejection of their respective employment agreement is extended until thirty (30) days after entry of the Proposed Order, thereby preventing any unintended prejudice to the Objectors.

## RESERVATION OF RIGHTS

14. Nothing in this Motion: (a) is intended or shall be deemed to an admission as to the validity of any asserted claim against the Debtors or their estates (including any claims asserted by any counterparties to the Contracts whether arising under, in connection with, or related to the Contracts, the counterparties' employment by the Debtors or otherwise); (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any party (including the counterparties to the Contracts); or (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors.

## CONCLUSION

**WHEREFORE**, for the reasons set forth in the Rejection Motion and this Reply, the Debtors respectfully request that the Court overrule the Objections and grant the relief requested by the Rejection Motion.

Dated:  January 6, 2025
         Wilmington, Delaware

CHIPMAN BROWN CICERO & COLE, LLP

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
Email:   chipman@chipmanbrown.com
         olivere@chipmanbrown.com

*Counsel for Debtors and Debtors in Possession*