**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Optio Rx, LLC, *et al.*,<br><br>              Debtors.[1] | Chapter 11<br><br>Case No. 24-11188 (TMH)<br><br>(Jointly Administered) |
| SKIN MEDICINALS LLC,<br><br>              Plaintiff,<br><br>       v.<br><br>OPTIO RX, LLC, BEN DAVID, ARUN SURESH KUMAR, and LISA BASSETT IPPOLITO,<br><br>              Defendants. | Adversary No. 24-50079 (TMH)<br><br><br><br>**Hearing Date: March 26, 2025, at 10:00 a.m. (Eastern Time)**<br>**Objection Deadline: March 7, 2025, at 4:00 p.m. (Eastern Time)** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING
SETTLEMENT AGREEMENT BETWEEN THE DEBTORS, BEN DAVID, ARUN
SURESH KUMAR, LISA BASSETT IPPOLITO AND SKIN MEDICINALS LLC**

The above-captioned debtors and debtors-in-possession (the "**Debtors**"), hereby file this

motion (the "**Motion**") for entry of an order substantially in the form attached hereto as **Exhibit**

**A** (the "**Proposed Order**") (a) approving a Settlement Agreement between Optio Rx, LLC

(including the Debtors, "**Optio**"), Ben David ("**David**"), Arun Suresh Kumar ("**Kumar**"), and

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

Lisa Bassett Ippolito ("**Ippolito**") (collectively, Optio, David, Kumar and Ippolito, the "**Optio Parties**") and Skin Medicinals LLC ("**Skin Medicinals**") substantially in the form attached to the Proposed Order as **Exhibit 1** (the "**Settlement Agreement**"),[2] and (b) granting the related relief described below. In further support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      This Motion seeks approval of a global settlement between the Optio Parties and Skin Medicinals LLC.  The proposed settlement resolves all disputes between the Parties, including, without limitation, the Adversary Proceeding, the Administrative Expense Motion, the Withdrawal Motion, the District Court Proceedings, the Proofs of Claim, as well as prepetition disputes that arose between the Debtors and Skin Medicinals (collectively, the "**Litigation**").  The Debtors believe, in their business judgment, that settling these disputes on the terms of the Settlement Agreement provides greater value to the Debtors' estates than continuing to litigate due to the inevitable costs, delay, and uncertainty associated with ongoing litigation. Accordingly, the Debtors submit that the proposed Settlement Agreement is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and the Debtors request the Court enter the Proposed Order approving the Settlement Agreement.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule

---

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Settlement Agreement.

4909-0860-2137, v. 5

9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry by this Court of a final order in connection with this Motion.

3.      The legal predicates for the relief sought herein are sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

### I.      THE BANKRUPTCY CASES.

4.      On June 7, 2024 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

5.      The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On June 21, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a creditors' committee (the "**Committee**") in these Chapter 11 Cases [Docket No. 67].[3]   No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      On September 10, 2024, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.* [Docket No. 382] (the "**Second Amended Plan**").

---

[3]      The U.S. Trustee subsequently filed an Amended Notice of Appointment of Creditors' Committee [Docket Nos. 81 and 130].

4909-0860-2137, v. 5

8.      On October 17, 2024, the Court entered the Confirmation Order as defined in the Second Amended Plan.

9.      The Debtors expect the Plan to become effective once all conditions precedent have been satisfied (the "**Effective Date**").   Specifically, the conditions precedent to the Second Amended Plan include, without limitation:

> All (i) governmental and regulatory approvals, clearances and consents necessary and legally required, if any, under applicable non-bankruptcy law and (ii) material third-party consents and approvals, if any, in each case in connection with the transactions provided for in the Plan shall have been obtained, are not subject to unfulfilled conditions, and are in full force and effect, and all applicable waiting periods have expired without any action having been taken by any competent authority that restrains, prevents or enjoins the Restructuring Transactions.

Second Amended Plan § 8.02(4).   The Debtors have been working diligently with their professionals toward satisfying this licensure and approval condition.   However, the process remains ongoing.

