# <u>EXHIBIT A</u>

## (*Proposed* Order)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, *et al.*, | Case No. 24-11188 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Related Docket No. 736** |
| SKIN MEDICINALS LLC, | |
| Plaintiff, | Adversary No. 24-50079 (TMH) |
| v. | |
| OPTIO RX, LLC, BEN DAVID, ARUN SURESH KUMAR, and LISA BASSETT IPPOLITO, | **Related Adv. Docket No. 196** |
| Defendants. | |

**ORDER APPROVING THE SETTLEMENT AGREEMENT**
**BETWEEN THE DEBTORS, BEN DAVID, ARUN SURESH KUMAR,**
**LISA BASSETT IPPOLITO AND SKIN MEDICINALS LLC**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-

possession (the "**Debtors**") for entry of an order (this "**Order**") pursuant to section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019 approving the settlement agreement between the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

Debtors, Ben David, Arun Suresh Kumar, Lisa Bassett Ippolito and Skin Medicinals LLC attached

hereto as **Exhibit 1** (the "**Settlement Agreement**"), all as more fully set forth in the Motion; and

this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware dated February 29, 2012; and this Court having found that this is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this case and this

proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having

found that the relief requested in the Motion is in the best interests of the Debtors' estates, their

creditors, and other parties in interest; and this Court having found that the Debtors' notice of the

Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and

no other notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court if needed (the

"**Hearing**"); and this Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor,

    **IT IS HEREBY ORDERED THAT:**

    1.    The Motion is **GRANTED** as set forth herein. Any objections or reservations of

rights filed in respect of the Motion are overruled with prejudice.

    2.    The Settlement Agreement is **APPROVED** in its entirety.

    3.    The Parties are authorized and empowered to take all actions necessary to

implement the relief granted in this Order in accordance with the Motion.

4933-9508-6630, v. 1

4.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 1**

**Settlement Agreement**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is entered into by and between Skin Medicinals LLC ("Skin Medicinals") and Optio Rx, LLC (including the Debtors as defined below, "Optio"), Ben David ("David"), Arun Suresh Kumar ("Kumar"), and Lisa Bassett Ippolito ("Ippolito") (collectively, "Optio Parties"). Each party to this Agreement may be referred to herein as a "Party" or, collectively, as the "Parties."

## RECITALS

**WHEREAS,** on June 7, 2024 (the "Petition Date"), Optio Rx, LLC, and certain of its affiliates (collectively, the "Debtors[1]") commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS,** Skin Medicinals is an online health platform that allows medical providers to write prescriptions for oral and compounded dermatology products through a web portal(s), including at www.skinmedicinals.com ("Skin Medicinals' Web Portal"), which are then filled through partner pharmacies and sent directly to the patient;

**WHEREAS,** Optio owns and operates retail pharmacies and compounding pharmacies and has been developing a web platform to expand its business into the online space;

**WHEREAS,** one or more of the Optio Parties allegedly accessed Skin Medicinals' Web Portal, including the public-facing portion and a password protected portion ("Optio Parties' Access") in 2024;

**WHEREAS,** Skin Medicinals, David, and Optio previously entered into a Standstill Agreement (the "Standstill Agreement");

**WHEREAS,** on June 17, 2024, Skin Medicinals filed an adversary action against the Optio Parties in the Bankruptcy Court, captioned *Skin Medicinals LLC v. Optio Rx, LLC*, Adversary No. 24-50079-TMH, asserting claims of: (1) trade secret misappropriation under the Defend Trade Secrets Act; (2) trade secret misappropriation under the Illinois Trade Secrets Act and Florida Uniform Trade Secrets Act; (3) violation of the Computer Fraud and Abuse Act ("CFAA"); (4) violation of the Florida Computer Abuse and Data Recovery Act ("CADRA"); (5) unfair competition; (6) unjust enrichment; (7) fraudulent misrepresentation; (8) breach of contract; and (9) civil conspiracy, and also filed a motion for temporary restraining order and preliminary injunction (the "Adversary Proceeding");

---

[1] The Debtors are as follows: (1) Optio Rx, LLC; (2) Braun Pharma, LLC; (3) Dr. Ike's PharmaCare LLC; (4) Rose Pharmacy SA LLC; (5) Rose Pharmacy SF LLC; (6) Rose Pharmacy RM LLC; (7) Pet Apothecary LLC; (8) Crestview Holdings, LLC; (9) SBH Medical LLC; (10) H&H Pharmacy LLC; (11) Enovex Pharmacy LLC; (12) SMC Pharmacy LLC; (13) SMC Lyons Holdings LLC; (14) Baybridge Pharmacy, LLC; (15) Central Pharmacy, LLC; (16) Pro Pharmacy, LLC; (17) Healthy Choice Compounding LLC; (18) Healthy Choice Compounding LLC; (19) Oakdell Compounding Pharmacy LLC; (20) The Pet Apothecary LLC; (21) Crestview Pharmacy, LLC; (22) SBH Medical, Ltd.; (23) Concierge Pharmacy LLC; (24) Firstcare Pharmacy LLC; (25) Easycare Pharmacy LLC; (26) Primecare Pharmacy LLC; and (27) HCP Pharmacy LLC.