10.      Additional factual background regarding the Debtors' business operations, corporate and capital structures, and restructuring efforts are described in greater detail in the *Declaration of Leo LaFranco in Support of First Day Pleadings* [Docket No. 3] (the "**First Day Declaration**"), which is incorporated herein by reference.

II.      BACKGROUND SPECIFIC TO THE SETTLEMENT AGREEMENT.

11.      Optio owns and operates retail pharmacies and compounding pharmacies and has been developing a web platform to expand its business into the online space.

12.      Skin Medicinals is an online health platform that allows medical providers to write prescriptions for oral and compounded dermatology products through a web portal(s), including at www.skinmedicinals.com ("**Skin Medicinals' Web Portal**"), which are then filled through partner pharmacies and sent directly to the patient.

4909-0860-2137, v. 5

13.     Skin Medicinals, David, and Optio entered into a Standstill Agreement prior to the Petition Date (the "**Standstill Agreement**").

14.     On June 17, 2024, Skin Medicinals filed an adversary action against the Optio Parties in the Bankruptcy Court, captioned Skin Medicinals LLC v. Optio Rx, LLC, Adversary No. 24-50079-TMH, including a later request to file an Amended Complaint (the "**Amended Complaint**") asserting claims of: (1) trade secret misappropriation under the Defend Trade Secrets Act; (2) trade secret misappropriation under the Illinois Trade Secrets Act and Florida Uniform Trade Secrets Act; (3) violation of the Computer Fraud and Abuse Act ("**CFAA**"); (4) violation of the Florida Computer Abuse and Data Recovery Act ("**CADRA**"); (5) unfair competition; (6) unjust enrichment; (7) fraudulent misrepresentation; (8) breach of contract; and (9) civil conspiracy, and also filed a motion for temporary restraining order and preliminary injunction (the "**Adversary Proceeding**").  In the Adversary Proceeding Skin Medicinals also filed a motion for temporary restraining order and preliminary injunction.

15.     Skin Medicinals contended in the Adversary Proceeding that it owned certain confidential and/or trade secret information (the "**Skin Medicinals Trade Secrets**") that it alleged was misappropriated by the Optio Parties.  The Optio Parties opposed the motion for preliminary injunction and moved to dismiss certain of Skin Medicinals' claims.

16.     The Bankruptcy Court issued a bench ruling denying Skin Medicinals' Motion for Preliminary Injunction on July 12, 2024, and issued a written Order denying the preliminary injunction motion and vacating the status quo order on July 15, 2024, and issued a supplemental order clarifying the grounds on which the preliminary injunction was denied on August 13, 2024.

17.     On September 3, 2024, Skin Medicinals filed the Motion of Skin Medicinals LLC for Entry of an Order Granting an Allowed Administrative Expense pursuant to Section 503(b) of

the Bankruptcy Code [Docket No. 362] (the "**Administrative Expense Motion**") seeking an administrative expense claim for any damages awarded in the Adversary Proceeding.

18.    Also on September 3, 2024, Skin Medicinals filed a Motion to Withdraw Reference [Docket No. 364] (the "**Withdrawal Motion**") which is currently pending in C.A. No. 24-1015-MN (the "**District Court Proceedings**").

19.    Skin Medicinals filed in the Bankruptcy Court, Proof of Claim Nos. 83, 87, 89, 102, 103, 105-15, 117-21, 123-26, 128-29 and on January 7, 2025 also filed a Motion for Leave to file Amended Proofs of Claim [Docket No. 654] (collectively, including any amended proofs of claim, the "**Proofs of Claim**").

20.    The Parties are currently engaged in discovery on all claims and defenses related to the Adversary Proceeding.

21.    Optio, as reorganized debtors under the confirmed Second Amended Plan, plans to launch a portal for selling compounded products prescribed for dermatological use (the "**Dermatology Portal**"), which will be part of a website owned or operated by Optio that will sell other non-dermatology compounds and products (the "**Optio Website**").

22.    The Parties desire to resolve the Litigation between the Parties, including all claims that were asserted or could have been asserted on the terms set forth in the Settlement Agreement without admitting any liability, fault, error, omission or other ground of fault or liability.  The Reorganized Debtors consent to and will benefit from the approval of the Settlement Agreement.