**WHEREAS,** Skin Medicinals contended in the Adversary Proceeding that it owned certain confidential and/or trade secret information (the "Skin Medicinals Trade Secrets") that it alleged was misappropriated by the Optio Parties;

**WHEREAS**, the Optio Parties opposed the motion for preliminary injunction and moved to dismiss certain of Skin Medicinals' claims;

**WHEREAS**, the Bankruptcy Court issued a bench ruling denying Skin Medicinals' Motion for Preliminary Injunction on July 12, 2024, issued a written Order denying the PI motion and vacating the status quo order on July 15, 2024, and issued a supplemental order clarifying the PI was also denied on August 13, 2024;

**WHEREAS,** on September 3, 2024, Skin Medicinals filed the Motion of Skin Medicinals LLC for Entry of an Order Granting an Allowed Administrative Expense pursuant to Section 503(b) of the Bankruptcy Code [Docket No. 362] (the "Administrative Expense Motion") seeking an administrative expense claim for any damages awarded in the Adversary Proceeding;

**WHEREAS,** on September 3, 2024, Skin Medicinals filed a Motion to Withdraw Reference [Docket No. 364] (the "Withdrawal Motion") which is currently pending in C.A. No. 24-1015-MN (the "District Court Proceedings");

**WHEREAS**, Skin Medicinals filed in the Bankruptcy Court Proof of Claim Nos. 83, 87, 89, 102, 103, 105-15, 117-21, 123-26, 128-29 and on January 7, 2025 also filed a Motion for Leave to file Amended Proofs of Claim [Docket No. 654] (collectively, including any amended proofs of claim, the "Proofs of Claim");

**WHEREAS,** on December 24, 2024, Skin Medicinals sought leave to file an Amended Complaint (the "Amended Complaint") in the Adversary Proceeding to assert a claim for breach of the Standstill Agreement;

**WHEREAS**, the Parties are currently engaged in discovery on all claims and defenses;

**WHEREAS,** Optio plans to launch a portal for selling compounded products prescribed for dermatological use (the "Dermatology Portal"), which will be part of a website owned or operated by Optio that will sell other non-dermatology compounds and products (the "Optio Website");

**WHEREAS**, the Parties desire to resolve all claims that were asserted or could have been asserted on the terms set forth herein without admitting any liability, fault, error, omission or other ground of fault or liability;

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

2

## SETTLEMENT TERMS

1.   **Definitions**.   Except as otherwise defined in this Agreement and Recitals, capitalized terms used in this Agreement shall have the respective meanings set forth in this Section 1.

(a) "**Affiliate**" means, as to any Person, any other Person that, directly or indirectly through one or more intermediaries, is in control of, is controlled by, or is under common control with, such Person.

(b) "**Execution Date**" means the date on which the last Party executes this Agreement.

(c) "**Litigation**" means the Adversary Proceeding, including all claims that were or could have been asserted in the Complaint or Amended Complaint, the District Court Proceedings, the Administrative Expense Motion, the Proofs of Claim and any and all proceedings related to or arising out of any of the foregoing.

(d) "**Optio Released Claims**" means, collectively, any and all charges, complaints, claims, duties, liabilities, obligations, promises, agreements, covenants, controversies, judgments, executions, injunctive relief, contracts, agreements, promises, claims, demands, forms of damages (including consequential, incidental, actual, special, punitive and exemplary damages), proceedings, actions, causes of action, suits, rights, demands, costs, losses, debts and sums of money and expenses (including attorneys' fees and costs) and liabilities, in each case of any kind or nature whatsoever, in both law and equity, past, present and future, known or unknown, suspected or unsuspected, absolute or contingent, direct or indirect, anticipated and unanticipated, fixed and contingent, accrued and unaccrued that Optio or any of its Related Persons had, has or may have, or that may develop (including nominally or beneficially) against any of the Skin Medicinals Released Parties, whether or not apparent or yet to be discovered, for any and all acts or omissions arising from any of the Litigation, the Standstill Agreement, the Dermatology Portal, the Optio Website, the Skin Medicinals Trade Secrets, the Optio Parties' Access, or otherwise. Optio specifically intends this release to be the broadest possible release permitted under law and this release shall be expanded at any and all times of interpretation to include all legally permissible provisions not otherwise contained herein. This Agreement does not release the Skin Medicinals Released Parties from any liability for acts committed after the Execution Date. This Agreement releases the Skin Medicinals Released Parties from all liability stemming from any and all acts committed prior to the Execution Date, regardless of whether claims related to such acts accrue before or after the Execution Date.

(e) "**Optio Released Parties**" means, collectively: (a) Optio and each of its past, present and future direct and indirect parent companies, Subsidiaries and other Affiliates; (b) Ben David; (c) Arun Suresh Kumar; (d) Lisa Ippolito; (e) the Debtors and Reorganized Debtors; (f) MC Credit Partners LP and each senior secured and other lender to Optio; (g) each of the past, present and future officers, directors, shareholders, members, managers, partners, employees, agents, attorneys, accountants, contractors, subcontractors, consultants, investors, affiliated funds and related entities, of the Persons described in clauses (a), (e) and (f) above; and (h) each of the successors and assigns of each of the Persons described in clauses (a), (b), (c), (d), (e), (f) and (g) above; (i) and, each of the foregoing, individually, is an "**Optio Released Party**".