**III.    THE SETTLEMENT AGREEMENT.**

23.    The global Settlement Agreement seeks to resolve all of the disputes between the Parties, which would otherwise only be resolved through lengthy, expensive, and uncertain litigation.

4909-0860-2137, v. 5

24.     Among other things, the Settlement Agreement provides the following key resolutions, as more fully described in the Settlement Agreement:

a.      As consideration for Skin Medicinals' release of all claims against the Optio Released Parties as specifically set forth in the Settlement Agreement, the Debtors shall pay (the "**Settlement Payment**") Skin Medicinals the total sum of $200,000.00 (two hundred thousand dollars) (the "**Settlement Amount**") within thirty (30) days of the Effective Date of the Settlement Agreement unless the Debtors are still in bankruptcy thirty (30) days after the Effective Date of the Settlement Agreement in which case payment shall be made within forty-five (45) days of the Effective Date of the Settlement Agreement;

b.      the Debtors and reorganized debtors will not launch the Dermatology Portal until August 30, 2025;

c.      Skin Medicinals will execute and file a Stipulation of Dismissal Without Prejudice of the Litigation, to be automatically converted to a Dismissal with Prejudice upon Skin Medicinals' receipt of the Settlement Payment;

d.      Skin Medicinals will withdraw all of its Proofs of Claim and dismiss the Administrative Expense Motion and the Withdrawal Motion without prejudice, to be automatically converted to a withdrawal with prejudice upon Skin Medicinals' receipt of the Settlement Payment;

e.      the Optio Parties and Skin Medicinals will exchange certain mutual releases and covenants not to sue as more fully described in the Settlement Agreement;

f.      the Debtors (including Affiliates and Related Persons) and Skin Medicinals (including Affiliates and Related Persons) will not, directly or indirectly, solicit or participate in the solicitation of any officer, director, or employee or any Person who was an officer, director, or employee of the other within the last six (6) months, or otherwise interfere in such employment relationship, or to cause any officer, director, or employee to terminate their employment with the other until August 30, 2025; and

g.      the Debtors and Skin Medicinals agree not to make any public statement or issue any press release concerning the settlement of the Litigation, the Settlement Agreement or its contents.

4909-0860-2137, v. 5

## RELIEF REQUESTED

25.     By this Motion, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors respectfully request the Court enter an order (a) approving the Settlement Agreement; and (b) granting related relief.

## BASIS FOR RELIEF REQUESTED

26.     Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (*en banc*).  Section 363 of the Bankruptcy Code after notice permits a debtor to use, sell or lease property of the estate other than in the ordinary course of business. *See* para 35 *infra*. (the releases contemplated to be granted by the Debtors under the Settlement Agreement may be authorized under section 363 of the Bankruptcy Code).

27.     Bankruptcy Rule 9019 governs the procedural prerequisites to approve a settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

28.     Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution

4909-0860-2137, v. 5

of bankruptcy cases. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Bankruptcy

Rule 9019 provides that on motion by the trustee and after notice and a hearing, the court may

approve a compromise or settlement. In deciding whether to approve a settlement pursuant to

Bankruptcy Rule 9019, the court should determine whether the compromise is fair, reasonable,

and in the best interest of the estates. *In re Marvel Entertainment Group, Inc.,* 222 B.R. 43, 249

(D. Del. 1998). The decision whether to accept or reject a compromise lies within the sound

discretion of the court. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

29.     In making this determination, the United States Court of Appeals for the Third

Circuit has provided four criteria that a bankruptcy court should consider: (a) the probability of

success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation

involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount

interest of the creditors. *Martin*, 91 F.3d at 393. Courts generally defer to a trustee's business

judgment when there is a legitimate business justification for the trustee's decision. *Id.* at 395.

30.     When applying the *Martin* factors to a particular motion, "the court is not supposed

to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement

falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v.

Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted);

*see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health Alternatives,

Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Although approval of a compromise is within the

"sound discretion" of the bankruptcy court (*World Health*, 344 B.R. at 296), the court should not

substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-

Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996). The ultimate inquiry is

whether the compromise is "fair, reasonable, and in the interests of the estate." *TSIC*, 393 B.R. at

78. A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted).

31. Here, an analysis of the Martin factors reflects that the Settlement Agreement is fair and equitable, falls well within the range of reasonableness, and is in the best interests of the Debtors' estates such that the Settlement Agreement should be approved by the Court. First, although the Debtors are confident in their legal and factual positions, litigation is unpredictable and expensive. There is no guarantee that litigation would prove successful. However, the Settlement Agreement will bring certainty to multiple alleged claims and asserted defenses. Such finality will allow the Debtors to resolve the ongoing trade secret litigation that has interfered with its business, provide the Debtors' their "fresh start," help preserve the Debtors' limited financial resources, and allow the Debtors to instead focus on emerging from bankruptcy.

32. The second Martin factor does not really apply in this matter; however the third factor does. Continuing to litigate the Adversary Proceeding, the Administrative Expense Motion, the Withdrawal Motion, the District Court Proceedings, and the Proofs of Claim, would be fact intensive, expensive, and would require considerable discovery. Continuing the Litigation will also distract the Debtors and interfere with their desire quickly to emerge from bankruptcy. In contrast, the Settlement Agreement provides an immediate settlement of all of the Litigation between the Parties.

33. Fourth, the "paramount interest" of creditors favors approving the Settlement Agreement. The costs associated with continuing the Litigation would be substantial given the fact-intensive nature of the claims in the Litigation. The Debtors' limited resources are better spent

4909-0860-2137, v. 5

obtaining the settlement set forth in the Settlement Agreement which will provide creditors with a more certain and timely outcome.

34.     The Debtors believe the Settlement Agreement is fair and reasonable and is in the best interests of the Debtors' estates and creditors, and that it should be approved pursuant to Bankruptcy Rule 9019 and sections 105(a) and 363 of the Bankruptcy Code.  The reorganized debtors support approval of the Settlement Agreement.  The Settlement Agreement was the product of substantial good-faith discussions and negotiations among the Parties culminating in a settlement that falls well within the range of reasonable litigation outcomes as to each of the issues encompassed by the Settlement Agreement.  The terms agreed to in the Settlement Agreement not only allow the Debtors to save time and expenses associated with the Litigation but also provide finality and certainty not only to the Litigation but also under the Second Amended Plan.  If the Parties were to continue to litigate, the Debtors would be forced to expend substantial time and resources while the ultimate outcome of such litigation (as with any litigation) would be uncertain. The Debtors believe that the Settlement Agreement is in the best interests of the Debtors' estates and should be approved.

35.     Aside from the standards under Rule 9019, a settlement of claims and causes of action and the grant of releases by a trustee constitutes a use of property of the estate. *See e.g. Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*; *see also Martin*, 91 F.3d at 95 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). Courts normally defer to the trustee's business judgment so long as

there is a legitimate business justification. *See id.*; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

36.     Here, the Debtors submit that approval under section 363(b) of the Bankruptcy Code is required. The Settlement Agreement provides for, among other terms, a mutual general release of accrued and waiver of potential claims. *See Northview Motors*, 186 F.3d at 350 (settling a claim against a third party constitutes a sale of the claim under section 363 and subject to court approval). For all the reasons set forth above, The Debtors, in an exercise of their business judgment, submit that the Settlement Agreement is fair, reasonable, and appropriate and should be approved by this Court.

## NOTICE

37.     Notice of this Motion shall be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' DIP Lender; (iii) all parties to the Settlement Agreement; (iv) counsel for the Official Committee of Unsecured Creditors; (v) counsel for Skin Medicinals; and (vi) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

38.      The Debtors have not made any prior request to this or to any other court for the relief sought herein.

4909-0860-2137, v. 5

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Respectfully submitted,

Dated:  February 21, 2025
           Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Mark D. Olivere*

William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Alison R. Maser (No. 7430)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email:  chipman@chipmanbrown.com
            olivere@chipmanbrown.com
            maser@chipmanbrown.com

*Counsel for the Debtors and*
*Debtors-in-Possession*

4909-0860-2137, v. 5