3

(f) "**Person**" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, governmental authority or other entity.

(g) "**Plan**" means that certain *Second Amended Joint Chapter 11 Plan of Reorganization of Optio Rx, LLC, et al.*, [Docket No. 480] confirmed by the Bankruptcy Court on October 14, 2024.

(h) "**Related Persons**" means, as to any Person, collectively, all past, present and future Affiliates (including direct and indirect parent companies and Subsidiaries), agents, attorneys, administrators, heirs, executors, spouses, trustees, beneficiaries, representatives, successors and assigns and each of the past, present and future officers, directors, shareholders, members, managers, partners, employees, agents attorneys, and accountants of such Person; and, each of them, individually, is a "**Related Person**". For the sake of clarity, Related Persons include successors and assigns of this Agreement. With respect to Optio, Related Persons include Debtors, Reorganized Debtors, David, Kumar, and Ippolito. With respect to Skin Medicinals, Related Persons includes Apotheco Pharmacy Group and its Affiliates and Subsidiaries.

(i) "**Reorganized Debtors**" means, collectively, the Debtors, and any successors thereto, by merger, consolidation or otherwise, as reorganized pursuant to and under the Plan, on or after the Effective Date (as defined in the Plan).

(j) "**Skin Medicinals Released Claims**" means, collectively, any and all charges, complaints, claims, duties, liabilities, obligations, promises, agreements, covenants, controversies, judgments, executions, injunctive relief, contracts, agreements, promises, claims, demands, forms of damages (including consequential, incidental, actual, special, punitive and exemplary damages), proceedings, actions, causes of action, suits, rights, demands, costs, losses, debts and sums of money and expenses (including attorneys' fees and costs) and liabilities, in each case of any kind or nature whatsoever, in both law and equity, past, present and future, known or unknown, suspected or unsuspected, absolute or contingent, direct or indirect, anticipated and unanticipated, fixed and contingent, accrued and unaccrued that Skin Medicinals or any of its Related Persons had, has or may have, or that may develop (including nominally or beneficially) against any of the Optio Released Parties, whether or not apparent or yet to be discovered, for any and all acts or omissions arising from any of the Litigation, the Standstill Agreement, the Dermatology Portal, the Optio Website, the Skin Medicinals Trade Secrets, the Optio Parties' Access, or otherwise. Skin Medicinals specifically intends this release to be the broadest possible release permitted under law and this release shall be expanded at any and all times of interpretation to include all legally permissible provisions not otherwise contained herein. This Agreement does not release the Optio Released Parties from any liability for acts committed after the Execution Date. This Agreement releases the Optio Released Parties from all liability stemming from any and all acts committed prior to the Execution Date, regardless of whether claims related to such acts accrue before or after the Execution Date.

(k) "**Skin Medicinals Released Parties**" means, collectively: (a) Skin Medicinals and each of its past, present and future direct and indirect parent companies, Subsidiaries and other Affiliates; (b) Waud Capital Partners LLC, Apotheco, LLC d/b/a Apotheco Pharmacy Group, and Near the Box LLC; (c) each of the past, present and future officers, directors, shareholders, members, managers, partners, employees, agents, attorneys, accountants, contractors, subcontractors, consultants, investors, affiliated funds and related entities of the Persons described in <u>clause (a) and (b)</u> above; and (d) each of the successors and assigns of each of the Persons

4

described in <u>clauses (a), (b) and (c)</u> above; and, each of the foregoing, individually, is a "**Skin Medicinals Released Party**".

(l)   "**Subsidiary**" as to any Person, means any corporation, partnership, limited liability company, joint venture, trust or estate of or in which more than 50% of: (a) the issued and outstanding capital stock having ordinary voting power to elect a majority of the board of directors of such corporation (irrespective of whether at the time capital stock of any other class of such corporation may have voting power upon the happening of a contingency); (b) the interest in the capital or profits of such partnership, limited liability company, or joint venture; or (c) the beneficial interest in such trust or estate is at the time directly or indirectly owned or controlled through one or more intermediaries, or both, by such Person.

2.    **Effective Date**.  This Agreement shall become effective on the date on which the Bankruptcy Court enters a final, non-appealable order that is not subject to any stay (the "Order") approving this Agreement (the "Effective Date").  The Parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Debtors will prepare a motion to approve entry into this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion"). The Debtors shall promptly file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.  Within five (5) days of the Execution Date, the Parties shall jointly seek a stay of the Adversary Proceeding and the District Court Proceedings while they seek approval of this Agreement from the Bankruptcy Court. The Parties further agree that they will abide by the terms of this Agreement beginning on the Execution Date; provided, however, that either party may terminate this Agreement if they do not receive an Order approving this Agreement from the Bankruptcy Court.

3.    **Settlement Payment**.  As consideration for Skin Medicinals' release of all claims against the Optio Released Parties as specifically set forth in this Agreement and all other acknowledgments, representations, and agreements made by the Parties in this Agreement, Optio shall pay Skin Medicinals the total sum of $200,000.00 (two hundred thousand dollars) (the "Settlement Payment") within thirty (30) days of the Effective Date unless the Debtors are still in bankruptcy thirty (30) days after the Effective Date in which case payment shall be made within forty-five (45) days of the Effective Date.  The Settlement Payment shall be paid by way of wire transfer using the instructions attached hereto as **Exhibit A**.

4.    **Optio's Dermatology Portal**.  Optio shall not launch the Dermatology Portal until August 30, 2025.  Notwithstanding the foregoing, this provision shall not prohibit Optio from (i) launching the Optio Website or a website or portal for sale of any other compounds or products— including but not limited to weight management, sexual wellness, peptide therapy (for non-dermatology purposes) and hormone therapy; (ii) continuing its present sale of dermatology compounds out of its brick and mortar locations (including by any means currently used, such as including, without limitation, phone, facsimile or e-mail); or (iii) continuing work internally or through contractors on the Dermatology Portal; or (iv) in any way operating its current or future business other than with respect to the Dermatology Portal.  With regard to (i), peptide therapy will not be marketed or promoted to dermatologists, customers, or potential consumers for

5

its dermatological benefits, but this shall not prohibit Optio from communicating clinical indications to prescribers or patients in the ordinary course. With regard to (iii), Optio's permitted internal work on the Dermatology Portal does not include beta testing (i.e. testing with doctors or individuals who are not employees or contractors of Optio), which is expressly prohibited.

5. **Dismissal of the Litigation**. Within five (5) business days after the Effective Date, Skin Medicinals shall execute and file a Stipulation of Dismissal Without Prejudice of the Litigation, to be automatically converted to a Dismissal With Prejudice upon Skin Medicinals' receipt of the Settlement Payment. With respect to the Adversary Proceeding and the District Court Proceedings, dismissal shall be in the form attached hereto as **Exhibit B.** Within five (5) business days after the Effective Date, Skin Medicinals shall withdraw all of its Proofs of Claim and dismiss the Administrative Expense Motion and the Withdrawal Motion without prejudice, to be automatically converted to a withdrawal with prejudice upon Skin Medicinals' receipt of the Settlement Payment. For the avoidance of doubt, contingent on the receipt of the Settlement Payment, the Parties shall take all actions, including the filing of all necessary documents, as are necessary to ensure that the Litigation is dismissed in its entirety as to all defendants named therein, with prejudice and without costs or fees.

6. **Release by Skin Medicinals**. As of the Effective Date, Skin Medicinals, on behalf of itself and each of its Related Persons, hereby irrevocably and unconditionally releases, acquits and forever discharges the Optio Released Parties and each of them individually, from all the Skin Medicinals Released Claims.

7. **Release by Optio.** As of the Effective Date, Optio, on behalf of itself and each of its Related Persons, hereby irrevocably and unconditionally releases, acquits and forever discharges the Skin Medicinals Released Parties and each of them individually, from all the Optio Released Claims.

8. **Covenants Not to Sue**.

(a) Skin Medicinals will, and will cause its Related Persons to, forever refrain and forbear from commencing, instituting or prosecuting or causing or permitting any complaint, charge, lawsuit, action, challenge or other proceeding of any kind against any of the Optio Released Parties based on, arising out of, or in connection with the Skin Medicinals Released Claims.

(b) Optio will, and will cause its Related Persons to, forever refrain and forbear from commencing, instituting or prosecuting or causing or permitting any complaint, charge, lawsuit, action, challenge or other proceeding of any kind against any of the Skin Medicinals Released Parties based on, arising out of, or in connection with the Optio Released Claims.

(c) Nothing in this Paragraph 8 shall prevent the Parties from enforcing the terms of this Agreement.

9. **Non-Solicitation**.

(a) Until August 30, 2025, Skin Medicinals (including Affiliates and Related Persons) shall not, directly or indirectly, solicit or participate in the solicitation of any current

6

Optio officer, director, or employee or any Person who was an officer, director, or employee of Optio within the last six (6) months, or otherwise interfere in such employment relationship, or to cause any officer, director, or employee to terminate their employment with Optio.

(b) Until August 30, 2025, Optio (including Affiliates and Related Persons) shall not, directly or indirectly, solicit or participate in the solicitation of any current Skin Medicinals officer, director, or employee or any Person who was an officer, director, or employee of Skin Medicinals within the last six (6) months, or otherwise interfere in such employment relationship, or to cause any officer, director, or employee to terminate their employment with Skin Medicinals.

10.    **No Admission of Liability**. This Agreement is entered into solely for the purpose of avoiding the expense, risk, and inconvenience of, and the disruption caused by the Litigation. Nothing contained herein shall be construed as an admission of a Party of liability or of the validity of any claim, and neither this Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings in connection with it, shall be construed as or deemed in any judicial, non-judicial, arbitration or other proceeding, to be evidence of, or a presumption, concession, or admission by any Party of, the truth of any fact alleged or the validity of any claim that has been, could have been, or in the future might be asserted against any of them, or of any liability, fault, wrongdoing or otherwise by any of them.  Skin Medicinals, on the one hand, and the Optio Parties, on the other hand, each specifically disclaims and denies: (a) any liability to the other; and (b) engaging in any wrongful, tortious, or unlawful activity.

11.    **No Outstanding or Known Future Claims/Causes of Action**.

(a) Skin Medicinals hereby represents and warrants to the Optio Parties that: (i) neither it nor any of its Affiliates or Related Persons nor anyone acting on their respective behalf's has filed with any governmental agency or court any type of action, report, complaint, charge, lawsuit, investigation or other proceeding against any Optio Released Party other than the Litigation; and (ii) it currently knows of no existing act or omission by any Optio Released Party that may constitute a claim or liability that is excluded from the release in Paragraph 6 above.

(b) The Optio Parties hereby represent and warrant to Skin Medicinals that: (i) neither they nor any of their Affiliates or Related Persons nor anyone acting on their respective behalf's has filed with any governmental agency or court any type of action, report, complaint, charge, lawsuit, investigation or other proceeding against any Skin Medicinals Released Party; and (ii) it currently knows of no existing act or omission by any Skin Medicinals Released Party that may constitute a claim or liability that is excluded from the release in Paragraph 7 above.

12.    **Acknowledgement of Settlement**.

(a) Skin Medicinals hereby acknowledges that: (i) the consideration described in this Agreement is in full settlement of all claims or losses of whatsoever kind or character that it and its Related Persons have, or may ever have had, against the Optio Released Parties, as described in Paragraph 6 above; and (ii) by signing this Agreement, and accepting the consideration described herein and the benefits of it, Skin Medicinals (for itself and on behalf of its Related Persons) is giving up forever any right to seek further monetary or other relief from any Optio Released Party for any acts or omissions from the beginning of time up to and including the date of this Agreement, as set forth in Paragraph 6 above.

7

(b) Optio hereby acknowledges that: (i) the consideration described in this Agreement is in full settlement of all claims or losses of whatsoever kind or character that it and its Related Persons have, or may ever have had, against the Skin Medicinals Released Parties, as described in Paragraph 7 above; and (ii) by signing this Agreement, and accepting the consideration described herein and the benefits of it, Optio (for itself and on behalf of its Related Persons) is giving up forever any right to seek further monetary or other relief from any Skin Medicinals Released Party for any acts or omissions from the beginning of time up to and including the date of this Agreement, as set forth in Paragraph 7 above.

13.    **Confidentiality.** This Agreement and its terms and contents is and at all times hereafter shall remain CONFIDENTIAL and shall not be disclosed by any Party to any third party whatsoever, except the Parties' counsel, accountants, financial advisors, auditors, tax professionals retained by them, any federal, state, or local governmental taxing or regulatory authority, and the Parties' management, officers, lenders, and Board of Directors (or similar governing body) and except as necessary in any potential sale or acquisition, legal proceeding (subject to reasonable efforts to maintain the Agreement and its terms and contents under seal) or as required by law or order of court.  Any Person (including all Related Persons) identified in the preceding sentence to whom information concerning this Agreement is disclosed is bound by this confidentiality provision and the disclosing party shall be liable for any breaches of confidentiality by Persons to whom it has disclosed information about this Agreement in accordance with this Paragraph 13. Notwithstanding the foregoing, nothing contained in this Paragraph 13 shall prevent any Party from stating that the Parties have "reached a settlement" or "amicably resolved all differences," provided, however, that in so doing, the Parties shall not disclose any other terms of this Agreement or the settlement described herein.  Skin Medicinals further agrees that it will maintain any information received from any current or former officer, director, employee or investor of Optio as confidential and will not make use of it for any reason whatsoever.  The Optio Parties further agree to use their best efforts to destroy all documents, screenshots, any writings or memoranda of any kind describing such documents and screenshots, and all copies of such materials within ten (10) business days of the Execution Date, and to confirm timely destruction in writing to counsel for Skin Medicinals. Any confidential information exchanged between the Parties during the Litigation will be treated in accordance with the Protective Order entered by the Bankruptcy Court.

14.    **No Press Releases.**  No Party shall make any public statement or issue any press release concerning the settlement of the Litigation, this Agreement or its contents.

15.    **Legally Binding Agreement**.  The Parties intend that this Agreement be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs, and estates.

16.    **New or Different Facts**.  Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which any Party now knows or believes to be true.

(a)  Skin Medicinals, for itself and each of its Related Persons, hereby expressly waives any rights it has or may have under applicable law to preserve any Skin Medicinals

8

Released Claims which it does not know or suspect to exist in its favor at the time of executing this Agreement. Skin Medicinals understands and acknowledges that it or its Related Persons may discover facts different from, or in addition to, those which it knows or believes to be true with respect to the claims released herein, and agrees that the release provided in Paragraph 6 above shall be and remain effective in all respects notwithstanding any subsequent discovery of different or additional facts. If Skin Medicinals or any of its Related Persons discovers that any fact relied upon in entering into this Agreement was untrue, or that any fact was concealed, or that an understanding of the facts or law was incorrect, neither Skin Medicinals nor any of its Related Persons shall be entitled to any relief as a result thereof, and Skin Medicinals, for itself and each of its Related Persons, hereby surrenders any rights it might have to rescind the release provided in Paragraph 6 above on any ground.

(b) The Optio Parties, for themselves and each of their Related Persons, hereby expressly waives any rights it has or may have under applicable law to preserve any Optio Released Claims which it does not know or suspect to exist in its favor at the time of executing this Agreement. Optio understands and acknowledges that it or its Related Persons may discover facts different from, or in addition to, those which it knows or believes to be true with respect to the claims released herein, and agrees that the release provided in Paragraph 7 above shall be and remain effective in all respects notwithstanding any subsequent discovery of different or additional facts. If Optio or any of its Related Persons discovers that any fact relied upon in entering into this Agreement was untrue, or that any fact was concealed, or that an understanding of the facts or law was incorrect, neither Optio nor any of its Related Persons shall be entitled to any relief as a result thereof, and the Optio Parties, for themselves and each of their Related Persons, hereby surrenders any rights it might have to rescind the release provided in Paragraph 7 above on any ground.

(c) Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

17.    **Interpretation**.   Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed stricken from this Agreement.   The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation.   This Agreement shall not be construed against any Party as the author or drafter of the Agreement.

18.    **Governing Law and Choice of Forum**.   This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Delaware without giving effect to the provisions, policies, or principles thereof relating to choice of law or conflict of laws.   Each of the Parties hereby consents to the jurisdiction of the state and federal courts in the State of Delaware and agrees that it is the sole and exclusive forum for the resolution of any dispute relating to or arising out of this Agreement.   The Parties each (a) consent to service of process in any action between or among them arising in whole or in part under or in connection with this Agreement in any manner permitted by Delaware law, (b) agree that service of process made on any Party by U.S. mail return receipt requested or hand delivery, at the addresses set forth in Paragraph 21, shall constitute good and valid service of process in any such action upon receipt only, and (c) waive and agree not to assert (by way of motion, as a defense, or otherwise) in any such action any claim

9

that service of process made in accordance with clause (a) or (b) does not constitute good and valid service of process.

19.    **Waiver of Jury Trial.**  Each Party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each Party irrevocably and unconditionally waives any right which such Party may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement.

20.    **Representations and Warranties**.

(a)  Skin Medicinals hereby represents, warrants and acknowledges that: (i) the duly authorized representative of Skin Medicinals executing this Agreement at the place indicated below has read this Agreement; (ii) Skin Medicinals has sought the advice of counsel prior to executing this Agreement; (iii) counsel has fully explained each and every provision of this Agreement to such duly authorized representative of Skin Medicinals; (iv) such duly authorized representative of Skin Medicinals fully understands each and every provision of this Agreement; (v) Skin Medicinals has not relied upon representations or statements made by the Optio Parties or any of their agents, representatives, or attorneys with regard to the subject matter, basis or effect of this Agreement; (vi) Skin Medicinals has voluntarily executed this Agreement; (vii) Skin Medicinals has full power and authority to execute and deliver this Agreement and to release the Skin Medicinals Released Claims, including to release the Skin Medicinals Released Claims on behalf of Apotheco Pharmacy Group and its Subsidiaries and Affiliates; and (viii) Skin Medicinals has not assigned any of the Skin Medicinals Released Claims to any other Person.

(b) The Optio Parties hereby represent, warrant and acknowledge that: (i) the duly authorized representative of each of the Optio Parties executing this Agreement at the place indicated below has read this Agreement; (ii) the Optio Parties have sought the advice of counsel prior to executing this Agreement; (iii) counsel has fully explained each and every provision of this Agreement to such duly authorized representative of the Optio Parties; (iv) such duly authorized representative of the Optio Parties fully understands each and every provision of this Agreement; (v) the Optio Parties have not relied upon representations or statements made by Skin Medicinals or any of Skin Medicinals' agents, representatives, or attorneys with regard to the subject matter, basis or effect of this Agreement; (vi) the Optio Parties have voluntarily executed this Agreement; (vii) the Optio Parties have full power and authority to execute and deliver this Agreement and to release the Optio Released Claims; and (viii) the Optio Parties have not assigned any of the Optio Released Claims to any other Person.

21.    **Notices**.  All notices and other communications pursuant to this Agreement shall be in writing and shall be deemed given if (a) delivered personally, (b) sent by reputable commercial overnight delivery service (including Federal Express and U.S. Postal Service overnight delivery service), or (c) mailed by first class, registered or certified mail (return receipt requested), with postage prepaid, with a copy of such notice and communication delivered by electronic mail, as set forth below:

**Skin Medicinals**:
Natasha Hennessy, CEO
Elizabeth Haley, General Counsel & Chief Compliance Officer
788 Morris Turnpike
Short Hills, NJ  07078
natasha.hennessy@apothecopharmacy.com
elizabeth.haley@apothecopharmacy.com

With Copy to:

Howard Kaplan
Kaplan & Grady
2071 N. Southport Ave., Suite 205
Chicago, IL 60614
howard@kaplangrady.com

**The Optio Parties:**
Ben David, CEO
Leo LaFranco, CFO
3701 Commercial Ave, Suite 14
Northbrook, IL 60062
bdavid@optiorx.com
llafranco@optiorx.com

With Copy to:

Kelly Farnan
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
farnan@rlf.com


22.   **Entire Agreement**.   This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof.   No modification of this Agreement shall be binding unless in writing and signed by each of the Parties. This Agreement, together with any exhibits attached hereto, supersedes all other prior oral or written agreement among the Parties solely with respect to the subject matter hereof, and this Agreement constitutes the entire agreement and understanding of the Parties solely with respect to the subject matter hereof.   The Parties acknowledge and agree that no other Party, or any other person on behalf of any other Party, has made any promise, representation, warranty, covenant, or undertaking whatsoever, express or implied, not contained in this Agreement concerning the subject matter hereof, to induce any other Party to enter into this Agreement or otherwise, and the Parties acknowledge that they have not executed this Agreement in reliance upon any such promise,

11

representation, warranty, covenant, or undertaking not expressly contained herein.  No Party has granted any waiver or release except as, and to the extent, expressly set forth in this Agreement.  No modification of this Agreement shall be binding unless in writing and signed by each of the Parties.

23.    **Counterparts**.  This Agreement may be executed in one or more counterparts by some or all of the Parties and (i) each such counterpart shall be considered an original, and all of which together shall constitute a single Agreement; (ii) the exchange or executed copies of this Agreement by facsimile or Portable Document Format (PDF) transmission shall constitute effective execution and delivery of this Agreement as to the Parties for all purposes; and (iii) signatures of the Parties transmitted by facsimile or PDF shall be deemed to be their original signatures for all purposes.

24.    **Further Action**.  The Parties agree to execute such further instruments and to take such further action as may be necessary and/or reasonably required to carry out the intent of this Agreement or to comply with its terms.

25.    **Signatures**.  By the signatures below, the Parties to this Agreement acknowledge that they fully understand and accept the terms contained in this Agreement, and represent and agree that their signatures are freely, voluntarily, and knowingly given and that each has had the opportunity to consult with counsel prior to signing this Agreement.  By signing below, each Party warrants and represents that the persons signing this Agreement on its behalf has authority to bind that Party and that its execution of this Agreement is not in violation of any by-law, covenants, and/or restrictions placed upon it.

26.    **Adequate Consideration**.    The Parties hereby acknowledge and agree that adequate consideration has been provided to each of them for their obligations under this Agreement.

27.    **Attorneys' Fees/Costs**.  The Parties acknowledge that they are solely responsible for their own attorneys' and expert fees and costs incurred in connection with the Litigation, the drafting this Agreement, and any action to enforce this Agreement.  No Party will seek any award of attorneys' or experts' fees or costs from any other Party.

*[Signature Page Follows]*

12

IN WITNESS WHEREOF, the Parties have signed this Agreement on the date indicated below.

**SKIN MEDICINALS LLC**

By: _____

Name:

Title:

Date:

**OPTIO RX, LLC**

By: _____ , CEO

Name: Ben David

Title: CEO

Date: 2.18.25

**BEN DAVID**

By: _____

Name: Ben David

Date: 2.18.25

**ARUN SURESH KUMAR**

By: _____

Name: Arun Suresh Kumar

Date: 02|18|25

**LISA BASSETT IPPOLITO**

By: _____

Name: Lisa Bassett Ippolito

Date:

13

IN WITNESS WHEREOF, the Parties have signed this Agreement on the date indicated below.

**SKIN MEDICINALS LLC**

By: _____

Name:

Title:

Date:

**OPTIO RX, LLC**

By: _____

Name:

Title:

Date:

**BEN DAVID**

By: _____

Name: Ben David

Date:

**ARUN SURESH KUMAR**

By: _____

Name: Arun Suresh Kumar

Date:

**LISA BASSETT IPPOLITO**

By: _Lisa Jarnett Ippolito_

Name: Lisa Bassett Ippolito

Date: 2/18/25

13

IN WITNESS WHEREOF, the Parties have signed this Agreement on the date indicated below.

**SKIN MEDICINALS LLC**

By: _____

Name:    Natasha Hennessy

Title:    CEO

Date:    02/19/2025

**OPTIO RX, LLC**

By: _____

Name:

Title:

Date:

**BEN DAVID**

By: _____

Name: Ben David

Date:

**ARUN SURESH KUMAR**

By: _____

Name: Arun Suresh Kumar

Date:

**LISA BASSETT IPPOLITO**

By: _____

Name: Lisa Bassett Ippolito

Date:

13

## **EXHIBIT A**

**[Wiring Instructions]**

[TO BE PROVIDED]

## EXHIBIT B

**[Stipulation of Dismissal]**

15

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Optio Rx, LLC, et al., | Case No. 24-11188-TMH |
| Debtors[1]. | (Jointly Administered) |
| SKIN MEDICINALS LLC, | |
| Plaintiff, | |
| v. | Adversary No. 24-50079-TMH |
| OPTIO RX, LLC, BEN DAVID, ARUN SURESH KUMAR, and LISA BASSETT IPPOLITO, | |
| Defendant. | |

## <u>STIPULATION OF DISMISSAL</u>

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and Federal Rule of

Bankruptcy Procedure 7041, Plaintiff Skin Medicinals LLC and Defendants Optio Rx, LLC, Ben

David, Arun Suresh Kumar, and Lisa Bassett Ippolito hereby stipulate and agree that all claims

are dismissed.  The stipulation is without prejudice as of the date of filing but shall automatically

convert to a dismissal with prejudice on the date that Optio Rx, LLC complies with its obligations

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows:  (1) Optio Rx, LLC (8436); (2) Braun Pharma, LLC (6643); (3) Dr. Ike's PharmaCare LLC (2237); (4) Rose Pharmacy SA LLC (5738); (5) Rose Pharmacy SF LLC (1438); (6) Rose Pharmacy RM LLC (4205); (7) Pet Apothecary LLC (4315); (8) Crestview Holdings, LLC (1907); (9) SBH Medical, LLC (3260); (10) H&H Pharmacy LLC (6793); (11) Enovex Pharmacy LLC (0693); (12) SMC Pharmacy LLC (5428); (13) SMC Lyons Holdings LLC (5441); (14) Baybridge Pharmacy, LLC (5518); (15) Central Pharmacy, LLC (6195); (16) Pro Pharmacy, LLC (6299); (17) Healthy Choice Compounding LLC (8770); (18) Healthy Choice Compounding LLC (1745); (19) Oakdell Compounding Pharmacy LLC (7537); (20) The Pet Apothecary, LLC (6074); (21) Crestview Pharmacy, LLC (8091); (22) SBH Medical, Ltd. (3230); (23) Concierge Pharmacy LLC (5410); (24) Firstcare Pharmacy, LLC (1203); (25) Easycare Pharmacy LLC (9408); (26) Primecare Pharmacy LLC (7645); and (27) HCP Pharmacy LLC (5216). The address of the Debtors' corporate headquarters is 3701 Commercial Avenue, Suite 14, Northbrook, Illinois 60062.

in Paragraph 2 of the Settlement Agreement and Mutual Release.  Each party shall bear its own

costs, expenses, and attorneys' fees in this action.


/s/
Matthew B. Harvey (No. 5186)
Matthew O. Talmo (No. 6333)
MORRIS NICHOLS ARSHT &
TUNNELL LLP
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
mharvey@morrisnichols.com
mtalmo@morrisnichols.com

*Counsel for Skin Medicinals LLC*


/s/
Marc S. Casarino (No. 3613)
Katherine Barksdale (No. 6101)
KENNEDYS CMK LLP
222 Delaware Avenue, Suite 710
Wilmington, DE 19801
(302) 308-6647
marc.casarino@kennedyslaw.com
katie.barksdale@kennedyslaw.com

*Counsel for Ben David and Arun Suresh
Kumar*

Dated: February 18, 2025


/s/
Jeffrey L. Moyer (#3309)
Chad M. Shandler (#3796)
Kelly E. Farnan (#4395)
Katharine L. Mowery (#5629)
Sara M. Metzler (#6509)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7705
moyer@rlf.com
shandler@rlf.com
farnan@rlf.com
mowery@rlf.com
metzler@rlf.com

*Counsel for OptioRx, LLC*


/s/
Joseph C. Barsalona II (#6102)
PASHMAN STEIN WALDER HAYDEN,
P.C.
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
jbarsalona@pashmanstein.com

*Counsel for Lisa Bassett Ippolito*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SKIN MEDICINALS LLC,

                    Petitioner,

          v.

OPTIO RX, LLC, BEN DAVID, ARUN
SURESH KUMAR, and LISA BASSETT
IPPOLITO,

                    Respondents.

C.A. No. 24-1015 MN


Bankruptcy Case No. 24-11188-TMH

Adversary No. 24-50079-TMH

## STIPULATION OF DISMISSAL

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), Plaintiff Skin Medicinals LLC and Defendants Optio Rx, LLC, Ben David, Arun Suresh Kumar, and Lisa Bassett Ippolito hereby stipulate and agree that all claims are dismissed.  The stipulation is without prejudice as of the date of filing but shall automatically convert to a dismissal with prejudice on the date that Optio Rx, LLC complies with its obligations in Paragraph 2 of the Settlement Agreement and Mutual Release.  Each party shall bear its own costs, expenses, and attorneys' fees in this action.

_/s/_____
Matthew B. Harvey (No. 5186)
Matthew O. Talmo (No. 6333)
MORRIS NICHOLS ARSHT &
TUNNELL LLP
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
mharvey@morrisnichols.com
mtalmo@morrisnichols.com

_Counsel for Skin Medicinals LLC_

_/s/_____
Jeffrey L. Moyer (#3309)
Chad M. Shandler (#3796)
Kelly E. Farnan (#4395)
Katharine L. Mowery (#5629)
Sara M. Metzler (#6509)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7705
moyer@rlf.com
shandler@rlf.com
farnan@rlf.com
mowery@rlf.com
metzler@rlf.com

_Counsel for OptioRx, LLC_

_/s/_____
Marc S. Casarino (No. 3613)
Katherine Barksdale (No. 6101)
KENNEDYS CMK LLP
222 Delaware Avenue, Suite 710
Wilmington, DE 19801
(302) 308-6647
marc.casarino@kennedyslaw.com
katie.barksdale@kennedyslaw.com

_Counsel for Ben David and Arun Suresh
Kumar_

_/s/_____
Joseph C. Barsalona II (#6102)
PASHMAN STEIN WALDER HAYDEN,
P.C.
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 592-6496
jbarsalona@pashmanstein.com

_Counsel for Lisa Bassett Ippolito_

Dated: February 18, 2025

2